UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, as CHIEF EXECUTIVE )
OFFICER OF THE CENTRAL PENSION FUND )
                                          )
                **Plaintiff,**          )
                                          )
                  v.                   )      CA No.: 06cv02177-RJL
                                          )
HIGH MOUNTAIN INSPECTION SERVICES, INC. )
                                          )
              **Defendant.**        )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Dated: January 17, 2007               Respectfully submitted,

                                          **O'DONOGHUE & O'DONOGHUE LLP**
                                          4748 Wisconsin Avenue, N.W.
                                          Washington, D.C.  20016
                                          Telephone: (202) 362-0041
                                          Facsimile: (202) 237-1200

                                          Charles W. Gilligan (Bar No. 394710)
                                          R. Richard Hopp (Bar No. 432221)

                                          *Attorneys for the Central Pension Fund*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................................................ii

I.     STATEMENT OF FACTS .................................................................................................1

II.    ANALYSIS    ....................................................................................................................6

      A.    The Central Pension Fund Is Entitled To Preliminary Injunctive Relief...............6

            1.   *Courts are Authorized Under ERISA to Issue Preliminary*
                *Injunctions for Payment of Delinquent Employer Contributions*...................6

            2.   *Standard for Granting Preliminary Injunctions* ............................................7

      B.    The Central Pension Fund Has Established The Four Factors
          To Obtain A Preliminary Injunction....................................................................7

            1.   *The Central Pension Fund Is Likely to Succeed on the Merits* .......................7

            2.   *The Central Pension Fund Will Suffer Irreparable Harm*
                *Without Injunctive Relief*..........................................................................11

            3.   *Any Harm to High Mountain is Substantially Outweighed by*
                *Harm to the Central Pension Fund*.............................................................16

            4.   *The Public Interest is Best Served by Granting Injunctive Relief* .................18

III.   CONCLUSION ................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Agathos v. Starlite Motel</u>,
   977 F.2d 1500 (3d Cir. 1992)............................................................................8, 9

<u>Anthony v. Texaco, Inc.</u>,
   803 F.2d 593 (10th Cir. 1986) ...............................................................................6

<u>Bakery & Confectionary Union Funds v. Ralph's Grocery Co.</u>,
   118 F.3d 1018 (4th Cir. 1997) ...............................................................................8

<u>Bituminous Coal Operators' Association v. Connors</u>,
   676 F. Supp. 1 (D. D.C. 1987).................................................................................8

<u>Carpenters and Millwrights Health Benefit Trust Fund v. Gardiner Dry Walling Co.</u>,
   573 F.2d 1172 (10th Cir. 1978) ...........................................................................10

<u>Central States, Southeast and Southwest Areas National Pension Fund v. McNamara
   Motor Express</u>,
   503 F. Supp. 96 (E.D. Mich. 1980).......................................................13, 17, 18

<u>Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Services</u>,
   870 F.2d 1148 (7th Cir. 1989) ...............................................................................9

<u>Central States, Southeast and Southwest Areas Pension Fund v. Independent Fruit
   and Produce, Co.</u>,
   919 F.2d 1343 (8th Cir. 1990) ...............................................................................8

<u>Central States v. Charles Hester</u>,
   1984 U.S. Dist. LEXIS 15154 (N.D. Ill. 1984) ....................................................7

<u>Chartier v. J&F Mang't Corp.</u>,
   15 E.B.C. 2942 (S.D.N.Y. 1992) .........................................................13, 16, 17

<u>Clark v. Ryan</u>,
   818 F.2d 1102 (4th Cir. 1987) .............................................................................10

<u>Combs v. Hawk Contracting, Inc.</u>,
   543 F. Supp. 825 (W.D. Pa. 1982)........................................................................12

<u>Connors v. Shannopin Mining Co.</u>,
   675 F. Supp. 986 (W.D. Pa. 1987).................................................................12, 15

Demolition Workers Union v. Mackroyce Contracting Corp.,
    25 E.B.C. 1344 (S.D.N.Y 2000) ................................................................6

Foltz v. U.S. News & World Report,
    760 F.2d 1300 (D.C. Cir. 1985) ................................................................6

Gould v. Lambert Excavating, Inc.,
    870 F.2d 1214 (7th Cir. 1989) ..........................................................11, 12

Hotel Employees and Restaurant Employees Inter'l Union Welfare/Pension Funds
    v. Caucus Club, Inc.,
    754 F. Supp. 539 (E.D. Mich. 1991)...................................................12, 13, 17,
                                                                                       19, 20

Laborers Fringe Benefit Funds v. Northwest Concrete & Construction,
    640 F.2d 1350 (6th Cir. 1981) .............................................................6, 19

Laborers' International Union of Am. National (Industrial) Pension Fund
    v. Pacific Ascorp,
    12 E.B.C. 1864 (D.D.C. 1990).............................................................6, 8, 12,
                                                                                       16, 17

McCrory v. G.C. Monaco Electric, Inc.,
    1989 U.S. Dist. LEXIS 7573 (S.D.N.Y. 1989) ..........................................14

National Shopmen Pension Fund v. Burtman Iron Works, Inc.,
    148 F. Supp. 2d 60 (D.D.C. 2001) ......................................................6, 17

Robbins v. Lynch,
    836 F.2d 330 (7th Cir. 1988) ............................................................8, 12, 15

Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co.,
    749 F.2d 315 (6th Cir. 1984) ...............................................................10

Teamsters Local 639 - Employers Trust v. Jones & Artis Const. Co.,
    640 F. Supp. 223 (D.D.C. 1986)..........................................................6, 17

United Mine Workers of America 1950 Benefit Plan and Trust v. Bituminous Coal
    Operators' Association, Inc.,
    898 F.2d 177 (D.C. Cir. 1990) ...............................................................6

United Steelworkers of America v. Textron, Inc.,
    836 F.2d 6 (1st Cir. 1987).....................................................................16

<u>Van Drivers Local No. 392 Funds v. Neal Moving & Storage</u>,
   551 F. Supp. 429 (N.D. Oh. 1982)............................................................12, 14, 15,
                                           17, 18

<u>Washington Area Carpenters Welfare Fund v. Overhead Door, Co.</u>,
   681 F.2d 1 (D.C. Cir. 1982).................................................................................10

<u>Washington Area Transit Commission v. Holiday Tours, Inc.</u>,
   559 F.2d 841 (D.C. Cir. 1977).............................................................................7

## STATUTES AND RULES

29 U.S.C. § 1001(a) ........................................................................................18, 19
29 U.S.C. § 1002(1) ...............................................................................................1
29 U.S.C. § 1002(3) ...............................................................................................1
29 U.S.C. § 1002(34) .............................................................................................2
29 U.S.C. § 1002(35) .............................................................................................2
29 U.S.C. § 1132(g)(2)(E) ......................................................................................6
29 U.S.C. § 1145........................................................................................7, 19

Fed. R. Civ. P. 65(a) ............................................................................................1

Rev. Rul. 85-130, I.R.B. No. 1985-34 (August 26, 1986)....................................13

Pursuant to Fed. R. Civ. P. 65(a), the Plaintiff moves this Court for a preliminary injunction requiring the Defendant, High Mountain Inspection Services, Inc.: 1) to remit $1,549,855.64 in wrongfully withheld contributions; 2) to remit liquidated damages owed; 3) to remit interest owed on the delinquent contributions; 4) to pay contributions owed during the course of this litigation; and 5) to submit to an audit of payroll and other records to determine the Defendant's liability to the Central Pension Fund.

The Complaint alleges that the Defendant is holding assets of the Central Pension Fund in the form of unpaid pension benefit contributions. In order to protect the interests of the participants and beneficiaries of the Central Pension Fund, the Plaintiff hereby seeks immediate preliminary injunctive relief to enjoin the wrongful withholding of delinquent contributions and to enjoin the wrongful withholding of contributions that become due during the course of this lawsuit.

## I.    STATEMENT OF FACTS

The Plaintiff is the Chief Executive Officer of the Central Pension Fund, an employee pension benefit plan as those terms are defined in Sections 3(1) and 3(3) of ERISA, 29 U.S.C. §§ 1002(1) and (3). The Central Pension Fund is administered by its Trustees at 4115 Chesapeake Street, N.W., in the District of Columbia. (Fanning Decl. ¶ 6.) This is where the Central Pension Fund also keeps the books and records used in the regular course of its business. (Fanning Decl. ¶ 6.) The Central Pension Fund provides retirement, disability and survivor and death benefits to employees working as in the operating engineers throughout the United States. (Fanning Decl. ¶ 7.)[1] The Central

---

[1] The Central Pension Fund currently has approximately 110,000 active and/or non-retired vested participants. (Fanning Decl. ¶ 8.)

1

Pension Fund is established and maintained according to the provisions of its Restated Agreement and Declaration of Trust.  (Fanning Decl. ¶ 4.)

The Central Pension Fund is a defined benefit, multiemployer plan, as those terms are defined in Sections 2(35) and (37)(A) of ERISA, 29 U.S.C. § 1002(35) and (37)(A).  (Fanning Decl. ¶ 5 .)  As a defined benefit fund, the Central Pension Fund does not maintain individual accounts for each participant.  Cf. 29 U.S.C. § 1002(34) (describing individual account plans).  (Fanning Decl. ¶ 10.)  Instead of holding money in individual accounts, the Central Pension Fund collects payments, called "employer contributions," from thousands of employers throughout the United States.  (Fanning Decl. ¶ 10.)[2]

Contributions are made by employers in the industry pursuant to the terms of various collective bargaining agreements with Local Unions of the International Union of Operating Engineers.  (Fanning Decl. ¶ 12.)  Signatory employers make the contributions to the Fund on a self-reporting basis each month.  (Fanning Decl. ¶ 13. )  Contributions are paid to the Central Pension Fund generally for each hour of work performed by the employees.  (Fanning Decl. ¶ 14. )  One such employer obligated to make contributions to the Central Pension Fund under Collective Bargaining Agreements is High Mountain Inspections Services, Inc.  (Fanning Decl. ¶ 15. )  The Collective Bargaining Agreements provide that for every hour worked by an employee performing work under the Agreement, High Mountain is obligated to pay, in addition to wages, contributions to the Central Pension Fund.  (Fanning Decl. ¶ 20; Exhs. 2 and 3)  For example, in January of

---

[2] The Central Pension Fund currently has approximately 6,000 contributing employers, including High Mountain.  (Fanning Decl. ¶ 11.)

2

2005, High Mountain generally was required to pay to the Central Pension Fund $5.90 for each hour worked by its employees. (Fanning Decl. ¶ 20; Ex. 2.)

The number of hours worked by each employee during a month is supplied to the Central Pension Fund by employers in a report. (Fanning Decl. ¶ 22.) The total number of hours reported is multiplied by the applicable contribution rate, resulting in the amount owed by the employer to the Central Pension Fund for a given month. (Fanning Decl. ¶ 22.) Once received, the Reports are processed by the Central Pension Fund's office staff in Washington, D.C. and the hours detailed in the report are applied and recorded on behalf of each employee identified on each Report. (Fanning Decl. ¶ 22.)

In general, the Central Pension Fund provides monthly annuity payments to participants and beneficiaries according to various formulas. (Fanning Decl. ¶ 9.) These formulas are based on a percentage of contributions paid into the Fund by employers on behalf of the employee. (Fanning Decl. ¶ 9. ) For example, the Central Pension Fund calculates the amount of a normal pension benefit by multiplying the amount of employer contributions paid into the Fund by a percentage called the "Benefit Accrual Rate." (Fanning Decl. ¶ 9.) The current Benefit Accrual Rate is three percent. (Declaration ¶ 9.) Thus, an employee with $80,000 of employer contributions over the course of his working career generally would be entitled to a monthly pension benefit in the amount $2,400.00 for his or lifetime ($80,000 x 3% = $2,400). (Fanning Decl. ¶ 9.) An individual with a larger amount of employer contributions paid into the Fund on his or her behalf is generally entitled to a larger monthly pension benefit.

The Defendant High Mountain Inspection Services, Inc. is a Wyoming corporation, which operates as an employer engaged in interstate commerce. (Fanning

3

Decl. ¶ 17.)    At all times relevant, High Mountain has been signatory to Collective Bargaining Agreements with the International Union of Operating Engineers Local No. 2 and its successor Local 112, which govern the wages, benefits and terms and conditions of employment of all employees engaged in pipeline and directly related pipeline non-destructive testing. (Fanning Decl. Exhs. 2 and 3.) At all times relevant High Mountain has also been signatory to a Participation Agreement with the Central Pension. (Fanning Decl. ¶ 18 .)

Pursuant to the Collective Bargaining Agreements, High Mountain agreed to pay the Central Pension Fund contributions for each hour worked by employees of the Defendant engaged in pipeline and directly related pipeline non-destructive testing. (Fanning Decl. ¶ 20.) Defendant, through the Collective Bargaining Agreement, agreed to pay contributions to the Central Pension Fund "in accordance with the rules and regulations as adopted by the Trustees of the Fund." (Fanning Decl. ¶ 21.) By signing the Participant Agreement with the Central Pension Fund, High Mountain also specifically agreed to be "bound by and to comply with each and every provision" of the Fund's Restated Agreement and Declaration of Trust. (Fanning Decl. ¶ 18.)

The Central Pension Fund hired Calibre CPA Group, PLLC, to conduct an audit of High Mountain's payroll records pursuant to Section 4.4 of the Restated Agreement and Declaration of Trust. (Odell Dec. ¶ 7.) For this audit, Calibre CPA Group reviewed wage and payroll records provided to it by High Mountain for the period of January 2002 through August of 2005. (Odell Decl. ¶ 10.) Calibre CPA Group then compared High Mountain's payroll records with the monthly report submitted each month to the Central Pension Fund. (Odell Decl. ¶ 13.) Based on this comparison, Calibre CPA Group

determined that High Mountain owes contributions to the Central Pension Fund in the total amount of $1,549,855.64 for the period of January 2002 through August of 2005. (Odell Decl. ¶ 15.) This amount consists of two distinct schemes employed by High Mountain to understate its obligations to the Fund.

First, High Mountain failed to correctly identify the number of hours worked by each of its employees on the Report of Contributions. (Odell Decl. ¶ 16.) By underreporting the number of hours actually worked by its employees, High Mountain reduced the amount of contributions it paid to the Central Pension Fund each month. (Odell Decl. ¶ 16.) The contributions owed by High Mountain for hours not reported to the Fund for the period of January 2002 through August of 2005 is $508,219.30. (Odell Decl. ¶ 16.)

The second scheme employed by High Mountain to reduce the amount of contributions it paid to the Central Pension Fund focuses on the hourly contribution rate. Rather than calculate its total monthly obligation to the Fund using the correct hourly contribution rate for each employee, High Mountain would use a lower rate, resulting in a reduced payment on behalf of its employees to the Central Pension Fund. (Odell Decl. ¶ 17.) The contributions owed by High Mountain for hours using an incorrect contribution rate, for the period of January 2002 through August of 2005, is $1,041,636.34. (Odell Decl. ¶ 17.)

## II.    ANALYSIS

### A. The Central Pension Fund Is Entitled To Preliminary Injunctive Relief

#### 1.    *Courts are Authorized Under ERISA to Issue Preliminary Injunctions For Payment of Delinquent Employer Contributions*

Under Section 502(g)(2)(E) of ERISA, Congress authorized the federal courts to grant equitable relief as the courts may deem appropriate to vindicate the provisions of ERISA. 29 U.S.C. § 1132(g)(2)(E). Under this provision, the federal courts have consistently issued preliminary injunctions in ERISA cases compelling an employer to make delinquent contributions as required by collective bargaining agreements. United Mine Workers of Am. 1950 Benefit Plan and Trust v. Bituminous Coal Operators' Ass'n, Inc., 898 F.2d 177 (D.C. Cir. 1990); National Shopmen Pension Fund v. Burtman Iron Works, Inc., 148 F. Supp. 2d 60 (D.D.C. 2001); Teamsters Local 639 – Employers Trust v. Jones & Artis Const. Co., 640 F. Supp. 223 (D.D.C. 1986); Laborers' International Union of America National (Industrial) Pension Fund v. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990) (in Unreported Case Appendix); Foltz v. U.S. News & World Report, 760 F.2d 1300 (D.C. Cir. 1985); Anthony v. Texaco, Inc., 803 F.2d 593, 596 (10th Cir. 1986); Laborers Fringe Benefit Funds v. Northwest Concrete & Construction, 640 F.2d 1350 (6th Cir. 1981); Demolition Workers Union v. Mackroyce Contracting Corp., 25 E.B.C. 1344 (S.D.N.Y 2000) (in Unreported Case Appendix).

Furthermore, the Court of Appeals for the District of Columbia Circuit has characterized such relief as "equitable" even though the injunction requires the payment of monetary contributions to the plaintiff funds. Foltz v. U.S. News & World Report, 760 F.2d 1300, 1308 (D.C. Cir. 1985). As one district court stated, "ERISA collection cases are exceptions from the general rule of equity that equity will not enjoin either

prohibitively or mandatorily the payment of money. . . . [I]n the context of ERISA, when contributing employers fail to make monthly contributions, a pension fund suffers irreparable injury." Central States v. Charles Hester, 1984 U.S. Dist. LEXIS 15154 (N.D. Ill. 1984) (in Unreported Case Appendix).  Therefore, this Court is authorized to issue a preliminary injunction requiring payment of delinquent contributions.

### 2. Standard for Granting Preliminary Injunctions

To obtain a preliminary injunction in the federal courts, and the District of Columbia Circuit in particular, a party must satisfy the well-settled four factor test.  The four factors are:  (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable harm absent injunctive relief; (3) the relief sought will not harm the non-moving party to a greater extent than which the moving party will suffer absent an injunction; and (4) the public interest is best served by an issuance of an injunction.  See, e.g., Washington Area Transit Comm'n v. Holiday Tours, Inc., 559 F. 2d 841, 844 (D.C. Cir. 1977).  As demonstrated below, the Central Pension Fund has more than adequately met its burden and is entitled to preliminary injunctive relief.

### B.    The Central Pension Fund Has Established The Four Factors To Obtain A Preliminary Injunction

#### 1. The Central Pension Fund is Likely to Succeed on the Merits

The instant action seeks delinquent contributions owed to the Central Pension Fund pursuant to Section 515 of ERISA.  Section 515 of ERISA requires every employer obligated to make contributions to a multiemployer plan under the terms of the collective bargaining agreement.  29 U.S.C. § 1145.  Section 515 allows multiemployer plans, like the Central Pension Fund, to hold contributing employers to the plain meaning of the language used in the collective bargaining agreement.  The intention of the bargaining

7

parties is irrelevant when the literal terms of the agreement are clear.   Bakery &
Confectionary Union Funds v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997).

Due to this plain meaning rule, employers have very limited defenses to an
ERISA § 515 action.  Id. at 1021.  An employer is not permitted to raise defenses that
attempt to show that the union and the employer agreed to terms different from those set
forth in the agreement.  Nor is an employer permitted to raise defenses that relate to
claims the employer may have against the union.  Id.; Agathos v. Starlite Motel, 977 F.2d
1500, 1505 (3d Cir. 1992) (noting that "[c]ourts of appeals have interpreted section 515
as precluding employers from raising a variety of contract defenses as a means of
avoiding the obligation to contribute to employee benefit plans"); Robbins v. Lynch, 836
F.2d 330 (7th Cir. 1988).  This Court has also recognized the "severely limited" range of
defenses available to High Mountain.  Laborers' Int'l Union of Am. National (Industrial)
Pension Fund v. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990) (in Unreported Case
Appendix).

In Bituminous Coal Operators' Ass'n v. Connors, 676 F. Supp. 1 (D. D.C. 1987),
this Court held that Congress added Section 515 to ERISA specifically to ensure quick
and uncomplicated collections by trustees.  Id. at 3.  Congress accomplished this goal "by
barring litigation against trustees of claims based on the conduct of the signatory parties
and hence unrelated to a trust's entitlement."  Id.; Central States, Southeast and Southwest
Areas Pension Fund v. Independent Fruit and Produce, Co., 919 F.2d 1343, 1349 (8th Cir.
1990) (actual intent of contracting parties immaterial when the meaning of the contract
language is clear.)

8

As explained by the Agathos court, only three defenses are available to a delinquent employer: (1) that the contributions themselves are illegal; (2) that the collective bargaining agreement is void (and not merely voidable); and (3) that the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining agreement. Agathos, 977 F.2d at 1505 (citations omitted). Based on a careful review of Section 515 of ERISA and the accompanying extensive legislative history, the federal courts hold that ERISA funds, like the Central Pension Fund, are "like a holder in due course in commercial law or like a receiver of a failed bank . . . entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Services, 870 F. 2d 1148, 1151-53 (7th Cir. 1989).

Based on these legal principles, the Central Pension Fund is substantially likely to prevail on the merits in this case. The evidence presented by the Plaintiff clearly establishes that High Mountain is party to Collective Bargaining Agreements requiring contributions to the Central Pension Fund. (Fanning Decl. ¶s. 15 and 16.) None of the three defenses explained in Agathos exist in this case, nor have any been raised by High Mountain. (Odell Decl. ¶s. 18-20.) Thus, the Plaintiff has demonstrated a likelihood of success on its claim for delinquent contributions and injunctive relief should be granted.

To the extent High Mountain has raised defenses (which are not permitted in this ERISA collection case under Section 515 in the first place) they are easily rejected as a matter of law. First, High Mountain has suggested that they refuse to pay contributions to the Central Pension Fund on behalf of non-union employees. (Odell Decl. ¶ 19.) The

federal courts, including the United States Court of Appeals for the District of Columbia Circuit, have repeatedly rejected this claim. See, e.g., Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318-19 (6th Cir. 1984); Washington Area Carpenters Welfare Fund v. Overhead Door, Co., 681 F.2d 1, 10 (D.C. Cir. 1982); Clark v. Ryan, 818 F.2d 1102, 1105 (4th Cir. 1987); Carpenters and Millwrights Health Benefit Trust Fund v. Gardiner Dry Walling Co., 573 F.2d 1172, 1177 (10th Cir. 1978). In this case, the plain terms of Articles I and XXIII, Section A, of the Collective Bargaining Agreements, require that High Mountain pay contributions for *all employees* and make no exceptions for non-union employees with respect to its obligation to pay contributions to the Central Pension Fund. (Fanning Decl. Exhs. 2 and 3.)

Second, High Mountain has claimed that the contents of a letter from 1997 describing general terms of agreement serves to fix the various hourly contribution rate owed by High Mountain to the Central Pension Fund in the amount of .10 cents an hour to $2.40 per hour. (Odell Decl. ¶ 20.) This argument is easily rejected for several reasons.

Most importantly, High Mountain's argument ignores the numerous specific Project Agreements executed by IUOE Local No. 2 and High Mountain. Article VII of the Collective Bargaining Agreement provides that Local 2 and High Mountain may negotiate different Central Pension Fund contribution rates for particular jobs. (Fanning Decl. Exhs. 5-15.) Those different contribution rates are specifically memorialized in the various written "Project Agreements" to which High Mountain is signatory. Item four of the 1997 letter, which specifically refers to "Project Agreement work," merely confirms that Local No. 2 and High Mountain will negotiate "Project Agreement" work with

varying hourly contribution rates to the Central Pension Fund. (Odell Decl. Ex. 7.) That is exactly what the bargaining parties did on numerous occasions. (Fanning Decl. Exhs. 5-15.) However, there is nothing in the language of the 1997 letter that suggests in any way that High Mountain was given the unilateral right to determine the applicable contribution rate. Put another way, the bargaining parties' specific and repeated conduct in negotiating "Project Agreements" for special projects clearly indicates a course of conduct contrary to High Mountain's cramped interpretation of the 1997 letter.[3]

Accordingly, the Central Pension Fund requests injunctive relief because it is likely to prevail on the merits of its claims at trial.

### 2.    The Central Pension Fund Will Suffer Irreparable Harm Without Injunctive Relief

As detailed above, the federal courts have consistently provided ERISA benefit funds with injunctive relief where delinquent employers ignore their obligations under ERISA. In granting these injunctions, courts have relied on several distinct irreparable harms, all of which are present in this case.

First, courts have held, as a matter of law, that when a fund does not receive required contributions, ERISA employee benefit funds (like the Central Pension Fund) suffer irreparable harm. In <u>Gould v. Lambert Excavating, Inc.</u>, 870 F.2d 1214 (7th Cir. 1989), for example, the Seventh Circuit upheld the district court's issuance of a preliminary injunction ordering the defendant to pay both delinquent and future contributions. The Court did not disturb the district court's holding that the employer's

---

[3] In any event, High Mountain's argument is nullified by the simple fact that High Mountain subsequently entered in Project Agreements with hourly contribution rates *higher* than the $2.40 rate allegedly established in the 1997 letter. (Fanning Decl. Exhs. 5-15.)

failure to make contributions jeopardized the actuarial soundness of the pension fund, holding it was "obvious" that if a pension fund is making payments without receiving contributions its stability will be jeopardized. Id. at 1217. See also Pacific Ascorp., 12 E.B.C. 1864 (D.D.C. 1990) (holding that a pension fund suffers irreparable harm because defendant's failure to make required contributions jeopardizes fund's financial stability and rejecting argument that money damages would suffice to compensate fund for economic losses); Combs v. Hawk Contracting, Inc., 543 F. Supp. 825, 829-30 (W.D. Pa. 1982) (holding employer's failure to make payments "imperils" interests of the fund as a matter of law); Van Drivers Local No. 392 Funds v. Neal Moving & Storage, 551 F. Supp. 429, 432  (N.D. Oh. 1982) (holding that it is "implicit" that an ERISA fund's continued vitality and stability depends upon employer's honoring their obligations under the collective bargaining agreement"); Hotel Employees and Restaurant Employees Inter'l Union Welfare/Pension Funds v. Caucus Club, Inc., 754 F. Supp. 539, 546 (E.D. Mich. 1991) (holding that absent an injunction the ERISA funds will not receive payment and will be irreparably harmed); Robbins v. Lynch, 836 F. 2d 330, 333 (7th Cir. 1988) (describing harm to ERISA benefit funds when employers fail to make contributions.); Connors v. Shannopin Mining Co., 675 F. Supp. 986, 988 (W.D. Pa. 1987) (holding that lapse of payments to employee benefit fund "is of vital important in and of itself, and that a lapse of payments may be significant enough to constitute irreparable harm").

Although this irreparable harm is recognized by the courts as a matter law, the facts of this case also demonstrate the nature of the harm to the Central Pension Fund. The Central Pension Fund is required by law to provide benefits to participants in the plan without regard to whether or not contributions were actually paid by High

Mountain.[4]  The Central Pension Fund's Chief Executive Officer explains the nature of the

harm to the Central Pension Fund as follows:

> [U]pon application for retirement, a Central Pension Fund participant could
> present the Central Pension Fund with evidence of hours actually worked
> (*i.e.*, pay stubs, tax documents or social security work records); demand a
> pension based upon all of the contributions which should have been paid
> for those hours, regardless of the fact that the employer did not make the
> required contributions for that employee; the Central Pension Fund would
> be required to credit the participant for unpaid contributions relative to all
> unreported hours of service and pay a pension benefit to that participant
> accordingly.   The Central Pension Fund thus has an unknown, and
> unfunded, liability to those participants unless employers pay the correct
> amount of contributions.

(Fanning Decl. ¶ 23.)  In Central States, Southeast and Southwest Areas National Pension

Fund v. McNamara Motor Express, 503 F. Supp. 96 (E.D. Mich. 1980), the district court

described this aspect of the harm in terms equally applicable to the Central Pension Fund

in this case:

> [An employee benefit fund] would be required to meet the financial
> burden of ERISA's guarantees in the form of pension payments without
> corresponding contributions. . . .  As the plan covers several hundred
> thousand participants, with over 1400 contributing employers, the
> actuarial soundness of the fund would be compromised.

Id. at 98-99 (quoting Central States Southeast and Southwest Areas Pension Fund v.

Hitching Trucking, Inc., 472 F. Supp. 1243 (E.D. Mi. 1979)); Caucus Club, 754 F. Supp.

at 546 (fund's obligation to make payments to participants without receiving

corresponding contributions endangers the fund's financial security); Chartier v. J&F

---

[4] Both ERISA and the Internal Revenue Code mandate that multiemployer pension
funds, such as the Central Pension Fund, credit hours worked by participants regardless
whether employers honor their obligation to contribute.  DOL Op. Ltr. 76-89 (August 31,
1976);  Rev. Rul. 85-130, IRB No. 1985-34 (August 26, 1986).

Mang't Corp., 15 E.B.C. 2942 (S.D.N.Y. 1992) (in Unreported Case Appendix) (nonpayment of contributions impairs actuarial soundness of fund).

Moreover, the Central Pension Fund's benefit payments are based on carefully calculated long-term investment and actuarial assumptions. (Fanning Decl. ¶ 24.) For each month High Mountain fails to remit contributions, the Central Pension Fund experiences harm because it must forego investment money and investment opportunities which formed part of the Fund's long-term planning and investment assumptions. (Fanning Decl. ¶ 24.) In Van Drivers Union Local 392 Funds, 551 F. Supp. 429, the district court specifically identified that loss of investment moneys and investment opportunities constitutes irreparable injury. Id. at 433. Similarly, the district court observed that during the period an ERISA benefit fund is forced to sue to enforce the employer's obligations, the employer is permitted to invest, at a high interest rate, the money intended for contributions to the fund, and to subsequently repay the contributions at a lower interest rate. Id. at 432-33.

Another aspect of the irreparable harm caused by High Mountain's failure to pay the contributions focuses on the other contributing employers. Absent injunctive relief, other contributing employers would not be deterred from following High Mountain's lead and start cheating on their contribution obligations. (Fanning Decl. ¶ 25.) As the district court in McCrory v. G.C. Monaco Electric, Inc., 1989 U.S. Dist. LEXIS 7573 (S.D.N.Y. 1989) (in Unreported Case Appendix), observed it "is right in this situation to allow the Funds to use one particularly delinquent employer as an example." If other employers adopt the various schemes to reduce the amount of contributions they paid to the Central Pension Fund, like High Mountain has done, the Fund's payroll audit and administrative

14

costs will necessarily increase due to the need to monitor and audit employers' monthly reports more closely. The reduced contributions will exacerbate the funding and actuarial difficulties described above. Connors, 675 F. Supp. at 988 (if employers believe they can readily circumvent their obligations, there would soon be a crisis in funding). Thus, the loss of the deterrence effect on other potentially cheating employers, and the increase in administrative expenses for monitoring, are additional harms that support the Central Pension Fund's request for injunctive relief.

The federal courts have described other aspects of how employee benefit funds are irreparably harmed when employers fail to live up to the obligation to pay contributions. The failure to pay contributions requires benefit funds to file lawsuits to force employers to honor contractual responsibilities. Those efforts result in increased administrative expenses – a use of trust fund assets which diverts money that could be used to pay benefits to the retirees. (Fanning Decl. ¶ 26.) The resulting collection lawsuits clog the federal court's congested dockets. See, e.g., Van Drivers Union Local No. 392 Benefit Funds, 551 F. Supp. at 432-43. Any shortfall in contributions, of course, must be made up by lower benefits to the retirees or higher contributions from the remaining contributing employers who do not cheat, causing an additional form of harm. Robbins, 836 F. 2d at 333.

Finally, in addition to the harm to the Central Pension Fund and to the other contributing employers, allowing High Mountain to avoid its contribution obligations also harms High Mountain's current and former employees. The federal courts have taken judicial notice of the fact that employees who learn that their employer is not making proper contributions have serious concerns and experience distress about what

15

effect that will have on their future financial security. See, e.g. United Steelworkers of Am. v. Textron, Inc., 836 F.2d 6, 8 (1st Cir. 1987) (emotional distress and concern of workers constitutes irreparable harm in ERSIA collection case); Chartier, 15 E.B.C. 2942 (same). In a holding directly applicable to this case, the district court in United Steelworkers of Am. v. Textron, Inc., noted:

> It seems to us that lack of ready cash for such purposes [funeral or other expenses at the time of a death] threatens the sort of serious emotional harm that (for reasons similar to those just mentioned) can support a finding of irreparable harm, at least in the face of a record that contains no contradicting or countervailing evidence or concern. We find adequate grounds for "irreparable harm" here as well.

Id. at 9. Accordingly, the Central Pension Fund requests injunctive relief to avoid these irreparable harms.

### 3.  Any Harm to High Mountain Is Substantially Outweighed by Harm to the Central Pension Fund

The Central Pension Fund is aware of no harm whatsoever to High Mountain if it is required to meet its contractual obligation to pay contributions. However, assuming that because of the large delinquency it has built up High Mountain will claim financial hardship, the harm to Defendant would still be outweighed by the harm to the Central Pension Fund, its beneficiaries and the other contributing employers. The legal authorities are clear that the financial burden presented by an injunction or the financial condition of an employer is insufficient to overcome the irreparable harm that the moving party could suffer if the injunction is not granted. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990). As the district court explained in Central States, Southeast and Southwest Areas Pension Fund v. McNamara Motor Express, Inc., "concern over insolvency cannot

16

be used by defendant to evade its responsibilities" to an ERISA Fund. Id., 503 F. Supp. at 99.[5]

Whatever harm may be alleged by High Mountain, the requested injunctive relief would not unduly burden it since the proposed order would only require that the Defendant remit wrongfully withheld plan assets to the Fund. Similar relief has been granted in similar cases by this Court and other federal courts. See, e.g., Laborers' Int'l Union of Am. National Pension Fund v. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990) (ordering payment of all past due contributions); Teamsters Local 639 – Employers Trust v. Jones & Artis Constr. Co., 640 F. Supp. 223 (D.D.C. 1986) (ordering employer to make timely contribution payments); National Shopmen Pension Fund v. Burtman Iron Works, Inc., 148 F. Supp. 2d 60 (D.D.C. 2001) (ordering employer to make required contribution payments); Central States, Southeast and Southwest Areas Pension Fund v. McNamara Motor Express, 503 F. Supp. at 99 (ordering employer to make contributions immediately into fund as they become due); Chartier v. J&F Mang't Corp., 15 EBC 2942 (directing employer to pay amount equal to delinquencies claimed by plaintiff funds to court or acceptable escrow agent); Hotel Employees and Restaurant Employees Int'l Union Welfare/Pension Funds v. Caucus Club, 754 F. Supp. at 546 (enjoining delinquent employer from selling or transferring any assets until ERISA funds are fully paid); Van Drivers Union Local No. 392 Benefit Funds v. Neal Moving & Storage, 551 F.Supp. at 433 (directing employer to pay all delinquent sums owed to ERISA funds and union dues

---

[5] In fact, any suggestion at this point by High Mountain that paying the contributions it owes to the Central Pension Fund will place it in financial jeopardy merely creates an additional form of irreparable harm that cannot be remedied. See, e.g., Hotel Employees and Restaurant Employees Int'l Union Welfare Pension Funds v. Caucus Club, Inc., 754 F. Supp. at 539, 546 (E.D. Mich. 1991).

owed to local union for 11 months prior to issuance of preliminary injunction). Given the substantial irreparable harm to the Central Pension Fund, its participants, and other participating employers, it is clear that the equities lie with the Central Pension Fund on this point and injunctive relief is appropriately issued.

### 4.    *The Public Interest is Best Served by Granting Injunctive Relief*

The final factor for a preliminary injunction is whether the public interest is best served by the issuance of the injunction. The Central Pension Fund's request for injunctive relief in this case is squarely supported by strong public interest.

In amending ERISA in 1980 to facilitate the collection of contributions owed to multiemployer funds, Congress found that "multiemployer pension plans have a substantial impact on interstate commerce and are affected with a national public interest." 29 U.S.C. § 1001(a). In protecting the national public interest in providing retirement income to employees and their dependents, the federal courts have noted that "the stability and protection (of multiemployer pension plans) requires assurance of adequate funding and the prevention of arbitrary termination rights." Van Drivers Union Local No. 392 Benefit Funds, 551 F.Supp. at 432 (citing Central States, Southeast and Southwest Areas Pension and Health & Welfare Funds v. McNamara Motor Express, Inc., 503 F. Supp. 96 (W.D. Mich. 1980)).

Congress provided ERISA funds with the means to petition the federal courts for injunctive relief to vindicate the public policies Congress sought to protect. Among the policies Congress recognized and sought to promote through ERISA was the continued stability of multiemployer ERISA plans such as the Central Pension Fund. As expressed in the statutory language itself, ERISA and the remedies provided by its operation seek to

secure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001(a).

Imbued with this public interest, the Central Pension Fund is charged with the responsibility of collecting delinquent contributions in order to fund benefits for the participants and beneficiaries. To assist ERISA fiduciaries in the discharge of this duty, Congress enacted Sections 515 and 502 with the view that these enforcement provisions would have substance through the authority of the federal courts to vindicate the public policy objective of funding employee plan benefits. As stated by the Sixth Circuit in Laborers Fringe Benefit Funds v. Northwest Concrete & Const., Inc.:

> Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funding, payment and other obligations under ERISA. The legislative history underlying section 502 indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act."

640 F.2d at 1352 (6th Cir. 1981) (citations omitted).

The legislative history of Section 515 of ERISA, 29 U.S.C. § 1145, also demonstrates the Congressional desire to provide employee benefit funds, like the Central Pension Fund, with "quick and direct access to the courts for collection actions." Hotel Employees and Restaurant Employees Int'l Union Welfare/Pension Funds v. Caucus Club, Inc., 754 F. Supp. 539, 544 (E.D. Mich. 1991). In discussing this very Section of ERISA, the legislative history notes that:

> simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions, and that the Section was an attempt to simplify delinquency collection.

19

Id. (internal quotations and citations omitted.) Applied here, it is apparent that granting a preliminary injunction in the instant case will vindicate the public interest by insuring that the Central Pension Fund is adequately funded and that employers who promise pension benefits to their employees are not free to ignore their obligations to their employees.

### III.  CONCLUSION

For the foregoing reasons, the Plaintiff respectfully submits that the Central Pension Fund is entitled to injunctive relief and that an order should issue requiring High Mountain to do the following:   1) to immediately remit $1,549,855.64 in wrongfully withheld contributions; 2) to remit liquidated damages; 3) to remit interest owed on the wrongfully withheld contributions; 4) to refrain from failing to pay contributions owed during the course of this litigation; and 5) to submit their records to an audit to determine additional liability to the Central Pension Fund for the period after August 2005 to date.

Dated: January 17, 2007                    Respectfully submitted,

**O'DONOGHUE & O'DONOGHUE LLP**
4748 Wisconsin Avenue, N.W.
Washington, D.C.  20016
Telephone: (202) 362-0041
Facsimile: (202) 237-1200


Charles W. Gilligan (Bar No. 394710)
R. Richard Hopp (Bar No. 432221)

*Attorneys for the Central Pension Fund*

150079_1

20

## DECLARATION OF ELLEN K. ODELL

I, Ellen K. Odell, Senior Manager of Calibre CPA Group, PLLC, pursuant to 28 U.S.C. 1746, hereby declare, certify, verify and state, under penalty of perjury that the following is true and correct to the best of my personal knowledge:

1.  I am over the age of 18 and competent to testify to the facts contained in this Declaration.

2.  I am a Senior Manager for Calibre CPA Group. My office and the records related to our audit of High Mountain Inspection Services, Inc. are located at 1850 K Street, N.W., Washington, D.C. 20006.

3.  I am authorized to execute this Declaration on behalf of Calibre CPA Group.

4.  Calibre CPA Group specializes in, among other things, compliance audits for multiemployer benefit funds.

5.  Calibre CPA Group annually conducts over 1,300 compliance audits and has a separate staff of auditors in each of our offices dedicated exclusively to this service.

6.  Compliance audits are conduced by Calibre CPA Group using our Compliance Audit Program. This Program was developed drawing upon the performance of thousands of payroll audits. It represents a field-tested approach to compliance auditing and includes procedures that are time-tested and provide maximum coverage of employer records.

7.  The Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers hired Calibre CPA Group to conduct an audit of High Mountain's payroll records.

8.  I supervised the payroll audit for the Central Pension Fund of High Mountain's books and records.

9.    Calibre CPA Group's audit of High Mountain's payroll records began with a compliance audit letter requesting payroll records. A true and accurate copy of such a letter dated August 26, 2005, and sent to High Mountain is attached to this Declaration as Exhibit 1.

10.    For this audit, Calibre CPA Group reviewed wage and payroll records provided to us by High Mountain for the period of January 2002 through August of 2005.

11.    A true and accurate copy of Calibre CPA Group's Compliance Audit Program documentation for the High Mountain payroll audit is attached to this Declaration as Exhibit 2.

12.    As an example, a true and accurate copy of the payroll records provided to Calibre CPA Group by High Mountain for the payroll during the month of January 2002 is attached to this Declaration as Exhibit 3 (with Social Security numbers removed).

13.    Calibre CPA Group compared High Mountain's payroll records with the monthly Report of Contributions submitted each month to the Central Pension Fund.

14.    A true and accurate of the Report of Contribution submitted by High Mountain to the Central Pension for the month of January 2002, for example, is attached to this Declaration as Exhibit 4 (with Social Security numbers removed).

15.    Based on a comparison of the Central Pension Fund's report of contributions and High Mountain's payroll records, Calibre CPA Group determined that High Mountain owes delinquent contributions to the Central Pension Fund in the total amount of $1,549,855.64 for the period of January 2002 through August of 2005. A true and accurate copy of the audit findings and detail is attached to this Declaration as Exhibit 5 (with Social Security numbers removed).

16.    Calibre CPA Group's payroll audit determined that High Mountain failed to correctly identify the number of hours worked by each of its employees on the Report of Contributions. By underreporting the number of hours actually worked by its employees, High

Mountain reduced the amount of contributions it paid to the Central Pension Fund each month. The contributions owed by High Mountain for hours not reported to the Fund for the period of January 2002 through August of 2005 is $508,219.30.

17.     Calibre CPA Group's payroll audit determined that High Mountain also reduced the amount of contributions it paid to the Central Pension Fund by using the incorrect hourly contribution rate. The amount owed by High Mountain for hours using an incorrect contribution rate, for the period of January 2002 through August of 2005, is $1,041,636.34.

18.     During the audit process, High Mountain provided only two arguments to Calibre CPA Group to dispute the result of the audit.

19.     High Mountain suggested that they did not have to pay contributions to the Central Pension Fund on behalf of non-union employees. A true and accurate copy of a note sent to Calibre CPA Group from High Mountain dated July 24, 2006, is attached to this Declaration as Exhibit 6.

20.     High Mountain also claimed that the contents of a letter from 1997 served to fix the hourly contribution rate owed by High Mountain to the Central Pension Fund in the amount of .10 cents an hour. A true and accurate copy of the 1997 letter is attached to this Declaration as Exhibit 7.

Washington, D.C.
January ⁻, 2007

_Ellen K. Odell_
Ellen K. Odell
Senior Manager, Calibre CPA Group PLLC

150066.1

*Michael R. Fanning as CEO of*
*The Central Pension Fund v. High Mountain Inspection Sevices, Inc.*
US District Court for the District of Columbia
Case No. 06cv02177-RJL
Exhibit to:

Declaration of Ellen K. Odell in Support of
Plaintiffs' Memorandum of Points and Authorities
in Support of Motion for Preliminary Injunction

# Exhibit 1



**CALIBRE**
CPA GROUP
PLLC

CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS

1850 K STREET, NW
SUITE 1050
WASHINGTON, DC 20006

202.331.9880 PHONE
202.331.9890 FAX

120 SOUTH RIVERSIDE PLAZA
SUITE 450
CHICAGO, IL 60606

312.648.8800 PHONE
312.648.8608 FAX

www.calibrecpa.com

 A member of
KS International

August 26, 2005

Suzanne Fraser
High Mountain Inspection
P.O. Box 1508
Mills, WY 82644-1508

Re:    Compliance Audit for the Central Pension Fund of the International Union of
       Operating Engineers and Participating Employers
       (Employer # 106663)

Dear Ms. Fraser:

This letter is to confirm our appointment to perform a compliance audit of your company's contributions to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers on Monday, September 19, 2005 at 11:00 AM. The compliance audit will cover the period January 2002 through the present at a minimum.

In order to facilitate the compliance audit we will require the following records and documents to be available.

1. Payroll records including detail on hours worked and paid (weekly or monthly)
2. Individual employee earnings records (quarterly or yearly)
3. Employer's Federal 941 Quarterly Payroll Tax Returns
4. Employer's Federal annual earning reports: Form W-2, W-3, 1099's, 1096, LM-2 and LM-3.
5. State Quarterly Unemployment Compensation Reports.
6. Employer copies of monthly contribution reports to all benefit funds to which you contribute.
7. Cash disbursements records relevant to payroll.
8. All pertinent personnel information, such as hire and termination dates.

Please contact me if you have any questions.  Thank you in advance for your assistance.

Sincerely,

Eric Cederbaum

# Exhibit 2

Calibre CPA Group PLLC
Compliance Audit Program

Client: CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
Employer:  High Mountain Inspection
Saved as:  1087-04

This payroll audit program has been prepared to provide the payroll auditor an effective tool for planning payroll audit procedures and for supervising and controlling the performance of the payroll audit work. Development of a payroll audit program for each engagement will provide a historical record of the work done as well as information to be used in the report on the payroll audit.

This payroll audit program is not designed to fit all payroll audit engagements. It must be revised whenever the payroll auditor, in the course of the work, finds that changes and/or additions to the programmed procedures are necessary to complete the payroll audit.

A thorough evaluation of the adequacy of the Employer's payroll records should be the starting point of a payroll audit. This review helps to determine the degree of reliability that may be placed on the payroll records, and in turn determines the nature and extent of the payroll auditing procedures to be used and the tests to be conducted during the payroll audit.

You are urged to read the payroll audit program in its entirety before performing any of the payroll audit procedures described in a particular section.

**1  Prior to entering the field.**

A. The purpose of this payroll audit is to determine if the employer is in compliance with the terms of the Collective Bargaining Agreement with regard to Fund(s) the employer is required to contribute to, and ascertain that the contribution reports are correct.

B. Documents provided from Fund for entire audit period requested:

| | |
|---|---|
| Contribution reports | Yes |
| Collective Bargaining Agreements | Yes |
| Accounts receivable | No |

C. Correspondence from Fund and /or Local Union:

| | |
|---|---|
| Fund Contact letter | Yes |
| Memo(s) | Employer Contract |
| Other correspondence | No |

D. Funds to be audited:
   Pension, H & W, Training

E. Calibre CPA Group PLLC correspondence:

| | |
|---|---|
| Confirmation letter mailed/fax on | 7/21/2005 |
| Other | Questionaire |

**2  Fieldwork**

A. Audit period requested:          January 2002 through August 2005

Auditor
Reviewer

Calibre CPA Group PLLC
Compliance Audit Program

Records we requested by our confirmation letter:
Payroll Registers, Individual Earnings Records, 941 Forms, U/C Forms, W2's, W3's, 1099's
1096's, LM-2's, Contribution reports for all funds contributed to, Personnel Files, I9's,
Cash Disbursement Journal

B. Are records available for the audit period:        Yes ___X___        No _____

C. Explain what records are unavailable and why.
   None.
   _____
   _____
   _____
   _____

D. Explain what records are available for each year.

| YEAR | RECORDS |
|------|---------|
| 2002 | 941's, St. U/C's, monthly C/R's, W-3, W-2's, 1099's, Excel Payroll Spreadsheets, Weekly Timesheets |
| 2003 | Payroll Check History Reports, Weekly Timesheets, 941's, St. U/C's, monthly C/R's, W-3, W-2's |
| 2004 | Same as above |
| 2005 | Same as above |

E. Payroll reconciliation:        Quarter selected:        2003 - 1st Qtr. - Mass 90 Payroll

|                      | Payroll     | 941         |
|----------------------|-------------|-------------|
| Gross wages paid     | 338,829.76  | 338,829.76  |
| Adjustments          | _____ | _____ |
|                      | _____ | _____ |
| Reconciled wages     | 338,829.76  | 338,829.76  |

E. Payroll reconciliation:        Quarter selected:        2002 - 2nd Qtr. - Excel Payroll

|                      | Payroll     | 941         |                              |
|----------------------|-------------|-------------|------------------------------|
| Gross wages paid     | 395,939.75  | 416,614.14  |                              |
| Adjustments          | 20,780.04   | _____ | - Reimbursements (Other Pay) |
|                      | _____ | _____ |                              |
| Reconciled wages     | 416,719.79  | 416,614.14  |                              |

If unable to reconcile above, describe how you determined that you had complete payroll:
_____
_____

F. Type of payroll:    Mass90 / Excel Spreadsheet        Employee sort:    Alphabetical

       Pay types: Reg., O/T, Hol., Vac.
          Cycle: Weekly        P/D - Thurs.                P/E - Sun.

Auditor _____E.C._____
Reviewer _____

Calibre CPA Group PLLC
Compliance Audit Program

If this is a target or priority audit, were all issues addressed.
Yes, there were special instructions from Jim Kelly of Local 2, who conducted the audit with the auditor. Jim instructed the auditor to pay special attention to non-union technicians were performing covered work, yet were not being reported. Jim also made the auditor aware that it appeared that the wrong rates for Pension and H & W were often being used. For example, this employer often used 10 cents per hours as the pension rate, when the contract dictated that the pension rate was well above this amount. The employer stated that he had reached an agreement to pay employees this rate but was not able to provide any documentation of this.

M. Conclude on payroll audit findings:
Employer failed to report EE's in covered job classifications, failed to report new employees from date of hire, omitted hours, and failed to report terms through date of termination, resulting in under-payments.

### 3  Payroll Audit Report

A  List all exceptions. Provide explanation as to the nature of each exception. Include DOH, term, and eligibility date where applicable. Document rate changes. Provide employee class where applicable.

B. Compute the amount of underpayment and/or overpayment.

C. Did you obtain census information for all employees not reported:        yes
     If no explain:

D. Sample of employees' birthdate if required:
Information not available

E. List owners/officers if required:

| Name | SSN | Title |
|------|-----|-------|
| Fraser, Bill | ~~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~~ | Owner |

### 4  Exit Interview

A. Conduct an exit interview according to the Fund's policy.

B. Employer will receive:        5-day letter _____        48 hour letter _____ X _____
                                 No letter _____

C. Employer representative (s) present during exit interview:
     *Name*                                    *Title*

Auditor_ E.S.
Reviewer_

Calibre CPA Group PLLC
Compliance Audit Program

Fraser, Suzanne                                Payroll Supervisor

D. Employer's response to exit interview:
  Auditor informed contact that a report of findings would be sent to her regarding the various discrepancies of this audit.  A preliminary report was sent to her, however as of the submission of this audit, she had not responded.

E. Narrative.  **This section must be completed.**
  This audit was conducted with Jim Kelly of Loca 2, as an x-ray audit.  He helped the auditor throughout both audit dates with the Project Labor Agreements.  Due to having discrepancies and being a target audit, the audit period was extended to present, which at the time, was 08/05.
  There are many findigs for this audit both for omitted hours and unreported EE's.  All EE's were identified and all covered EE's were horizontally tested.  This made hire/term and vertical testing unnecessary.  There are very few uncovered company EE's.  The owner stated that all unreported EE's were due to the EE's choosing not to be part of the union.  Instead they chose to have their pension paid to them in their paycheck, per the owner.  Due to this being an unacceptable practice, all of these hours will be picked up.
  The owner of the company kept mentioning that he had an agreement with the National, that allows them to pay 10 cents per hour fo pension, yet had no documentation of this.  The Fund had sent over an agreement from 1997 that states that the pension, in certain circumstances, may be allowed to go as low as 10 cents.  See workpapers for this.  After discussing the matter for some time, the Fund stated that all rates should be based on the CBA.  The only exception to this would be the Project Labor Agreements that were provided by the Fund.  The auditor made separate reports for those EE's falling under these PLA's.
  The owner of the company, Bill Fraser, stated that no other Project Labor Agreements exist and that all agreements were verbal.  However per Jim Kelly, any agreements that supercede the contract must be in writing at all times.  In fact, if a c/r was sent into the Fund where a different rate applies, the PLA must be attached to the c/r.  However, in sorting through the employer's copies of c/r's, no PLA's (most notably the one that allows for 10 cents/per hr. contributions) were attached.
  All o/p's were passed on.

**5 Submit completed audit.**

A. Control sheet and audit program completed. Correct number of audit report copies enclosed.    Date  10/19/06

B.    Auditor:  _____
      Eric Cederbaum

**6 File review.**

  Reviewer:  _____          Date:  _____

Auditor  E.C.
Reviewer

# Exhibit 3

**BOLTZ, HARLAN**
**JANUARY 2002**

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2002 | 9 | 0 | $ 90.00 | $ - | $ 90.00 | $ 6.89 | $ - | $ - | $ - | $ - | $ - | $ - | $ 83.11 |
| 1/31/2002 | 10 | 0 | $ 100.00 | $ - | $ 100.00 | $ 7.65 | $ - | $ - | $ - | $ - | $ - | $ 140.00 | $ 92.35 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |  | $ - |
| TOTAL | 19 | 0 | $ 190.00 | $ - | $ 190.00 | $ 14.54 | $ - | $ - | $ - | $ - | $ - | $140.00 | $ 175.46 |

Total January 2002 hours = 8604

01/02 - 08/02

Payroll

BROWN, NATHAN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/3/2002 | 9 | 0 | $ 90.00 | $ - | $ 90.00 | $ 6.89 | $ - | $ - | $ - | $ - | $ - | $ - | $ 83.11 |
| 1/17/2002 | 21 | 0 | $ 210.00 | $ - | $ 210.00 | $ 16.07 | $ 15.92 | $ - | $ - | $ - | $ - | $ 23.51 | $ 154.50 |
| 1/24/2002 | 36 | 0 | $ 360.00 | $ - | $ 360.00 | $ 27.54 | $ 32.03 | $ - | $ - | $ - | $ - | $ 73.51 | $ 226.92 |
| 1/31/2002 | 40 | 10 | $ 400.00 | $ 150.00 | $ 550.00 | $ 42.08 | $ 60.53 | $ - | $ - | $ - | $ - | $111.85 | $ 335.54 |
| TOTAL | 106 | 10 | $1,060.00 | $ 150.00 | $1,210.00 | $ 92.58 | $ 108.48 | $ - | $ - | $ - | $ - | $208.87 | $ 800.07 |

CENTANINO, PAUL
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 44 | 0 | $ 440.00 | $ - | $ 440.00 | $ 33.66 | $ 35.56 | $ - | $ - | $ - | $ - | $ - | $ 370.78 |
| 1/10/2002 | 22 | 0 | $ 220.00 | $ - | $ 220.00 | $ 16.83 | $ 2.56 | $ - | $ - | $ - | $ - | $ - | $ 200.61 |
| 1/15/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1/17/2002 | 40 | 35 | $ 400.00 | $ 525.00 | $ 925.00 | $ 70.76 | $ 139.69 | $ - | $ - | $ - | 350.00 | $ - | $ 714.55 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| 1/24/2002 | 40 | 18 | $ 400.00 | $ 270.00 | $ 670.00 | $ 51.26 | $ 62.22 | $ - | $ - | $ - | $ - | $ - | $ 344.27 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $212.25 | $ - |
| 1/31/2002 | 40 | 30 | $ 400.00 | $ 450.00 | $ 850.00 | $ 65.03 | $ 102.04 | $ 21.25 | $ - | $ - | $ - | $ - | $ 661.68 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| TOTAL | 186 | 83 | $1,860.00 | $1,245.00 | $3,105.00 | $237.54 | $ 342.07 | $ 21.25 | $ - | $ - | $ 1,820.00 | $212.25 | $2,291.89 |

CLOYD, DANIAL
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/23/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 280.00 | $ - | $ - |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/31/2002 | 40 | 41 | $ 440.00 | $ 676.50 | $1,116.50 | $ 85.41 | 121.20 | $ - | $ - | $ - | $ - | $ - | $ 909.89 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| TOTAL | 40 | 41 | $ 440.00 | $ 676.50 | $1,116.50 | $ 85.41 | $ 121.20 | $ - | $ - | $ - | $ 1,260.00 | $ - | $ 909.89 |

COERVER, PHILLIP
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 40 | 0 | $ 600.00 | $ - | $ 600.00 | $ 45.90 | $ 62.64 | $ 15.00 | $ 1.78 | $ 5.49 | $ - | $66.87 | $ 402.32 |
| 1/10/2002 | 46 | 0 | $ 690.00 | $ - | $ 690.00 | $ 52.79 | $ 76.14 | $ 17.25 | $ 1.78 | $ 5.49 | $ - | $ - | $ 536.55 |
| 1/17/2002 | 40 | 3 | $ 600.00 | 67.50 | $ 667.50 | $ 51.07 | $ 72.76 | $ 16.69 | $ 1.78 | $ 5.49 | $ - | $ - | $ 519.71 |
| 1/24/2002 | 40 | 20 | $ 600.00 | 450.00 | $ 1,050.00 | $ 79.91 | $ 117.88 | $ 26.25 | $ 1.78 | $ 5.49 | $ - | $ - | $ 818.69 |
| 1/31/2002 | 40 | 22 | $ 600.00 | 495.00 | $ 1,095.00 | $ 83.77 | $ 130.97 | $ 27.38 | $ - | $ - | $ - | $ - | $ 852.88 |
| TOTAL | 206 | 45 | $ 3,090.00 | $ 1,012.50 | $ 4,102.50 | $313.44 | $ 460.39 | $ 102.57 | $ 7.12 | $21.96 | $ - | $66.87 | $ 3,130.15 |

COERVER, YVETTE  office
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 41 | 0 | $ 451.00 | $ - | $ 451.00 | $ 34.50 | $ 40.81 | $ - | $ 1.20 | $22.18 | $ - | $17.58 | $ 334.73 |
| 1/10/2002 | 38 | 0 | $ 418.00 | $ - | $ 418.00 | $ 31.98 | $ 35.86 | $ - | $ 1.20 | $22.18 | $ - | $ - | $ 326.78 |
| 1/17/2002 | 40 | 1 | $ 440.00 | $ 16.50 | $ 456.50 | $ 34.92 | $ 41.64 | $ - | $ 1.20 | $22.18 | $ - | $ - | $ 356.56 |
| 1/24/2002 | 40 | 13 | $ 440.00 | $ 214.50 | $ 654.50 | $ 48.37 | $ 64.23 | $ - | $ 1.20 | $22.18 | $ - | $ - | $ 518.52 |
| 1/31/2002 | 40 | 7 | $ 440.00 | $ 115.50 | $ 555.50 | $ 42.49 | $ 52.70 | $ - | $ - | $ - | $ - | $ - | $ 460.31 |
| TOTAL | 199 | 21 | $2,189.00 | $ 346.50 | $2,535.50 | $192.26 | $235.24 | $ - | 4.80 | $88.72 | $ - | $17.58 | $1,996.90 |

CONDELARIO, CRAIG
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/15/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/17/2002 | 26 | 0 | $ 260.00 | $ - | $ 260.00 | $ 19.89 | $ 15.49 | $ - | $ - | $ - | $ - | $ - | $ 224.62 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 70.00 | $ - | $ - |
| 1/21/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/24/2002 | 40 | 11 | $ 400.00 | $ 165.00 | $ 565.00 | $ 43.22 | $ 54.13 | $ - | $ - | $ - | $ - | $ - | $ 467.65 |
| 1/29/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/31/2002 | 40 | 47 | $ 400.00 | $ 705.00 | $ 1,105.00 | $ 84.53 | $ 185.47 | $ 27.63 | $ - | $ - | $ - | $ - | $ 807.37 |
| TOTAL | 106 | 58 | $ 1,060.00 | $ 870.00 | $ 1,930.00 | $ 147.64 | $ 255.09 | $ 27.63 | $ - | $ - | $ 1,540.00 | $ - | $ 1,499.64 |

DUNNING, JUSTIN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 43 | 0 | $ 430.00 | $ - | $ 430.00 | $ 32.90 | $ 32.21 | $ - | $ - | $ 5.63 | $ - | $ 75.00 | $ 284.26 |
| 1/3/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 210.00 | $ - | $ - |
| 1/10/2002 | 42 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 30.71 | $ - | $ - | $ 5.63 | $ 210.00 | $ 75.00 | $ 276.53 |
| 1/17/2002 | 40 | 37 | $ 400.00 | $ 555.00 | $ 955.00 | $ 73.06 | $ 145.51 | $ - | $ - | $ 5.63 | $ - | $ 75.00 | $ 655.80 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1/24/2002 | 40 | 27 | $ 400.00 | $ 405.00 | $ 805.00 | $ 61.15 | $ 87.37 | $ - | $ - | $ 5.63 | $ 420.00 | $ 75.00 | $ 575.85 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1/31/2002 | 40 | 33 | $ 400.00 | $ 495.00 | $ 895.00 | $ 68.47 | $ 113.19 | $ 22.38 | $ - | $ - | $ 420.00 | $ 75.00 | $ 615.96 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TOTAL | 205 | 97 | $2,050.00 | $1,455.00 | $3,505.00 | $267.71 | $ 408.99 | $ 22.38 | $ - | $22.52 | $ 1,680.00 | $375.00 | $2,408.40 |

DURAN, JEREMY
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/24/2002 | 31 | 0 | $ 279.00 | $ - | $ 279.00 | $ 21.35 | $ 28.54 | $ - | $ - | $ - | - | $ - | $ 229.11 |
| 1/31/2002 | 38 | 0 | $ 342.00 | $ - | $ 342.00 | $ 26.16 | $ 37.99 | $ - | $ - | $ - | - | $ - | $ 277.85 |
| TOTAL | 69 | 0 | $ 621.00 | $ - | $ 621.00 | $ 47.51 | $ 66.53 | $ - | $ - | $ - | - | $ - | $ 506.96 |

FRANKLIN, GARY C.
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 44 | 0 | $ 704.00 | $   - | $ 704.00 | $ 53.86 | $ 71.13 | $ 17.60 | $   - | $   - | $   - | $ 209.61 | $ 351.80 |
| 1/10/2002 | 48 | 4 | $ 768.00 | $ 96.00 | $ 864.00 | $ 66.10 | $ 95.13 | $ 21.60 | $   - | $   - | $   - | $ 209.61 | $ 471.56 |
| 1/17/2002 | 40 | 38 | $ 640.00 | $ 912.00 | $ 1,552.00 | $ 118.72 | $ 267.59 | $ 38.80 | $   - | $   - | $   - | $ 209.61 | $ 917.28 |
| 1/17/2002 | 0 | 0 | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $ 350.00 | $   - | $   - |
| 1/24/2002 | 40 | 10 | $ 640.00 | $ 240.00 | $ 880.00 | $ 67.32 | $ 84.55 | $ 22.00 | $   - | $   - | $   - | $ 209.61 | $ 496.52 |
| 1/24/2002 | 0 | 0 | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $ 420.00 | $   - | $   - |
| 1/31/2002 | 40 | 30 | $ 640.00 | $ 720.00 | $ 1,360.00 | $ 104.04 | $ 186.94 | $ 34.00 | $   - | $   - | $   - | $ 209.61 | $ 825.41 |
| 1/31/2002 | 0 | 0 | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $ 490.00 | $   - | $   - |
| TOTAL | 212 | 82 | $ 3,392.00 | $ 1,968.00 | $ 5,360.00 | $ 410.04 | $ 705.34 | $ 134.00 | $   - | $   - | $ 1,260.00 | $ 1,048.05 | $ 3,062.57 |

FRASER, BILL
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac. | Mileage | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 0 | 0 | $ 3,000.00 | $ - | $ 3,000.00 | $ 43.50 | $ 681.16 | $ - | $ 17.67 | $ - | $ - | $ 150.00 | $ 2,107.67 |
| 1/3/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 500.00 | $ - | $ - |
| 1/10/2002 | 0 | 0 | $ 3,000.00 | $ - | $ 3,000.00 | $ 229.50 | $ 681.16 | $ - | $ 17.67 | $ - | $ - | $ 150.00 | $ 1,921.67 |
| 1/17/2002 | 0 | 0 | $ 3,000.00 | $ - | $ 3,000.00 | $ 229.50 | $ 681.16 | $ - | $ 17.67 | $ - | $ - | $ 150.00 | $ 1,921.67 |
| 1/24/2002 | 0 | 0 | $ 3,000.00 | $ - | $ 3,000.00 | $ 228.14 | $ 630.38 | $ - | $ 17.67 | $ - | $ - | $ 150.00 | $ 1,973.81 |
| 1/31/2002 | 0 | 0 | $ 3,000.00 | $ - | $ 3,000.00 | $ 229.50 | $ 635.68 | $ - | $ - | $ - | $ - | $ 150.00 | $ 1,984.82 |
| TOTAL | 0 | 0 | $ 15,000.00 | $ - | $ 15,000.00 | $ 960.14 | $ 3,309.54 | $ - | $ 70.68 | $ - | $ 500.00 | $ 750.00 | $ 9,909.64 |

FRASER, STACEY
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/24/2002 | 40 | 27 | $ 680.00 | $ 688.50 | $1,368.50 | $104.69 | $ 291.42 | $ 34.21 | $ - | $ - | $ - | $ - | $ 938.18 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 350.00 | $ - | $ - |
| 1/31/2002 | 40 | 30 | $ 680.00 | $ 765.00 | $1,445.00 | $110.54 | $ 314.37 | $ 36.13 | $ - | $ - | $ - | $ - | $ 983.96 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| TOTAL | 80 | 57 | $1,360.00 | $1,453.50 | $2,813.50 | $215.23 | $ 605.79 | $ 70.34 | $ - | $ - | $ 840.00 | $ - | $1,922.14 |

FRASER, SUZANNE
JANUARY 2002    office

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 36 | 0 | $ 360.00 | $ - | $ 360.00 | $ 27.54 | $ 46.36 | $ - | $ - | $ - | $ - | $ - | $ 286.10 |
| 1/10/2002 | 30 | 0 | $ 300.00 | $ - | $ 300.00 | $ 22.95 | $ 37.36 | $ - | $ - | $ - | $ - | $ - | $ 239.69 |
| 1/17/2002 | 30 | 0 | $ 300.00 | $ - | $ 300.00 | $ 22.95 | $ 37.36 | $ - | $ - | $ - | $ - | $ - | $ 239.69 |
| 1/24/2002 | 31 | 0 | $ 310.00 | $ - | $ 310.00 | $ 23.72 | $ 33.19 | $ - | $ - | $ - | $ - | $ - | $ 253.09 |
| 1/31/2002 | 30 | 0 | $ 300.00 | $ - | $ 300.00 | $ 22.95 | $ 31.69 | $ - | $ - | $ - | $ - | $ - | $ 245.36 |
| TOTAL | 157 | 0 | $ 1,570.00 | $ - | $ 1,570.00 | $ 120.11 | $ 185.96 | $ - | $ - | $ - | $ - | $ - | $ 1,263.93 |

GALLOWAY, ROBERT
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/31/2002 | 43 | 10 | $ 688.00 | $ 240.00 | $ 928.00 | $ 71.00 | $ 137.68 | $ 23.20 | $ 52.50 | $ - | $ - | $ - | $ 643.62 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 280.00 | $ - | $ - |
| TOTAL | 43 | 10 | $ 688.00 | $ 240.00 | $ 928.00 | $ 71.00 | $ 137.68 | $ 23.20 | $ 52.50 | $ - | $ 280.00 | $ - | $ 643.62 |

GROTHUES, MICHAEL
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 40 | 0 | $ 680.00 | $ - | $ 680.00 | $ 52.02 | $ 108.12 | $ - | $ 1.78 | $ 22.83 | $ - | $ - | $ 495.25 |
| 1/10/2002 | 48 | 18 | $ 816.00 | $ 459.00 | $1,275.00 | $ 97.54 | $ 278.53 | $ - | $ 1.78 | $ 22.83 | $ - | $100.00 | $ 774.32 |
| 1/17/2002 | 40 | 33 | $ 680.00 | $ 841.50 | $1,521.50 | $116.39 | $ 354.95 | $ - | $ 1.78 | $ 22.83 | $ - | $ - | $1,025.55 |
| 1/24/2002 | 40 | 14 | $ 680.00 | $ 357.00 | $1,037.00 | $ 77.59 | $ 192.09 | $ - | $ 1.78 | $ 22.83 | $ - | $ - | $ 742.71 |
| 1/31/2002 | 40 | 49 | $ 680.00 | $1,249.50 | $1,929.50 | $147.61 | $ 459.72 | $ 48.24 | $ - | $ - | $ - | $ - | $1,273.93 |
| TOTAL | 208 | 114 | $3,536.00 | $2,907.00 | $6,443.00 | $491.15 | $1,393.41 | $ 48.24 | $ 7.12 | $ 91.32 | $ - | $100.00 | $4,311.76 |

HANSON, RANDALL
JANAURY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/2/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/8/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/10/2002 | 48 | 4 | $ 480.00 | $ 60.00 | $ 540.00 | $ 41.31 | $ 57.49 | $ - | $ - | $ - | $ - | $ 156.92 | $ 284.28 |
| 1/17/2002 | 40 | 16 | $ 400.00 | $ 240.00 | $ 640.00 | $ 48.96 | $ 73.69 | $ - | $ - | $ - | $ - | $ 203.99 | $ 313.36 |
| 1/24/2002 | 19 | 0 | $ 190.00 | $ - | $ 190.00 | $ 14.54 | $ 2.37 | $ - | $ - | $ - | $ - | $ 85.24 | $ 87.85 |
| TOTAL | 107 | 20 | $1,070.00 | $ 300.00 | $1,370.00 | $104.81 | $ 133.55 | $ - | $ - | $ - | $ 980.00 | $446.15 | $ 685.49 |

JENNINGS, ROBERT
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 29 | 0 | $ 348.00 | $ - | $ 348.00 | $ 26.63 | $ 244.56 | $ - | $ - | $ - | $ - | $ - | $ 76.81 |
| 1/10/2002 | 16 | 0 | $ 288.00 | $ - | $ 288.00 | $ 22.04 | $ 35.56 | $ - | $ - | $ - | $ - | $ - | $ 230.40 |
| 1/14/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1/17/2002 | 40 | 40 | $ 480.00 | $ 720.00 | $1,200.00 | $ 91.80 | $ 262.36 | $ - | $ - | $ - | $ 350.00 | $ - | $ 845.84 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/24/2002 | 40 | 27 | $ 480.00 | $ 486.00 | $ 966.00 | $ 73.90 | $ 179.09 | $ - | $ - | $ - | $ - | $ - | $ 713.01 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/31/2002 | 40 | 44 | $ 480.00 | $ 792.00 | $1,272.00 | $ 97.30 | $ 312.47 | $ 31.80 | $ - | $ - | $ - | $ - | $ 830.43 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| TOTAL | 165 | 111 | $2,076.00 | $1,998.00 | $4,074.00 | $311.67 | $1,034.04 | $ 31.80 | $ - | $ - | $1,820.00 | $ - | $2,696.49 |

JOHNSON, CHRIS
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/31/2002 | 30 | 0 | $ 270.00 | $  - | $ 270.00 | $ 20.66 | $ 3.06 | $  - | $  - | $  - | $  - | $  - | $ 246.28 |
| 1/31/2002 | 0 | 0 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | 70.00 | $  - | $  - |
| TOTAL | 30 | 0 | $ 270.00 | $  - | $ 270.00 | $ 20.66 | $ 3.06 | $  - | $  - | $  - | 70.00 | $  - | $ 246.28 |

KAY, LLOYD
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Mileage | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 0 | 0 | $1,600.00 | $ - | $1,600.00 | $ 23.20 | $ 299.71 | $ - | $ 1.20 | $ 39.04 | $ - | $ - | $1,236.85 |
| 1/3/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 500.00 | $ - | $ - |
| 1/10/2002 | 0 | 0 | $1,600.00 | $ - | $1,600.00 | $122.40 | 299.71 | $ - | 1.20 | $ 39.04 | $ - | $ - | $1,137.65 |
| 1/17/2002 | 0 | 0 | $1,600.00 | $ - | $1,600.00 | $122.40 | 299.71 | $ - | 1.20 | $ 39.04 | $ - | $ - | $1,137.65 |
| 1/24/2002 | 0 | 0 | $1,600.00 | $ - | $1,600.00 | $119.41 | 272.36 | $ - | 1.20 | $ 39.04 | $ - | $ - | $1,167.99 |
| 1/31/2002 | 0 | 0 | $1,600.00 | $ - | $1,600.00 | $122.40 | 282.90 | $ - | $ - | $ - | $ - | $ - | $1,194.70 |
| TOTAL | 0 | 0 | $8,000.00 | $ - | $8,000.00 | $509.81 | $1,454.39 | $ - | $ 4.80 | $156.16 | $ 500.00 | $ - | $5,874.84 |

KAY, MARIE
JANUARY 2002

Office

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/3/2002 | 0 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 44.39 | $ - | $ - | $ - | $ - | $ - | $ 343.48 |
| 1/10/2002 | 0 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 44.39 | $ - | $ - | $ - | $ - | $ - | $ 343.48 |
| 1/17/2002 | 0 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 44.39 | $ - | $ - | $ - | $ - | $ - | $ 343.48 |
| 1/24/2002 | 0 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 32.86 | $ - | $ - | $ - | $ - | $ - | $ 355.01 |
| 1/31/2002 | 0 | 0 | $ 420.00 | $ - | $ 420.00 | $ 32.13 | $ 32.86 | $ - | $ - | $ - | $ - | $ - | $ 355.01 |
| TOTAL | 0 | 0 | $2,100.00 | $ - | $2,100.00 | $160.65 | $ 198.89 | $ - | $ - | $ - | $ - | $ - | $1,740.46 |

MACMANUS, CAMERON
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 45 | 0 | $ 765.00 | $ - | $ 765.00 | $ 11.09 | $ 64.41 | $ 19.13 | $ - | $ - | $ - | $ 3.82 | $ 666.55 |
| 1/10/2002 | 43 | 0 | $ 731.00 | $ - | $ 731.00 | $ 55.92 | $ 59.31 | $ 18.28 | $ - | $ - | $ - | $ 3.82 | $ 593.67 |
| 1/14/2002 | 0 | 0 | $ - | $ - | $ - | | | | $ - | $ - | 350.00 | $ - | |
| 1/17/2002 | 40 | 47 | 680.00 | $1,198.50 | $1,878.50 | $143.71 | 329.39 | 46.96 | $ - | $ - | $ - | 3.82 | $1,354.62 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | | | | $ - | $ - | 490.00 | $ - | |
| 1/24/2002 | 40 | 27 | 680.00 | 688.50 | $1,368.50 | $104.69 | 158.08 | 34.21 | $ - | $ - | $ - | $43.82 | $1,027.70 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | | | | $ - | $ - | 490.00 | $ - | |
| 1/31/2002 | 40 | 44 | 680.00 | $1,122.00 | $1,802.00 | $137.85 | 275.13 | 45.05 | $ - | $ - | $ - | $43.82 | $1,300.15 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | | | | $ - | $ - | 490.00 | $ - | |
| TOTAL | 208 | 118 | $3,536.00 | $3,009.00 | $6,545.00 | $453.26 | $ 886.32 | $ 163.63 | $ - | $ - | $1,820.00 | $99.10 | $4,942.69 |

MACMANUS, KEVIN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 45 | 0 | $ 832.50 | $ - | $ 832.50 | $ 12.07 | $ 82.15 | $ 20.81 | $ 1.78 | $ 55.04 | $ - | $ 4.58 | $ 656.07 |
| 1/10/2002 | 40 | 0 | $ 740.00 | $ - | $ 740.00 | $ 56.61 | $ 68.27 | $ 18.50 | $ 1.78 | $ 55.04 | $ - | $ 4.58 | $ 535.22 |
| 1/17/2002 | 40 | 22 | $ 740.00 | $ 610.50 | $ 1,350.50 | $ 103.31 | $ 195.75 | $ 33.76 | $ 1.78 | $ 55.04 | $ - | $ 4.58 | $ 956.28 |
| 1/24/2002 | 40 | 37 | $ 740.00 | $ 1,026.75 | $ 1,766.75 | $ 130.95 | $ 281.91 | $ 44.17 | $ 1.78 | $ 55.04 | $ - | $ 53.33 | $ 1,199.57 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 70.00 | $ - | $ - |
| 1/31/2002 | 40 | 42 | $ 740.00 | $ 1,165.50 | $ 1,905.50 | $ 145.77 | $ 334.23 | $ 47.64 | $ - | $ - | $ - | $ 24.58 | $ 1,353.28 |
| TOTAL | 205 | 101 | $ 3,792.50 | $ 2,802.75 | $ 6,595.25 | $ 448.71 | $ 962.31 | $ 164.88 | $ 7.12 | $ 220.16 | 70.00 | $ 91.65 | $ 4,700.42 |

MALSON, RANDALL
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2002 | 29 | 0 | $ 319.00 | $ - | $ 319.00 | $ 24.41 | $ 24.34 | $ - | $ - | $ - | $ - | $ - | $ 270.25 |
| 1/17/2002 | 40 | 18 | $ 440.00 | $ 297.00 | $ 737.00 | $ 56.38 | $ 100.85 | $ - | $ - | $ - | $ - | $ - | $ 579.77 |
| 1/28/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| 1/24/2002 | 40 | 5 | $ 440.00 | $ 82.50 | $ 522.50 | $ 39.98 | $ 47.75 | $ - | $ - | $ - | $ - | $ - | $ 434.77 |
| 1/31/2002 | 40 | 33 | $ 440.00 | $ 544.50 | $ 984.50 | $ 75.32 | $ 152.93 | $ - | $ - | $ - | $ - | $ 6.12 | $ 750.13 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ - |
| TOTAL | 149 | 56 | $ 1,639.00 | $ 924.00 | $ 2,563.00 | $ 196.09 | $ 325.87 | $ - | $ - | $ - | $ 980.00 | $ 6.12 | $ 2,034.92 |

NICHOLSON, TIM
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/3/2002 | 29 | 0 | $ 406.00 | $  - | $ 406.00 | $ 31.06 | $ 28.50 | $  - | $  - | $  - | $  - | $  - | $ 346.44 |
| 1/10/2002 | 8 | 0 | $ 112.00 | $  - | $ 112.00 | $  8.56 | $ 10.00 | $  - | $  - | $  - | $  - | $  - | $  93.44 |
| 1/17/2002 | 10 | 0 | $ 140.00 | $  - | $ 140.00 | $ 10.71 | $ 10.00 | $  - | $  - | $  - | $  - | $  - | $ 119.29 |
| TOTAL | 47 | 0 | $ 658.00 | $  - | $ 658.00 | $ 50.33 | $ 48.50 | $  - | $  - | $  - | $  - | $  - | $ 559.17 |

OCHSNER, KAYLEEN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2002 | 43 | 10 | $ 430.00 | $ 150.00 | $ 580.00 | $ 44.37 | $ 65.03 | $ 14.50 | $ 52.50 | $  - | $  - | $  - | $ 403.60 |
| 1/31/2002 | 0 | 0 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | 280.00 | $  - | $  - |
| TOTAL | 43 | 10 | $ 430.00 | $ 150.00 | $ 580.00 | $ 44.37 | $ 65.03 | $ 14.50 | $ 52.50 | $  - | 280.00 | $  - | $ 403.60 |

OLIVER, JOSHUA
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 30 | 0 | $ 450.00 | $ - | $ 450.00 | $ 34.43 | $ 48.89 | $ - | $ - | $ - | $ - | $ - | $ 366.68 |
| 1/10/2002 | 8 | 0 | $ 120.00 | $ - | $ 120.00 | $ 9.18 | $ - | $ - | $ - | $ - | $ - | $ - | $ 110.82 |
| 1/24/2002 | 40 | 9 | $ 600.00 | $ 202.50 | $ 802.50 | $ 61.40 | $ 90.23 | $ - | $ - | $ - | $ - | $20.00 | $ 630.87 |
| 1/31/2002 | 40 | 10 | $ 600.00 | $ 225.00 | $ 825.00 | $ 63.11 | $ 93.61 | $ - | $ - | $ - | $ - | $20.00 | $ 648.28 |
| TOTAL | 118 | 19 | $1,770.00 | $ 427.50 | $2,197.50 | $168.12 | $ 232.73 | $ - | $ - | $ - | $ - | $40.00 | $1,756.65 |

PEREZ, ALFREDO
JANAURY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2002 | 40 | 42 | $ 640.00 | $1,008.00 | $1,648.00 | $126.08 | $ 319.27 | $ 41.20 | $ - | $ - | $ - | $200.00 | $ 961.45 |
| 1/24/2002 | 40 | 13 | $ 640.00 | $ 312.00 | $ 952.00 | $ 72.82 | $ 97.42 | $ 23.80 | $ - | $ - | $ - | $ 50.00 | $ 707.96 |
| 1/31/2002 | 40 | 14 | $ 640.00 | $ 336.00 | $ 976.00 | $ 74.66 | $ 103.90 | $ 24.40 | $ - | $ - | $ - | $ 50.00 | $ 723.04 |
| TOTAL | 120 | 69 | $1,920.00 | $1,656.00 | $3,576.00 | $273.56 | $ 520.59 | $ 89.40 | $ - | $ - | $ - | $300.00 | $2,392.45 |

POWDERS, MARK
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/28/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| 1/24/2002 | 40 | 26 | $ 680.00 | $ 663.00 | $ 1,343.00 | $102.74 | $ 151.20 | $ 33.58 | $ - | $ - | $ - | $14.50 | $1,040.98 |
| 1/31/2002 | 40 | 33 | $ 680.00 | $ 841.50 | $ 1,521.50 | $116.39 | $ 199.39 | 38.04 | $ - | $ - | $ - | $20.62 | $1,147.06 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| TOTAL | 80 | 59 | $1,360.00 | $1,504.50 | $2,864.50 | $219.13 | $ 350.59 | $ 71.62 | $ - | $ - | 980.00 | $35.12 | $2,188.04 |

PUCKETT, DON
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/2/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ 490.00 |
| 1/3/2002 | 16 | 0 | $ 272.00 | $ - | $ 272.00 | $ 20.80 | $ - | $ 6.80 | $ 1.78 | $ 33.96 | $ - | $ 59.58 | $ 149.08 |
| 1/8/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ 490.00 |
| 1/10/2002 | 48 | 19 | $ 816.00 | $ 484.50 | $ 1,300.50 | $ 99.49 | $ 158.04 | $ 32.51 | $ 1.78 | $ 33.96 | $ - | $ 59.58 | $ 915.14 |
| 1/15/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ 490.00 |
| 1/17/2002 | 40 | 16 | $ 680.00 | $ 408.00 | $ 1,088.00 | $ 83.24 | $ 107.77 | $ 27.20 | $ 1.78 | $ 33.96 | $ - | $ 59.58 | $ 774.47 |
| 1/21/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ 490.00 |
| 1/24/2002 | 40 | 25 | $ 680.00 | $ 637.50 | $ 1,317.50 | $ 98.19 | $ 135.14 | $ 32.94 | $ 1.78 | $ 33.96 | $ - | $ 59.58 | $ 955.91 |
| 1/29/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 490.00 | $ - | $ 490.00 |
| 1/31/2002 | 40 | 47 | $ 680.00 | $ 1,198.50 | $ 1,878.50 | $ 143.71 | $ 295.78 | $ 46.96 | $ - | $ - | $ - | $ 59.58 | $ 1,332.47 |
| TOTAL | 184 | 107 | $ 3,128.00 | $ 2,728.50 | $ 5,856.50 | $ 445.43 | $ 696.73 | $ 146.41 | $ 7.12 | $ 135.84 | $ 2,450.00 | $ 297.90 | $ 4,127.07 |

REILLY, EDWARD
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2002 | 45 | 3 | $ 450.00 | $ 45.00 | $ 495.00 | $ 37.87 | $ 66.61 | $ - | $ - | $ - | $ - | $ - | $ 390.52 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 140.00 | $ - | $ - |
| 1/24/2002 | 40 | 28 | $ 400.00 | $ 420.00 | $ 820.00 | $ 62.73 | $ 139.67 | $ - | $ - | $ - | $ - | $ - | $ 617.60 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 350.00 | $ - | $ - |
| 1/31/2002 | 40 | 22 | $ 400.00 | $ 330.00 | $ 730.00 | $ 55.85 | $ 115.37 | $ 18.25 | $ - | $ - | $ - | $ - | $ 540.53 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 350.00 | $ - | $ - |
| TOTAL | 125 | 53 | $ 1,250.00 | $ 795.00 | $ 2,045.00 | $ 156.45 | $ 321.65 | $ 18.25 | $ - | $ - | $ 840.00 | $ - | $ 1,548.65 |

RIGLER, TED
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 34 | 0 | $ 500.00 | $ - | $ 500.00 | $ 38.25 | $ 59.42 | $ - | $ - | $ - | $ - | $ 85.62 | $ 316.71 |
| 1/3/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 140.00 | $ - | $ - |
| 1/10/2002 | 48 | 4 | $ 480.00 | $ 60.00 | $ 540.00 | $ 41.31 | $ 65.42 | $ - | $ - | $ - | $ - | $ 85.62 | $ 347.65 |
| 1/17/2002 | 40 | 36 | $ 400.00 | $ 540.00 | $ 940.00 | $ 71.91 | $ 172.50 | $ - | $ - | $ - | $ - | $ 85.62 | $ 609.97 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 70.00 | $ - | $ - |
| 1/24/2002 | 40 | 43 | $ 400.00 | $ 645.00 | $ 1,045.00 | $ 79.94 | $ 184.84 | $ - | $ - | $ - | $ - | $ 105.62 | $ 674.60 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 280.00 | $ - | $ - |
| 1/31/2002 | 40 | 7 | $ 400.00 | $ 105.00 | $ 505.00 | $ 38.63 | $ 53.78 | $ - | $ - | $ - | $ - | $ 105.62 | $ 306.97 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 280.00 | $ - | $ - |
| TOTAL | 202 | 90 | $ 2,180.00 | $ 1,350.00 | $ 3,530.00 | $ 270.04 | $ 535.96 | $ - | $ - | $ - | $ 770.00 | $ 468.10 | $ 2,255.90 |

SHAKLEE, LANCE
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2002 | 24 | 0 | $ 408.00 | $ - | $ 408.00 | $ 31.22 | $ - | $ 10.20 | $ - | $ - | $ - | $ - | $ 366.58 |
| 1/17/2002 | 40 | 38 | $ 680.00 | 969.00 | $ 1,649.00 | $126.15 | 235.51 | $ 41.23 | $ - | $ - | $ - | $ - | $1,246.11 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 140.00 | $ - | $1,246.11 |
| 1/24/2002 | 40 | 28 | $ 680.00 | 714.00 | $1,394.00 | $106.64 | 133.82 | $ 34.85 | $ - | $ - | $ - | $20.00 | $1,098.69 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $1,098.69 |
| 1/31/2002 | 40 | 38 | $ 680.00 | 969.00 | $1,649.00 | $126.15 | 202.67 | 41.23 | $ - | $ - | $ - | $20.00 | $1,258.95 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $1,258.95 |
| TOTAL | 144 | 104 | $2,448.00 | $2,652.00 | $5,100.00 | $390.16 | $ 572.00 | $127.51 | $ - | $ - | 840.00 | $40.00 | $3,970.33 |

SHEETS, TROY
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 43 | 0 | $ 688.00 | $ - | $ 688.00 | $ 52.64 | $ 72.33 | $ - | $ - | $ - | $ 207.69 | $ 355.34 |
| 1/10/2002 | 48 | 3 | $ 768.00 | $ 72.00 | $ 840.00 | $ 64.26 | $ 114.89 | $ - | $ - | $ - | $ 207.69 | $ 453.16 |
| 1/17/2002 | 40 | 37 | $ 640.00 | $ 888.00 | $ 1,528.00 | $ 116.90 | $ 314.86 | $ - | $ - | $ - | $ 207.69 | $ 888.55 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| 1/24/2002 | 40 | 38 | $ 640.00 | 912.00 | $ 1,552.00 | $ 118.72 | $ 294.54 | $ - | $ - | $ - | 407.69 | $ 731.05 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| 1/31/2002 | 40 | 34 | $ 640.00 | 816.00 | $ 1,456.00 | $ 111.38 | $ 265.74 | 36.40 | $ - | $ - | 407.69 | $ 634.79 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| TOTAL | 211 | 112 | $3,376.00 | $2,688.00 | $6,064.00 | $463.90 | $1,062.36 | $ 36.40 | $ - | $ 1,680.00 | $1,438.45 | $3,062.89 |

STOGNER, MARC
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 30 | 0 | $ 510.00 | $ - | $ 510.00 | $ 39.02 | $ 55.67 | $ - | $ 1.78 | $14.82 | $ - | $ - | $ 398.71 |
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $ - |
| 1/10/2002 | 48 | 18 | $ 816.00 | $ 459.00 | $1,275.00 | $ 97.54 | $ 215.49 | $ - | 1.78 | $14.82 | $ - | $ - | $ 945.37 |
| 1/17/2002 | 40 | 13 | $ 680.00 | $ 331.50 | $1,011.50 | $ 77.38 | $ 141.71 | $ - | 1.78 | $14.82 | $ - | $ - | $ 775.81 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $ - |
| 1/24/2002 | 40 | 48 | $ 680.00 | $1,224.00 | $1,904.00 | $144.52 | $ 360.98 | $ - | 1.78 | $14.82 | $ - | $ - | $1,381.90 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| 1/31/2002 | 40 | 26 | $ 680.00 | $ 663.00 | $1,343.00 | $102.74 | $ 213.51 | $ - | $ - | $ - | $ - | $ - | $1,026.75 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| TOTAL | 198 | 105 | $3,366.00 | $2,677.50 | $6,043.50 | $461.20 | $ 987.36 | $ - | 7.12 | $59.28 | $ 1,610.00 | $ - | $4,528.54 |

SULLIVAN, JASON
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/3/2002 | 36 | 0 | $ 432.00 | $ - | $ 432.00 | $ 33.04 | $ 41.29 | $ 10.80 | $ - | $ - | $ - | $ - | $ 346.87 |
| 1/10/2002 | 30 | 0 | $ 360.00 | $ - | $ 360.00 | $ 27.54 | $ 30.49 | $ 9.00 | $ - | $ - | $ - | $ - | $ 292.97 |
| 1/17/2002 | 40 | 53 | $ 480.00 | $ 954.00 | $ 1,434.00 | $ 109.70 | $ 302.11 | $ 35.85 | $ - | $ - | $ - | $ 30.00 | $ 956.34 |
| 1/24/2002 | 40 | 33 | $ 480.00 | $ 594.00 | $ 1,074.00 | $ 82.16 | $ 177.10 | $ 26.85 | $ - | $ - | $ - | $ 50.00 | $ 737.89 |
| 1/31/2002 | 40 | 43 | $ 480.00 | $ 774.00 | $ 1,254.00 | $ 95.93 | $ 225.70 | $ 31.35 | $ - | $ - | $ - | $ 20.00 | $ 881.02 |
| TOTAL | 186 | 129 | $ 2,232.00 | $ 2,322.00 | $ 4,554.00 | $ 348.37 | $ 776.69 | $ 113.85 | $ - | $ - | $ - | $ 100.00 | $ 3,215.09 |

SUMMERS, JANICE
JANUARY 2002

office

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|----------|-----|-----|---------|----------|---------|----------|---------|---------|---------|-------|----------|-------|---------|
| 1/3/2002 | 42 | 0 | $ 630.00 | $ - | $ 630.00 | $ 48.20 | $ 80.66 | $ - | $ 1.20 | $18.02 | $ - | $ - | $ 481.92 |
| 1/10/2002 | 39 | 0 | $ 585.00 | $ - | $ 585.00 | $ 44.75 | $ 69.47 | $ - | $ 1.20 | $18.02 | $ - | $ - | $ 451.56 |
| 1/17/2002 | 40 | 4 | $ 600.00 | $ 90.00 | $ 690.00 | $ 52.79 | $ 97.46 | $ - | $ 1.20 | $18.02 | $ - | $ - | $ 520.53 |
| 1/24/2002 | 40 | 10 | $ 600.00 | $ 225.00 | $ 825.00 | $ 61.73 | $ 120.58 | $ - | $ 1.20 | $18.02 | $ - | $ - | $ 623.47 |
| 1/31/2002 | 40 | 4 | $ 600.00 | $ 90.00 | $ 690.00 | $ 52.79 | $ 88.99 | $ - | $ - | $ - | $ - | $ - | $ 548.22 |
| TOTAL | 201 | 18 | $ 3,015.00 | $ 405.00 | $ 3,420.00 | $260.26 | $ 457.16 | $ - | $ 4.80 | $72.08 | $ - | $ - | $2,625.70 |

SUMMERS, KEVIN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 51 | 0 | $ 867.00 | $    - | $  867.00 | $ 66.32 | $ 111.44 | $ 21.68 | $   - | $   - | $      - | $ 42.23 | $  625.33 |
| 1/3/2002 | 0 | 0 | $    - | $    - | $      - | $     - | $      - | $     - | $   - | $   - | $ 210.00 | $   - | $      - |
| 1/10/2002 | 0 | 0 | $    - | $    - | $      - | $     - | $      - | $     - | $   - | $   - | $ 350.00 | $   - | $      - |
| 1/10/2002 | 48 | 21 | $ 816.00 | $ 535.50 | $1,351.50 | $103.39 | $ 241.06 | $ 33.79 | $   - | $   - | $      - | $ 42.23 | $  931.03 |
| 1/17/2002 | 40 | 36 | $ 680.00 | $ 918.00 | $1,598.00 | $122.25 | $ 310.08 | $ 39.95 | $   - | $   - | $      - | $ 42.23 | $1,083.49 |
| 1/17/2002 | 0 | 0 | $    - | $    - | $      - | $     - | $      - | $     - | $   - | $   - | $ 210.00 | $   - | $      - |
| 1/24/2002 | 40 | 43 | $ 680.00 | $1,096.50 | $1,776.50 | $135.90 | $ 330.55 | $ 44.41 | $   - | $   - | $      - | $ 42.23 | $1,223.41 |
| 1/24/2002 | 0 | 0 | $    - | $    - | $      - | $     - | $      - | $     - | $   - | $   - | $ 490.00 | $   - | $      - |
| 1/31/2002 | 0 | 0 | $    - | $    - | $      - | $     - | $      - | $     - | $   - | $   - | $ 420.00 | $   - | $      - |
| 1/31/2002 | 40 | 37 | $ 680.00 | $ 943.50 | $1,623.50 | $124.20 | $ 289.24 | $ 40.59 | $   - | $   - | $      - | $ 42.23 | $1,127.24 |
| TOTAL | 219 | 137 | $3,723.00 | $3,493.50 | $7,216.50 | $552.06 | $1,282.37 | $180.42 | $ - | $ - | $1,680.00 | $211.15 | $4,990.50 |

TOMPKINS, JOSHUA
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 20 | 0 | $ 200.00 | $ - | $ 200.00 | $ 15.30 | $ 6.49 | $ - | $ - | $ - | $ - | $ - | $ 178.21 |
| 1/10/2002 | 48 | 18 | $ 480.00 | $ 270.00 | $ 750.00 | $ 57.38 | $ 104.49 | $ - | $ - | $ - | $ - | $ - | $ 588.13 |
| 1/17/2002 | 40 | 33 | $ 400.00 | $ 495.00 | $ 895.00 | $ 68.47 | $ 145.09 | $ - | $ - | $ - | $ - | $350.00 | $ 331.44 |
| 1/24/2002 | 40 | 11 | $ 400.00 | $ 165.00 | $ 565.00 | $ 43.22 | $ 54.13 | $ - | $ - | $ - | $ - | $350.00 | $ 117.65 |
| 1/31/2002 | 40 | 49 | $ 400.00 | $ 735.00 | $1,135.00 | $ 86.83 | $ 193.57 | $ 28.38 | $ - | $ - | $ - | $ 83.00 | $ 743.22 |
| TOTAL | 188 | 111 | $1,880.00 | $1,665.00 | $3,545.00 | $271.20 | $ 503.77 | $ 28.38 | $ - | $ - | $ - | $783.00 | $1,958.65 |

WARD, KEVIN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 0 | 0 | $1,300.00 | $    - | $1,300.00 | $  99.45 | $  244.73 | $  32.50 | $  1.78 | $24.68 | $    - | $  50.00 | $  846.86 |
| 1/10/2002 | 0 | 0 | $1,300.00 | $    - | $1,300.00 | $  99.45 | $  244.73 | $  32.50 | $  1.78 | $24.68 | $    - | $  50.00 | $  846.86 |
| 1/17/2002 | 0 | 0 | $1,300.00 | $    - | $1,300.00 | $  99.45 | $  244.73 | $  32.50 | $  1.78 | $24.68 | $    - | $  50.00 | $  846.86 |
| 1/24/2002 | 0 | 0 | $1,300.00 | $    - | $1,300.00 | $  97.56 | $  220.23 | $  32.50 | $  1.78 | $24.68 | $    - | $  50.00 | $  873.25 |
| 1/31/2002 | 0 | 0 | $1,300.00 | $    - | $1,300.00 | $  99.45 | $  226.90 | $  32.50 | $    - | $    - | $    - | $  50.00 | $  891.15 |
| TOTAL | 0 | 0 | $6,500.00 | $    - | $6,500.00 | $495.36 | $1,181.32 | $162.50 | $  7.12 | $98.72 | $    - | $250.00 | $4,304.98 |

WARD, TYSON
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2002 | 16 | 0 | $ 160.00 | $ - | $ 160.00 | $ 12.24 | $ 16.36 | $ - | $ - | $ - | $ - | $ - | $ 131.40 |
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $ - |
| 1/10/2002 | 48 | 11 | $ 480.00 | 165.00 | 645.00 | 49.34 | 104.71 | $ - | $ - | $ - | | $ - | 490.95 |
| 1/17/2002 | 40 | 10 | $ 400.00 | 150.00 | 550.00 | 42.08 | 78.11 | $ - | $ - | $ - | $ - | $ - | 429.81 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $ - |
| 1/24/2002 | 40 | 48 | $ 400.00 | 720.00 | $1,120.00 | 85.68 | 220.67 | $ - | $ - | $ - | | $ - | 813.65 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 420.00 | $ - | $ - |
| 1/31/2002 | 40 | 24 | $ 400.00 | 360.00 | 760.00 | 58.14 | 123.47 | $ - | $ - | $ - | | $ - | 578.39 |
| TOTAL | 184 | 93 | $1,840.00 | $1,395.00 | $3,235.00 | $247.48 | $543.32 | $ - | $ - | $ - | $1,610.00 | $ - | $2,444.20 |

YEIGH, BRENT
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2002 | 40 | 7 | $ 440.00 | $ 115.50 | $ 555.50 | $ 40.95 | $ 41.50 | $ 13.89 | $ 8.90 | $20.20 | $ - | $ - | $ 430.06 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 350.00 | $ - | $ - |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 490.00 | $ - | $ - |
| 1/31/2002 | 40 | 30 | $ 440.00 | $ 495.00 | $ 935.00 | $ 71.53 | $ 101.46 | $ 23.38 | $ - | $ - | $ - | $ - | $ 738.63 |
| TOTAL | 80 | 37 | $ 880.00 | $ 610.50 | $1,490.50 | $112.48 | $ 142.96 | $ 37.27 | $ 8.90 | $20.20 | $ 840.00 | $ - | $1,168.69 |

YOUNG, KATHLEEN
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 425.00 | $ - | $ - |
| 1/10/2002 | 61 | 0 | $ 807.25 | $ - | $ 807.25 | $ 61.76 | $ 101.88 | $ 20.18 | $ 2.03 | $ 4.04 | $ - | $20.00 | $ 597.36 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| 1/17/2002 | 40 | 8 | $ 566.00 | $ 169.84 | $ 735.84 | $ 56.29 | $ 91.16 | $ 18.40 | $ 2.03 | $ 4.04 | $ - | $20.00 | $ 543.92 |
| 1/24/2002 | 40 | 10 | $ 566.00 | $ 212.30 | $ 778.30 | $ 59.23 | $ 86.00 | $ 19.46 | $ 2.03 | $ 4.04 | $ - | $20.00 | $ 587.54 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| 1/31/2002 | 40 | 15 | $ 566.00 | $ 318.45 | $ 884.45 | $ 67.66 | $ 102.53 | $ 22.11 | $ - | $ - | $ 595.00 | $20.00 | $ 672.15 |
| 1/31/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| TOTAL | 181 | 33 | $2,505.25 | $ 700.59 | $3,205.84 | $244.94 | $ 381.57 | $ 80.15 | $6.09 | $12.12 | $2,210.00 | $80.00 | $2,400.97 |

YOUNG, RICKY
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 425.00 | $ - | $ - |
| 1/10/2002 | 60 | 0 | $1,100.24 | $ - | $1,100.24 | $ 84.16 | $ 99.09 | $ 27.51 | $ 2.54 | $ 51.17 | $ - | $ - | $ 835.77 |
| 1/17/2002 | 40 | 7 | $ 774.40 | $ 203.28 | $ 977.68 | $ 74.80 | $ 80.71 | $ 24.44 | $ 2.54 | $ 51.17 | $ - | $ - | $ 744.02 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| 1/24/2002 | 40 | 9 | $ 774.40 | $ 261.36 | $1,035.76 | $ 75.32 | $ 74.28 | $ 25.89 | $ 2.54 | $ 51.17 | $ - | $ - | $ 806.56 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| 1/31/2002 | 40 | 14 | $ 774.40 | $ 406.56 | ~~$ 1180.96~~ | $ 90.34 | $ 103.73 | $ 29.52 | $ - | $ - | $ - | $ - | $ 957.37 |
| 1/31/2002 | 0 | 0 | $ - | $ - | ~~406.56~~ | $ - | $ - | $ - | $ - | $ - | $ 595.00 | $ - | $ - |
| TOTAL | 180 | 30 | $3,423.44 | $ 871.20 | ~~$3,520.24~~ | $324.62 | $ 357.81 | $ 107.36 | $ 7.62 | $153.51 | $2,210.00 | $ - | $3,343.72 |

_(handwritten below Grss Py total)_ 4294.64

ZUBIETA, JASON
JANUARY 2002

| P/R Date | Rg. | O/T | Rg Wgs. | O/T Wgs. | Grss Py | F.I.C.A. | Fed W/H | Union D | Insura. | Aflac | Per Diem | Other | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 210.00 | $ - | $ - |
| 1/10/2002 | 41 | 0 | $ 492.00 | $ - | $ 492.00 | $ 37.63 | $ 47.26 | $ 12.30 | $ - | $ - | $ - | $ - | $ 394.81 |
| 1/17/2002 | 40 | 30 | $ 480.00 | $ 540.00 | $ 1,020.00 | $ 78.03 | $ 133.43 | $ 25.50 | $ - | $ - | $ - | $ - | $ 783.04 |
| 1/17/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 560.00 | $ - | $ - |
| 1/24/2002 | 20 | 0 | $ 240.00 | $ - | $ 240.00 | $ 18.36 | $ 5.83 | $ 6.00 | $ - | $ - | $ - | $ - | $ 209.81 |
| 1/24/2002 | 0 | 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 140.00 | $ - | $ - |
| TOTAL | 101 | 30 | $1,212.00 | $ 540.00 | $1,752.00 | $134.02 | $ 186.52 | $ 43.80 | $ - | $ - | 910.00 | $ - | $1,387.66 |

# Exhibit 4

Union Monthly Dues  January - 2002

| SOC. SEC. NO. | EMPLOYEE NAME | WORK DUES | WAGES | TRAINING DUES | HOURS |
|---|---|---|---|---|---|
| ▓▓▓▓ | CENTANINO, PAUL | $21.25 | $850.00 | $17.50 | 70 |
| ▓▓▓▓ | COERVER, PHILLIP | $102.56 | $4,102.50 | $62.75 | 251 |
| ▓▓▓▓ | CONDELARIO, CRAIG | $27.63 | $1,105.00 | $21.75 | 87 |
| ▓▓▓▓ | DUNNING, JUSTIN | $22.38 | $895.00 | $18.25 | 73 |
| ▓▓▓▓ | FRANKLIN, G. CHRIS | $134.00 | $5,360.00 | $73.50 | 294 |
| ▓▓▓▓ | FRASER, BILL | $375.00 | $15,000.00 | $100.00 | 400 |
| ▓▓▓▓ | FRASER, STACEY | $70.34 | $2,813.50 | $34.25 | 137 |
| ▓▓▓▓ | GALLOWAY, BOB | $23.20 | $928.00 | $13.25 | 53 |
| ▓▓▓▓ | GROTHUES, MICHAEL | $48.24 | $1,929.50 | $22.25 | 89 |
| ▓▓▓▓ | JENNINGS, ROBERT D. | $31.80 | $1,272.00 | $21.00 | 84 |
| ▓▓▓▓ | KAY, LLOYD | $200.00 | $8,000.00 | $100.00 | 400 |
| ▓▓▓▓ | MAC MANUS, CAMERON | $163.63 | $6,545.00 | $81.50 | 326 |
| ▓▓▓▓ | MAC MANUS, KEVIN | $164.88 | $6,595.25 | $76.50 | 306 |
| ▓▓▓▓ | OCHSNER, KAYLEEN | $14.50 | $580.00 | $13.25 | 53 |
| ▓▓▓▓ | PEREZ, ALFREDO | $89.40 | $3,576.00 | $47.25 | 189 |
| ▓▓▓▓ | POWDERS, MARK | $71.61 | $2,864.50 | $34.75 | 139 |
| ▓▓▓▓ | PUCKETT, DON | $146.41 | $5,856.50 | $72.75 | 291 |
| ▓▓▓▓ | REILLY, EDWARD I. | $18.25 | $730.00 | $15.50 | 62 |
| ▓▓▓▓ | SHAKLEE, LANCE | $127.50 | $5,100.00 | $62.00 | 248 |
| ▓▓▓▓ | SHEETS, TROY G. | $36.40 | $1,456.00 | $18.50 | 74 |
| ▓▓▓▓ | SULLIVAN, JASON | $113.85 | $4,554.00 | $78.75 | 315 |
| ▓▓▓▓ | SUMMERS, KEVIN | $180.41 | $7,216.50 | $89.00 | 356 |
| ▓▓▓▓ | TOMPKINS, JOSHUA P. | $28.38 | $1,135.00 | $22.25 | 89 |
| ▓▓▓▓ | WARD, KEVIN | $162.50 | $6,500.00 | $100.00 | 400 |
| ▓▓▓▓ | YEIGH, BRENT | $37.26 | $1,490.50 | $29.25 | 117 |
| ▓▓▓▓ | YOUNG, KATHLEEN | $80.15 | $3,205.84 | $53.50 | 214 |
| ▓▓▓▓ | YOUNG, RICKY | $107.37 | $4,294.64 | $52.50 | 210 |
| ▓▓▓▓ | ZUBIETA, JASON | $43.80 | $1,752.00 | $32.75 | 131 |
| | JAN-2002 TOTALS | $2,621.43 | $104,857.23 | $1,347.00 | 5388 |

# Exhibit 5



**CALIBRE**
CPA GROUP
PLLC

CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS

1850 K STREET, NW
SUITE 1050
WASHINGTON, DC 20006

202.331.9880 PHONE
202.331.9890 FAX

CIVIC OPERA BUILDING
20 NORTH WACKER DRIVE
SUITE 900
CHICAGO, IL 60606

312.920.9400 PHONE
312.920.9494 FAX

www.calibrecpa.com


A member of
KS International

October 27, 2006

Board of Trustees
The Central Pension Fund
of the International Union of
Operating Engineers and
Participating Employers

We have applied certain procedures, as discussed below, to the payroll records of High Mountain Inspection, a contributing employer to the Central Pension Fund and the International Union of Operating Engineers and Participating Employers for the period of January 2002 through August 2005. The purpose of our review was to assist you in determining whether contributions to the Trust Fund are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures included a review of the pertinent provisions of the collective bargaining agreements and compared underlying employer payroll records to the Fund's contribution records. The employer records we reviewed included payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, and general disbursement records as appropriate. The procedures are performed on a test basis and may be expanded if the results so warrant. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Fund. Any compensation paid to employees not disclosed to us or made part of the written record was not determinable by us and was not included in our review.

Our procedures related to a review of the employer's payroll records only and did not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

The exceptions to employer contributions noted are detailed on the accompanying schedules.

*Calibre CPA Group, PLLC*

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING AND RE-TRAINING FUND
GRAND TOTAL PAGE

Employer:        High Mountain Inspection

Employer Code:   106664

Audit Period:    January 2002 through August 2005

Under-Reported Hours Summary:

| Year | PENSION | WELFARE | TRAINING | TOTALS |
|------|---------|---------|----------|--------|
| 2002 | $89,640.00 | $86,400.00 | $14,040.00 | $190,080.00 |
| 2003 | $183,900.10 | $159,083.20 | $32,745.15 | $375,728.45 |
| 2004 | $234,679.20 | $201,153.60 | $46,097.70 | $481,930.50 |
| 2005 | $186,990.80 | $164,943.50 | $39,565.15 | $391,499.45 |
| Total Underpayments | $508,219.30 | $446,636.80 | $92,882.85 | $1,439,238.40 |

Explanation of Findings:
PRIMARY EXPLANATION OF FINDINGS:
A.  Failed to report an employee in a covered job classification
B.  Failed to report a new employee from date of hire
V.  Failed to report an employee through date of termination

Rate Adjustment Schedule:

| Year | PENSION | TOTALS |
|------|---------|--------|
| 2002 | $263,634.75 | $263,634.75 |
| 2003 | $301,013.90 | $301,013.90 |
| 2004 | $330,653.54 | $330,653.54 |
| 2005 | $146,334.15 | $146,334.15 |
| Total Underpayments: | $1,041,636.34 | $1,041,636.34 |

Note:  The above underpayments refer to rate adjustments on incorrect rates of $.10 paid on reported hours.

Grand Total Underpayment:        $2,480,874.74

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING AND RE-TRAINING FUND
UNDER-REPORTED HOURS SUMMARY
UNDERPAYMENTS

Employer:         High Mountain Inspection

Employer Code:    106664

Audit Period:     January 2002 through August 2005

| Year | PENSION | WELFARE | TRAINING | TOTALS |
|------|---------|---------|----------|--------|
| 2002 | $89,640.00 | $86,400.00 | $14,040.00 | $190,080.00 |
| 2003 | $183,900.10 | $159,083.20 | $32,745.15 | $375,728.45 |
| 2004 | $234,679.20 | $201,153.60 | $46,097.70 | $481,930.50 |
| 2005 | $186,990.80 | $164,943.50 | $39,565.15 | $391,499.45 |
| Total Underpayments | $508,219.30 | $446,636.80 | $92,882.85 | $1,439,238.40 |

Explanation of Findings:
A. Failed to report an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE:  106664

YEAR:  2002

PAYROLL-AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1598, Mills, WY 82644
CONTACT & FOR: Suzanne Fraser
                (307) 266-0165
APPRX. COVERED EMPLOYEES: 50

PRIMARY EXPLANATION OF FINDINGS:
A.  Failed to report an employee in a covered job classification
B.  Failed to report an employee in a covered job class
F.  Omitted hours
V.  Failed to report an employee through date of termination
AUDITOR: Eric Cedermann

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Brown, Nathan | | | | | | A | 116.00 | 157.00 | 132.00 | | | | | | | | | | 405.00 |
| Chool, Daniel | | | | | | A | 81.00 | 244.00 | 208.00 | 217.00 | 264.00 | 193.00 | 248.00 | 176.00 | 253.00 | 319.00 | 299.00 | 99.00 | 2,585.00 |
| Cole, Jeremiah | | | | | | A | 116.00 | | | | | | | 140.00 | | | | | 328.00 |
| Dutton, John | | | | | | A | | | 205.00 | 15.00 | 67.00 | 50.00 | 179.00 | 197.00 | 502.00 | 258.00 | 240.00 | 167.00 | 1,765.00 |
| Durning, David | | | | | | A | 69.00 | 47.00 | | 62.00 | | 12.00 | | | | | | | 339.00 |
| Dustin, Jeremy | | | | | | A | | | | 77.00 | | | | | | | | | 69.00 |
| Himes, Guy | | | | | | A | | | | | | | | | | | | 92.00 | 215.00 |
| Himes, Randall | | | | | | A | 173.00 | | | | | | | | | | | | 125.00 |
| Jeffress, Serena | | | | | | A | | | | | | 215.00 | 67.00 | | | 225.00 | | | 376.00 |
| Johnson, Brent | | | | | | A | | | | | | | | | 51.00 | | | | 92.00 |
| Kellett, Terry | | | | | | A | | | | | | | | | | | | | 37.00 |
| Mathus, Randall | | | | | | A | 205.00 | 237.00 | | | | | 8.00 | 42.00 | | | | | 142.00 |
| Mohan, Tim | | | | | | A | 47.00 | | | | | | | 25.00 | | 240.00 | | 120.00 | 1,162.00 |
| Olivez, Joshua | | | | | | A | 137.00 | 206.00 | 208.00 | 179.00 | 161.00 | 155.00 | 215.00 | 237.00 | 188.00 | 330.00 | | 133.00 | 2,405.00 |
| Redler, Ted | | | | | | A | 202.00 | 232.00 | 59.00 | | | | | 372.00 | 171.00 | 274.00 | 276.00 | 137.00 | 564.00 |
| Sather, Joseph | | | | | | A | | | 14.00 | 150.00 | 191.00 | 208.00 | 158.00 | | | | 251.00 | 236.00 | 3,199.00 |
| Stegner, Aime | | | | | | A | 305.00 | 256.00 | 274.00 | 288.00 | 254.00 | 248.00 | 321.00 | 196.00 | 314.00 | 251.00 | 226.00 | 2,932.00 |
| Wyatt, Tyson | | | | | | B | 277.00 | 365.00 | 275.00 | 240.00 | 196.00 | 240.00 | 298.00 | 189.00 | 300.00 | 264.00 | 305.00 | 3,915.00 |
| Averix, Randy | | | | | | A | | | 154.00 | 154.00 | | | | | | | | | 331.00 |
| Behin, Holton | | | | | | B | 19.00 | 288.00 | 239.00 | 154.00 | 227.00 | 92.00 | 173.00 | | | | | | 700.00 |
| Fraser, Michael | | | | | | B | | | | 183.00 | | | | | | | | | 183.00 |
| Irey, Harold | | | | | | B | | | | | | | | | | | | | 365.00 |
| Johnston, Chris | | | | | | B | 30.00 | | | | 29.00 | 107.00 | 38.00 | 60.00 | | | | 303.00 | 302.00 |
| Simmons, Jancy | | | | | | B | | 372.00 | | 12.00 | | | | | | | | 369.00 | 360.00 |
| Summers, Dove | | | | | | B | | | | | | | 38.00 | | | | | | 38.00 |

**CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS**
**HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2**
**NDE TRAINING & RE-TRAINING FUND**

EMPLOYER CODE: 186464

YEAR: 2002

PAYROLL AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1588, Riverton, WY 83644
CONTACT & PH#: Suzanne Fraser    (307) 366-0105
APPRX. COVERED EMPLOYEES: 50

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Cederstrom

## SCHEDULE OF HOURS

| EMPLOYEE NAME | SCHEDULE CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annu, Randy | ▉ | | | | F | 199.00 | | | | | | | | | | | | 194.00 |
| Cornialsen, Paul | ▉ | | | | F | | | | | | | | | 16.00 | | | | 191.00 |
| Chavez, Phillip | ▉ | | | | F | | | | | | | | | | | | | 64.00 |
| Condaluci, Craig | ▉ | | | | F | 77.00 | | | | | | | | | | | | 77.00 |
| Dunning, Justin | ▉ | | | | F | 329.00 | | | | | | | | | | | | 388.00 |
| Grothach, Michael | ▉ | | | | F | 333.00 | | | | | | | | | | | | 533.00 |
| Frey, Harrell | ▉ | | | | F | | | | | | | 69.00 | | | | | | 69.00 |
| Jennings, Robert | ▉ | | | | F | 192.00 | | | | | | | | | | | | 192.00 |
| Mackbuson, Cameron | ▉ | | | | F | | | | | | | | | 24.00 | | | | 24.00 |
| Mkhton, Randall | ▉ | | | | F | | | | | 60.00 | | | | | | 77.00 | | 77.00 |
| Malis, Eldonni | ▉ | | | | F | 116.00 | | | | | 88.00 | | | | | | | 116.00 |
| Sheets, Troy | ▉ | | | | F | 209.00 | | | | | | | | | | | | 209.00 |
| Sheets, Troy | ▉ | | | | F | | | | | 59.00 | | | 62.00 | | | | | 62.00 |
| Summers, Dave | ▉ | | | | F | 200.00 | | | | | | | | | | | | 210.00 |
| Tomblison, Joshua | ▉ | | | | F | | | | | | | | | | | | | 210.00 |

## HOURS / FRINGE BENEFITS 01/2002

| | Rate | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS | | 2,208.00 | 2,206.00 | 1,709.00 | 1,313.00 | 1,746.00 | 1,530.00 | 2,071.00 | 1,222.00 | 1,722.00 | 1,795.00 | 1,869.00 | 1,009.00 | 21,660.00 |
| Pension | $4.15 | $13,313.20 | $9,164.90 | $7,092.35 | $5,448.95 | $7,245.90 | $6,427.50 | $7,422.65 | $3,594.65 | $5,278.30 | $7,419.25 | $7,760.90 | $4,356.35 | $89,649.00 |
| Welfare | $4.00 | $12,832.00 | $8,824.00 | $6,836.00 | $5,252.00 | $6,984.00 | $6,120.00 | $8,284.00 | $3,888.00 | $5,088.80 | $7,180.00 | $7,480.00 | $4,200.00 | $86,400.00 |
| Training | $0.65 | $2,085.20 | $1,433.90 | $1,110.85 | $853.45 | $1,134.90 | $1,007.50 | $1,344.15 | $1,246.15 | $826.60 | $1,166.75 | $1,215.50 | $604.85 | $14,079.00 |
| Totals | $8.80 | $28,230.40 | $19,422.80 | $15,039.20 | $11,554.40 | $15,364.80 | $13,640.00 | $18,529.80 | $11,195.00 | $12,736.00 | $16,256.00 | $9,407.20 | $9,407.20 | $190,080.00 |

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E. LOCAL 2
NRE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: 106664

YEAR: 2003

PAYROLL AUDIT PERIOD:
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1500, Alidi, WV 83644
CONTACT & PHONE: Suzanne Fraser
(307) 264-0105
APRS, COVERED EMPLOYEES-58

January 2003 through August 2005

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Colestann

SCHEDULE OF HOURS

| EMPLOYEE NAME | SSN NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cloyd, Daniel | | | | | | A | 59.00 | 79.00 | 188.00 | 313.00 | 276.00 | 331.00 | 341.00 | 271.00 | 301.00 | 275.00 | 279.00 | 266.00 | 3,182.00 |
| Dallam, John | | | | | | A | 86.00 | | | | | | | | | | | | 86.00 |
| Duncan, Matthew | | | | | | A | | | | | | | | 31.00 | | | 98.00 | 31.00 | 412.00 |
| Donaldson, Phillip | | | | | | A | | | | | | | 38.00 | | | | | | 48.00 |
| Funk, Dewey | | | | | | A | | | | | | | 175.00 | 235.00 | 179.00 | 255.00 | 31.00 | | 1,226.00 |
| Funk, James | | | | | | A | | | | | | | | 7.00 | 7.00 | 317.00 | | 64.00 | 340.00 |
| Gross, Kenneth | | | | | | A | | | 154.00 | 184.00 | 120.00 | 124.00 | | 249.00 | 210.00 | | 73.00 | 202.00 | |
| Gress, Dennis | | | | | | A | | | | | 134.00 | | 175.00 | | 181.00 | | | | 1,000.00 |
| Gowran, Dixie | | | | | | A | | | | | | | | | 233.00 | 298.00 | 293.00 | 233.00 | 1,062.00 |
| Harmon, Aaron | | | | | | A | | | | | | | 35.00 | | | | | | 281.00 |
| Haley, Greg | | | | | | A | 8.00 | | | | | | 176.00 | 8.00 | | | | | 8.00 |
| Hightower, Kevin | | | | | | A | | | 77.00 | | 109.00 | 268.00 | 318.00 | 255.00 | 171.00 | | | | 2,411.00 |
| Howell, Richard | | | | | | A | | | | | 36.00 | 151.00 | 385.00 | 229.00 | 240.00 | 331.00 | 350.00 | 230.00 | 1,956.00 |
| Kromia, Preston | | | | | | A | | | | | | | | | | 356.00 | 90.00 | | 90.00 |
| Lake, Daniel | | | | | | A | | | | | | | 127.00 | | | | | | 127.00 |
| Marsden, Corey | | | | | | A | | | | 232.00 | 280.00 | 235.00 | 241.00 | 188.00 | 238.00 | 266.00 | 206.00 | 229.00 | 1,390.00 |
| Newton, Chris | | | | | | A | 74.00 | 53.00 | | | | | 96.00 | 195.00 | 320.00 | 320.00 | 196.00 | 173.00 | 1,386.00 |
| Middleton, Tim | | | | | | A | 132.00 | | | | | | 180.00 | | 210.00 | | | | 1,251.00 |
| Oliver, Joshua | | | | | | A | | | | | | | | | | | | 174.00 | 132.00 |
| Richardson, Jason | | | | | | A | | | | | 193.00 | 76.00 | 256.00 | 305.00 | 253.00 | 278.00 | 282.00 | 174.00 | 1,854.00 |
| Rizman, Jeb | | | | | | A | | | | | 42.00 | | | | | | | | 42.00 |
| Saffer, Joseph | | | | | | A | 33.00 | 178.00 | 253.00 | 210.00 | 353.00 | 233.00 | 172.00 | 212.00 | 173.00 | 214.00 | 301.00 | 257.00 | 2,596.00 |
| Scott, Shad | | | | | | A | | | 93.00 | 281.00 | | | | | | | | | 374.00 |
| Sheezell, Ted | | | | | | A | | | | 20.00 | | | | | | | | | 20.00 |
| Smithwood, Joe | | | | | | A | | | | 8.00 | 247.00 | 55.00 | | | | | | | 310.00 |
| Steiner, Mark | | | | | | A | 358.00 | 232.00 | 255.00 | 221.00 | 233.00 | | 235.00 | 169.00 | 227.00 | 308.00 | 206.00 | | 2,874.00 |
| Townsend, Chad | | | | | | A | | | | | 264.00 | | 247.00 | | 97.00 | 97.00 | 271.00 | 60.00 | 631.00 |
| Tucker, Calvin | | | | | | A | | | | | | 123.00 | 234.00 | 171.00 | 160.00 | 280.00 | 40.00 | 260.00 | 918.00 |
| Van Song, Christopher | | | | | | A | | | | | 179.00 | 68.00 | | | | | | | 247.00 |
| Wahl, Trevor | | | | | | A | | | | | | 11.00 | | | | | | 91.00 | 91.00 |
| Wyland, Greg | | | | | | A | 240.00 | 250.00 | 108.00 | 178.00 | 168.00 | | | | 279.00 | 356.00 | 378.00 | 253.00 | 1,217.00 |

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E. LOCAL 2
NDE TRAINING & RE-TRAINING FUND

PAYROLL AUDIT PERIOD:     January 2002 through August 2005
EMPLOYER NAME:     High Mountain Inspection
EMPLOYER ADDRESS:     P.O. Box 1500, Mills, WY 83644
CONTACT & APHR:     Suzanne Foster
APHR, COVERED EMPLOYEES:     (307) 364-0105

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Cederbaum

EMPLOYER CODE:     06664

YEAR:     2003

SCHEDULE OF HOURS

| EMPLOYEE NAME | SSN NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Brake, Daniel | | B | | | | | | | | | | | | | | | | | 415.00 |
| Johnston, Robert | | B | | | | | | | | | 66.00 | 172.00 | 177.00 | | | | | | 388.00 |
| Shorten, Todd | | B | | | | | | | | | 221.00 | 167.00 | | | | | | | 21.00 |
| Smith, William | | B | | | | | | | | | | 24.00 | 24.00 | | | | | | 24.00 |
| Staley, Gary | | B | | | | | | | | | | | 24.00 | | | | | | 24.00 |
| Butz, Harlan | | B | | | | | | | | | 181.00 | | 169.00 | | | | | | 362.00 |
| Conyer, Phillip | | F | | | | | | | | 220.00 | | | | | | | | 19.00 | 19.00 |
| Fraley, Stacy | | F | | | | | | | | | | | | | | | | | 220.00 |
| Jennings, Robert | | F | | | | | | | 11.00 | | | | | | | | | | 11.00 |
| Johnson, Kevin | | F | | | | | | | 10.00 | 181.00 | | | | | | | | | 191.00 |
| Kerr, Lloyd | | F | | | | | | | | | | 8.00 | | | | | | | 8.00 |
| McMahon, Kevin | | F | | | | | | | | 80.00 | | | | | | | | | 80.00 |
| Milliron, Randall | | F | | | | | | 55.00 | 29.00 | | | | | | | | | | 84.00 |
| Powders, Mark | | F | | | | | | | | | 24.00 | 8.00 | | | | | | | 8.00 |
| Prescott, Donald | | F | | | | | | | | | | 8.00 | | | | | | | 8.00 |
| Safety, Gary | | F | | | | | | | | | | | | 29.00 | | | | 24.00 | 24.00 |
| Ward, Kevin | | F | | | | | | | | | | | | 6.00 | 8.00 | 278.00 | | | 37.00 |
| | | | | | | | | | | | 90.00 | | | | | | | | 383.00 |
| HOURS | | | | | 955.00 | 1,216.00 | 1,170.00 | 1,617.00 | 3,012.00 | 2,472.00 | 3,543.00 | 3,197.00 | 3,063.00 | 4,543.00 | 3,230.00 | 3,342.00 | 31,060.00 |

| | Fund | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | $5.20 | $5,061.00 | $6,435.00 | $6,201.00 | $8,520.10 | $15,968.90 | $13,112.20 | $17,738.50 | $16,944.10 | $16,255.10 | $24,007.50 | $17,119.00 | $17,182.00 | $166,646.70 |
| Welfare | $4.40 | $4,202.00 | $5,359.20 | $5,148.00 | $7,114.80 | $13,237.20 | $10,885.60 | $14,718.00 | $14,066.80 | $13,494.80 | $19,980.40 | $14,212.00 | $14,344.80 | $136,781.40 |
| Training | $0.95 | $907.25 | $1,157.10 | $1,111.50 | $1,536.15 | $2,862.15 | $2,350.00 | $3,177.35 | $3,037.15 | $2,912.65 | $4,315.95 | $3,068.30 | $3,099.90 | $29,515.55 |
| Funds | $10.65 | $10,170.25 | $12,951.30 | $12,460.50 | $17,171.05 | $32,068.45 | $26,354.00 | $35,633.85 | $34,048.05 | $32,562.55 | $48,304.65 | $34,399.30 | $34,575.70 | $330,884.65 |

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: 106661

YEAR: 2004

PAYROLL AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1508, Rifle, WY 83544
CONTACT & HIRE: Suzanne Fraser
APPRX. COVERED EMPLOYEES: (307) 366-0105
AUDITOR: Eric Cederbaum

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report in an employee in a covered job classification
F. Failed to report a new employee from date of hire
P. Omitted hours
V. Failed to report an employee through date of termination

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Barclay, Joshua | | | | | | A | | 77.00 | 160.00 | 340.00 | 224.00 | 240.00 | 345.00 | 193.00 | 427.00 | 317.00 | 352.00 | 182.00 | 2,766.00 |
| Bradley, Brad | | | | | | A | | | | | | | | 215.00 | 215.00 | 191.00 | 254.00 | | 948.00 |
| Chilnutt, Robert | | | | | | A | | | | | | | | 71.00 | 274.00 | 303.00 | 278.00 | | 1,709.00 |
| Cloud, David | | | | | | A | 66.00 | | | 288.00 | 208.00 | 225.00 | 203.00 | 327.00 | 430.00 | 317.00 | 315.00 | | 2,961.00 |
| Darkingh, Michael | | | | | | A | | | 60.00 | | | | 19.00 | 63.00 | | | | | 81.00 |
| Dietrich, Anita | | | | | | A | | | | | | | | | 383.00 | | | | 327.00 |
| Dietrich, Dan | | | | | | A | | | | | | | | 110.00 | | 258.00 | 105.00 | 105.00 | 968.00 |
| Franey, Jonathan | | | | | | A | | | | | | | | | | | | | 110.00 |
| Goodall, Jim | | | | | | A | | | | | | | | 330.00 | 326.00 | 144.00 | | | 756.00 |
| Green, Willis | | | | | | A | 234.00 | 250.00 | 210.00 | 347.00 | 296.00 | 191.00 | 245.00 | 248.00 | 311.00 | 383.00 | 375.00 | 259.00 | 3,936.00 |
| Howell, Richard | | | | | | A | | | | | | | | 275.00 | | 216.00 | 125.00 | | 382.00 |
| King, Jesse | | | | | | A | | | | | | | | | | 141.00 | 239.00 | | 380.00 |
| Laster, Lee | | | | | | A | | | | | | | | | | 263.00 | 107.00 | | 402.00 |
| Marusin, Robert | | | | | | A | | | | | | | | | | 33.00 | 24.00 | | 24.00 |
| Nunn, Samuel | | | | | | A | 192.00 | 166.00 | 131.00 | 250.00 | 218.00 | 245.00 | 43.00 | 186.00 | 322.00 | 106.00 | 119.00 | 209.00 | 1,021.00 |
| Newton, Tim | | | | | | A | | | | | | | 355.00 | 307.00 | 301.00 | 384.00 | 262.00 | 265.00 | 2,586.00 |
| Nicholson, Tim | | | | | | A | 41.00 | 352.00 | 134.00 | | | | | | 118.00 | 289.00 | 316.00 | | 1,523.00 |
| Reaves, William | | | | | | A | | | | 164.00 | 146.00 | 124.00 | | 15.00 | 147.00 | | | | 166.00 |
| Richardson, Jason | | | | | | A | 28.00 | 209.00 | 150.00 | | 160.00 | | | | | | | 961.00 |
| Shaffer, Joseph | | | | | | A | 160.00 | 240.00 | 198.00 | 182.00 | 244.00 | 211.00 | 245.00 | 234.00 | 154.00 | 259.00 | 2,509.00 |
| Simpson, Field | | | | | | A | | | | | 317.00 | 265.00 | | 219.00 | 180.00 | 196.00 | 286.00 | 881.00 |
| Sitz, James | | | | | | A | | | | | | | | | | | 58.00 | 58.00 |
| Smith, Christopher | | | | | | A | | | 203.00 | | | | | | | 120.00 | 180.00 | 300.00 |
| Stamp, Marc | | | | | | A | 194.00 | 259.00 | | 259.00 | 244.00 | 240.00 | 309.00 | 262.00 | 238.00 | 260.00 | 301.00 | 3,985.00 |
| Spivey, Ike | | | | | | A | | | | | | | | 3.00 | | | | 3.00 |
| Summers, Jeffrey | | | | | | A | 164.00 | 174.00 | 173.00 | 190.00 | 178.00 | 161.00 | 212.00 | 221.00 | 169.00 | 180.00 | 211.00 | 2,711.00 |
| Townsend, Chad | | | | | | A | 277.00 | 274.00 | 180.00 | 353.00 | 265.00 | 291.00 | 265.00 | | | | | 3,017.00 |
| Wilson, Jacob | | | | | | A | | | | | | | 83.00 | 130.00 | 122.00 | | | 210.00 |
| Wyland, Greg | | | | | | A | | | | | | | 283.00 | 122.00 | | | | 1,026.00 |
| Wynne, David | | | | | | A | 44.00 | | | | 20.00 | | 63.00 | 259.00 | 330.00 | 334.00 | 240.00 | 284.00 | 1,836.00 |
| Young, Tom | | | | | | A | | | | | | | 62.00 | 16.00 | | | | 78.00 |

MD-2006
Page 7 of 58

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: __186484__

YEAR: 2004

PAYROLL AUDIT PERIOD: January 2003 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1508, Mills, WY 83644
CONTACT & PHN: Suzanne Fraser
APPX. # EMP: (307) 265-6105
APPX. COVERED EMPLOYEES: 50

PRIMARY EXPLANATION OF FINDINGS:
A.  Failed to report an employee in a covered job classification
B.  Failed to report a new employee from date of hire
F.  Omitted hours
V.  Failed to report an employee through date of termination
AUDITOR: Eric Cederstrom

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bass, James | | | | | | D | | | | | | | | | | | | 128.00 | 128.00 |
| Chase, Dale | | | | | | D | | | | | | | | | | | | | 69.00 |
| Danielson, Matthew | | | | | | D | | | | | | | | | | | | | 53.00 |
| Gantz, Clifford | | | | | | B | 260.00 | 265.00 | 197.00 | | | | | | | | | | 333.00 |
| Hightower, Kevin | | | | | | B | | 138.00 | | | | | | | | | | | 835.00 |
| Vogel, Brent | | | | | | B | 271.00 | 156.00 | 331.00 | | | | | | | | | | 100.00 |
| Youngblood, James | | | | | | D | | | | 140.00 | | | | | | | | | 140.00 |
| Young, Wesley | | | | | | D | | | 49.00 | 50.00 | 251.00 | | 24.00 | 101.00 | | | | | 101.00 |
| Bell, Bruce | | | | | | D | | | | | | | | | | | | | 57.00 |
| Hamby, Harlan | | | | | | F | | | | | | | | | 63.00 | | 29.00 | | 8.50 |
| Gresback, Michael | | | | | | F | | | 260.00 | | | | | | | | 30.00 | | 290.00 |
| Highsmith, Kevin | | | | | | F | | | | | | | 100.00 | 275.00 | | | | | 375.00 |
| Johnson, Robert | | | | | | F | | | | | | | | 24.00 | | 22.00 | | | 46.00 |
| Johnson, Robert | | | | | | F | | | | | | | | 48.00 | | | | | 61.00 |
| Muchhala, Kevin | | | | | | F | | | | | | | 13.00 | | | | | | 227.00 |
| Mathson, Randall | | | | | | F | | | | | 227.00 | | | | | | | | 9.00 |
| Overton, Gary | | | | | | F | | | | | | | 9.00 | | | 19.00 | | | 9.00 |
| Peterson, Daniel | | | | | | F | | | | | | | | | 8.00 | | 54.00 | | 380.00 |
| Peterson, Mark | | | | | | F | | | | | | 318.00 | | | | | 54.00 | | 372.00 |
| Pressley, Jones | | | | | | F | | | | | 122.00 | | | | | | 30.00 | | 123.00 |
| Ryan, Patrick | | | | | | F | | | | | | | | | | 39.00 | | | 111.00 |
| Sabbe, Bobby | | | | | | F | | | | 13.00 | | | | | | 6.00 | | | 6.00 |
| Simmons, Jamey | | | | | | F | | | | | | | | | | 58.00 | 8.00 | | 66.00 |
| Smith, William | | | | | | F | | | | | | | | | | 26.00 | 26.00 | | 52.00 |
| Stellmon, Corey | | | | | | F | | 4.00 | | | | | | | | | 17.00 | | 21.00 |
| Vogel, Brent | | | | | | F | | | | | | | | 8.00 | | | 8.00 | | 8.00 |
| Vitullig, John | | | | | | F | | | | | | | | | | | 26.00 | | 26.00 |
| Young, Ricky | | | | | | F | | | | | | | | | | | | 13.00 | 13.00 |
| Highsmith, Kevin | | | | | | V | | | | | | | 180.00 | 769.00 | 232.00 | 348.00 | | 137.00 |
| Johnson, Chris | | | | | | V | | | | | | | 248.00 | 331.00 | 290.00 | 386.00 | | 1,303.00 |
| Sullivan, James | | | | | | V | | | | | | | | | 263.00 | 249.00 | | 1,323.00 |

| | | HOURS | 1,966.00 | 2,600.00 | 2,417.00 | 2,455.00 | 2,421.00 | 2,380.00 | 2,959.00 | 3,351.00 | 5,885.00 | 4,975.00 | 5,324.00 | 4,737.00 | 41,907.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Fund | Rate / Hour | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | $5.60 | $10,998.00 | $14,896.00 | $13,533.20 | $13,756.80 | $13,677.60 | $12,768.00 | $16,458.40 | $18,765.60 | $32,956.00 | $27,860.00 | $23,054.40 | $26,577.30 | $234,479.50 |
| Welfare | $7.00 | $9,423.50 | $17,780.00 | $11,601.60 | $11,771.40 | $12,389.80 | $11,024.40 | $14,192.20 | $19,335.80 | $28,313.80 | $25,175.25 | $23,272.00 | $22,772.00 | $290,155.00 |
| Pension | $1.40 | $3,160.40 | $3,976.00 | $2,648.70 | $2,698.20 | $2,883.10 | $2,368.00 | $5,237.90 | $5,373.60 | $5,471.00 | $5,473.50 | $6,786.40 | $5,330.70 | $56,007.70 |
| Training | | | | | | | | | | | | | | $1,323.00 |
| Totals | $11.50 | $23,586.00 | $30,590.00 | $27,795.50 | $28,209.50 | $30,141.90 | $26,730.00 | $35,798.50 | $39,786.90 | $67,689.00 | $57,212.50 | $56,826.00 | $54,475.50 | $481,930.50 |

# CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
## HEALTH & WELFARE FUND OF THE I.U.O.E. LOCAL 2
## NBC TRAINING & RE-TRAINING FUND

EMPLOYER CODE: 166454

YEAR: 2005

PAYROLL AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1890, Mills, WY 82644
CONTACT & PH#: Suzanne Fraser
APPRX. COVERED EMPLOYEES:50
(307) 266-0165

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report as an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Denied hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Cederbaum

## SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bentley, Joshua | | | | | | A | 148.00 | 181.00 | 205.00 | 323.00 | 286.00 | 283.00 | 261.00 | 66.00 | | | | | 1,766.00 |
| Bentley, Paul | | | | | | A | 227.00 | 260.00 | 316.00 | 264.00 | 51.00 | | | | | | | | 1,118.00 |
| Calhoun, Robert | | | | | | A | 168.00 | 153.00 | 159.00 | 191.00 | 213.00 | 235.00 | 238.00 | 281.00 | | | | | 1,704.00 |
| Coyd, David | | | | | | A | 256.00 | 238.00 | 397.00 | 229.00 | 275.00 | 384.00 | 304.00 | 339.00 | | | | | 2,402.00 |
| Cook, Andrew | | | | | | A | | | | | | | 196.00 | | | | | | 196.00 |
| Diedrich, Anna | | | | | | A | | | | | 102.00 | 198.00 | 253.00 | 252.00 | | | | | 1,033.00 |
| Diedrich, Dan | | | | | | A | 162.00 | 172.00 | 322.00 | 322.00 | 183.00 | 278.00 | 366.00 | 252.00 | | | | | 1,837.00 |
| Dunning, Justin | | | | | | A | | 68.00 | | 159.00 | | | | | | | | | 4.00 |
| Eicks, Randy | | | | | | A | | | | | | | | 4.00 | | | | | 4.00 |
| Hand, Richard | | | | | | A | | | | | | | | 287.00 | | | | | 327.00 |
| Howell, Richard | | | | | | A | 226.00 | 92.00 | 378.00 | 210.00 | 730.00 | 428.00 | 295.00 | 338.00 | | | | | 664.00 |
| Johnson, Chris | | | | | | A | 214.00 | 353.00 | 222.00 | 271.00 | 88.00 | 235.00 | 180.00 | 242.00 | | | | | 2,195.00 |
| Johnson, Marilyn | | | | | | A | | | | | | 31.00 | 118.00 | 224.00 | | | | | 1,685.00 |
| King, Joe | | | | | | A | 231.00 | 194.00 | | | | | | | | | | | 375.00 |
| Lester, Lee | | | | | | A | 134.00 | 102.00 | 314.00 | | | 164.00 | 192.00 | 300.00 | | | | | 750.00 |
| Markowski, Brian | | | | | | A | | | | | | | | 198.00 | | | | | 850.00 |
| Mendoza, Billy Joe | | | | | | A | | | 294.00 | 193.00 | 209.00 | 231.00 | 261.00 | 287.00 | | | | | 198.00 |
| Mendoza, Travis | | | | | | A | | 55.00 | | | | | | | | | | | 1,629.00 |
| Muhl V, Benjamin | | | | | | A | 93.00 | | | | | | 20.00 | 28.00 | | | | | 80.00 |
| Munn, Shmuel | | | | | | A | | 48.00 | | | | | 170.00 | 170.00 | | | | | 190.00 |
| Newton, Greg | | | | | | A | | | | | | | | | | | | | 141.00 |
| Nicholson, Tim | | | | | | A | 151.00 | 210.00 | 238.00 | 156.00 | 388.00 | 261.00 | 22.00 | | | | | | 1,316.00 |
| Oliver, Jonathan | | | | | | A | 195.00 | 197.00 | 307.00 | 220.00 | 217.00 | 261.00 | 365.00 | 338.00 | | | | | 3,072.00 |
| Phillip, Tyler | | | | | | A | | | | | 122.00 | 261.00 | 35.00 | 254.00 | | | | | 418.00 |
| Powdrel, Mark | | | | | | A | | | | | 89.00 | | 213.00 | | | | | | 556.00 |
| Reynolds, Sean | | | | | | A | | | | | | 46.00 | 26.00 | 221.00 | | | | | 46.00 |
| | | | | | | | | | | | | | | | | | | | 247.00 |

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: __186664__

PAYROLL AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
CONTACT & ADDRESS: P.O. Box 1508, Mills, WY 82644
CONTACT & TIME: Suzanne Fraser
APPRX. COVERED EMPLOYEES: (307) 266-0185

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report an employee in a correct job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Ockelmann

APPRX. COVERED EMPLOYEES: 56

YEAR: 2005

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sadley, Joseph | | | | | | A | 209.00 | 256.00 | 282.00 | | | | | | | | | | 747.00 |
| Shandlin, Jesse | | | | | | A | | | | 5.00 | | | | | | | | | 5.00 |
| Sheridan, Troy | | | | | | A | | | | | 66.00 | | 148.00 | 234.00 | | | | | 448.00 |
| Simpson, Josh | | | | | | A | 171.00 | 135.00 | 115.00 | 55.00 | 74.00 | | | | | | | | 314.00 |
| Simpson, Neal | | | | | | A | 145.00 | 147.00 | 138.00 | 132.00 | 207.00 | 204.00 | 210.00 | | | | | | 463.00 |
| Sisi, Christopher | | | | | | A | 132.00 | 80.00 | | | | | | | | | | | 332.00 |
| Smith, Jimmy | | | | | | A | 264.00 | 224.00 | 230.00 | 254.00 | | 385.00 | 228.00 | | | | | | 2,066.00 |
| Stevens, Marc | | | | | | A | 192.00 | 179.00 | 293.00 | 250.00 | 188.00 | | | | | | | | 1,099.00 |
| Sullivan, Jason | | | | | | A | | -48.00 | | | | | | | | | | | 168.00 |
| Simmons, Jeffrey | | | | | | A | 120.00 | | | | | | | | | | | | 334.00 |
| Williams, David | | | | | | A | 235.00 | 250.00 | 12.00 | | | 29.00 | 67.00 | 307.00 | | | | | 405.00 |
| Welsh, Greg | | | | | | B | | | | | | 51.00 | | | | | | | 291.00 |
| Cox, Neal | | | | | | B | | | | | | | | | | | | | 51.00 |
| Graves, Janes | | | | | | F | 144.00 | 180.00 | | | | | | | | | | | 330.00 |
| Bell, Roger | | | | | | F | | | 50.00 | | | | | | | | | | 180.00 |
| Gesin, Clifford | | | | | | F | | | | 4.00 | | | | | | | | | 54.00 |
| Mashumu, Kevin | | | | | | F | | | | | | 60.00 | | | | | | | 60.00 |
| Reilly, Edward | | | | | | F | | | | | | | | | | | | | |
| | | | | | | HOURS | 3,720.00 | 3,745.00 | 4,699.00 | 3,119.00 | 3,100.00 | 4,617.00 | 3,580.00 | 5,057.00 | 0.00 | 0.00 | 0.00 | 0.00 | 31,637.00 |

| Fund | Rate Base (1/1/2005) | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | $5.90 | $21,948.00 | $22,095.50 | $27,724.10 | $18,402.10 | $18,290.00 | $27,238.80 | $21,122.00 | $29,886.30 | $0.00 | $0.00 | $0.00 | $0.00 | $186,717.30 |
| Welfare | $5.70 | $19,244.00 | $19,474.00 | $24,234.80 | $16,120.00 | $20,086.40 | $18,616.00 | $36,790.60 | $28,915.00 | $0.00 | $0.00 | $0.00 | $0.00 | $181,364.40 |
| Training | $1.25 | $4,650.00 | $4,681.25 | $5,873.75 | $3,898.75 | $3,875.00 | $5,790.00 | $4,475.00 | $6,315.00 | $0.00 | $0.00 | $0.00 | $0.00 | $39,558.75 |
| Totals | $12.85 | $45,942.00 | $46,250.75 | $58,073.65 | $38,519.65 | $38,385.00 | $57,205.20 | $44,213.00 | $62,592.30 | $0.00 | $0.00 | $0.00 | $0.00 | $390,340.45 |

# CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
## HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 3
## NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: 186664

**PAYROLL AUDIT PERIOD:** January 2002 through August 2005
**EMPLOYER NAME:** High Mountain Inspection
**EMPLOYER ADDRESS:** P.O. Box 1508, Mills, WV 83644
**CONTACT & PH#:** Suzanne Frazer  (307) 266-0105
**APPRX. COVERED EMPLOYEES:** 50

**PRIMARY EXPLANATION OF FINDINGS:**
A. Failed to report in a covered job classification
B. Failed to report an employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
AUDITOR: Eric Cederbaum

YEAR: 2003

## SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dunning, Justin | | | | | | F | | | | | | | | | 16.00 | 211.00 | 130.00 | 55.00 | 382.00 |
| Hamilton, Jeremy | | | | | | F | | | | | | | | | | 202.00 | 115.00 | | 331.00 |
| Johnson, Kevin | | | | | | F | | | | | | | | | 16.00 | 183.00 | 109.00 | 26.00 | 452.00 |
| Liddell, John | | | | | | F | | | | | | | | | 16.00 | 201.00 | 89.00 | | 306.00 |
| McElhannon Jr., Chan | | | | | | F | | | | | | | | | 115.00 | 184.00 | 98.00 | 41.00 | 438.00 |
| Powell, Daniel | | | | | | F | | | | | | | | | 132.00 | | | | 132.00 |
| Powers, Noah | | | | | | F | | | | | | | | | 114.00 | 184.00 | 109.00 | 36.00 | 443.00 |
| Robertson, Joshua | | | | | | F | | | | | | | | | 131.00 | 211.00 | 98.00 | 45.00 | 555.00 |
| Rogers, James | | | | | | F | | | | | | | | | 62.00 | 190.00 | 115.00 | | 490.00 |
| Sharken, Todd | | | | | | F | | | | | | | | | 134.00 | 198.00 | 123.00 | 116.00 | 571.00 |
| Simmons, Jamey | | | | | | F | | | | | | | | | 124.00 | 182.00 | | | 316.00 |
| Smith, James | | | | | | F | | | | | | | | | 131.00 | 206.00 | 13.00 | 94.00 | 544.00 |
| Smith, William | | | | | | F | | | | | | | | | 115.00 | 182.00 | 94.00 | 39.00 | 430.00 |
| Salter, Gary | | | | | | F | | | | | | | | | | | 103.00 | | 103.00 |
| Summers, Kevin | | | | | | F | | | | | | | | | 111.00 | | 39.00 | 44.00 | 194.00 |
| Young, Kathleen | | | | | | F | | | | | | | | | | | 110.00 | | 110.00 |

**HOURS**

| | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,373.00 | 2,344.00 | 1,460.00 | 651.00 | 5,779.00 |

**FINES**

| Fund | Rates 1/1/2003 | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | $3.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,973.00 | $7,032.00 | $4,380.00 | $1,953.00 | $17,337.00 |
| Welfare | $3.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4,266.00 | $6,838.40 | $3,756.00 | $2,343.60 | $29,894.40 |
| Training | $0.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,172.00 | $5,730.00 | $721.00 | $325.50 | $3,809.90 |
| Training | $0.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $669.00 | $1,772.60 | $210.00 | $194.00 | $1,010.00 |
| Totals | $7.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9,400.40 | $10,647.40 | $10,366.00 | $4,652.10 | $41,010.00 |

Note: The above under-reported hours and fringe rates apply to the Coose Bay, Oregon Job Site.

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE:    H6664

PAYROLL AUDIT PERIOD:     January 2002 through August 2005
EMPLOYER NAME:            High Mountain Inspection
EMPLOYER ADDRESS:         P.O. Box 1508, Mills, WY 82644
CONTACT & PH#:            Suzanne Fraser
                          (307) 264-0105
APPX. COVERED EMPLOYEES: 50

PRIMARY EXPLANATION OF FINDINGS:
A. Failed to report an employee in a covered job classification
B. Failed to report a new employee from date of hire
F. Omitted hours
V. Failed to report an employee through date of termination
Y. Failed to report

AUDITOR:  Eric Cstedunm

YEAR: 2003

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | Fund | Rate of Contribution | HOURS | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Johnson, Robert | | | | | | B | | | | | | | | | | 241.00 | | 93.00 | | | | 241.00 |
| Shaklee, Lance | | | | | | B | | | | | | | | | | | | 93.00 | | | | 93.00 |
| Simmons, Janey | | | | | | G | | | | | | | | | | 24.00 | | | | | | 24.00 |
| | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 265.00 | 0.00 | 93.00 | 0.00 | 0.00 | 0.00 | 358.00 |
| | | | | | | | Pension | $5.30 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,404.50 | $0.00 | $492.90 | $0.00 | $0.00 | $0.00 | $1,897.40 |
| | | | | | | | Welfare | $4.40 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,166.00 | $0.00 | $409.20 | $0.00 | $0.00 | $0.00 | $1,575.20 |
| | | | | | | | Training | $0.95 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $251.75 | $0.00 | $88.35 | $0.00 | $0.00 | $0.00 | $340.10 |
| | | | | | | | Totals | $10.65 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,822.25 | $0.00 | $990.45 | $0.00 | $0.00 | $0.00 | $3,812.70 |

Note: The above under-reported hours and fringe rates apply to the Celpline Project.

CENTRAL PENSION FUND OF THE I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE I.U.O.E., LOCAL 2
NDE TRAINING & RE-TRAINING FUND

EMPLOYER CODE: __186664__

PAYROLL AUDIT PERIOD: January 2002 through August 2005
EMPLOYER NAME: High Mountain Inspection
EMPLOYER ADDRESS: P.O. Box 1908, Mills, WY 82644
CONTACT & PH#: Suzanne Fraser
(307) 266-0105
APPRX. COVERED EMPLOYEES: 30

PRIMARY EXPLANATION OF FINDINGS:
A.  Failed to report on an employee in a covered job classification
B.  Failed to report it a new employee from date of hire
F.  Omitted hours
V.  Failed to report an employee through date of termination
AUDITOR:  Eric Cederbaum

YEAR:  2005

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE. | | HOURS | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Workes, Troy | | TECH | | | | F | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 |

| | Hourly Contribution | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Field | | | | | | | | | | | | | | |
| Pension | $1.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $80.00 | $0.00 | $0.00 | $0.00 | $0.00 | $80.00 |
| Welfare | $2.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $185.60 | $0.00 | $0.00 | $0.00 | $0.00 | $185.60 |
| Training | $0.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.40 | $0.00 | $0.00 | $0.00 | $0.00 | $6.40 |
| Totals | $4.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $272.00 | $0.00 | $0.00 | $0.00 | $0.00 | $272.00 |

Note: The above under-reported hours and fringe rates apply to the Raton Basin 2005 Expansion Project.

CENTRAL PENSION FUND OF THE L.I.U.O.E. AND PARTICIPATING EMPLOYERS
HEALTH & WELFARE FUND OF THE L.I.U.O.E., LOCAL 2

EMPLOYER CODE:    100664

PAYROLL AUDIT PERIOD:    January 2002 through August 2005
EMPLOYER NAME:    High Mountain Inspection
EMPLOYER ADDRESS:    P.O. Box 1588, Afton, WY 83444
CONTACT & FIRM:    Suzanne Fraser
APPRX. COVERED EMPLOYEES:    (307) 266-0105
APPRX. COVERED EMPLOYEES: 50

PRIMARY EXPLANATION OF FINDINGS:
A.  Failed to report an employee in a covered job classification
B.  Failed to report a new employee from date of hire
F.  Omitted hours
V.  Failed to report an employee through date of termination
AUDITOR:    Eric Cederbaum

YEAR:    2005

SCHEDULE OF HOURS

| EMPLOYEE NAME | SS NUMBER | CLASS | HIRE | ELIGIBLE | TERM | NOTE | | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thompson, Dina | | | | | | B | HOURS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 68.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 68.00 |
| Thompson, Fred | | | | | | B | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 61.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 61.00 |

|  | Rate as of 6/1/2005 | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | $1.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $193.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $193.50 |
| Welfare | $1.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $193.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $193.50 |
| Totals | $3.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $387.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $387.00 |

Note:  The above under-reported hours and fringe rates apply to the Questar Gas Gathering System Project.

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
RATE ADJUSTMENT SCHEDULE
UNDERPAYMENTS

Employer:    High Mountain Inspection

Employer Code:    106664

Audit Period:    January 2002 through August 2005

| Year | PENSION | TOTALS |
|------|---------|--------|
| 2002 | $263,634.75 | $263,634.75 |
| 2003 | $301,013.90 | $301,013.90 |
| 2004 | $330,653.54 | $330,653.54 |
| 2005 | $146,334.15 | $146,334.15 |
| Total Underpayments: | $1,041,636.34 | $1,041,636.34 |

Note:  The above underpayments refer to rate adjustments on incorrect rates of $.10 paid on reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 1/1/2002 Pension Rate = $4.15 | | CENTANINO, PAUL | 70.00 | $0.10 | $7.00 | $4.05 | $283.50 |
| | | COERVER, PHILLIP | 251.00 | $0.10 | $25.10 | $4.05 | $1,016.55 |
| | | CONDELARIO, CRAIG | 87.00 | $0.10 | $8.70 | $4.05 | $352.35 |
| | | DUNNING, JUSTIN | 73.00 | $0.10 | $7.30 | $4.05 | $295.65 |
| | | FRANKLIN, GARY | 294.00 | $0.10 | $29.40 | $4.05 | $1,190.70 |
| | | FRASER, BILL | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | FRASER, STACEY | 137.00 | $0.10 | $13.70 | $4.05 | $554.85 |
| | | GALLOWAY, ROBERT | 53.00 | $0.10 | $5.30 | $4.05 | $214.65 |
| | | GROTHUES, MICHAEL | 89.00 | $0.10 | $8.90 | $4.05 | $360.45 |
| | | JENNINGS, ROBERT | 84.00 | $0.10 | $8.40 | $4.05 | $340.20 |
| | | KAY, LLOYD | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MACMANUS, CAMERON | 326.00 | $0.10 | $32.60 | $4.05 | $1,320.30 |
| | | MACMANUS, KEVIN | 306.00 | $0.10 | $30.60 | $4.05 | $1,239.30 |
| | | OCHSNER-GALLOWAY, | 53.00 | $0.10 | $5.30 | $4.05 | $214.65 |
| | | PEREZ, ALFREDO | 189.00 | $0.10 | $18.90 | $4.05 | $765.45 |
| | | POWDERS, MARK | 139.00 | $0.10 | $13.90 | $4.05 | $562.95 |
| | | PUCKETT, DONNA | 291.00 | $0.10 | $29.10 | $4.05 | $1,178.55 |
| | | REILLY, EDWARD | 62.00 | $0.10 | $6.20 | $4.05 | $251.10 |
| | | SHAKLEE, LANCE | 248.00 | $0.10 | $24.80 | $4.05 | $1,004.40 |
| | | SHEETS, TROY | 74.00 | $0.10 | $7.40 | $4.05 | $299.70 |
| | | SULLIVAN, JASON | 315.00 | $0.10 | $31.50 | $4.05 | $1,275.75 |
| | | SUMMERS, KEVIN | 356.00 | $0.10 | $35.60 | $4.05 | $1,441.80 |
| | | TOMPKINS, JOSHUA | 89.00 | $0.10 | $8.90 | $4.05 | $360.45 |
| | | WARD, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | YEIGH, BRENT | 117.00 | $0.10 | $11.70 | $4.05 | $473.85 |
| | | ZUBIETA, JASON | 131.00 | $0.10 | $13.10 | $4.05 | $530.55 |

Monthly Reported Hours =    5,034.00    Monthly Total Paid =    $503.40    Monthly Amount Due =    $20,387.70

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 2/1/2002 Pension Rate = $4.15 | | CENTANINO, PAUL | 277.00 | $0.10 | $27.70 | $4.05 | $1,121.85 |
| | | COERVER, PHILLIP | 235.00 | $0.10 | $23.50 | $4.05 | $951.75 |
| | | CONDELARIO, CRAIG | 190.00 | $0.10 | $19.00 | $4.05 | $769.50 |
| | | FRANKLIN, GARY | 276.00 | $0.10 | $27.60 | $4.05 | $1,117.80 |
| | | FRASER, BILL | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | FRASER, STACEY | 196.00 | $0.10 | $19.60 | $4.05 | $793.80 |
| | | GALLOWAY, ROBERT | 232.00 | $0.10 | $23.20 | $4.05 | $939.60 |
| | | GROTHUES, MICHAEL | 281.00 | $0.10 | $28.10 | $4.05 | $1,138.05 |
| | | JENNINGS, ROBERT | 283.00 | $0.10 | $28.30 | $4.05 | $1,146.15 |
| | | KAY, LLOYD | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MACMANUS, CAMERON | 310.00 | $0.10 | $31.00 | $4.05 | $1,255.50 |
| | | MACMANUS, KEVIN | 289.00 | $0.10 | $28.90 | $4.05 | $1,170.45 |
| | | OCHSNER-GALLOWAY, | 268.00 | $0.10 | $26.80 | $4.05 | $1,085.40 |
| | | PEREZ, ALFREDO | 270.00 | $0.10 | $27.00 | $4.05 | $1,093.50 |
| | | POWDERS, MARK | 286.00 | $0.10 | $28.60 | $4.05 | $1,158.30 |
| | | PUCKETT, DONAL | 286.00 | $0.10 | $28.60 | $4.05 | $1,158.30 |
| | | REILLY, EDWARD | 230.00 | $0.10 | $23.00 | $4.05 | $931.50 |
| | | SHAKLEE, LANCE | 315.00 | $0.10 | $31.50 | $4.05 | $1,275.75 |
| | | SHEETS, TROY | 269.00 | $0.10 | $26.90 | $4.05 | $1,089.45 |
| | | SULLIVAN, JASON | 252.00 | $0.10 | $25.20 | $4.05 | $1,020.60 |
| | | SUMMERS, KEVIN | 268.00 | $0.10 | $26.80 | $4.05 | $1,085.40 |
| | | TOMPKINS, JOSHUA | 230.00 | $0.10 | $23.00 | $4.05 | $931.50 |
| | | WARD, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | YEIGH, BRENT | 171.00 | $0.10 | $17.10 | $4.05 | $692.55 |

Monthly Reported Hours =    6,614.00      Monthly Total Paid =    $661.40        Monthly Amount Due =    $26,766.70

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
### RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 3/1/2002 Pension Rate = $4.15 | | CENTANINO, PAUL | 209.00 | $0.10 | $20.90 | $4.05 | $846.45 |
| | | COERVER, PHILLIP | 203.00 | $0.10 | $20.30 | $4.05 | $822.15 |
| | | CONDELARO, CRAIG | 46.00 | $0.10 | $4.60 | $4.05 | $186.30 |
| | | POWDERS, MARK | 268.00 | $0.10 | $26.80 | $4.05 | $1,085.40 |
| | | FRANKLIN, GARY | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | FRASER, BILL | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | FRASER, STACEY | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | GALLOWAY, ROBERT | 162.00 | $0.10 | $16.20 | $4.05 | $656.10 |
| | | GROTHUES, MICHAEL | 198.00 | $0.10 | $19.80 | $4.05 | $801.90 |
| | | JENNINGS, ROBERT | 233.00 | $0.10 | $23.30 | $4.05 | $943.65 |
| | | JOHNSON, CHRISTOPH | 185.00 | $0.10 | $18.50 | $4.05 | $749.25 |
| | | KAY, LLOYD | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MACMANUS, CAMERON | 264.00 | $0.10 | $26.40 | $4.05 | $1,069.20 |
| | | MACMANUS, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MALSON, RANDALL | 89.00 | $0.10 | $8.90 | $4.05 | $360.45 |
| | | OCHSNER-GALLOWAY, | 162.00 | $0.10 | $16.20 | $4.05 | $656.10 |
| | | PEREZ, ALFREDO | 213.00 | $0.10 | $21.30 | $4.05 | $862.65 |
| | | POWDERS, MARK | 118.00 | $0.10 | $11.80 | $4.05 | $477.90 |
| | | PUCKETT, DONNA | 263.00 | $0.10 | $26.30 | $4.05 | $1,065.15 |
| | | REILLY, EDWARD | 215.00 | $0.10 | $21.50 | $4.05 | $870.75 |
| | | RYAN, PATRICK | 218.00 | $0.10 | $21.80 | $4.05 | $882.90 |
| | | SHAKLEE, LANCE | 303.00 | $0.10 | $30.30 | $4.05 | $1,227.15 |
| | | SHEETS, TROY | 255.00 | $0.10 | $25.50 | $4.05 | $1,032.75 |
| | | SULLIVAN, JASON | 227.00 | $0.10 | $22.70 | $4.05 | $919.35 |
| | | SUMMERS, KEVIN | 238.00 | $0.10 | $23.80 | $4.05 | $963.90 |
| | | TOMPKINS, JOSHUA | 198.00 | $0.10 | $19.80 | $4.05 | $801.90 |
| | | WARD, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | YEIGH, BRENT | 19.00 | $0.10 | $1.90 | $4.05 | $76.95 |

Monthly Reported Hours = 6,286.00    Monthly Total Paid = $628.60    Monthly Amount Due = $25,458.30

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 4/1/2002 Pension Rate = $4.15 | | CENTANINO, PAUL | 305.00 | $0.10 | $30.50 | $4.05 | $1,235.25 |
| | | COERVER, PHILLIP | 192.00 | $0.10 | $19.20 | $4.05 | $777.60 |
| | | DUNNING, JUSTIN | 133.00 | $0.10 | $13.30 | $4.05 | $538.65 |
| | | FRANKLIN, GARY | 301.00 | $0.10 | $30.10 | $4.05 | $1,219.05 |
| | | FRASER, BILL | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | FRASER, STACEY | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | GALLOWAY, ROBERT | 218.00 | $0.10 | $21.80 | $4.05 | $882.90 |
| | | GROTHUES, MICHAEL | 188.00 | $0.10 | $18.80 | $4.05 | $761.40 |
| | | JENNINGS, ROBERT | 278.00 | $0.10 | $27.80 | $4.05 | $1,125.90 |
| | | JOHNSON, CHRISTOPH | 231.00 | $0.10 | $23.10 | $4.05 | $935.55 |
| | | KAY, LLOYD | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MACMANUS, CAMERON | 283.00 | $0.10 | $28.30 | $4.05 | $1,146.15 |
| | | MACMANUS, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |
| | | MALSON, RANDALL | 172.00 | $0.10 | $17.20 | $4.05 | $696.60 |
| | | OCHSNER-GALLOWAY, | 218.00 | $0.10 | $21.80 | $4.05 | $882.90 |
| | | PEREZ, ALFREDO | 234.00 | $0.10 | $23.40 | $4.05 | $947.70 |
| | | POWDERS, MARK | 226.00 | $0.10 | $22.60 | $4.05 | $915.30 |
| | | PUCKETT, DONNA | 168.00 | $0.10 | $16.80 | $4.05 | $680.40 |
| | | REILLY, EDWARD | 225.00 | $0.10 | $22.50 | $4.05 | $911.25 |
| | | RYAN, PATRICK | 220.00 | $0.10 | $22.00 | $4.05 | $891.00 |
| | | SHAKLEE, LANCE | 240.00 | $0.10 | $24.00 | $4.05 | $972.00 |
| | | SHEETS, TROY | 271.00 | $0.10 | $27.10 | $4.05 | $1,097.55 |
| | | SULLIVAN, JASON | 253.00 | $0.10 | $25.30 | $4.05 | $1,024.65 |
| | | SUMMERS, KEVIN | 185.00 | $0.10 | $18.50 | $4.05 | $749.25 |
| | | TOMPKINS, JOSHUA | 104.00 | $0.10 | $10.40 | $4.05 | $421.20 |
| | | WARD, KEVIN | 400.00 | $0.10 | $40.00 | $4.05 | $1,620.00 |

Monthly Reported Hours = 6,645.00        Monthly Total Paid = $664.50        Monthly Amount Due = $26,912.25

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 5/1/2002 Pension Rate = $4.15 | | BOLTZ, HARLAN | 83.00 | $0.10 | $8.30 | $4.05 | $336.15 |
| | | CENTANNO, PAUL | 10.00 | $0.10 | $1.00 | $4.05 | $40.50 |
| | | COERVER, PHILLIP | 192.00 | $0.10 | $19.20 | $4.05 | $777.60 |
| | | DUNNING, JUSTIN | 46.00 | $0.10 | $4.60 | $4.05 | $186.30 |
| | | FRANKLIN, GARY | 100.00 | $0.10 | $10.00 | $4.05 | $405.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | GROTHUES, MICHAEL | 314.00 | $0.10 | $31.40 | $4.05 | $1,271.70 |
| | | JENNINGS, ROBERT | 157.00 | $0.10 | $15.70 | $4.05 | $635.85 |
| | | JOHNSON, CHRISTOPH | 116.00 | $0.10 | $11.60 | $4.05 | $469.80 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MACMANUS, CAMERON | 274.00 | $0.10 | $27.40 | $4.05 | $1,109.70 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MALSON, RANDALL | 55.00 | $0.10 | $5.50 | $4.05 | $222.75 |
| | | PEREZ, ALFREDO | 264.00 | $0.10 | $26.40 | $4.05 | $1,069.20 |
| | | POWDERS, MARK | 210.00 | $0.10 | $21.00 | $4.05 | $850.50 |
| | | PUCKETT, DONNA | 152.00 | $0.10 | $15.20 | $4.05 | $615.60 |
| | | REILLY, EDWARD | 136.00 | $0.10 | $13.60 | $4.05 | $550.80 |
| | | RYAN, PATRICK | 100.00 | $0.10 | $10.00 | $4.05 | $405.00 |
| | | SHAKLEE, LANCE | 186.00 | $0.10 | $18.60 | $4.05 | $753.30 |
| | | SHEETS, TROY | 231.00 | $0.10 | $23.10 | $4.05 | $935.55 |
| | | SULLIVAN, JASON | 240.00 | $0.10 | $24.00 | $4.05 | $972.00 |
| | | SUMMERS, KEVIN | 167.00 | $0.10 | $16.70 | $4.05 | $676.35 |
| | | TOMPKINS, JOSHUA | 55.00 | $0.10 | $5.50 | $4.05 | $222.75 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | YOUNG, KATHLEEN | 47.00 | $0.10 | $4.70 | $4.05 | $190.35 |
| | | YOUNG, RICKY | 15.00 | $0.10 | $1.50 | $4.05 | $60.75 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

Monthly Reported Hours =    4,150.00      Monthly Total Paid =    $415.00      Monthly Amount Due =    $16,807.50

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 6/1/2002 Pension Rate = | | | | | | | |
| | | BOLTZ, HARLAN | 244.00 | $0.10 | $24.40 | $4.05 | $988.20 |
| | | COERVER, PHILLIP | 213.00 | $0.10 | $21.30 | $4.05 | $862.65 |
| | | DUNNING, JUSTIN | 162.00 | $0.10 | $16.20 | $4.05 | $656.10 |
| | | FRANKLIN, GARY | 194.00 | $0.10 | $19.40 | $4.05 | $785.70 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | GALLOWAY, ROBERT | 50.00 | $0.10 | $5.00 | $4.05 | $202.50 |
| | | GROTHUES, MICHAEL | 262.00 | $0.10 | $26.20 | $4.05 | $1,061.10 |
| | | JENNINGS, ROBERT | 189.00 | $0.10 | $18.90 | $4.05 | $765.45 |
| | | JOHNSON, CHRISTOPH | 222.00 | $0.10 | $22.20 | $4.05 | $899.10 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MACMANUS, CAMERON | 214.00 | $0.10 | $21.40 | $4.05 | $866.70 |
| | | MACMANUS, KEVIN | 68.00 | $0.10 | $6.80 | $4.05 | $275.40 |
| | | OCHSNER-GALLOWAY, | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | PEREZ, ALFREDO | 248.00 | $0.10 | $24.80 | $4.05 | $1,004.40 |
| | | PUDGET, DONNAL | 178.00 | $0.10 | $17.80 | $4.05 | $720.90 |
| | | REILLY, EDWARD | 126.00 | $0.10 | $12.60 | $4.05 | $510.30 |
| | | SHEETS, TROY | 254.00 | $0.10 | $25.40 | $4.05 | $1,028.70 |
| | | SULLIVAN, JASON | 199.00 | $0.10 | $19.90 | $4.05 | $805.95 |
| | | SUMMERS, KEVIN | 197.00 | $0.10 | $19.70 | $4.05 | $797.85 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | YOUNG, RICKY | 32.00 | $0.10 | $3.20 | $4.05 | $129.60 |

Monthly Reported Hours = 4,052.00   Monthly Total Paid = $405.20   Monthly Amount Due = $16,410.60

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 7/1/2002 Pension Rate = $4.15 | | BOLTZ, HARLAN | 201.00 | $0.10 | $20.10 | $4.05 | $814.05 |
| | | COERVER, PHILLIP | 213.00 | $0.10 | $21.30 | $4.05 | $862.65 |
| | | DUNNING, JUSTIN | 236.00 | $0.10 | $23.60 | $4.05 | $955.80 |
| | | FRANKLIN, GARY | 208.00 | $0.10 | $20.80 | $4.05 | $842.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, MICHAEL | 22.00 | $0.10 | $2.20 | $4.05 | $89.10 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | GALLOWAY, ROBERT | 99.00 | $0.10 | $9.90 | $4.05 | $400.95 |
| | | GROTHUES, MICHAEL | 238.00 | $0.10 | $23.80 | $4.05 | $963.90 |
| | | JOHNSON, CHRISTOPH | 224.00 | $0.10 | $22.40 | $4.05 | $907.20 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | OCHSNER, GALLOWAY, | 99.00 | $0.10 | $9.90 | $4.05 | $400.95 |
| | | PEREZ, ALFREDO | 203.00 | $0.10 | $20.30 | $4.05 | $822.15 |
| | | PUCKETT, DONNIAL | 247.00 | $0.10 | $24.70 | $4.05 | $1,000.35 |
| | | REILLY, EDWARD | 163.00 | $0.10 | $16.30 | $4.05 | $660.15 |
| | | SHAKLEE, LANCE | 52.00 | $0.10 | $5.20 | $4.05 | $210.60 |
| | | SHEETS, TROY | 249.00 | $0.10 | $24.90 | $4.05 | $1,008.45 |
| | | SULLIVAN, JASON | 188.00 | $0.10 | $18.80 | $4.05 | $761.40 |
| | | SUMMERS, KEVIN | 214.00 | $0.10 | $21.40 | $4.05 | $866.70 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |

Monthly Reported Hours =  3,856.00     Monthly Total Paid =  $385.60     Monthly Amount Due =  $15,616.80

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

Month: 8/1/2002
Pension Rate = $4.15

| SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|
| ▮ | BOLTZ, HARLAN | 231.00 | $0.10 | $23.10 | $4.05 | $935.55 |
| ▮ | CENTANINO, PAUL | 10.00 | $0.10 | $1.00 | $4.05 | $40.50 |
| ▮ | COERVER, PHILLIP | 262.00 | $0.10 | $26.20 | $4.05 | $1,061.10 |
| ▮ | DUNNING, JUSTIN | 281.00 | $0.10 | $28.10 | $4.05 | $1,138.05 |
| ▮ | FRANKLIN, GARY | 240.00 | $0.10 | $24.00 | $4.05 | $972.00 |
| ▮ | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | FRASER, MICHAEL | 176.00 | $0.10 | $17.60 | $4.05 | $712.80 |
| ▮ | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | GALLOWAY, ROBERT | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | GROTHUES, MICHAEL | 222.00 | $0.10 | $22.20 | $4.05 | $899.10 |
| ▮ | GROVE, KEVIN | 272.00 | $0.10 | $27.20 | $4.05 | $1,101.60 |
| ▮ | IVEY, HARREL | 117.00 | $0.10 | $11.70 | $4.05 | $473.85 |
| ▮ | JOHNSON, CHRISTOPH | 308.00 | $0.10 | $30.80 | $4.05 | $1,247.40 |
| ▮ | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | MACMANUS, KEVIN | 222.00 | $0.10 | $22.20 | $4.05 | $899.10 |
| ▮ | OCHSNER-GALLOWAY, | 259.00 | $0.10 | $25.90 | $4.05 | $1,048.95 |
| ▮ | PEREZ, ALFREDO | 250.00 | $0.10 | $25.00 | $4.05 | $1,012.50 |
| ▮ | PUCKET, DONNAL | 216.00 | $0.10 | $21.60 | $4.05 | $874.80 |
| ▮ | REILLY, EDWARD | 303.00 | $0.10 | $30.30 | $4.05 | $1,227.15 |
| ▮ | SHEETS, TROY | 178.00 | $0.10 | $17.80 | $4.05 | $720.90 |
| ▮ | SIMMONS, JAMEY | 289.00 | $0.10 | $28.90 | $4.05 | $1,170.45 |
| ▮ | SULLIVAN, JASON | 251.00 | $0.10 | $25.10 | $4.05 | $1,016.55 |
| ▮ | SUMMERS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | WARD, KATHLEEN | 8.00 | $0.10 | $0.80 | $4.05 | $32.40 |
| ▮ | YOUNG, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| ▮ | YOUNG, RICKY | 8.00 | $0.10 | $0.80 | $4.05 | $32.40 |

Monthly Reported Hours = 5,103.00          Monthly Total Paid = $510.30          Monthly Amount Due = $20,667.15

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 9/1/2002 Pension Rate = $4.15 | | AMEN, RANDY | 130.00 | $0.10 | $13.00 | $4.05 | $526.50 |
| | | BOLTZ, HARLAN | 220.00 | $0.10 | $22.00 | $4.05 | $891.00 |
| | | COERVER, PHILLIP | 210.00 | $0.10 | $21.00 | $4.05 | $850.50 |
| | | DUNNING, JUSTIN | 218.00 | $0.10 | $21.80 | $4.05 | $882.90 |
| | | FRANKLIN, GARY | 245.00 | $0.10 | $24.50 | $4.05 | $992.25 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | GALLOWAY, ROBERT | 202.00 | $0.10 | $20.20 | $4.05 | $818.10 |
| | | GROTHUES, MICHAEL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | JENNINGS, ROBERT | 75.00 | $0.10 | $7.50 | $4.05 | $303.75 |
| | | JOHNSON, CHRISTOPH | 162.00 | $0.10 | $16.20 | $4.05 | $656.10 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | LIVINGSTON, BILL | 180.00 | $0.10 | $18.00 | $4.05 | $729.00 |
| | | LIVINGSTON, LINDA | 180.00 | $0.10 | $18.00 | $4.05 | $729.00 |
| | | MAGMANUS, CAMERON | 167.00 | $0.10 | $16.70 | $4.05 | $676.35 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MALSON, RANDALL | 144.00 | $0.10 | $14.40 | $4.05 | $583.20 |
| | | OCHSNER-GALLOWAY, | 202.00 | $0.10 | $20.20 | $4.05 | $818.10 |
| | | PEREZ, ALFREDO | 192.00 | $0.10 | $19.20 | $4.05 | $777.60 |
| | | PUCKETT, DONNAL | 231.00 | $0.10 | $23.10 | $4.05 | $935.55 |
| | | REILLY, EDWARD | 175.00 | $0.10 | $17.50 | $4.05 | $708.75 |
| | | SHEETS, TROY | 230.00 | $0.10 | $23.00 | $4.05 | $931.50 |
| | | SULLIVAN, JASON | 230.00 | $0.10 | $23.00 | $4.05 | $931.50 |
| | | SUMMERS, KEVIN | 215.00 | $0.10 | $21.50 | $4.05 | $870.75 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | YOUNG, KATHLEEN | 186.00 | $0.10 | $18.60 | $4.05 | $753.30 |
| | | YOUNG, RICKY | 185.00 | $0.10 | $18.50 | $4.05 | $749.25 |

Monthly Reported Hours = 5,180.00    Monthly Total Paid = $518.00    Monthly Amount Due = $20,979.00

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
### RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 10/1/2002 Pension Rate = $4.15 | | AMEN, RANDY | 393.00 | $0.10 | $39.30 | $4.05 | $1,591.65 |
| | | BOLTZ, HARLAN | 326.00 | $0.10 | $32.60 | $4.05 | $1,320.30 |
| | | CESTANINO, PAUL | 13.00 | $0.10 | $1.30 | $4.05 | $52.65 |
| | | COERVER, PHILLIP | 291.00 | $0.10 | $29.10 | $4.05 | $1,178.55 |
| | | DUNNING, JUSTIN | 329.00 | $0.10 | $32.90 | $4.05 | $1,332.45 |
| | | FRANKLIN, GARY | 326.00 | $0.10 | $32.60 | $4.05 | $1,320.30 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | GALLOWAY, ROBERT | 234.00 | $0.10 | $23.40 | $4.05 | $947.70 |
| | | GROTHUES, MICHAEL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | JENNINGS, ROBERT | 323.00 | $0.10 | $32.30 | $4.05 | $1,308.15 |
| | | JOHNSON, CHRISTOPH | 252.00 | $0.10 | $25.20 | $4.05 | $1,020.60 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | LIVINGSTON, BILL | 300.00 | $0.10 | $30.00 | $4.05 | $1,215.00 |
| | | LIVINGSTON, LINDA | 300.00 | $0.10 | $30.00 | $4.05 | $1,215.00 |
| | | MACMANUS, CAMERON | 383.00 | $0.10 | $38.30 | $4.05 | $1,551.15 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MALSON, RANDALL | 134.00 | $0.10 | $13.40 | $4.05 | $542.70 |
| | | OCHSNER-GALLOWAY, | 234.00 | $0.10 | $23.40 | $4.05 | $947.70 |
| | | PEREZ, ALFREDO | 326.00 | $0.10 | $32.60 | $4.05 | $1,320.30 |
| | | PUCKETT, DONNAL | 321.00 | $0.10 | $32.10 | $4.05 | $1,300.05 |
| | | REILLY, EDWARD | 218.00 | $0.10 | $21.80 | $4.05 | $882.90 |
| | | SHEETS, TROY | 261.00 | $0.10 | $26.10 | $4.05 | $1,057.05 |
| | | SULLIVAN, JASON | 327.00 | $0.10 | $32.70 | $4.05 | $1,324.35 |
| | | SUMMERS, KEVIN | 289.00 | $0.10 | $28.90 | $4.05 | $1,170.45 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | YOUNG, KATHLEEN | 345.00 | $0.10 | $34.50 | $4.05 | $1,397.25 |
| | | YOUNG, RICKY | 337.00 | $0.10 | $33.70 | $4.05 | $1,364.85 |

Monthly Reported Hours = 7,462.00    Monthly Total Paid = $746.20    Monthly Amount Due = $30,221.10

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 11/1/2002 Pension Rate = $4.15 | | AMEN, RANDY | 244.00 | $0.10 | $24.40 | $4.05 | $988.20 |
| | | BOLTZ, HARLAN | 293.00 | $0.10 | $29.30 | $4.05 | $1,186.65 |
| | | COERVER, PHILLIP | 265.00 | $0.10 | $26.50 | $4.05 | $1,073.25 |
| | | DUNNING, JUSTIN | 231.00 | $0.10 | $23.10 | $4.05 | $935.55 |
| | | FRANKLIN, GARY | 228.00 | $0.10 | $22.80 | $4.05 | $923.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | FRASER, STACEY | 20.00 | $0.10 | $2.00 | $4.05 | $81.00 |
| | | GALLOWAY, ROBERT | 270.00 | $0.10 | $27.00 | $4.05 | $1,093.50 |
| | | GROTHUES, MICHAEL | 223.00 | $0.10 | $22.30 | $4.05 | $903.15 |
| | | JENNINGS, ROBERT | 226.00 | $0.10 | $22.60 | $4.05 | $915.30 |
| | | JOHNSON, CHRISTOPH | 283.00 | $0.10 | $28.30 | $4.05 | $1,146.15 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | LIVINGSTON, BILL | 100.00 | $0.10 | $10.00 | $4.05 | $405.00 |
| | | LIVINGSTON, LINDA | 100.00 | $0.10 | $10.00 | $4.05 | $405.00 |
| | | MACMANUS, CAMERON | 252.00 | $0.10 | $25.20 | $4.05 | $1,020.60 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | MALSON, RANDALL | 47.00 | $0.10 | $4.70 | $4.05 | $190.35 |
| | | OCHSNER-GALLOWAY, | 270.00 | $0.10 | $27.00 | $4.05 | $1,093.50 |
| | | PEREZ, ALFREDO | 298.00 | $0.10 | $29.80 | $4.05 | $1,206.90 |
| | | PUCKETT, DONNIAL | 40.00 | $0.10 | $4.00 | $4.05 | $162.00 |
| | | REILLY, EDWARD | 278.00 | $0.10 | $27.80 | $4.05 | $1,125.90 |
| | | SHEETS, TROY | 248.00 | $0.10 | $24.80 | $4.05 | $1,004.40 |
| | | SULLIVAN, JASON | 281.00 | $0.10 | $28.10 | $4.05 | $1,138.05 |
| | | SUMMERS, KEVIN | 245.00 | $0.10 | $24.50 | $4.05 | $992.25 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | | YOUNG, KATHLEEN | 263.00 | $0.10 | $26.30 | $4.05 | $1,065.15 |
| | | YOUNG, RICKY | 259.00 | $0.10 | $25.90 | $4.05 | $1,048.95 |

Monthly Reported Hours = 5,764.00    Monthly Total Paid = $576.40    Monthly Amount Due = $23,344.20

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 12/1/2002 Pension Rate = $4.15 | ▓▓▓ | AMEN, RANDY | 236.00 | $0.10 | $23.60 | $4.05 | $955.80 |
| | ▓▓▓ | BOLTZ, HARLAN | 307.00 | $0.10 | $30.70 | $4.05 | $1,243.35 |
| | ▓▓▓ | COERVER, PHILLIP | 188.00 | $0.10 | $18.80 | $4.05 | $761.40 |
| | ▓▓▓ | DUNNING, JUSTIN | 198.00 | $0.10 | $19.80 | $4.05 | $801.90 |
| | ▓▓▓ | FRANKLIN, GARY | 176.00 | $0.10 | $17.60 | $4.05 | $712.80 |
| | ▓▓▓ | FRASER, BILL | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | ▓▓▓ | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | ▓▓▓ | GALLOWAY, ROBERT | 146.00 | $0.10 | $14.60 | $4.05 | $591.30 |
| | ▓▓▓ | GROTHUES, MICHAEL | 234.00 | $0.10 | $23.40 | $4.05 | $947.70 |
| | ▓▓▓ | JENNINGS, ROBERT | 179.00 | $0.10 | $17.90 | $4.05 | $724.95 |
| | ▓▓▓ | JOHNSON, CHRISTOPH | 125.00 | $0.10 | $12.50 | $4.05 | $506.25 |
| | ▓▓▓ | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | ▓▓▓ | MACMANUS, CAMERON | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | ▓▓▓ | MACMANUS, KEVIN | 241.00 | $0.10 | $24.10 | $4.05 | $976.05 |
| | ▓▓▓ | MALSON, RANDALL | 112.00 | $0.10 | $11.20 | $4.05 | $453.60 |
| | ▓▓▓ | OCHSNER-GALLOWAY, | 146.00 | $0.10 | $14.60 | $4.05 | $591.30 |
| | ▓▓▓ | PEREZ, ALFREDO | 292.00 | $0.10 | $29.20 | $4.05 | $1,182.60 |
| | ▓▓▓ | PUCKETT, DONNA | 40.00 | $0.10 | $4.00 | $4.05 | $162.00 |
| | ▓▓▓ | REILLY, EDWARD | 240.00 | $0.10 | $24.00 | $4.05 | $972.00 |
| | ▓▓▓ | SHEETS, TROY | 203.00 | $0.10 | $20.30 | $4.05 | $822.15 |
| | ▓▓▓ | SULLIVAN, JASON | 170.00 | $0.10 | $17.00 | $4.05 | $688.50 |
| | ▓▓▓ | SUMMERS, KEVIN | 180.00 | $0.10 | $18.00 | $4.05 | $729.00 |
| | ▓▓▓ | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $4.05 | $810.00 |
| | ▓▓▓ | YOUNG, KATHLEEN | 300.00 | $0.10 | $30.00 | $4.05 | $1,215.00 |
| | ▓▓▓ | YOUNG, RICKY | 236.00 | $0.10 | $23.60 | $4.05 | $955.80 |

| | | | Monthly Reported Hours = 4,949.00 | | Monthly Total Paid = $494.90 | | Monthly Amount Due = $20,043.45 |
| 2002: | | | Yearly Reported Hours = 65,095.00 | | Yearly Total Paid = $6,509.50 | | Yearly Amount Due = $263,634.75 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 1/1/2003 Pension Rate = $5.30 | | AMEN, RANDY | 177.00 | $0.10 | $17.70 | $5.20 | $920.40 |
| | | BOLTZ, HARLAN | 354.00 | $0.10 | $35.40 | $5.20 | $1,840.80 |
| | | COERTZ, PHILLIP | 206.00 | $0.10 | $20.60 | $5.20 | $1,071.20 |
| | | DUNNING, JUSTIN | 191.00 | $0.10 | $19.10 | $5.20 | $993.20 |
| | | FRANKLIN, GARY | 250.00 | $0.10 | $25.00 | $5.20 | $1,300.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | GALLOWAY, ROBERT | 10.00 | $0.10 | $1.00 | $5.20 | $52.00 |
| | | GROTHUES, MICHAEL | 128.00 | $0.10 | $12.80 | $5.20 | $665.60 |
| | | JENNINGS, ROBERT | 281.00 | $0.10 | $28.10 | $5.20 | $1,461.20 |
| | | JOHNSON, CHRISTOPH | 197.00 | $0.10 | $19.70 | $5.20 | $1,024.40 |
| | | KAY, LLOYD | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | MACMANUS, CAMERON | 73.00 | $0.10 | $7.30 | $5.20 | $379.60 |
| | | MACMANUS, KEVIN | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | MALSON, RANDALL | 98.00 | $0.10 | $9.80 | $5.20 | $509.60 |
| | | OCHSNER-GALLOWAY, | 10.00 | $0.10 | $1.00 | $5.20 | $52.00 |
| | | PEREZ, ALFREDO | 357.00 | $0.10 | $35.70 | $5.20 | $1,856.40 |
| | | REILLY, EDWARD | 244.00 | $0.10 | $24.40 | $5.20 | $1,268.80 |
| | | SHEETS, TROY | 243.00 | $0.10 | $24.30 | $5.20 | $1,263.60 |
| | | SULLIVAN, JASON | 155.00 | $0.10 | $15.50 | $5.20 | $806.00 |
| | | SUMMERS, KEVIN | 224.00 | $0.10 | $22.40 | $5.20 | $1,164.80 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | YOUNG, KATHLEEN | 175.00 | $0.10 | $17.50 | $5.20 | $910.00 |
| | | YOUNG, RICKY | 277.00 | $0.10 | $27.70 | $5.20 | $1,440.40 |

Monthly Reported Hours = 4,650.00    Monthly Total Paid = $465.00    Monthly Amount Due = $24,180.00

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 2/1/2003 Pension Rate = $5.30 | | AMEN, RANDY | 189.00 | $0.10 | $18.90 | $5.20 | $982.80 |
| | | BOLTZ, HARLAN | 125.00 | $0.10 | $12.50 | $5.20 | $650.00 |
| | | CENTANINO, PAUL | 229.00 | $0.10 | $22.90 | $5.20 | $1,190.80 |
| | | DUNNING, JUSTIN | 163.00 | $0.10 | $16.30 | $5.20 | $847.60 |
| | | FRANKLIN, GARY | 179.00 | $0.10 | $17.90 | $5.20 | $930.80 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | GALLOWAY, ROBERT | 181.00 | $0.10 | $18.10 | $5.20 | $941.20 |
| | | JOHNSON, CHRISTOPH | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | KAY, LLOYD | 259.00 | $0.10 | $25.90 | $5.20 | $1,346.80 |
| | | MACMANUS, CAMERON | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | MACMANUS, KEVIN | 177.00 | $0.10 | $17.70 | $5.20 | $920.40 |
| | | MALSON, RANDALL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | PEREZ, ALFREDO | 121.00 | $0.10 | $12.10 | $5.20 | $629.20 |
| | | REILLY, EDWARD | 160.00 | $0.10 | $16.00 | $5.20 | $832.00 |
| | | SHEETS, TROY | 226.00 | $0.10 | $22.60 | $5.20 | $1,175.20 |
| | | SULLIVAN, JASON | 231.00 | $0.10 | $23.10 | $5.20 | $1,201.20 |
| | | SUMMERS, KEVIN | 137.00 | $0.10 | $13.70 | $5.20 | $712.40 |
| | | WARD, KEVIN | 283.00 | $0.10 | $28.30 | $5.20 | $1,471.60 |
| | | YOUNG, RICKY | 223.00 | $0.10 | $22.30 | $5.20 | $1,159.60 |

Monthly Reported Hours = 3,883.00     Monthly Total Paid = $388.30     Monthly Amount Due = $20,191.60

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
### RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 3/1/2003 Pension Rate = $5.30 | | | | | | | |
| | | AMEN, RANDY | 229.00 | $0.10 | $22.90 | $5.20 | $1,190.80 |
| | | BOLTZ, HARLAN | 61.00 | $0.10 | $6.10 | $5.20 | $317.20 |
| | | COERVER, PHILLIP | 211.00 | $0.10 | $21.10 | $5.20 | $1,097.20 |
| | | DUNNING, JUSTIN | 225.00 | $0.10 | $22.50 | $5.20 | $1,170.00 |
| | | FRANKLIN, GARY | 126.00 | $0.10 | $12.60 | $5.20 | $655.20 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 214.00 | $0.10 | $21.40 | $5.20 | $1,112.80 |
| | | GALLOWAY, ROBERT | 153.00 | $0.10 | $15.30 | $5.20 | $795.60 |
| | | JENNINGS, ROBERT | 170.00 | $0.10 | $17.00 | $5.20 | $884.00 |
| | | JOHNSON, CHRISTOPH | 179.00 | $0.10 | $17.90 | $5.20 | $930.80 |
| | | MACHANUS, KEVIN | 205.00 | $0.10 | $20.50 | $5.20 | $1,066.00 |
| | | OCHSNER-GALLOWAY, | 153.00 | $0.10 | $15.30 | $5.20 | $795.60 |
| | | PEREZ, ALFREDO | 241.00 | $0.10 | $24.10 | $5.20 | $1,253.20 |
| | | REILLY, EDWARD | 122.00 | $0.10 | $12.20 | $5.20 | $634.40 |
| | | SHEETS, TROY | 214.00 | $0.10 | $21.40 | $5.20 | $1,112.80 |
| | | SULLIVAN, JASON | 195.00 | $0.10 | $19.50 | $5.20 | $1,014.00 |
| | | SUMMERS, KEVIN | 264.00 | $0.10 | $26.40 | $5.20 | $1,372.80 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | YOUNG, KATHLEEN | 141.00 | $0.10 | $14.10 | $5.20 | $733.20 |
| | | YOUNG, RICKY | 209.00 | $0.10 | $20.90 | $5.20 | $1,086.80 |

Monthly Reported Hours = 3,712.00    Monthly Total Paid = $371.20    Monthly Amount Due = $19,302.40

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 4/1/2003 Pension Rate = $5.30 | | AMEN, RANDY | 233.00 | $0.10 | $23.30 | $5.20 | $1,211.60 |
| | | BOLTZ, HARLAN | 5.00 | $0.10 | $0.50 | $5.20 | $26.00 |
| | | CORNER, PHILLIP | 288.00 | $0.10 | $28.80 | $5.20 | $1,393.60 |
| | | DUNNING, JUSTIN | 191.00 | $0.10 | $19.10 | $5.20 | $993.20 |
| | | FRANKLIN, GARY | 314.00 | $0.10 | $31.40 | $5.20 | $1,632.80 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | GALLOWAY, ROBERT | 242.00 | $0.10 | $24.20 | $5.20 | $1,258.40 |
| | | JENNINGS, ROBERT | 265.00 | $0.10 | $26.50 | $5.20 | $1,378.00 |
| | | JOHNSON, CHRISTOPH | 167.00 | $0.10 | $16.70 | $5.20 | $868.40 |
| | | MACMANUS, KEVIN | 278.00 | $0.10 | $27.80 | $5.20 | $1,445.60 |
| | | OCHSNER-GALLOWAY, | 242.00 | $0.10 | $24.20 | $5.20 | $1,258.40 |
| | | PEREZ, ALFREDO | 255.00 | $0.10 | $25.50 | $5.20 | $1,326.00 |
| | | POWDERS, MARK | 29.00 | $0.10 | $2.90 | $5.20 | $150.80 |
| | | REILLY, EDWARD | 307.00 | $0.10 | $30.70 | $5.20 | $1,596.40 |
| | | SHEETS, TROY | 203.00 | $0.10 | $20.30 | $5.20 | $1,055.60 |
| | | SULLIVAN, JASON | 223.00 | $0.10 | $22.30 | $5.20 | $1,159.60 |
| | | SUMMERS, KEVIN | 273.00 | $0.10 | $27.30 | $5.20 | $1,419.60 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | YOUNG, KATHLEEN | 167.00 | $0.10 | $16.70 | $5.20 | $868.40 |
| | | YOUNG, RICKY | 195.00 | $0.10 | $19.50 | $5.20 | $1,014.00 |

| Monthly Reported Hours = | 4,457.00 | Monthly Total Paid = | $445.70 | Monthly Amount Due = | $23,176.40 |
|---|---|---|---|---|---|

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 5/1/2003 Pension Rate = $5.30 | | AMEN, RANDY | 285.00 | $0.10 | $28.50 | $5.20 | $1,482.00 |
| | | BOLTZ, HARLAN | 85.00 | $0.10 | $8.50 | $5.20 | $442.00 |
| | | COERVER, PHILLIP | 311.00 | $0.10 | $31.10 | $5.20 | $1,617.20 |
| | | DUNNING, JUSTIN | 289.00 | $0.10 | $28.90 | $5.20 | $1,502.80 |
| | | FRANKLIN, GARY | 313.00 | $0.10 | $31.30 | $5.20 | $1,627.60 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 208.00 | $0.10 | $20.80 | $5.20 | $1,081.60 |
| | | GALLOWAY, ROBERT | 267.00 | $0.10 | $26.70 | $5.20 | $1,388.40 |
| | | JENNINGS, ROBERT | 297.00 | $0.10 | $29.70 | $5.20 | $1,544.40 |
| | | JOHNSON, CHRISTOPH | 340.00 | $0.10 | $34.00 | $5.20 | $1,768.00 |
| | | LIVINGSTON, BILL | 178.00 | $0.10 | $17.80 | $5.20 | $925.60 |
| | | MACMANUS, CAMERON | 182.00 | $0.10 | $18.20 | $5.20 | $946.40 |
| | | MACMANUS, KEVIN | 336.00 | $0.10 | $33.60 | $5.20 | $1,747.20 |
| | | MALSON, RANDALL | 168.00 | $0.10 | $16.80 | $5.20 | $873.60 |
| | | OCHSNER-GALLOWAY, | 267.00 | $0.10 | $26.70 | $5.20 | $1,388.40 |
| | | PEREZ, ALFREDO | 285.00 | $0.10 | $28.50 | $5.20 | $1,482.00 |
| | | POWDERS, MARK | 251.00 | $0.10 | $25.10 | $5.20 | $1,305.20 |
| | | REILLY, EDWARD | 345.00 | $0.10 | $34.50 | $5.20 | $1,794.00 |
| | | SHEETS, TROY | 302.00 | $0.10 | $30.20 | $5.20 | $1,570.40 |
| | | SULLIVAN, JASON | 310.00 | $0.10 | $31.00 | $5.20 | $1,612.00 |
| | | SUMMERS, KEVIN | 349.00 | $0.10 | $34.90 | $5.20 | $1,814.80 |
| | | WARD, KEVIN | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | YOUNG, KATHLEEN | 230.00 | $0.10 | $23.00 | $5.20 | $1,196.00 |
| | | YOUNG, RICKY | 224.00 | $0.10 | $22.40 | $5.20 | $1,164.80 |

Monthly Reported Hours = 6,222.00          Monthly Total Paid = $622.20          Monthly Amount Due = $32,354.40

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 6/1/2003 | | AMEN, RANDY | 173.00 | $0.10 | $17.30 | $5.20 | $899.60 |
| Pension Rate = | | COERVER, PHILLIP | 256.00 | $0.10 | $25.60 | $5.20 | $1,331.20 |
| $5.30 | | DUNNING, JUSTIN | 207.00 | $0.10 | $20.70 | $5.20 | $1,076.40 |
| | | FRANKLIN, GARY | 247.00 | $0.10 | $24.70 | $5.20 | $1,284.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 180.00 | $0.10 | $18.00 | $5.20 | $936.00 |
| | | GALLOWAY, ROBERT | 202.00 | $0.10 | $20.20 | $5.20 | $1,050.40 |
| | | GROTHUES, MICHAEL | 28.01 | $0.10 | $2.80 | $5.20 | $145.60 |
| | | JENNINGS, ROBERT | 231.00 | $0.10 | $23.10 | $5.20 | $1,201.20 |
| | | JOHNSON, CHRISTOPH | 254.00 | $0.10 | $25.40 | $5.20 | $1,320.80 |
| | | LIVINGSTON, BILL | 61.00 | $0.10 | $6.10 | $5.20 | $317.20 |
| | | MACHANUS, CAMERON | 285.00 | $0.10 | $28.50 | $5.20 | $1,482.00 |
| | | MACHANUS, KEVIN | 232.00 | $0.10 | $23.20 | $5.20 | $1,206.40 |
| | | OCHSNER-GALLOWAY, | 202.00 | $0.10 | $20.20 | $5.20 | $1,050.40 |
| | | PEREZ, ALFREDO | 236.00 | $0.10 | $23.60 | $5.20 | $1,227.20 |
| | | REILLY, EDWARD | 331.00 | $0.10 | $33.10 | $5.20 | $1,721.20 |
| | | SHEETS, TROY | 199.00 | $0.10 | $19.90 | $5.20 | $1,034.80 |
| | | SULLIVAN, JASON | 235.00 | $0.10 | $23.50 | $5.20 | $1,222.00 |
| | | SUMMERS, KEVIN | 259.00 | $0.10 | $25.90 | $5.20 | $1,346.80 |
| | | WARD, KEVIN | 191.00 | $0.10 | $19.10 | $5.20 | $993.20 |
| | | YOUNG, KATHLEEN | 182.00 | $0.10 | $18.20 | $5.20 | $946.40 |
| | | YOUNG, RICKY | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | Monthly Reported Hours = | 4,591.00 | Monthly Total Paid = | $459.10 | Monthly Amount Due = | $23,873.20 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 7/1/2003 | | AMEN, RANDY | 382.00 | $0.10 | $38.20 | $5.20 | $1,986.40 |
| Pension Rate = | | COERVER, PHILLIP | 314.00 | $0.10 | $31.40 | $5.20 | $1,632.80 |
| $5.30 | | DUNNING, JUSTIN | 340.00 | $0.10 | $34.00 | $5.20 | $1,766.00 |
| | | FRANKLIN, GARY | 217.00 | $0.10 | $21.70 | $5.20 | $1,128.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 238.00 | $0.10 | $23.80 | $5.20 | $1,237.60 |
| | | GROTHJES, MICHAEL | 387.00 | $0.10 | $38.70 | $5.20 | $2,012.40 |
| | | JENNINGS, ROBERT | 241.00 | $0.10 | $24.10 | $5.20 | $1,253.20 |
| | | JOHNSON, CHRISTOPH | 275.00 | $0.10 | $27.50 | $5.20 | $1,430.00 |
| | | MACMANUS, CAMERON | 294.00 | $0.10 | $29.40 | $5.20 | $1,528.80 |
| | | MACMANUS, KEVIN | 314.00 | $0.10 | $31.40 | $5.20 | $1,632.80 |
| | | PEREZ, ALFREDO | 310.00 | $0.10 | $31.00 | $5.20 | $1,612.00 |
| | | REILLY, EDWARD | 339.00 | $0.10 | $33.90 | $5.20 | $1,762.80 |
| | | SHEETS, TROY | 297.00 | $0.10 | $29.70 | $5.20 | $1,544.40 |
| | | SULLIVAN, JASON | 281.00 | $0.10 | $28.10 | $5.20 | $1,461.20 |
| | | SUMMERS, KEVIN | 282.00 | $0.10 | $28.20 | $5.20 | $1,466.40 |
| | | WARD, KEVIN | 285.00 | $0.10 | $28.50 | $5.20 | $1,482.00 |

Calpine Project Labor Agreement:
Pension Rate =
$5.30

| | YOUNG, KATHLEEN | 147.00 | | | | |

| | Monthly Reported Hours = 5,143.00 | Monthly Total Paid = $514.30 | | Monthly Amount Due = $26,743.60 |
|---|---|---|---|---|

| | 147.00 | | $0.10 | $14.70 | $5.20 | $764.40 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 8/1/2003 | | | | | | | |
| Pension Rate = $5.30 | | | | | | | |
| | | AMEN, RANDY | 177.00 | $0.10 | $17.70 | $5.20 | $920.40 |
| | | BURKE, DANIEL | 131.00 | $0.10 | $13.10 | $5.20 | $681.20 |
| | | COERVER, PHILLIP | 292.00 | $0.10 | $29.20 | $5.20 | $1,518.40 |
| | | FRANKLIN, GARY | 271.00 | $0.10 | $27.10 | $5.20 | $1,409.20 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 8.00 | $0.10 | $0.80 | $5.20 | $41.60 |
| | | GROTHUES, MICHAEL | 319.00 | $0.10 | $31.90 | $5.20 | $1,658.80 |
| | | JENNINGS, ROBERT | 8.00 | $0.10 | $0.80 | $5.20 | $41.60 |
| | | JOHNSON, CHRISTOPH | 234.00 | $0.10 | $23.40 | $5.20 | $1,216.80 |
| | | MACMANUS, CAMERON | 334.00 | $0.10 | $33.40 | $5.20 | $1,736.80 |
| | | MACMANUS, KEVIN | 255.00 | $0.10 | $25.50 | $5.20 | $1,326.00 |
| | | MALSON, RANDALL | 93.00 | $0.10 | $9.30 | $5.20 | $483.60 |
| | | PEREZ, ALFREDO | 160.00 | $0.10 | $16.00 | $5.20 | $832.00 |
| | | REILLY, EDWARD | 269.00 | $0.10 | $26.90 | $5.20 | $1,398.80 |
| | | SHEETS, TROY | 244.00 | $0.10 | $24.40 | $5.20 | $1,268.80 |
| | | SOLARI, GARY | 8.00 | $0.10 | $0.80 | $5.20 | $41.60 |
| | | SULLIVAN, JASON | 248.00 | $0.10 | $24.80 | $5.20 | $1,289.60 |
| | | WARD, KEVIN | 121.00 | $0.10 | $12.10 | $5.20 | $629.20 |

Colusa, CA Project Labor Agreement:
Pension Rate = $5.30

| | | POWDERS, MARK | 219.00 | $0.10 | $21.90 | $5.20 | $1,138.80 |

Calpine Project Labor Agreement:
Pension Rate = $5.30

| | | JOHNSON, ROBERT | 109.00 | $0.10 | $10.90 | $5.20 | $566.80 |
| | | YOUNG, KATHLEEN | 76.00 | $0.10 | $7.60 | $5.20 | $395.20 |

Monthly Reported Hours = 3,776.00     Monthly Total Paid = $377.60     Monthly Amount Due = $19,635.20

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 9/1/2003 $5.30 | | BURKE, DANIEL | 40.00 | $0.10 | $4.00 | $5.20 | $208.00 |
| | | COERVER, PHILLIP | 239.00 | $0.10 | $23.90 | $5.20 | $1,242.80 |
| | | FRANKLIN, GARY | 210.00 | $0.10 | $21.00 | $5.20 | $1,092.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 189.00 | $0.10 | $18.90 | $5.20 | $982.80 |
| | | GROTHUES, MICHAEL | 256.00 | $0.10 | $25.60 | $5.20 | $1,331.20 |
| | | JOHNSON, CHRISTOPH | 162.00 | $0.10 | $16.20 | $5.20 | $842.40 |
| | | MACMANUS, CAMERON | 277.00 | $0.10 | $27.70 | $5.20 | $1,440.40 |
| | | MACMANUS, KEVIN | 279.00 | $0.10 | $27.90 | $5.20 | $1,450.80 |
| | | MALSON, RANDALL | 217.00 | $0.10 | $21.70 | $5.20 | $1,128.40 |
| | | MOXLEY, EUGENE | 162.00 | $0.10 | $16.20 | $5.20 | $842.40 |
| | | PEREZ, ALFREDO | 229.00 | $0.10 | $22.90 | $5.20 | $1,190.80 |
| | | PUCKETT, DONNIAL | 15.00 | $0.10 | $1.50 | $5.20 | $78.00 |
| | | REILLY, EDWARD | 296.00 | $0.10 | $29.60 | $5.20 | $1,539.20 |
| | | SHEETS, TROY | 235.00 | $0.10 | $23.50 | $5.20 | $1,222.00 |
| | | SULLIVAN, JASON | 254.00 | $0.10 | $25.40 | $5.20 | $1,320.80 |
| | | WARD, KEVIN | 204.00 | $0.10 | $20.40 | $5.20 | $1,060.80 |
| | | YOUNG, RICKY | 101.00 | $0.10 | $10.10 | $5.20 | $525.20 |

Calpine Project Labor Agreement:
Pension Rate = $5.30

| | | JOHNSON, ROBERT | 34.00 | $0.10 | $3.40 | $5.20 | $176.80 |
|---|---|---|---|---|---|---|---|
| | | YOUNG, KATHLEEN | 59.00 | $0.10 | $5.90 | $5.20 | $306.80 |

Monthly Reported Hours = 3,658.00    Monthly Total Paid = $365.80    Monthly Amount Due = $19,021.60

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 10/1/2003 Pension Rate = $5.30 | | | | | | | |
| | | AMEN, RANDY | 211.00 | $0.10 | $21.10 | $5.20 | $1,097.20 |
| | | BOLTZ, HARLAN | 351.00 | $0.10 | $35.10 | $5.20 | $1,825.20 |
| | | BURKE, DANIEL | 30.00 | $0.10 | $3.00 | $5.20 | $156.00 |
| | | COERVER, PHILLIP | 292.00 | $0.10 | $29.20 | $5.20 | $1,518.40 |
| | | FRANKLIN, GARY | 353.00 | $0.10 | $35.30 | $5.20 | $1,835.60 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 332.00 | $0.10 | $33.20 | $5.20 | $1,726.40 |
| | | GROTHUES, MICHAEL | 362.00 | $0.10 | $36.20 | $5.20 | $1,882.40 |
| | | JOHNSON, CHRISTOPH | 261.00 | $0.10 | $26.10 | $5.20 | $1,357.20 |
| | | MACMANUS, CAMERON | 292.00 | $0.10 | $29.20 | $5.20 | $1,518.40 |
| | | MACMANUS, KEVIN | 343.00 | $0.10 | $34.30 | $5.20 | $1,783.60 |
| | | MALSON, RANDALL | 358.00 | $0.10 | $35.80 | $5.20 | $1,861.60 |
| | | MOXLEY, EUGENE | 401.00 | $0.10 | $40.10 | $5.20 | $2,085.20 |
| | | PEREZ, ALFREDO | 317.00 | $0.10 | $31.70 | $5.20 | $1,648.40 |
| | | PUCKETT, DONNIAL | 349.00 | $0.10 | $34.90 | $5.20 | $1,814.80 |
| | | REILLY, EDWARD | 379.00 | $0.10 | $37.90 | $5.20 | $1,970.80 |
| | | SHEETS, TROY | 300.00 | $0.10 | $30.00 | $5.20 | $1,560.00 |
| | | SULLIVAN, JASON | 344.00 | $0.10 | $34.40 | $5.20 | $1,788.80 |
| Calpine Project Labor Agreement: Pension Rate = | | | | | | | |
| | | JOHNSON, ROBERT | 80.00 | $0.10 | $8.00 | $5.20 | $416.00 |
| | | SHAKLEE, LANCE | 381.00 | $0.10 | $38.10 | $5.20 | $1,981.20 |
| | | YOUNG, RICKY | 214.00 | $0.10 | $21.40 | $5.20 | $1,112.80 |
| Coose Bay, OR Project Labor Agreement: Pension Rate = $3.00 | | | | | | | |
| | | SOLARI, GARY | 66.00 | $0.10 | $6.60 | $2.90 | $191.40 |
| | | SUMMERS, KEVIN | 277.00 | $0.10 | $27.70 | $2.90 | $803.30 |

Monthly Reported Hours = 6,511.00    Monthly Total Paid = $651.10    Monthly Amount Due = $33,063.30

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
# RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 11/1/2003 Pension Rate = $5.30 | | | | | | | |
| | | AMEN, RANDY | 266.00 | $0.10 | $26.60 | $5.20 | $1,383.20 |
| | | BOLTZ, HARLAN | 194.00 | $0.10 | $19.40 | $5.20 | $1,008.80 |
| | | COERVER, PHILLIP | 239.00 | $0.10 | $23.90 | $5.20 | $1,242.80 |
| | | FRANKLIN, GARY | 287.00 | $0.10 | $28.70 | $5.20 | $1,492.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 270.00 | $0.10 | $27.00 | $5.20 | $1,404.00 |
| | | GROTHUES, MICHAEL | 241.00 | $0.10 | $24.10 | $5.20 | $1,253.20 |
| | | JOHNSON, CHRISTOPH | 244.00 | $0.10 | $24.40 | $5.20 | $1,268.80 |
| | | MACMANUS, CAMERON | 247.00 | $0.10 | $24.70 | $5.20 | $1,284.40 |
| | | MACMANUS, KEVIN | 249.00 | $0.10 | $24.90 | $5.20 | $1,294.80 |
| | | MALSON, RANDALL | 255.00 | $0.10 | $25.50 | $5.20 | $1,326.00 |
| | | MOXLEY, EUGENE | 269.00 | $0.10 | $26.90 | $5.20 | $1,398.80 |
| | | PEREZ, ALFREDO | 298.00 | $0.10 | $29.80 | $5.20 | $1,549.60 |
| | | PRIEST, THOMAS | 73.00 | $0.10 | $7.30 | $5.20 | $379.60 |
| | | PUCKETT, DONNAL | 245.00 | $0.10 | $24.50 | $5.20 | $1,274.00 |
| | | REILLY, EDWARD | 279.00 | $0.10 | $27.90 | $5.20 | $1,450.80 |
| | | SHEETS, TROY | 262.00 | $0.10 | $26.20 | $5.20 | $1,362.40 |
| | | SULLIVAN, JASON | 269.00 | $0.10 | $26.90 | $5.20 | $1,398.80 |
| | | WARD, KEVIN | 298.00 | $0.10 | $29.80 | $5.20 | $1,549.60 |

Calpine Project Labor Agreement:
Pension Rate = $5.30

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| | | JOHNSON, ROBERT | 80.00 | $0.10 | $8.00 | $5.20 | $416.00 |
| | | SHAKLEE, LANCE | 265.00 | $0.10 | $26.50 | $5.20 | $1,378.00 |
| | | YOUNG, RICKY | 128.00 | $0.10 | $12.80 | $5.20 | $665.60 |

Monthly Reported Hours = 5,158.00    Monthly Total Paid = $515.80    Monthly Amount Due = $26,821.60

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 12/1/2003 Pension Rate = $5.30 | | AMEN, RANDY | 291.00 | $0.10 | $29.10 | $5.20 | $1,513.20 |
| | | BOLTZ, HARLAN | 291.00 | $0.10 | $29.10 | $5.20 | $1,528.80 |
| | | COERVER, PHILLIP | 267.00 | $0.10 | $26.70 | $5.20 | $1,388.40 |
| | | DUNNING, JUSTIN | 18.00 | $0.10 | $1.80 | $5.20 | $93.60 |
| | | FRANKLIN, GARY | 262.00 | $0.10 | $28.20 | $5.20 | $1,466.40 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.20 | $1,040.00 |
| | | FRASER, STACEY | 246.00 | $0.10 | $24.60 | $5.20 | $1,279.20 |
| | | GROTHUES, MICHAEL | 225.00 | $0.10 | $22.50 | $5.20 | $1,170.00 |
| | | JOHNSON, CHRISTOPH | 290.00 | $0.10 | $29.00 | $5.20 | $1,508.00 |
| | | JOHNSON, ROBERT | 77.00 | $0.10 | $7.70 | $5.20 | $400.40 |
| | | MACMANUS, CAMERON | 355.00 | $0.10 | $35.50 | $5.20 | $1,846.00 |
| | | MACMANUS, KEVIN | 321.00 | $0.10 | $32.10 | $5.20 | $1,669.20 |
| | | MACMANUS, RANDALL | 271.00 | $0.10 | $24.30 | $5.20 | $1,409.20 |
| | | MALSON, EUGENE | 243.00 | $0.10 | $27.10 | $5.20 | $1,263.60 |
| | | MOXLEY, EUGENE | 258.00 | $0.10 | $26.80 | $5.20 | $1,341.60 |
| | | PEREZ, ALFREDO | 267.00 | $0.10 | $28.70 | $5.20 | $1,388.40 |
| | | PRIEST, THOMAS | 294.00 | $0.10 | $29.40 | $5.20 | $1,528.40 |
| | | PUCKETT, DONNIAL | 264.00 | $0.10 | $26.40 | $5.20 | $1,372.80 |
| | | REILLY, EDWARD | 259.00 | $0.10 | $25.90 | $5.20 | $1,346.80 |
| | | SHAKLEE, LANCE | 291.00 | $0.10 | $29.10 | $5.20 | $1,513.20 |
| | | SHEETS, TROY | 261.00 | $0.10 | $26.30 | $5.20 | $1,357.20 |
| | | SIMMONS, JAMEY | 32.00 | $0.10 | $3.20 | $5.20 | $166.40 |
| | | SOLARI, GARY | 263.00 | $0.10 | $26.30 | $5.20 | $1,367.20 |
| | | SULLIVAN, JASON | 36.00 | $0.10 | $3.60 | $5.20 | $187.20 |
| | | SUMMERS, KEVIN | 298.00 | $0.10 | $29.80 | $5.20 | $1,549.60 |
| | | WARD, KEVIN | 184.00 | $0.10 | $18.40 | $5.20 | $956.80 |
| | | YOUNG, KATHLEEN | 191.00 | $0.10 | $19.10 | $5.20 | $993.20 |
| | | YOUNG, RICKY | | $0.10 | | $5.20 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **2003:** | | | Monthly Reported Hours = 6,278.00 | | Monthly Total Paid = $627.80 | Monthly Amount Due = | $32,645.60 |
| | | | Yearly Reported Hours = 58,039.00 | | Yearly Total Paid = $5,803.90 | Yearly Amount Due = | $301,013.90 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 1/1/2004 Pension Rate = $5.60 | | BOLTZ, HARLAN | 212.00 | $0.10 | $21.20 | $5.50 | $1,166.00 |
| | | COERVER, PHILLIP | 203.00 | $0.10 | $20.30 | $5.50 | $1,116.50 |
| | | DUNNING, JUSTIN | 128.00 | $0.10 | $12.80 | $5.50 | $704.00 |
| | | FRANKLIN, JUSTIN | 242.00 | $0.10 | $24.20 | $5.50 | $1,331.00 |
| | | FRASER, GARY | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | FRASER, STACEY | 204.00 | $0.10 | $20.40 | $5.50 | $1,122.00 |
| | | GROTHUES, MICHAEL | 254.00 | $0.10 | $25.40 | $5.50 | $1,397.00 |
| | | JOHNSON, CHRISTOPH | 167.00 | $0.10 | $16.70 | $5.50 | $918.50 |
| | | JOHNSON, ROBERT | 8.00 | $0.10 | $0.80 | $5.50 | $44.00 |
| | | MACMANUS, CAMERON | 273.00 | $0.10 | $27.30 | $5.50 | $1,501.50 |
| | | MACMANUS, KEVIN | 247.00 | $0.10 | $24.70 | $5.50 | $1,358.50 |
| | | MALSON, RANDALL | 183.00 | $0.10 | $18.30 | $5.50 | $1,006.50 |
| | | MOXLEY, EUGENE | 193.00 | $0.10 | $19.30 | $5.50 | $1,061.50 |
| | | PEREZ, ALFREDO | 185.00 | $0.10 | $18.50 | $5.50 | $1,017.50 |
| | | POWDERS, MARK | 79.00 | $0.10 | $7.90 | $5.50 | $434.50 |
| | | PRIEST, THOMAS | 202.00 | $0.10 | $20.20 | $5.50 | $1,111.00 |
| | | PUCKETT, DONNAL | 193.00 | $0.10 | $19.30 | $5.50 | $1,061.50 |
| | | REILLY, EDWARD | 181.00 | $0.10 | $18.10 | $5.50 | $995.50 |
| | | SHAKLEE, LANCE | 108.00 | $0.10 | $10.80 | $5.50 | $594.00 |
| | | SHEETS, TROY | 216.00 | $0.10 | $21.60 | $5.50 | $1,188.00 |
| | | SOLARI, GARY | 8.00 | $0.10 | $0.80 | $5.50 | $44.00 |
| | | SULLIVAN, JASON | 248.00 | $0.10 | $24.80 | $5.50 | $1,364.00 |
| | | SUMMERS, KEVIN | 160.00 | $0.10 | $18.00 | $5.50 | $990.00 |
| | | WARD, KEVIN | 245.00 | $0.10 | $24.50 | $5.50 | $1,347.50 |
| | | YOUNG, KATHLEEN | 16.00 | $0.10 | $1.60 | $5.50 | $88.00 |
| | | YOUNG, RICKY | 128.00 | $0.10 | $12.80 | $5.50 | $704.00 |

Monthly Reported Hours = 4,483.00    Monthly Total Paid = $448.30    Monthly Amount Due = $24,656.50

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 2/1/2004 Pension Rate = $5.60 | | AMEN, RANDY | 136.00 | $0.10 | $13.60 | $5.50 | $748.00 |
| | | BOLTZ, HARLAN | 233.00 | $0.10 | $23.30 | $5.50 | $1,281.50 |
| | | COERVER, PHILLIP | 195.00 | $0.10 | $19.50 | $5.50 | $1,072.50 |
| | | DUNNING, JUSTIN | 237.00 | $0.10 | $23.70 | $5.50 | $1,303.50 |
| | | FRANKLIN, GARY | 405.00 | $0.10 | $40.50 | $5.50 | $2,227.50 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | FRASER, STACEY | 33.00 | $0.10 | $3.30 | $5.50 | $181.50 |
| | | GROTHUES, MICHAEL | 250.00 | $0.10 | $25.00 | $5.50 | $1,375.00 |
| | | JOHNSON, CHRISTOPH | 174.00 | $0.10 | $17.40 | $5.50 | $957.00 |
| | | MACMANUS, CAMERON | 246.00 | $0.10 | $24.60 | $5.50 | $1,354.00 |
| | | MACMANUS, KEVIN | 357.00 | $0.10 | $35.70 | $5.50 | $1,963.50 |
| | | MALSON, RANDALL | 92.00 | $0.10 | $9.20 | $5.50 | $506.00 |
| | | MOXLEY, EUGENE | 268.00 | $0.10 | $26.80 | $5.50 | $1,474.00 |
| | | PEREZ, ALFREDO | 178.00 | $0.10 | $17.80 | $5.50 | $979.00 |
| | | POWDERS, MARK | 231.00 | $0.10 | $23.10 | $5.50 | $1,270.50 |
| | | PRIEST, THOMAS | 315.00 | $0.10 | $31.50 | $5.50 | $1,732.50 |
| | | PUCKETT, DONNIAL | 233.00 | $0.10 | $23.30 | $5.50 | $1,281.50 |
| | | REILLY, EDWARD | 205.00 | $0.10 | $20.50 | $5.50 | $1,127.50 |
| | | SHEETS, TROY | 283.00 | $0.10 | $28.30 | $5.50 | $1,556.50 |
| | | SOLARI, GARY | 22.00 | $0.10 | $2.20 | $5.50 | $121.00 |
| | | SULLIVAN, JASON | 405.00 | $0.10 | $40.50 | $5.50 | $2,227.50 |
| | | SUMMERS, KEVIN | 217.00 | $0.10 | $21.70 | $5.50 | $1,193.50 |
| | | WARD, KEVIN | 304.00 | $0.10 | $30.40 | $5.50 | $1,672.00 |
| | | YOUNG, RICKY | 165.00 | $0.10 | $16.50 | $5.50 | $907.50 |

| Monthly Reported Hours = 5,386.00 | Monthly Total Paid = $538.60 | Monthly Amount Due = $29,623.00 |
|---|---|---|

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 3/1/2004 Pension Rate = $5.60 | | | | | | | |
| | | AMEN, RANDY | 191.00 | $0.10 | $19.10 | $5.50 | $1,050.50 |
| | | BOLTZ, HARLAN | 166.00 | $0.10 | $16.60 | $5.50 | $913.00 |
| | | COERVER, PHILLIP | 227.00 | $0.10 | $22.70 | $5.50 | $1,248.50 |
| | | DAMICO, MATTHEW | 324.00 | $0.10 | $32.40 | $5.50 | $1,782.00 |
| | | DUNNING, JUSTIN | 59.00 | $0.10 | $5.90 | $5.50 | $324.50 |
| | | FRANKLIN, GARY | 63.00 | $0.10 | $6.30 | $5.50 | $346.50 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | GROTHUES, MICHAEL | 29.00 | $0.10 | $2.90 | $5.50 | $159.50 |
| | | JOHNSON, CHRISTOPH | 194.00 | $0.10 | $19.40 | $5.50 | $1,067.00 |
| | | JOHNSON, ROBERT | 133.00 | $0.10 | $13.30 | $5.50 | $731.50 |
| | | MACMANUS, CAMERON | 207.00 | $0.10 | $20.70 | $5.50 | $1,138.50 |
| | | MACMANUS, KEVIN | 205.00 | $0.10 | $20.50 | $5.50 | $1,127.50 |
| | | MALSON, RANDALL | 129.00 | $0.10 | $12.90 | $5.50 | $709.50 |
| | | MOXLEY, EUGENE | 237.00 | $0.10 | $23.70 | $5.50 | $1,303.50 |
| | | PEREZ, ALFREDO | 213.00 | $0.10 | $21.30 | $5.50 | $1,171.50 |
| | | POWDERS, MARK | 156.00 | $0.10 | $15.60 | $5.50 | $858.00 |
| | | PRIEST, THOMAS | 311.00 | $0.10 | $31.10 | $5.50 | $1,710.50 |
| | | PUCKETT, DONNAL | 99.00 | $0.10 | $9.90 | $5.50 | $544.50 |
| | | REILLY, EDWARD | 236.00 | $0.10 | $23.60 | $5.50 | $1,298.00 |
| | | SHEETS, TROY | 205.00 | $0.10 | $20.50 | $5.50 | $1,127.50 |
| | | SOLARI, GARY | 9.00 | $0.10 | $0.90 | $5.50 | $49.50 |
| | | SULLIVAN, JASON | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | SUMMERS, KEVIN | 191.00 | $0.10 | $19.10 | $5.50 | $1,050.50 |
| | | WARD, KEVIN | 285.00 | $0.10 | $28.50 | $5.50 | $1,567.50 |
| | | YOUNG, KATHLEEN | 46.00 | $0.10 | $4.60 | $5.50 | $253.00 |
| | | YOUNG, RICKY | 178.00 | $0.10 | $17.80 | $5.50 | $979.00 |

Monthly Reported Hours = 4,493.00      Monthly Total Paid = $449.30      Monthly Amount Due = $24,711.50

Note. For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
### RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 4/1/2004 Pension Rate = $5.60 | | AMEN, RANDY | 301.00 | $0.10 | $30.10 | $5.50 | $1,655.50 |
| | | BOLTZ, HARLAN | 334.00 | $0.10 | $33.40 | $5.50 | $1,837.00 |
| | | COERVER, PHILLIP | 270.00 | $0.10 | $27.00 | $5.50 | $1,485.00 |
| | | DAMICO, MATTHEW | 62.00 | $0.10 | $6.20 | $5.50 | $341.00 |
| | | DUNNING, JUSTIN | 100.00 | $0.10 | $10.00 | $5.50 | $550.00 |
| | | FRANKLIN, GARY | 307.00 | $0.10 | $30.70 | $5.50 | $1,688.50 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | GROTHUES, MICHAEL | 347.00 | $0.10 | $34.70 | $5.50 | $1,908.50 |
| | | JOHNSON, CHRISTOPH | 255.00 | $0.10 | $25.50 | $5.50 | $1,402.50 |
| | | MACMANUS, CAMERON | 233.00 | $0.10 | $23.30 | $5.50 | $1,281.50 |
| | | MACMANUS, KEVIN | 272.00 | $0.10 | $27.20 | $5.50 | $1,496.00 |
| | | MALSON, RANDALL | 209.00 | $0.10 | $20.90 | $5.50 | $1,149.50 |
| | | MOXLEY, EUGENE | 368.00 | $0.10 | $36.80 | $5.50 | $2,024.00 |
| | | PEREZ, ALFREDO | 198.00 | $0.10 | $19.80 | $5.50 | $1,089.00 |
| | | POWDERS, MARK | 208.00 | $0.10 | $20.80 | $5.50 | $1,144.00 |
| | | PUCKETT, DONNAL | 339.00 | $0.10 | $33.90 | $5.50 | $1,864.50 |
| | | REILLY, EDWARD | 305.00 | $0.10 | $30.50 | $5.50 | $1,677.50 |
| | | ROGERS, JAMES | 64.00 | $0.10 | $6.40 | $5.50 | $352.00 |
| | | SHEETS, TROY | 73.00 | $0.10 | $7.30 | $5.50 | $401.50 |
| | | SOLARI, GARY | 34.00 | $0.10 | $3.40 | $5.50 | $187.00 |
| | | SULLIVAN, JASON | 288.00 | $0.10 | $28.80 | $5.50 | $1,584.00 |
| | | SUMMERS, KEVIN | 344.00 | $0.10 | $34.40 | $5.50 | $1,892.00 |
| | | WARD, KEVIN | 347.00 | $0.10 | $34.70 | $5.50 | $1,908.50 |
| | | YOUNG, KATHLEEN | 98.00 | $0.10 | $9.80 | $5.50 | $539.00 |
| | | YOUNG, RICKY | 203.00 | $0.10 | $20.30 | $5.50 | $1,116.50 |

| | | | Monthly Reported Hours = 5,759.00 | | Monthly Total Paid = $575.90 | Monthly Amount Due = | $31,674.50 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 5/1/2004 Pension Rate = $5.60 | | | | | | | |
| | | AMEN, RANDY | 274.00 | $0.10 | $27.40 | $5.50 | $1,507.00 |
| | | BOLTZ, HARLAN | 222.00 | $0.10 | $22.20 | $5.50 | $1,221.00 |
| | | COERVER, PHILLIP | 199.00 | $0.10 | $19.90 | $5.50 | $1,094.50 |
| | | FRANKLIN, GARY | 238.00 | $0.10 | $23.80 | $5.50 | $1,309.00 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | GROTHUES, MICHAEL | 298.00 | $0.10 | $29.80 | $5.50 | $1,639.00 |
| | | JOHNSON, CHRISTOPH | 201.00 | $0.10 | $20.10 | $5.50 | $1,105.50 |
| | | MACMANUS, CAMERON | 231.00 | $0.10 | $23.10 | $5.50 | $1,270.50 |
| | | MALSON, RANDALL | 178.00 | $0.10 | $17.80 | $5.50 | $979.00 |
| | | MOXLEY, EUGENE | 240.00 | $0.10 | $24.00 | $5.50 | $1,320.00 |
| | | PATTERSON, D | 80.00 | $0.10 | $8.00 | $5.50 | $440.00 |
| | | PUCKETT, DONNAL | 224.00 | $0.10 | $22.40 | $5.50 | $1,232.00 |
| | | REILLY, EDWARD | 238.00 | $0.10 | $23.80 | $5.50 | $1,309.00 |
| | | ROGERS, JAMES | 251.00 | $0.10 | $25.10 | $5.50 | $1,380.50 |
| | | SOLARI, GARY | 197.00 | $0.10 | $19.70 | $5.50 | $1,083.50 |
| | | SULLIVAN, JASON | 195.00 | $0.10 | $19.50 | $5.50 | $1,072.50 |
| | | SUMMERS, KEVIN | 234.00 | $0.10 | $23.40 | $5.50 | $1,287.00 |
| | | WARD, KEVIN | 247.00 | $0.10 | $24.70 | $5.50 | $1,358.50 |
| | | YEIGH, BRENT | 72.00 | $0.10 | $7.20 | $5.50 | $396.00 |
| | | Monthly Reported Hours = | 3,979.00 | Monthly Total Paid = | $397.90 | Monthly Amount Due = | $21,884.50 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 6/1/2004 Pension Rate = $5.60 | | AMEN, RANDY | 247.00 | $0.10 | $24.70 | $5.50 | $1,358.50 |
| | | BELL, ROGER | 60.00 | $0.10 | $6.00 | $5.50 | $330.00 |
| | | BOLTZ, HARLAN | 205.00 | $0.10 | $20.50 | $5.50 | $1,127.50 |
| | | COERVER, PHILLIP | 138.00 | $0.10 | $13.80 | $5.50 | $759.00 |
| | | COX, NEAL | 88.00 | | $8.80 | $5.50 | $484.00 |
| | | FRANKLIN, GARY | 246.00 | $0.10 | $24.60 | $5.50 | $1,353.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | GROTHUES, MICHAEL | 192.00 | $0.10 | $19.20 | $5.50 | $1,056.00 |
| | | GUEST, CLIFFORD | 240.00 | $0.10 | $24.00 | $5.50 | $1,320.00 |
| | | JOHNSON, CHRISTOPH | 170.00 | $0.10 | $17.00 | $5.50 | $935.00 |
| | | LIVINGSTON, BILL | 10.00 | $0.10 | $1.00 | $5.50 | $55.00 |
| | | LIVINGSTON, LINDA | 10.00 | $0.10 | $1.00 | $5.50 | $55.00 |
| | | MACHANUS, KEVIN | 213.00 | $0.10 | $21.30 | $5.50 | $1,171.50 |
| | | MALSON, RANDALL | 106.00 | $0.10 | $10.60 | $5.50 | $583.00 |
| | | MOXLEY, EUGENE | 135.00 | $0.10 | $13.50 | $5.50 | $742.50 |
| | | PUCKETT, DONNIAL | 60.00 | $0.10 | $6.00 | $5.50 | $330.00 |
| | | REILLY, EDWARD | 232.00 | $0.10 | $23.20 | $5.50 | $1,276.00 |
| | | ROGERS, JAMES | 259.00 | $0.10 | $25.90 | $5.50 | $1,424.50 |
| | | RYAN, PATRICK | 10.00 | $0.10 | $1.00 | $5.50 | $55.00 |
| | | SIMMONS, JAMEY | 240.00 | $0.10 | $24.00 | $5.50 | $1,320.00 |
| | | SOLARI, GARY | 3.00 | $0.10 | $0.30 | $5.50 | $16.50 |
| | | SULLIVAN, JASON | 229.00 | $0.10 | $22.90 | $5.50 | $1,259.50 |
| | | SUMMERS, KEVIN | 202.00 | $0.10 | $20.20 | $5.50 | $1,111.00 |
| | | WARD, KEVIN | 259.00 | $0.10 | $25.90 | $5.50 | $1,424.50 |
| | | YEIGH, BRENT | 134.00 | $0.10 | $13.40 | $5.50 | $737.00 |
| | | YINGLING, JOHN | 218.00 | $0.10 | $21.80 | $5.50 | $1,199.00 |
| | | YOUNG, RICKY | 69.00 | $0.10 | $6.90 | $5.50 | $379.50 |

| Monthly Reported Hours = | 4,175.00 | Monthly Total Paid = | $417.50 | Monthly Amount Due = | $22,962.50 |
|---|---|---|---|---|---|

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 7/1/2004 Pension Rate = $5.60 | | AMEN, RANDY | 229.00 | $0.10 | $22.90 | $5.50 | $1,259.50 |
| | | BELL, ROGER | 339.00 | $0.10 | $33.90 | $5.50 | $1,864.50 |
| | | BOLTZ, HARLAN | 334.00 | $0.10 | $33.40 | $5.50 | $1,837.00 |
| | | CAYWOOD, DAVID | 119.00 | $0.10 | $11.90 | $5.50 | $654.50 |
| | | COERVER, PHILLIP | 283.00 | $0.10 | $28.30 | $5.50 | $1,556.50 |
| | | COX, NEAL | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | DANGOTT, ROBERT | 318.00 | $0.10 | $31.80 | $5.50 | $1,749.00 |
| | | FRANKLIN, GARY | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | FRASER, BILL | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | FREEMAN, WILLIAM | 250.00 | $0.10 | $25.00 | $5.50 | $1,375.00 |
| | | GROTHUES, MICHAEL | 30.00 | $0.10 | $3.00 | $5.50 | $165.00 |
| | | GUEST, CLIFFORD | 249.00 | $0.10 | $24.90 | $5.50 | $1,369.50 |
| | | JOHNSON, CHRISTOPH | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | JOHNSON, KEVIN | 119.00 | $0.10 | $11.90 | $5.50 | $654.50 |
| | | LIDDELL, JOHN | 301.00 | $0.10 | $30.10 | $5.50 | $1,655.50 |
| | | MACMANUS, KEVIN | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | MILLER, ROGER | 340.00 | $0.10 | $34.00 | $5.50 | $1,870.00 |
| | | MOXLEY, EUGENE | 27.00 | $0.10 | $2.70 | $5.50 | $148.50 |
| | | POWDERS, MARK | 329.00 | $0.10 | $32.90 | $5.50 | $1,809.50 |
| | | REILLY, EDWARD | 156.00 | $0.10 | $15.60 | $5.50 | $858.00 |
| | | ROGERS, JAMES | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | RYAN, PATRICK | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | SHAKLEE, WESLEY | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |
| | | SIMMONS, JAMEY | 26.00 | $0.10 | $2.60 | $5.50 | $143.00 |
| | | SULLIVAN, JASON | 324.00 | $0.10 | $32.40 | $5.50 | $1,782.00 |
| | | SUMMERS, KEVIN | 146.00 | $0.10 | $14.60 | $5.50 | $803.00 |
| | | THOMPSON, DINA | 106.00 | $0.10 | $10.60 | $5.50 | $583.00 |
| | | THOMPSON, FREDDIE | 106.00 | $0.10 | $10.60 | $5.50 | $583.00 |
| | | WARD, KEVIN | 347.00 | $0.10 | $34.70 | $5.50 | $1,908.50 |
| | | YINGLING, JOHN | 4.00 | $0.10 | $0.40 | $5.50 | $22.00 |
| | | YOUNG, RICKY | 110.00 | $0.10 | $11.00 | $5.50 | $605.00 |
| | | ZUBIETA, JASON | 1.00 | $0.10 | $0.10 | $5.50 | $5.50 |

Monthly Reported Hours = 4,800.00    Monthly Total Paid = $480.00    Monthly Amount Due = $26,400.00

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 8/1/2004 Pension Rate = $5.60 | | AMEN, RANDY | 18.00 | $0.10 | $1.80 | $5.50 | $99.00 |
| | | BELL, ROGER | 268.00 | $0.10 | $26.80 | $5.50 | $1,474.00 |
| | | BOLTZ, HARLAN | 278.00 | $0.10 | $27.80 | $5.50 | $1,529.00 |
| | | CAYWOOD, DAVID | 327.00 | $0.10 | $32.70 | $5.50 | $1,798.50 |
| | | COERVER, PHILLIP | 254.00 | $0.10 | $25.40 | $5.50 | $1,397.00 |
| | | COX, NEAL | 54.00 | $0.10 | $5.40 | $5.50 | $297.00 |
| | | DANGOTT, ROBERT | 54.00 | $0.10 | $5.40 | $5.50 | $297.00 |
| | | EMORY, EDWIN | 110.00 | $0.10 | $11.00 | $5.50 | $605.00 |
| | | FRANKLIN, GARY | 260.00 | $0.10 | $26.00 | $5.50 | $1,430.00 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | GROTHUES, MICHAEL | 270.00 | $0.10 | $27.00 | $5.50 | $1,485.00 |
| | | GUEST, CLIFFORD | 210.00 | $0.10 | $21.00 | $5.50 | $1,155.00 |
| | | LIDDELL, JOHN | 327.00 | $0.10 | $32.70 | $5.50 | $1,798.50 |
| | | MACMANUS, KEVIN | 230.00 | $0.10 | $23.00 | $5.50 | $1,265.00 |
| | | POWDERS, MARK | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | PRIEST, THOMAS | 54.00 | $0.10 | $5.40 | $5.50 | $297.00 |
| | | REILLY, EDWARD | 208.00 | $0.10 | $20.80 | $5.50 | $1,133.00 |
| | | RYAN, PATRICK | 133.00 | $0.10 | $13.30 | $5.50 | $731.50 |
| | | SIMMONS, JAMEY | 225.00 | $0.10 | $22.50 | $5.50 | $1,237.50 |
| | | SUMMERS, KEVIN | 146.00 | $0.10 | $14.60 | $5.50 | $803.00 |
| | | THOMPSON, DINA | 308.00 | $0.10 | $30.80 | $5.50 | $1,694.00 |
| | | THOMPSON, FREDDIE | 308.00 | $0.10 | $30.80 | $5.50 | $1,694.00 |
| | | WARD, KEVIN | 347.00 | $0.10 | $34.70 | $5.50 | $1,908.50 |
| | | YEIGH, BRENT | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | YINGLING, JOHN | 4.00 | $0.10 | $0.40 | $5.50 | $22.00 |
| | | YOUNG, KATHLEEN | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | YOUNG, RICKY | 40.00 | $0.10 | $4.00 | $5.50 | $220.00 |
| | | | Monthly Reported Hours = 5,507.00 | | Monthly Total Paid = $507.10 | Monthly Amount Due = | $27,880.50 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 9/1/2004 | | BOLTZ, HARLAN | 267.00 | $0.10 | $26.70 | $5.50 | $1,468.50 |
| | | CAYWOOD, DAVID | 268.00 | $0.10 | $26.80 | $5.50 | $1,474.00 |
| | | COERVER, PHILLIP | 325.00 | $0.10 | $32.50 | $5.50 | $1,787.50 |
| | | COX, NEAL | 122.00 | $0.10 | $12.20 | $5.50 | $671.00 |
| | | DANGOTT, ROBERT | 131.00 | $0.10 | $13.10 | $5.50 | $720.50 |
| | | FRANKLIN, GARY | 370.00 | $0.10 | $37.00 | $5.50 | $2,035.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | GROTHUES, MICHAEL | 325.00 | $0.10 | $32.50 | $5.50 | $1,787.50 |
| | | GUEST, CLIFFORD | 338.00 | $0.10 | $33.80 | $5.50 | $1,859.00 |
| | | HEAD, CARROLL | 308.00 | $0.10 | $30.80 | $5.50 | $1,694.00 |
| | | LIDDELL, JOHN | 327.00 | $0.10 | $32.70 | $5.50 | $1,798.50 |
| | | MACMANUS, KEVIN | 307.00 | $0.10 | $30.70 | $5.50 | $1,688.50 |
| | | MALSON, RANDALL | 34.00 | $0.10 | $3.40 | $5.50 | $187.00 |
| | | MOXLEY, EUGENE | 181.00 | $0.10 | $18.10 | $5.50 | $995.50 |
| | | PRIEST, THOMAS | 131.00 | $0.10 | $13.10 | $5.50 | $720.50 |
| | | REILLY, EDWARD | 302.00 | $0.10 | $30.20 | $5.50 | $1,661.00 |
| | | SIMMONS, JAMEY | 377.00 | $0.10 | $37.70 | $5.50 | $2,073.50 |
| | | SUMMERS, KEVIN | 337.00 | $0.10 | $33.70 | $5.50 | $1,853.50 |
| | | THOMPSON, DINA | 325.00 | $0.10 | $32.50 | $5.50 | $1,787.50 |
| | | THOMPSON, FREDDIE | 325.00 | $0.10 | $32.50 | $5.50 | $1,787.50 |
| | | WARD, KEVIN | 342.00 | $0.10 | $34.20 | $5.50 | $1,881.00 |
| | | YEIGH, BRENT | 8.00 | $0.10 | $0.80 | $5.50 | $44.00 |
| | | YOUNG, RICKY | 40.00 | $0.10 | $4.00 | $5.50 | $220.00 |

Monthly Reported Hours = 5,690.00    Monthly Total Paid = $569.00    Monthly Amount Due = $31,295.00

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 10/1/2004 Pension Rate = $5.60 | | ASHLEY, CHAD | 13.00 | $0.10 | $1.30 | $5.50 | $71.50 |
| | | BAILEY, BILL | 269.00 | $0.10 | $26.90 | $5.50 | $1,479.50 |
| | | CHASE, DALE | 269.00 | $0.10 | $26.90 | $5.50 | $1,479.50 |
| | | COERVER, PHILLIP | 258.00 | $0.10 | $25.80 | $5.50 | $1,419.00 |
| | | FRANKLIN, GARY | 239.00 | $0.10 | $23.90 | $5.50 | $1,314.50 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | GROTHUES, MICHAEL | 290.00 | $0.10 | $29.00 | $5.50 | $1,595.00 |
| | | GUEST, CLIFFORD | 332.00 | $0.10 | $33.20 | $5.50 | $1,826.00 |
| | | HEAD, CARROLL | 13.00 | $0.10 | $1.30 | $5.50 | $71.50 |
| | | HEFNER, RICHARD | 13.00 | $0.10 | $1.30 | $5.50 | $71.50 |
| | | LIDDELL, JOHN | 327.00 | $0.10 | $32.70 | $5.50 | $1,798.50 |
| | | MAGNANUS, KEVIN | 300.00 | $0.10 | $30.00 | $5.50 | $1,650.00 |
| | | MALSON, RANDALL | 309.00 | $0.10 | $30.90 | $5.50 | $1,699.50 |
| | | MOXLEY, EUGENE | 318.00 | $0.10 | $31.80 | $5.50 | $1,749.00 |
| | | PREST, THOMAS | 131.00 | $0.10 | $13.10 | $5.50 | $720.50 |
| | | PUCKETT, DANIAL | 63.00 | $0.10 | $6.30 | $5.50 | $346.50 |
| | | REILLY, EDWARD | 247.00 | $0.10 | $24.70 | $5.50 | $1,358.50 |
| | | SIMMONS, JAMEY | 84.00 | $0.10 | $8.40 | $5.50 | $462.00 |
| | | SMITH, W. | 100.00 | $0.10 | $10.00 | $5.50 | $550.00 |
| | | SUMMERS, KEVIN | 239.00 | $0.10 | $23.90 | $5.50 | $1,314.50 |
| | | THOMPSON, DINA | 218.00 | $0.10 | $21.80 | $5.50 | $1,199.00 |
| | | THOMPSON, FREDDIE | 218.00 | $0.10 | $21.80 | $5.50 | $1,199.00 |
| | | WARD, KEVIN | 259.00 | $0.10 | $25.90 | $5.50 | $1,424.50 |
| | | YOUNG, RICKY | 40.00 | $0.10 | $4.00 | $5.50 | $220.00 |

|  | Monthly Reported Hours = 4,826.00 | Monthly Total Paid = $482.60 | Monthly Amount Due = $26,543.00 |
|---|---|---|---|

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 11/1/2004 Pension Rate = $5.50 | | | | | | | |
| | | ASHLEY, CHAD | 271.00 | $0.10 | $27.10 | $5.50 | $1,490.50 |
| | | BAILEY, BILL | 302.00 | $0.10 | $30.20 | $5.50 | $1,661.00 |
| | | BRANSON, GENE | 116.00 | $0.10 | $11.60 | $5.50 | $638.00 |
| | | CHASEDALE | 297.00 | $0.10 | $29.70 | $5.50 | $1,633.50 |
| | | COERVER, PHILLIP | 327.00 | $0.10 | $32.70 | $5.50 | $1,798.50 |
| | | COX, NEAL | 115.00 | $0.10 | $11.50 | $5.50 | $632.50 |
| | | FRANKLIN, GARY | 273.00 | $0.10 | $27.30 | $5.50 | $1,501.50 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.50 | $880.00 |
| | | GROTHUES, MICHAEL | 304.00 | $0.10 | $30.40 | $5.50 | $1,672.00 |
| | | GUEST, CLIFFORD | 273.00 | $0.10 | $27.30 | $5.50 | $1,501.50 |
| | | HAMILTON, JEREMY | 190.00 | $0.10 | $19.00 | $5.50 | $1,045.00 |
| | | HEFNER, RICHARD | 271.00 | $0.10 | $27.10 | $5.50 | $1,490.50 |
| | | MACMANUS, KEVIN | 314.00 | $0.10 | $31.40 | $5.50 | $1,727.00 |
| | | MALSON, RANDALL | 241.00 | $0.10 | $24.10 | $5.50 | $1,325.50 |
| | | MOXLEY, EUGENE | 310.00 | $0.10 | $31.00 | $5.50 | $1,705.00 |
| | | PINKERTON, J.D. | 132.00 | $0.10 | $13.20 | $5.50 | $726.00 |
| | | PINKERTON, LESLIE | 132.00 | $0.10 | $13.20 | $5.50 | $726.00 |
| | | PUCKETT, DONNA | 246.00 | $0.10 | $24.60 | $5.50 | $1,353.00 |
| | | REILLY, EDWARD | 134.00 | $0.10 | $13.40 | $5.50 | $737.00 |
| | | SPRAGUE, FRANK | 130.00 | $0.10 | $13.00 | $5.50 | $715.00 |
| | | SUMMERS, KEVIN | 292.00 | $0.10 | $29.20 | $5.50 | $1,606.00 |
| | | THOMPSON, DINA | 224.00 | $0.10 | $22.40 | $5.50 | $1,232.00 |
| | | THOMPSON, FREDDIE | 224.00 | $0.10 | $22.40 | $5.50 | $1,232.00 |
| | | WARD, KEVIN | 293.00 | $0.10 | $29.30 | $5.50 | $1,611.50 |
| | | YEIGH, BRENT | 146.00 | $0.10 | $14.60 | $5.50 | $803.00 |

**Bitter Creek, WY Project Labor Agreement:**
Pension Rate = $3.32

| | | Thomas, Randy | 116.00 | $0.10 | $11.60 | $3.22 | $373.52 |
|---|---|---|---|---|---|---|---|

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

Monthly Reported Hours = 5,833.00     Monthly Total Paid = $583.30     Monthly Amount Due = $31,817.02

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 12/1/2004<br>Pension Rate = $5.60 | | ASHLEY, CHAD | 248.00 | $0.10 | $24.80 | $5.50 | $1,364.00 |
| | | BAILEY, BILL | 39.00 | $0.10 | $3.90 | $5.50 | $214.50 |
| | | BOLTZ, HARLAN | 325.00 | $0.10 | $32.50 | $5.50 | $1,787.50 |
| | | BRANSON, GENE | 116.00 | $0.10 | $11.60 | $5.50 | $638.00 |
| | | COERVER, PHILLIP | 254.00 | $0.10 | $25.40 | $5.50 | $1,397.00 |
| | | COX, NEAL | 24.00 | $0.10 | $2.40 | $5.50 | $132.00 |
| | | FRANKLIN, GARY | 266.00 | $0.10 | $26.60 | $5.50 | $1,463.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.50 | $1,100.00 |
| | | GROTHUS, MICHAEL | 238.00 | $0.10 | $23.80 | $5.50 | $1,309.00 |
| | | GUEST, CLIFFORD | 389.00 | $0.10 | $38.90 | $5.50 | $2,139.50 |
| | | HAMILTON, JEREMY | 389.00 | $0.10 | $38.90 | $5.50 | $2,139.50 |
| | | HEFNER, RICHARD | 248.00 | $0.10 | $24.80 | $5.50 | $1,364.00 |
| | | LIVINGSTON, BILL | 48.00 | $0.10 | $4.80 | $5.50 | $264.00 |
| | | LIVINGSTON, LINDA | 48.00 | $0.10 | $4.80 | $5.50 | $264.00 |
| | | MACMANUS, KEVIN | 290.00 | $0.10 | $29.00 | $5.50 | $1,595.00 |
| | | MALSON, RANDALL | 244.00 | $0.10 | $24.40 | $5.50 | $1,342.00 |
| | | MOXLEY, EUGENE | 330.00 | $0.10 | $33.00 | $5.50 | $1,815.00 |
| | | PATTERSON, D | 16.00 | $0.10 | $1.60 | $5.50 | $88.00 |
| | | PINKERTON, D | 134.00 | $0.10 | $13.40 | $5.50 | $737.00 |
| | | PINKERTON, LESLIE | 134.00 | $0.10 | $13.40 | $5.50 | $737.00 |
| | | PUCKETT, DONNAL | 251.00 | $0.10 | $25.10 | $5.50 | $1,380.50 |
| | | REILLY, EDWARD | 292.00 | $0.10 | $29.20 | $5.50 | $1,606.00 |
| | | RYAN, PATRICK | 48.00 | $0.10 | $4.80 | $5.50 | $264.00 |
| | | SMITH, W | 23.00 | $0.10 | $2.30 | $5.50 | $126.50 |
| | | SOLARI, GARY | 66.00 | $0.10 | $6.60 | $5.50 | $363.00 |
| | | SPRAGUE, FRANK | 109.00 | $0.10 | $10.90 | $5.50 | $599.50 |
| | | SUMMERS, KEVIN | 270.00 | $0.10 | $27.00 | $5.50 | $1,485.00 |
| | | THOMPSON, DINA | 44.00 | $0.10 | $4.40 | $5.50 | $242.00 |
| | | THOMPSON, FREDDIE | 44.00 | $0.10 | $4.40 | $5.50 | $242.00 |
| | | WARD, KEVIN | 316.00 | $0.10 | $31.60 | $5.50 | $1,738.00 |
| | | YEIGH, BRENT | 119.00 | $0.10 | $11.90 | $5.50 | $654.50 |
| | | YINGLING, JOHN | 42.00 | $0.10 | $4.20 | $5.50 | $231.00 |
| Bitter Creek, WY Project Labor Agreement:<br>Pension Rate = $3.32 | | Thomas, Randy | 116.00 | $0.10 | $11.60 | $3.22 | $373.52 |

| 2004: | Monthly Reported Hours = 5,720.00 | Monthly Total Paid = $572.00 | Monthly Amount Due = $31,195.52 |
|---|---|---|---|
| | Yearly Reported Hours = 60,215.00 | Yearly Total Paid = $6,021.50 | Yearly Amount Due = $330,653.54 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

## CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
### RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 1/1/2005 | | BOLTZ, HARLAN | 131.00 | $0.10 | $13.10 | $5.80 | $759.80 |
| | | BRANSON, GENE | 67.00 | $0.10 | $6.70 | $5.80 | $388.60 |
| | | COERVER, PHILLIP | 231.00 | $0.10 | $23.10 | $5.80 | $1,339.80 |
| | | FRANKLIN, GARY | 231.00 | $0.10 | $23.10 | $5.80 | $1,339.80 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.80 | $928.00 |
| | | FRASER, BILL | 191.00 | $0.10 | $19.10 | $5.80 | $1,107.80 |
| | | GROTHUES, MICHAEL | 251.00 | $0.10 | $25.10 | $5.80 | $1,455.80 |
| | | GUEST, CLIFFORD | 250.00 | $0.10 | $25.00 | $5.80 | $1,450.00 |
| | | HAMILTON, JEREMY | 56.00 | $0.10 | $5.60 | $5.80 | $324.80 |
| | | JOHNSON, KEVIN | 220.00 | $0.10 | $22.00 | $5.80 | $1,276.00 |
| | | MACMANUS, KEVIN | 220.00 | $0.10 | $22.00 | $5.80 | $1,276.00 |
| | | MALSON, RANDALL | 158.00 | $0.10 | $15.80 | $5.80 | $916.40 |
| | | MOXLEY, EUGENE | 223.00 | $0.10 | $22.30 | $5.80 | $1,293.40 |
| | | PUCKETT, DONNIAL | 181.00 | $0.10 | $18.10 | $5.80 | $1,049.80 |
| | | REILLY, EDWARD | 171.00 | $0.10 | $17.10 | $5.80 | $991.80 |
| | | SALLEE, BOBBY | 70.00 | $0.10 | $7.00 | $5.80 | $406.00 |
| | | SMITH, W. | 79.00 | $0.10 | $7.90 | $5.80 | $458.20 |
| | | SUMMERS, KEVIN | 209.00 | $0.10 | $20.90 | $5.80 | $1,212.20 |
| | | THOMAS, RANDY | 67.00 | $0.10 | $6.70 | $5.80 | $388.60 |
| | | WARD, KEVIN | 236.00 | $0.10 | $23.60 | $5.80 | $1,368.80 |
| | | YEIGH, BRENT | 196.00 | $0.10 | $19.60 | $5.80 | $1,136.80 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

Monthly Reported Hours = 3,380.00    Monthly Total Paid = $338.00    Monthly Amount Due = $19,604.00

CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 2/1/2005 Pension Rate = $5.90 | | BELL, ROGER | 144.00 | $0.10 | $14.40 | $5.80 | $835.20 |
| | | BOLTZ, HARLAN | 156.00 | $0.10 | $15.60 | $5.80 | $904.80 |
| | | COERVER, PHILLIP | 232.00 | $0.10 | $23.20 | $5.80 | $1,345.60 |
| | | FRANKLIN, GARY | 232.00 | $0.10 | $23.20 | $5.80 | $1,345.60 |
| | | FRASER, BILL | 224.00 | $0.10 | $22.40 | $5.80 | $1,299.20 |
| | | GROTHUES, MICHAEL | 160.00 | $0.10 | $16.00 | $5.80 | $928.00 |
| | | MACMANUS, KEVIN | 113.00 | $0.10 | $11.30 | $5.80 | $655.40 |
| | | MALSON, RANDALL | 231.00 | $0.10 | $23.10 | $5.80 | $1,339.80 |
| | | MOXLEY, EUGENE | 198.00 | $0.10 | $19.80 | $5.80 | $1,148.40 |
| | | PATTERSON, D | 193.00 | $0.10 | $19.30 | $5.80 | $1,119.40 |
| | | PUCKETT, DONNA | 233.00 | $0.10 | $23.30 | $5.80 | $1,351.40 |
| | | REILLY, EDWARD | 232.00 | $0.10 | $23.20 | $5.80 | $1,345.60 |
| | | SUMMERS, KEVIN | 175.00 | $0.10 | $17.50 | $5.80 | $1,015.00 |
| | | WARD, KEVIN | 266.00 | $0.10 | $26.60 | $5.80 | $1,542.80 |
| | | YEIGH, BRENT | 248.00 | $0.10 | $24.80 | $5.80 | $1,438.40 |
| | | | 171.00 | $0.10 | $17.10 | $5.80 | $991.80 |

Monthly Reported Hours = 2,976.00    Monthly Total Paid = $297.60    Monthly Amount Due = $17,260.80

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 3/1/2005<br>Pension Rate = $5.90 | ▓▓▓▓ | BOLTZ, HARLAN | 36.00 | $0.10 | $3.60 | $5.80 | $208.80 |
| | ▓▓▓▓ | BRITO, JAMES | 35.00 | $0.10 | $3.50 | $5.80 | $203.00 |
| | ▓▓▓▓ | COERVER, PHILLIP | 265.00 | $0.10 | $26.50 | $5.80 | $1,537.00 |
| | ▓▓▓▓ | FRANKLIN, GARY | 327.00 | $0.10 | $32.70 | $5.80 | $1,896.60 |
| | ▓▓▓▓ | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.80 | $1,160.00 |
| | ▓▓▓▓ | GROTHUES, MICHAEL | 401.00 | $0.10 | $40.10 | $5.80 | $2,325.80 |
| | ▓▓▓▓ | GUEST, CLIFFORD | 281.00 | $0.10 | $28.10 | $5.80 | $1,629.80 |
| | ▓▓▓▓ | MACMANUS, KEVIN | 231.00 | $0.10 | $23.10 | $5.80 | $1,339.80 |
| | ▓▓▓▓ | MALSON, RANDALL | 271.00 | $0.10 | $27.10 | $5.80 | $1,571.80 |
| | ▓▓▓▓ | PATTERSON, D | 346.00 | $0.10 | $34.60 | $5.80 | $2,006.80 |
| | ▓▓▓▓ | PUCKETT, DONNIA | 258.00 | $0.10 | $25.80 | $5.80 | $1,496.40 |
| | ▓▓▓▓ | REILLY, EDWARD | 322.00 | $0.10 | $32.20 | $5.80 | $1,867.60 |
| | ▓▓▓▓ | SUMMERS, KEVIN | 323.00 | $0.10 | $32.30 | $5.80 | $1,873.40 |
| | ▓▓▓▓ | WARD, KEVIN | 385.00 | $0.10 | $38.50 | $5.80 | $2,233.00 |
| | ▓▓▓▓ | YEIGH, BRENT | 265.00 | $0.10 | $26.50 | $5.80 | $1,537.00 |

Monthly Reported Hours = 3,946.00    Monthly Total Paid = $394.60    Monthly Amount Due = $22,885.80

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 4/1/2005 Pension Rate = $5.90 | | BELL, ROGER | 84.00 | $0.10 | $8.40 | $5.80 | $487.20 |
| | | BOLTZ, HARLAN | 215.00 | $0.10 | $21.50 | $5.80 | $1,247.00 |
| | | COERVER, PHILLIP | 190.00 | $0.10 | $19.00 | $5.80 | $1,102.00 |
| | | FRANKLIN, GARY | 211.00 | $0.10 | $21.10 | $5.80 | $1,223.80 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.80 | $928.00 |
| | | GROTHUES, MICHAEL | 374.00 | $0.10 | $37.40 | $5.80 | $2,169.20 |
| | | GUEST, CLIFFORD | 251.00 | $0.10 | $25.10 | $5.80 | $1,455.80 |
| | | MACMANUS, KEVIN | 223.00 | $0.10 | $22.30 | $5.80 | $1,293.40 |
| | | MALSON, RANDALL | 229.00 | $0.10 | $22.90 | $5.80 | $1,328.20 |
| | | MOXLEY, EUGENE | 260.00 | $0.10 | $26.00 | $5.80 | $1,508.00 |
| | | PATTERSON, D | 246.00 | $0.10 | $24.60 | $5.80 | $1,426.80 |
| | | PUCKETT, DONNA | 219.00 | $0.10 | $21.90 | $5.80 | $1,270.20 |
| | | REILLY, EDWARD | 245.00 | $0.10 | $24.50 | $5.80 | $1,421.00 |
| | | ROGERS, JAMES | 56.00 | $0.10 | $5.60 | $5.80 | $324.80 |
| | | SUMMERS, KEVIN | 263.00 | $0.10 | $26.30 | $5.80 | $1,525.40 |
| | | WARD, KEVIN | 247.00 | $0.10 | $24.70 | $5.80 | $1,432.60 |
| | | YEIGH, BRENT | 250.00 | $0.10 | $25.00 | $5.80 | $1,450.00 |

Monthly Reported Hours = 3,723.00    Monthly Total Paid = $372.30    Monthly Amount Due = $21,593.40

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 5/1/2005 Pension Rate = $5.90 | | BELL, ROGER | 213.00 | $0.10 | $21.30 | $5.80 | $1,235.40 |
| | | BOLTZ, HARLAN | 198.00 | $0.10 | $19.80 | $5.80 | $1,148.40 |
| | | COERVER, PHILLIP | 150.00 | $0.10 | $15.00 | $5.80 | $1,102.00 |
| | | FRANKLIN, GARY | 238.00 | $0.10 | $23.80 | $5.80 | $1,380.40 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.80 | $928.00 |
| | | GALLOWAY, ROBERT | 103.00 | $0.10 | $10.30 | $5.80 | $597.40 |
| | | GROTHUES, MICHAEL | 235.00 | $0.10 | $23.50 | $5.80 | $1,363.00 |
| | | GUEST, CLIFFORD | 56.00 | $0.10 | $5.60 | $5.80 | $324.80 |
| | | JOHNSON, ROBERT | 8.00 | $0.10 | $0.80 | $5.80 | $46.40 |
| | | MACMANUS, KEVIN | 214.00 | $0.10 | $21.40 | $5.80 | $1,241.20 |
| | | MALSON, RANDALL | 209.00 | $0.10 | $20.90 | $5.80 | $1,212.20 |
| | | MOXLEY, EUGENE | 202.00 | $0.10 | $20.20 | $5.80 | $1,171.60 |
| | | OCHSNER-GALLOWAY, | 90.00 | $0.10 | $9.00 | $5.80 | $522.00 |
| | | PATTERSON, D | 106.00 | $0.10 | $10.60 | $5.80 | $614.80 |
| | | PRIEST, THOMAS | 80.00 | $0.10 | $8.00 | $5.80 | $464.00 |
| | | PUCKETT, DONNIAL | 212.00 | $0.10 | $21.20 | $5.80 | $1,229.60 |
| | | REILLY, EDWARD | 209.00 | $0.10 | $20.90 | $5.80 | $1,212.20 |
| | | SUMMERS, KEVIN | 194.00 | $0.10 | $19.40 | $5.80 | $1,125.20 |
| | | WARD, KEVIN | 276.00 | $0.10 | $27.60 | $5.80 | $1,600.80 |
| | | YEIGH, BRENT | 62.00 | $0.10 | $6.20 | $5.80 | $359.60 |
| | | YINGLING, JOHN | 6.00 | $0.10 | $0.60 | $5.80 | $34.80 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Monthly Reported Hours = | 3,281.00 | Monthly Total Paid = | $328.10 | Monthly Amount Due = | $18,913.80 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 6/1/2005 Pension Rate = $5.90 | | BELL, ROGER | 99.00 | $0.10 | $9.90 | $5.80 | $574.20 |
| | | BOLTZ, HARLAN | 161.00 | $0.10 | $16.10 | $5.80 | $933.80 |
| | | COERVER, PHILLIP | 247.00 | $0.10 | $24.70 | $5.80 | $1,432.60 |
| | | FRANKLIN, GARY | 265.00 | $0.10 | $26.50 | $5.80 | $1,537.00 |
| | | FRASER, BILL | 200.00 | $0.10 | $20.00 | $5.80 | $1,160.00 |
| | | GALLOWAY, ROBERT | 170.00 | $0.10 | $17.00 | $5.80 | $986.00 |
| | | GROTHUES, MICHAEL | 439.00 | $0.10 | $43.90 | $5.80 | $2,546.20 |
| | | GUEST, CLIFFORD | 51.00 | $0.10 | $5.10 | $5.80 | $295.80 |
| | | HAMILTON, JEREMY | 42.00 | $0.10 | $4.20 | $5.80 | $243.60 |
| | | MACMANUS, KEVIN | 294.00 | $0.10 | $29.40 | $5.80 | $1,705.20 |
| | | MALSON, RANDALL | 326.00 | $0.10 | $32.60 | $5.80 | $1,890.80 |
| | | MOXLEY, EUGENE | 334.00 | $0.10 | $33.40 | $5.80 | $1,937.20 |
| | | OCHSNER-GALLOWAY, | 159.00 | $0.10 | $15.90 | $5.80 | $922.20 |
| | | PUCKETT, DONNIAL | 285.00 | $0.10 | $28.50 | $5.80 | $1,653.00 |
| | | REILLY, EDWARD | 239.00 | $0.10 | $23.90 | $5.80 | $1,386.20 |
| | | ROBERTSON, JOSHUA | 141.00 | $0.10 | $14.10 | $5.80 | $817.80 |
| | | ROGERS, JAMES | 241.00 | $0.10 | $24.10 | $5.80 | $1,397.80 |
| | | SUMMERS, KEVIN | 312.00 | $0.10 | $31.20 | $5.80 | $1,809.60 |
| | | WARD, KEVIN | 324.00 | $0.10 | $32.40 | $5.80 | $1,879.20 |
| | | YEIGH, BRENT | 53.00 | $0.10 | $5.30 | $5.80 | $307.40 |

Monthly Reported Hours = 4,582.00        Monthly Total Paid = $458.70        Monthly Amount Due = $25,802.10

Questar Gas Gathering System - Kemmerer, Wy Project Labor Agreement:
Pension Rate = $1.50

| | | THOMPSON, FREDDIE | 6.00 | $0.10 | $0.60 | $1.40 | $8.40 |

Raton Basin 2005 Expansion Project Labor Agreement:
Pension Rate = $2.00
Crawlers = $2.00
Gamma = $1.25

| | | PATTERSON, D | 199.00 | $0.10 | $19.90 | $1.90 | $378.10 |

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# CENTRAL PENSION FUND OF THE I.U.O.E. & PARTICIPATING EMPLOYERS
## RATE ADJUSTMENT SCHEDULE

| Month | SSN | NAME | REPORTED HOURS | PORTION OF RATE PAID | AMOUNT PAID | PORTION OF RATE DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 7/1/2005 | | COERVER, PHILIP | 234.00 | $0.10 | $23.40 | $5.80 | $1,357.20 |
| | | COX, NEAL | 104.00 | $0.10 | $10.40 | $5.80 | $603.20 |
| | | DAY, R M | 111.00 | $0.10 | $11.10 | $5.80 | $643.80 |
| | | DUNCAN, JERRY | 117.00 | $0.10 | $11.70 | $5.80 | $678.60 |
| | | FRANKLIN, GARY | 210.00 | $0.10 | $21.00 | $5.80 | $1,218.00 |
| | | FRASER, BILL | 160.00 | $0.10 | $16.00 | $5.80 | $928.00 |
| | | GALLOWAY, ROBERT | 93.00 | $0.10 | $9.30 | $5.80 | $539.40 |
| | | GROTHUES, MICHAEL | 297.00 | $0.10 | $29.70 | $5.80 | $1,722.60 |
| | | GUYNES, JAMES | 36.00 | $0.10 | $3.60 | $5.80 | $208.80 |
| | | HAYDEN, CHARLES | 65.00 | $0.10 | $6.50 | $5.80 | $377.00 |
| | | MACMANUS, KEVIN | 224.00 | $0.10 | $22.40 | $5.80 | $1,299.20 |
| | | MALSON, RANDALL | 259.00 | $0.10 | $25.90 | $5.80 | $1,502.20 |
| | | MOXLEY, EUGENE | 200.00 | $0.10 | $20.00 | $5.80 | $1,160.00 |
| | | NAIL, TRACEY | 28.00 | $0.10 | $2.80 | $5.80 | $162.40 |
| | | OCHSNER-GALLOWAY, | 12.00 | $0.10 | $1.20 | $5.80 | $69.60 |
| | | PUCKETT, DONNAL | 269.00 | $0.10 | $26.90 | $5.80 | $1,560.20 |
| | | REILLY, EDWARD | 273.00 | $0.10 | $27.30 | $5.80 | $1,583.40 |
| | | ROSE, TODD | 74.00 | $0.10 | $7.40 | $5.80 | $429.20 |
| | | SIMMONS, JAMEY | 147.00 | $0.10 | $14.70 | $5.80 | $852.60 |
| | | SUMMERS, KEVIN | 204.00 | $0.10 | $20.40 | $5.80 | $1,183.20 |
| | | WARD, KEVIN | 312.00 | $0.10 | $31.20 | $5.80 | $1,809.60 |

Raton Basin 2005 Expansion Project Labor Agreement:
Pension Rate -
Crawlers = $2.00
Gamma = $1.25

| | | DONATHAN, MATTHEW | 30.00 | $0.10 | $3.00 | $1.90 | $57.00 |
|---|---|---|---|---|---|---|---|
| | | HAMILTON, JEREMY | 104.00 | $0.10 | $10.40 | $1.15 | $119.60 |
| | | LEWIS, JEFF | 31.00 | $0.10 | $3.10 | $1.90 | $58.90 |
| | | ROBERTSON, JOSHUA | 25.00 | $0.10 | $2.50 | $1.15 | $28.75 |
| | | ROGERS, JAMES | 22.00 | $0.10 | $2.20 | $1.15 | $25.30 |
| | | TIDWELL, TONY | 20.00 | $0.10 | $2.00 | $1.90 | $38.00 |
| | | WATKINS, KENNETH | 14.00 | $0.10 | $1.40 | $1.15 | $16.10 |
| | | WEIMER, J | 18.00 | $0.10 | $1.80 | $1.15 | $20.70 |
| | | WINKLES, TROY | 18.00 | $0.10 | $1.80 | $1.15 | $20.70 |

Monthly Reported Hours = 3,711.00    Monthly Total Paid = $371.10    Monthly Amount Due = $20,273.25

2005:    Yearly Reported Hours = 25,584.00    Yearly Total Paid = $2,558.40    Yearly Amount Due = $146,334.15

Audit Period:    Audit Period Reported Hours = 208,933.00    Audit Period Total Paid $20,893.30    Audit Period Amount Due $1,041,636.34

Note: For the above rate adjustments, the employer paid an incorrect rate of $.10 on the above reported hours.

# Exhibit 6

# FAX COVER SHEET

High Mountain Inspection
P.O. Box 1508 Mills, WY 82644
2000 W. Revenue Casper, WY 82601
(307)266-0105 phone
(307)266-0027 fax

| Send to: Calibre | From: Suzanne Fraser |
|---|---|
| Attention: Ellen Odell | Date: 7/24/06 |
| Office location: | Office location: Casper |
| Fax number: 202-331-9890 | Phone number: 307-266-0105 |

☐ Urgent  ☐ Reply ASAP  ☐ Please comment  ☐ Please review  ☐ For your information

Total pages, including cover: 9

**Comments:**

Ellen,

High Mountain did not pay benifits on non-union emplayees to the Local 2B union due to them being non-union emplayees and Wyoming is a right to work state. Please let me know where we are in this audit Thanks

Suzanne

# Exhibit 7

*R*

*F.S1 # 8114*

# HIGH MOUNTAIN INSPECTION SERVICES, INC.

### TEL (307) 266-0105    P.O. BOX 1508    Mills, Wyoming 82644

### TEL (307) 789-0334    P.O. BOX 1255    Evanston, Wyoming 82931

International Union of Operating Engineers                    October 14, 1997
Stationary Local No. 2, A.F.L.-C.I.O.
2929 South Jefferson Avenue
St. Louis, MO 63118
*ATTN:  Vergil L. Belfi*

Dear Mr Belfi,

High Mountain Inspections Services, Inc. understands that the following conditions shall be the basis for
establishing Project Agreements.  The undersigned parties agree upon the following.

### *CONDITIONS OF AGREEMENT*

1    In the event we are bidding against other Union Contractors, the wage and benefits will
be the same for all NDE Contractors, signatory to the base pipeline agreement with Local 2..

2.   In the event bidding against only Non-Union X-ray Contractors, we will base in our judgment,
bids that pay wages and benefits that the market will bare and are mutually agreeable between
the Union and Company.(Project Agreement).

3.   Present work that we are contractually obligated to will remain current under a Project
Agreement.

4.   Project Agreement work, Pension contributions may vary from .10 cents an hour to full
Agreement which is $2 40 an hour

5    All local work and all existing contracts High Mountain Inspection Services, Inc is currently
obligated to shall become a project agreement and IUOE Locals Health and Welfare plan shall
not apply

6.   Insurance contribution may vary on Project Agreement.  Contributions from the employer will
be mutually agreed to by the Union and the Company.

7    The International Union will train our employees, once they are members, in Radiation
Safety,  Magnetic particle, Dye Penetrant, OSHA 500, C.W.I. and all Level II qualifications.

_(signature)_

Signature
High Mountain Inspection
Bill Fraser
President

_(signature)_

Signature
International Union of Operations Engineers
Vergil L. Belfi
Business Manager, Recording-Corresponding
Secretary and International Vice President

_(signature)_

Signature
High Mountain Inspection
C.R. Click Cline
Secretary/Treasurer

_(signature)_

Signature
International Union of Operations Engineers
Ken Powders
Business Respresentative

BILL FRASER, C.R. CLICK CLINE, VERGIL L. BELFI AND KEN POWDERS APPEARED BEFORE
ME IN THE STATE OF WYOMING COUNTY OF NATRONA THIS 16TH DAY OF OCTOBER, 1997.

_(signature)_

NOTARY PUBLIC

MY COMMISSION EXPIRES _April 20, 2001_

JILL N AMEN                 NOTARY PUBLIC
County of                      State of
Natrona                        Wyoming
My Commission Expires Apr. 20, 2001

## DECLARATION OF MICHAEL R. FANNING

I, Michael R. Fanning, Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, pursuant to 28 U.S.C. 1746, hereby declare, certify, verify and state, under penalty of perjury that the following is true and correct to the best of my personal knowledge:

1.    I am over the age of 18 and competent to testify to the facts contained in this Declaration.

2.    I am the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers.

3.    I am authorized to execute this Declaration on behalf of the Trustees of the Central Pension Fund.

4.    The Central Pension Fund is established and maintained according to the provisions of its Restated Agreement and Declaration of Trust. The Trustees act as fiduciaries and the plan administrator for the Central Pension Fund. A true and accurate copy of the Central Pension Fund's Restated Agreement and Declaration of Trust is attached to this Declaration as Exhibit 1.

5.    The Central Pension Fund is a defined benefit, multiemployer, employee pension benefit plan.

6.    The Central Pension Fund is administered at 4115 Chesapeake Street, N.W., in the District of Columbia. This is where the Central Pension Fund also keeps the books and records used in the regular course of business.

7.    The Central Pension Fund provides retirement, disability and survivor and death benefits to employees working as operating engineers in various industries throughout the United States and their beneficiaries.

8.    The Central Pension Fund currently has approximately _110,000 active and/or non-retired vested participants.

9.    In general, the Central Pension Fund provides monthly annuity payments to participants and beneficiaries, who satisfy the eligibility requirements specified in the Plan of Benefits. Generally, benefits are based on a percentage of the amount of contributions paid into the Fund by employers on behalf of the employee. For example, the Central Pension Fund generally calculates the amount of a normal monthly pension benefit by multiplying the amount of contributions paid into the Fund by a percentage called the "Benefit Accrual Rate." The current normal Benefit Accrual Rate is 3.0 percent. Thus, an employee with $80,000 of total employer contributions over the course of his or her working career generally would be entitled to a monthly pension benefit in the amount $2,400.00 for his or her lifetime.

10.    As a defined benefit fund, the Central Pension Fund does not maintain individual accounts for each participant. Instead of holding money in individual accounts, the Pension Fund collects payments, called employer contributions, from thousands of employers in various industries throughout the United States.

11.    The Central Pension Fund currently has approximately 6,000 contributing employers, including High Mountain.

12.    Contributions are made by contractors pursuant to the terms of various collective bargaining agreements entered into with Local Unions of the International Union of Operating Engineers.

13.    Signatory employers are required to make the contributions to the Fund on a self-reporting basis each month.

14.    Contributions generally are paid to the Central Pension Fund for each hour of work performed by the employees, but some employers contribute a percentage of their employees' gross pay..

15.    One employer obligated to make contributions to the Central Pension Fund under Collective Bargaining Agreements is High Mountain Inspection Services, Inc. A true and accurate copy of the Collective Bargaining Agreement entered into by High Mountain with International Union of Operating Engineers, Local No. 2 covering the period of October 1, 2001 to September 30, 2006, is attached to this Declaration as Exhibit 2.

16.    A true and accurate copy of the Collective Bargaining Agreement entered into by High Mountain with IUOE Local No. 2's successor, Local 112, covering the period of October 1, 2006, through September 30, 2009, is attached to this Declaration as Exhibit 3.

17.    High Mountain Inspection Services, Inc. is a Wyoming corporation, which operates as an employer engaged in interstate commerce.

18.    High Mountain also executed the Central Pension Fund's Participation Agreement. By signing the Participant Agreement with the Central Pension Fund, High Mountain also specifically agreed, among other provisions, to be "bound by and to comply with each and every provision" of the Fund's Restated Agreement and Declaration of Trust. A true and accurate copy of High Mountain's Participant Agreement is attached to this Declaration as Exhibit 4.

19.    In accordance with Article VII of the 2001 Collective Bargaining Agreement, IUOE Local No. 2 and High Mountain also entered into various Project Agreements

establishing terms and conditions of employment for particular and specific projects. A true and correct copy of examples of these Project Agreements is attached to this Declaration as Exhibits 5 through 15.

20.    The Collective Bargaining Agreements provide that for every hour worked by an employee performing work under the Agreement, High Mountain was obligated to pay, in addition to wages, contributions to the Central Pension Fund. For example, in January of 2005, High Mountain generally was required to pay the Central Pension Fund $5.90 for each hour worked by its employees.

21.    High Mountain, through the Collective Bargaining Agreement, agreed to pay contributions to the Central Pension Fund "in accordance with the rules and regulations as adopted by the Trustees of the Fund."

22.    The number of hours worked by each employee during a month is supplied to the Central Pension Fund by contractors in a Report of Contributions, or Remittance Report. The total number of hours reported is multiplied by the applicable contribution rate, resulting the amount owed by the contractor to the Central Pension Fund for a given month. Once received, such Reports are processed by the Central Pension Fund's office staff in Washington, D.C. and the hours detailed in the report are applied and recorded on behalf of each employee identified on each Report.

23.    If a signatory employer, like High Mountain, fails to submit all required contributions on a timely basis, the Central Pension Fund is irreparably harmed. This is because upon application for retirement, a Central Pension Fund participant could present the Central Pension Fund with evidence of hours actually worked (*i.e.*, pay stubs, tax documents or social security work records); demand a pension based upon all of the contributions which

should have been paid for those hours, regardless of the fact that the employer did not make the required contributions for that employee; the Central Pension Fund would be required to credit the participant for unpaid contributions relative to all unreported hours of service and pay a pension benefit to that participant accordingly.. The Central Pension Fund thus has an unknown, and unfunded, liability to these participants unless employers pay the correct amount of contributions.

24.    The amount of the Central Pension Fund's benefit payments and Benefit Accrual Rates are based on carefully calculated long-term investment and actuarial assumptions. For each month High Mountain fails to remit contributions, the Central Pension Fund experiences harm because it must forego investment money and investment opportunities which form part of the Fund's long-term planning to remain actuarially solvent.

25.    Absent injunctive relief, the Central Pension Fund would be further harmed because other contributing employers would not be deterred from following High Mountain's lead and may start understating their contribution obligations. If other employers reduce the amount of contributions they pay to the Central Pension Fund, like High Mountain has done, the Fund's payroll audit and administrative costs will necessarily increase due to the need to frequently monitor and check employers' Reports of Contributions more closely.

26.    The increased administrative expenses, necessary to monitor employers and bring collection lawsuits, is a use of the Central Pension Fund's assets which diverts money that could have been used to pay benefits to the retirees and/or their beneficiaries.

Washington, D.C.
January 15, 2007

Michael R. Fanning
CEO, Central Pension Fund

130065_1

*Michael R. Fanning as CEO of*
*The Central Pension Fund v. High Mountain Inspection Sevices, Inc.*
US District Court for the District of Columbia
Case No. 06cv02177-RJL
Exhibit to:

Declaration of Michael R. Fanning in Support of
Plaintiffs' Memorandum of Points and Authorities
in Support of Motion for Preliminary Injunction

# Exhibit 1

# Restated Agreement

# and

# Declaration of Trust

# of the

# CENTRAL PENSION FUND

# of the

# International Union of Operating Engineers

# and

# Participating Employers

**JANUARY 16, 2004**

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, effective the 7th day of September, 1960, by and between the undersigned Employer Trustees and Employer Trustees who, together with the Successor Trustees designated in the manner hereinafter provided, created a pension fund as herein provided; and

WHEREAS, said Agreement and Declaration of Trust has heretofore been amended; and

WHEREAS, under Article X of said Agreement and Declaration of Trust, the Trustees have the power and authority to amend such Agreement and Declaration of Trust from time to time as therein provided; and

WHEREAS, it is determined to be desirable to amend said Agreement and Declaration of Trust and to restate the same so as to incorporate therein all of the amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

WHEREAS, the International Union of Operating Engineers and certain Local Unions affiliated with the International Union have now and will hereafter have in effect agreements with certain Employers requiring payments by the Employers into a Trust Fund for the purpose of providing and maintaining benefits for certain Employees; and

WHEREAS, the International Union and each such Local Union and each Employer which accepts this Agreement and Declaration of Trust and agrees to be bound by the provisions hereof shall, upon acceptance by the Trustees, be deemed a party to this Agreement and Declaration of Trust; and

WHEREAS, to effect the aforesaid purpose it is desired to establish and maintain a Trust Fund which will conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended, the Employee Retirement Income Security Act of 1974, as amended, and qualify as a "qualified Plan" and as an "exempt Trust" pursuant to the International Revenue Code, Sections 401, 501(a) and other pertinent provisions thereof; and

WHEREAS, the said Trust Fund is to be known as the "Central Pension Fund of the International Union of Operating Engineers and Participating Employers"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to be established and administered; and

- 1 -

WHEREAS, the sums payable to the Fund as aforesaid, are for the purposes of providing pension benefits and other conventional forms of retirement, disability and related benefits as now are or may hereafter be authorized or permitted by law for eligible employees, their families, dependents and beneficiaries as determined hereunder; and

WHEREAS, the Trustees have been duly appointed in accordance with the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, it is hereby agreed as follows:

# ARTICLE I

## Definitions

**Section 1.1 Employer.** The term "Employer" as used herein shall mean:

(a)    An employer who is a member of, or is represented in collective bargaining by, an association and who is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union.

(b)    An employer who is not a member of, nor represented in collective bargaining by, an association, but who has duly executed or is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union.

(c)    The Union which, for the purpose of making the required contributions into the Trust Fund, shall be considered as the Employer of the Employees of the Union for whom the Union contributes to the Trust Fund.

(d)    An employee benefit fund established by a Local Union which, for purposes of making the required contributions into the Trust Fund, shall be considered as the Employer of the Employees of the employee benefit fund for whom the employee benefit fund contributes to the Trust Fund.

(e)    An employer who does not meet the requirements of the definition of "Employer" as stated in subsections (a), (b), (c) and (d) of this Section, but who is required to make payments or contributions to the Trust Fund (1) by any law or ordinance applicable to a State, Territory or Province or to any political subdivision or municipal corporation thereof or (2) pursuant to any written agreement entered into by such employer with such State, Territory or Province or any political subdivision or municipal corporation thereof.

(f)    Employers as described in this Section shall, by the making of payments to the Trust Fund pursuant to such collective bargaining or other written agreements, be deemed to have accepted and be bound by this Trust Agreement.

**Section 1.2 Local Union or Union.** The term "Local Union", as used herein, shall mean any local union affiliated with the International Union of Operating Engineers. The term "Union" as used herein, shall mean the International Union of Operating Engineers.

- 3 -

**Section 1.3 Employee.** The term "Employee" as used herein shall mean:

(a)     Any employee represented by the Union and working for an Employer as defined herein, and with respect to whose employment an Employer is required to make contributions into the Trust Fund.

(b)     An officer or employee of the Local Union who shall have been proposed for benefits under the Trust Fund by the Local Union and who shall have been accepted by the Trustees and for whom the Local Union agrees in writing to contribute to the Trust Fund at the rate fixed for contributions for other Employers.

(c)     An Employee of an Employer, as defined in subsection (d) of Section 1.1, on whose behalf such Employer is required to make payments or contributions to the Trust Fund as provided in subsection (d) of Section 1.1 and at a rate fixed for contributions for other Employers.

(d)     Employees, if any, of this Trust Fund who are not employed by an Employer as defined in Section 1.1, but as shall be proposed and accepted for such benefits by the Trustees. As to such personnel as are employees of the Trust Fund, the Trustees shall be deemed to be an Employer within the meaning of this Trust Agreement and shall provide benefits for said Employees out of said Trust Fund, on the same basis as for other Employees.

(e)     A person, represented by or under the jurisdiction of the Union, who shall be employed by a governmental unit or agency, and on whose behalf payment of contributions shall be made at the times and at the rate of payment equal to that paid by an Employer, defined in Section 1.1 of this Article, in accordance with a written agreement, ordinance or resolution.

**Section 1.4 Participant.** "Participant" means any pensioner, any person receiving benefits as the beneficiary of a deceased Participant, any person who has completed the requirements for a vested benefit, and any employee who worked in covered employment for at least 400 hours in a calendar year. Prior to becoming a Participant, an employee shall not in any event be credited with service; however, this shall not preclude credit for service prior to participation, to the extent provided by this Plan, once an employee has become a Participant.

**Section 1.5 Beneficiary.** The term "Beneficiary" shall mean a person designated by a Participant or by the terms of the Pension Plan created pursuant to this Agreement and Declaration of Trust, who is or may become entitled to a benefit.

**Section 1.6 Trustees.** The term "Trustees" as used herein shall mean the Trustees designated in this Trust Agreement, together with their successors designated and

- 4 -

appointed in accordance with the terms of this Trust Agreement. The Trustees, collectively, shall be the "Administrator" of this Fund as that term is used in the Act.

**Section 1.7 Trust Fund.** "Trust," "Trust Fund" and "Fund" as used herein shall mean the entire trust estate of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Trustees on account of such contracts), all investments made and held by the Trustees, all income, increments, earnings and profits therefrom, and any and all other property or funds received and held by the Trustees by reason of their acceptance of this Agreement and Declaration of Trust.

**Section 1.8 Trust Agreement.** The terms "Agreement and Declaration of Trust" or "Trust Agreement" as used herein shall mean this instrument, including all amendments and modifications as may from time to time be made.

**Section 1.9 Association.** The term "Association" shall mean such Employer organization as may in conformity with the provisions of this Trust become an "Employer."

**Section 1.10 Act.** The term "Act" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments as may from time to time be made and any regulations promulgated pursuant to the provisions of the said Act.

**Section 1.11 Pension Plan.** The term "Pension Plan" shall mean the plan, program, method, rules and procedure for the payment of benefits from the Trust Fund established by the Agreement and Declaration of Trust and amendments thereto.

**Section 1.12 Reciprocity Agreement.** The term "Reciprocity Agreement" as used herein shall mean the Pension Reciprocity Agreement for Operating Engineers Pension Funds and Exhibits "A" and "B" of such Reciprocity Agreement, and such other Reciprocity Agreements adopted in conformity with Section 9.4 of this Agreement.

## ARTICLE II

### Creation and Purposes of Fund

**Section 2.1.** The Trust Fund is created, established and maintained, and the Trustees agree, as they deem to be appropriate, to receive, hold and administer the Trust Fund, for the purpose of providing such benefits as now are, or hereafter may be, authorized or permitted by law for Participants and their Beneficiaries and in accordance with the provisions herein set forth and the Pension Plan. It is intended that this Trust Fund and Pension Plan be a "multiemployer plan" as that term is defined in Section 3(37) of the Act.

## ARTICLE III

### Board of Trustees

**Section 3.1 Number, Appointment, Term.** The Fund shall be administered by Trustees, at least three (3) but not more than five (5) of whom shall be appointed by the Union and shall act as Employee Trustees, and at least three (3) but not more than five (5) of whom shall be appointed by the Employers and shall act as Employer Trustees. The respective Trustees shall serve without compensation and at the will of the Union or the Employers, respectively, appointing them, but they shall be reimbursed for all reasonable and necessary expenses properly and actually incurred by them in connection with the performance of their official duties as such. A vacancy shall occur whenever a Trustee resigns or when a Trustee is removed by the party which appointed him, or by reason of death or incapacity.

**Section 3.2 Resignation and Removal.** A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty (30) days' notice in writing to the remaining Trustees and to the party by whom he was appointed, or such shorter notice as the remaining Trustees may accept as sufficient in which notice shall be stated a date on which such resignation shall take effect; and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

Any Employee Trustee may be removed at any time by the General President of the International Union of Operating Engineers, and any Employer Trustee may be removed upon a majority vote of the remaining Employer Trustees. Such removed Trustee shall be fully discharged from all further duty and responsibility herein.

**Section 3.3 Successor Trustees, Appointment.** If any Employer Trustee shall die, become incapable of acting hereunder, become inactive, resign, or be removed, a Successor Employer Trustee shall be designated by the remaining Employer Trustees, such appointment to be in writing and to be delivered to the Chairman and Secretary of the Trustees serving at that time. If any Employee Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Employee Trustee shall be appointed by the General President of the International Union of Operating Engineers, such appointment to be in writing and be delivered to the Chairman and Secretary of the Trustees serving at that time. It is the intention hereof that the Fund at all times be administered by an equal number of Employer Trustees and Employee Trustees. The written appointment shall state the term, if any, during which the Trustee is to serve, consistent with Section 3.1

- 7 -

**Section 3.4 Successor Trustee, Assumption of Office.** Any successor Trustee shall immediately upon his appointment as a successor Trustee and his acceptance of the Trusteeship in writing, as provided in Section 3.5 become vested with all the property rights, powers and duties of a Trustee hereunder with like effect as if originally named Trustee without the necessity of any formal conveyance or other instrument of title.

**Section 3.5 Acceptance of the Trust by Trustees.** A Trustee shall execute a written acceptance in a form satisfactory to the Trustees and consistent with the Act and thereby shall be deemed to have accepted the Trust created and established by this Trust Agreement and to have consented to act as Trustee and to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund's Chief Executive Officer who shall notify the remaining Trustees of the receipt of such acceptance.

**Section 3.6 Limitation of Liability of Trustees.** No Trustee shall be liable or responsible for his own acts except as otherwise provided for by law. No successor Trustees shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they became a Trustee. The Trustees shall not be liable for the act or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this Agreement, if such investment manager, attorney, agent or assistant was selected pursuant to this Trust Agreement and such person's performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its employees.

**Section 3.7 Office of the Fund.** The principal office of the Trust Fund shall, so long as location is feasible, be located and maintained in the District of Columbia. The location of the principal office shall be made known to the parties interested in the Trust Fund. At such office, and at such other places as may be required by law, there shall be maintained the books and records pertaining to the Trust Fund and its administration.

**Section 3.8 Officers.** The Trustees shall annually select from among themselves a Chairman, and a Secretary to serve for a term of one (1) year commencing at the time of election and continuing until his or their successors have been elected. At no time shall both offices be held by Trustees designated by the same parties. The Secretary or such other person as the Trustees may designate, shall keep minutes and records of all meetings, proceedings and acts of the Trustees and shall, with reasonable promptness, send copies of such minutes and records to all Trustees. The Chairman, and in his absence a Trustee selected by the Trustees, shall preside at all meetings of the Trustees.

**Section 3.9 Power to Act in Case of Vacancy.** No vacancy or vacancies on the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided by this Trust Agreement, to administer the affairs of the Trust Fund notwithstanding the existence of such vacancy or vacancies.

- 8 -

**Section 3.10 Meetings; Notices.** The Trustees shall meet at least three times each year and at such other times as they deem it necessary to transact their business. The Chairman or the Secretary of the Board of Trustees may, and upon the written request of any two (2) Trustees shall, call a meeting of the Trustees at any time by giving at least five (5) days' written notice of the time and place thereof to the remaining Trustees. A meeting of the Trustees may be held at any time without notice if all the Trustees consent thereto in writing.

**Section 3.11 Attendance at Meetings; Minutes.** All official meetings of the Trustees shall be attended only by the Trustees and shall not be open to the public, except that there may attend such other persons as may be designated by the Trustees or when invited so to do, and as may be otherwise required by law. Written minutes, which need not be verbatim, a copy of which shall be furnished with reasonable promptness to each Trustee, shall be kept of all business transacted and of all matters upon which voting shall have occurred and the vote of each Trustee shall be recorded. Such minutes shall be approved by the signature of an Employer Trustee and of an Employee Trustee.

**Section 3.12 Quorum; Voting; Action without Meeting.**

(a)    At least two (2) Employer Trustees and at least two (2) Employee Trustees present in person at any meeting of the Board of Trustees shall constitute a quorum for the transaction of business. If at any meeting the number of Employer and Employee Trustees present shall be unequal, then the group of Trustees lesser in number shall be entitled to cast the same number of votes as the other group of Trustees. In the event there shall be present at any meeting less than all of the Trustees of a group and such Trustees shall be unable to agree as to the manner in which the vote of the absent Trustee shall be cast, then action on the matter under consideration shall be postponed and resolved by mail, email and/or facsimile vote.

(b)    A quorum of a committee of the Board of Trustees, established in accordance with Section 5.7 of this Trust Agreement or otherwise, shall be a majority of the members of the committee, except as may be provided otherwise or by law.

(c)    Any action taken by the Trustees, except as herein otherwise provided, shall be by affirmative vote of a majority of the votes cast at a meeting. The Trustees must cast their votes in person, except as provided in subsection (a) of Section 3.12.

(d)    Action by the Trustees on any proposition may also be taken without a meeting if all of the Trustees agree thereon in writing.

**Section 3.13 Manner of Acting in the Event of Deadlock.**

- 9 -

(a)     A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made or proposed by any one of the Trustees is not adopted or rejected by a majority vote and the maker of the proposal, nomination, motion or resolution notifies the remaining Trustees in writing that a deadlock exists.

(b)     In the event of such deadlock arising, the Trustees shall meet for the purpose of agreeing upon an impartial umpire to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such impartial umpire within a reasonable time, then, on the petition of either group of Trustees, the senior judge on duty of the District Court of the United States for the District of Columbia shall appoint such impartial umpire. Such impartial umpire shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and the decision and award of such umpire shall be final and binding upon the parties. The reasonable compensation of such umpire and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

(c)     Any impartial umpire selected or designated to break a deadlock shall be required to enter his decision within a reasonable time fixed by the Trustees. The scope of any such proceeding before such impartial umpire shall be limited to the provisions of this Trust Agreement and to the provisions of the rules, regulations and bylaws adopted by the Trustees and to the plan of benefits established by them. The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement or to decide any issue arising under or involving the interpretation of any collective bargaining agreement between the Union, and the Employers, and such impartial umpire shall have no power or authority to change or modify any provisions of any such collective bargaining agreements.

**Section 3.14 Removal of Trustee (Violation of Act).** The Board of Trustees shall initiate action to cause the removal of any fellow member Trustee who may be serving as a Trustee in violation of the Act. The vacancy or vacancies caused by such a removal shall be filled in accordance with Section 3.3 of this Article.

# ARTICLE IV

## Contributions and Collections

**Section 4.1 Employer Contributions.**

(a)     Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms as are provided for in the applicable collective bargaining agreement in effect from time to time between the Employer or his bargaining representative and the Union or Local Union. An Employer may also be required to make contributions in such amount and under such terms as such Employer may be obligated, in writing, to make, provided that such contributions shall be subject to acceptance by the Trustees. The Employer agrees that such contributions shall constitute an absolute obligation to the Trust Fund, and such obligation shall not be subject to set-off or counter-claim which the Employer may have for any liability of the Union or Local Union, or of an Employee.

(b)     Contributions to the Fund shall be paid to the Trustees or to such depository as the Trustees shall designate, only by check, bank draft, money order or other recognized method of transmitting money or its equivalent, made payable to the order of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. The payment of contributions shall be made periodically at such times as the Trustees shall specify by rules and regulations and such payment shall be accompanied by all information reasonably necessary to properly record such contributions in the Fund's records for each such Employee.

(c)     Each Employer shall be responsible only for the contributions payable by him on account of Employees covered by him, except as may be otherwise provided by law. Employer associations or groups shall not be responsible for the contributions, payments or other obligations of any other Employer, or otherwise.

(d)     **Work Outside Jurisdiction.** In the event an Employee employed by an Employer, as defined herein, shall perform work outside of the geographical jurisdiction of the Local Union, the Employer may continue to make payments to the Trust Fund and the Trustees may accept such payments.

**Section 4.2 Receipt of Payment and Other Property of Trust.** The Trustees or such other person or entity designated or appointed by the Trustees in accordance with Section 5.5 of Article V are hereby designated as the persons to receive the payments heretofore or hereafter made to the Trust Fund by the Employers. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

**Section 4.3 Collection and Enforcement of Payments.** The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Chief Executive Officer if one has been appointed and when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement. They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union or Local Union to take whatever steps it deems necessary and wishes to undertake for such purposes.

**Section 4.4 Production of Records.** Each Employer shall promptly furnish to the Trustees or its authorized representative, on demand, the names of all such Employer's Employees, their Social Security numbers, each Employee's Earnings Records, the number of hours worked by each Employee and all Federal and State payroll tax returns, and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer, as described above, at the Employer's place of business, whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union or Local Union shall, upon the request of the Trustees, promptly furnish information with respect to an Employee's employment status.

In addition, in the event the Employer does not maintain or otherwise does not have in his possession records of the number of hours worked by each Employee, the Employer agrees that in order to determine the number of hours for which contributions are required to be submitted to the Trust Fund, the Employee's gross wages shall be divided by the hourly wage scale set forth in the applicable collective bargaining agreement for such Employee's job classification.

**Section 4.5 Collection Costs.** In the event that upon audit made by the Trustees and/or upon other evidence it is found by the Trustees that an Employer has failed to make required Employer Contributions, the Trustees are authorized and empowered:

(a)     to impose and receive from such Employer all costs of the audit;

(b)     to assess and receive from such Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Employer to make the required payment of Employer Contributions imposes additional burden and expense upon the Trustees in the collection thereof; in the administration of the Trust Fund, including but not limited to the

communication with said Employer; and, in addition thereto may cause a loss of benefits to employees, all of which are difficult of accurate ascertainment;

(c)   to assess and receive from such Employer the lost interest from the delinquent amounts, to be calculated at the rate of 9% simple interest;

(d)   to impose and receive from such Employer any amounts Trustees are required to pay for the benefit of an eligible Employee of such Employer, or an Employee who would be eligible except for the failure of such Employer to make required contributions in his behalf.

(e)   to impose and receive from such Employer all costs, audit expenses and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise;

(f)   to require such Employer to make weekly deposits of Employer Contributions in an amount determined by the Trustees, based on objective standards, provided that the Trustees have given such Employer reasonable notice of such requirement for weekly deposits, the amount to be deposited, the date such deposits are due and the basis on which the weekly deposit is determined and required;

(g)   to require such Employer to furnish to the Trustees a bond, with reputable surety thereon,

  (1)   with the Trustees as obligees thereunder;

  (2)   in an amount, determined by the Trustees, consistent with the anticipated future obligations of such Employer;

  (3)   with notice provisions acceptable to the Trustees consistent with purposes of such bond.

**Section 4.6 Effect of Non-Payment.** Non-payment by any Employer, of any contribution or other moneys owed to the Fund shall not relieve any other Employer from his or its obligation to make required payments to the Trust Fund.

- 13 -

# ARTICLE V

## Powers and Duties of Trustees

**Section 5.1 Conduct of Trust Business.** The Trustees shall have general supervision of the operation of this Trust Fund and shall conduct the business and activities of the Trust Fund in accordance with this Trust Agreement and applicable law. The Trustees shall hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees may, in the course of conducting the business of the Trust, execute all instruments in the name of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, which instruments shall be signed by at least one Employer and one Employee Trustee, provided, however, any one Trustee or the Chief Executive Officer may execute legal documents to commence, settle and process law suits to enforce trust collections on behalf of the Trustees.

**Section 5.2 Use of Fund for Expenses.** The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses: (a) of collecting the Employer contributions and payments and other moneys and property to which they may be entitled and (b) of administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

**Section 5.3 Use of Fund to Provide Benefits.** The Trustees shall also have the power and authority to use and apply the Trust Fund for the purpose of providing benefits and other conventional forms of retirement, disability and related benefits to eligible Participants and Beneficiaries in accordance with the terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees.

**Section 5.4 Investments.**

(a)    The Trustees shall have the power and authority, in their sole discretion, to invest and reinvest such funds as are not necessary for current expenditures or liquid reserves, as they may from time to time determine, in such investments as are legal investments under applicable state and federal law relating to the investment of the employee pension trust funds, not limited, however, by any limitation restricting investments in common stocks to a percentage of the Fund or to a percentage of the total market value of the Fund. The Trustees may sell, exchange or otherwise dispose of such investments at any time and, from time to time, as provided in Section 5.10(f). The Trustees shall also have power and authority (in addition to, and not in limitation of, common law and statutory authority) to invest in any stocks, bonds or other property, real or personal,

- 14 -

including improved or unimproved real estate and equity interests in real estate, where such an investment appears to the Trustees, in their discretion and consistent with their fiduciary obligations, to be in the best interest of the Trust Fund and its Participants and Beneficiaries, judged by then prevailing business conditions and standards. The Trustees shall have the authority, in respect to any stocks, bonds or other property, real or personal, held by them as Trustees, to exercise all such rights, power and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right. The Trustees, in their discretion and to the extent they deem wise, beneficial or necessary may invest the Trust Fund or any part thereof in retirement annuity contracts, retirement income contracts, group contracts, and such other form of contracts provided that all such contracts are issued by legal reserve life insurance companies authorized to do business in the District of Columbia as may be selected by the Trustees, for the purpose of providing for all or a part of the benefits provided therein. In addition to the powers given to the Trustees by law, the Trustees shall have the power and in their discretion to purchase, sell and invest in securities, and options for the purchase and sale of securities, including, without limiting the generality of the foregoing, common stocks, preferred stocks, convertible preferred stocks, bonds, convertible bonds, commercial paper, bank acceptances, trade acceptances, depositary receipts, exchange traded funds, foreign exchange, warrants, stock options, puts, calls, future contracts and options on future contracts and where applicable options on the actual security itself including those on debt securities such as United States Treasury Bills, notes, bonds and GNMAs; and on equity indices such as the Standard and Poors 500 Stock Index, the New York Stock Exchange Stock Average, the Value Line Composite Stock Average, the CBOE 100 Index, the American Stock Exchange Index, and in connection therewith to use the capital and income of the Trust to pledge assets of the Trust, to purchase securities on margin, to sell securities short, to engage in arbitrage transactions, and to utilize any and all available techniques for securities transactions. Notwithstanding any other provision of this Agreement, the Trustees may cause any part or all of this Trust to be commingled with the money of trusts created by others. Money of this Trust so added to any commingled Fund at any time shall be subject to all of the provisions of the Declaration of Trust creating said commingled fund, as it is amended from time to time. Said Declaration of Trust creating the commingled fund is hereby made a part of this Agreement.

(b)    **Delegation and Allocation of Investment Functions.**

(1)    The Trustees are authorized, in their discretion, by resolution, to allocate to the Finance Committee such duties and responsibilities to invest and reinvest such Fund assets as they shall specify in such allocation in accordance with Section 5.7(f).

- 15 -

(2)     The Trustees shall have the power and authority to appoint one or more investment managers (as defined in Section 3(38) of the Act) who shall be responsible for the management, acquisition, disposition, investing and reinvesting of such of the assets of the Trust Fund as the Trustees shall specify. Any such appointment may be terminated by the Trustees upon written notice, or as specified in written agreements with such managers. The fees of such investment manager, and its expenses to the extent permitted by law, shall be paid out of the Trust Fund.

(3)     In connection with any allocation or delegation of investment functions under paragraphs (1) and (2) of this subsection (b), the Trustees shall from time to time adopt appropriate investment policies or guidelines.

**Section 5.5 Deposits and Disbursements.** All Trust Funds not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select, and any such deposit or deposits, or disbursements therefrom, shall be made in the name of the Trust in the manner designated by the Trustees and upon the signature(s) of persons designated and authorized by the Trustees or by an investment manager appointed in accordance with Section 5.4(b)(2) of this Article.

**Section 5.6 Allocation and Delegation of Fiduciary Responsibilities.** The Trustees may, by resolution or administrative rule, or by provisions of this Trust Agreement, allocate fiduciary responsibilities and various administrative duties to committees or subcommittees of the Board of Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion and consistent with the Act.

**Section 5.7 Committees of the Board of Trustees.**

(a)     The standing committees of the Board of Trustees may consist of an Executive Committee, an Eligibility Committee, a Finance Committee, an Employer Accounts Committee, and such other standing committees as the Trustees may wish to create by bylaw or resolution.

(b)     **Appointment of Committee Members.** Each committee shall consist of an equal number of Employer and Employee Trustees. A quorum of a committee shall be as provided in Section 3.12(b). If the Employee Trustee group and/or the Employer Trustee group, respectively, nominate a Trustee of their group for membership on any committee, the Chairman shall appoint such nominee in filling any vacancy. Appointment as a member of any committee shall be communicated to the appointee by the Chief Executive Officer who shall promptly notify the Executive Committee thereof.

- 16 -

(c)     **Removal of Committee Members.** Any appointed member of any committee may be removed from membership in such committee by the group of Trustees appointing him at any time for any reason.

(d)     **Executive Committee.** The Trustees may appoint an Executive Committee which shall supervise the operation of the Trust Fund between meetings of the Board of Trustees. The Executive Committee shall formulate general or specific policies for submission to and consideration by the Board of Trustees. It shall advise the officers in matters of policy and administration not inconsistent with the Trust Agreement or with any policy or decision heretofore adopted or made by the Board of Trustees. Pending the convening of a meeting of the Board of Trustees, it shall decide and pass upon matters requiring immediate action, subject to ratification at the next meeting of the Board of Trustees to whom a report shall be made of any such immediate action, as well as of its recommendations. The Executive Committee shall also perform such other functions, duties and responsibilities as may be delegated or assigned to it by the Board of Trustees under the Trust Agreement and applicable laws, or as may be allocated to it pursuant to Sections 5.4(b) and 5.6 of this Article; any actions taken or duties performed under such allocation shall not be subject to ratification by the full Board of Trustees, unless such allocation expressly provides otherwise.

(e)     **Eligibility Committee.** The Trustees may appoint an Eligibility Committee which shall, in conjunction with the Chief Executive Officer, formulate rules and procedures for the processing of benefit applications, and the determination and payment of such benefits. The Chief Executive Officer shall make appropriate reports and recommendations in regard to such applications and determinations to the Trustees. The Chief Executive Officer and his staff shall review all applications for benefits with regard to eligibility and amount thereof and make appropriate determinations with respect thereto. As to any applicant for benefits whose claim for benefits has been denied the Chief Executive Officer shall give applicant adequate notice in writing thereof and, further, shall afford such applicant a reasonable opportunity for a fair review by the Trustees of the decision denying the claim for benefits.

(f)     **Finance Committee.** The Trustees may appoint a Finance Committee which shall review the investment policies of the Trustees and the activities of any investment managers which may have been appointed by the Trustees. It shall make appropriate recommendations to the full Board of Trustees on any matter entrusted to it. With respect to assets of the Trust Fund which the Trustees have not specified to be managed by an investment manager appointed pursuant to Section 5.4(b)(2) of this Article, and subject to such limitations and requirements as may be contained in this Trust Agreement or in the Act, the Trustees may allocate to the Finance Committee the authority to authorize and approve the investment of Trust Fund assets in investments permitted under Section 5.4(a),

- 17 -

subject to pertinent investment policies and guidelines adopted by the Board of Trustees.

(g)     **Employer Accounts Committee.** The Trustees may appoint an Employer Accounts Committee which shall formulate policies and procedures in regard to the collection of delinquent payments and contributions due the Fund. It shall collaborate with the Chief Executive Officer and with counsel in the administration of such policies and procedures and make appropriate reports and recommendations to the Trustees. The Trustees may allocate to the Employer Accounts Committee authority to initiate legal actions to collect any delinquent employer contributions or other obligations owed to the Trust Fund.

### Section 5.8 Chief Executive Officer.

(a)     The Trustees may employ or contract for the services of an individual, , to be known as "Chief Executive Officer", who shall, under the direction of the Trustees or under the direction of any appropriate committee of the Trustees, administer the office or offices of the Trust Fund and of the Trustees, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services furnished by the consulting actuary, prepare (in cooperation where appropriate with the consulting actuary and independent auditor) all reports and other documents to be prepared, filed or disseminated by or on behalf of the Trust in accordance with law, assist in the collection of contributions required to be paid to the Trust Fund by Employers and perform such other duties and furnish such other services as may be assigned, delegated or directed or as may be contracted by or on behalf of the Trustees. The Chief Executive Officer shall be the custodian on behalf of the Trustees of all documents and other records of the Trustees and of the Trust Fund.

(b)     The Trustees are authorized and empowered and may at their discretion see to the preparation of and expenditure for instruction programs or seminars for the training and direction of administrative staff of the Trust, of Local Unions, of contract administrative managers, or of other entities retained or designated by the Trustees to perform required administrative services for the Trust.

### Section 5.9 Administrative Rules and Regulations.

(a)     The Trustees are hereby empowered and authorized to adopt Administrative Rules and Regulations and to promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust Fund, provided the same are not inconsistent with the terms of this Trust Agreement. All such rules and regulations adopted by action of the Trustees shall be binding upon all parties hereto, all parties dealing with the Trust Fund and all persons claiming any benefits hereunder.

- 18 -

(b) No such regulation, rule, action or determination made or adopted by the Trustees, nor any decision or determination made by any impartial umpire appointed pursuant to Section 3.13 of this Agreement, shall in any manner conflict or be inconsistent with any provision of the applicable current collective bargaining agreement in effect, or which may be made, between the Employer, the Union and the Local Union; with this Trust Agreement and with any applicable federal, state or local law.

**Section 5.10 Additional Authority.** The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) to enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Participants involved;

(b) to keep property and securities registered in the names of the Trustees or of the Fund or in the name of any other individual or entity duly designated by the Trustees;

(c) to establish and accumulate as part of the Trust Fund such reasonable reserve funds as the Trustees, in their sole discretion, deem necessary or desirable to carry out the purposes of such Trust Fund;

(d) to pay out of the Trust Fund all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof;

(e) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder;

(f) to sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith;

(g) to establish and carry out a funding policy and method consistent with the objectives of the Pension Plan and the Act.

**Section 5.11 Bonds.** The Trustees shall obtain from an authorized surety company such bonds as may be required by law, covering such persons and in such amounts (but not less than required by law) as the Trustees, in their discretion, may determine. The cost of the premiums for such bonds shall be paid out of the Trust Fund.

**Section 5.12 Insurance.** The Trustees may in their discretion obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Trust Fund as such, its administrators and other fiduciaries, as well as employees, agents or the professional consultants of the Trustees and of the Trust Fund, while engaged in business and related activities for and on behalf of the Trust Fund (1) with respect to liability to others as a result of acts, errors or omissions of such individuals, respectively, provided such insurance policy shall provide recourse by the insurer against such individuals, as may be required by law and (2) with respect to accidental death or injuries received or property damage suffered by them. The cost of the premiums for such policies of insurance shall, where not prohibited by law, be paid out of the Trust Fund.

**Section 5.13 Information to Participants and Beneficiaries.** The Trustees shall provide Participants and Beneficiaries such information as may be required by law.

**Section 5.14 Accountants and Actuaries.** The Trustees shall engage one or more independent qualified public accountants and one or more enrolled actuaries to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary.

**Section 5.15 Trustees to Act Without Compensation.** The Trustees shall act in such capacity without compensation, but they shall be entitled to reimbursement for the expenses properly and actually incurred in the performance of their duties with the Trust Fund, including without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, or on behalf of the Trust Fund.

**Section 5.16 Reports.** All reports required by law to be signed by one or more Trustees shall be signed by all of the Trustees, provided that all of the Trustees may appoint in writing, or by resolution adopted and spelled out in the minutes, one or more of their members to sign such report on behalf of the Trustees.

**Section 5.17 Records of Trustee Transactions.** The Trustees shall keep true and accurate books of account and a record of all of their transactions and meetings (including actions taken at such meetings and by informal action of the Trustees) which records and books shall be audited annually by a certified public accountant. A copy of the audit report shall be available for inspection by interested persons at the principal office of the Trustees.

**Section 5.18 Construction and Determination by Trustees.** Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive discretion to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They shall have full power to construe the provisions of this Agreement, the terms used herein and the

- 20 -

bylaws and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon all of the parties hereto and the Beneficiaries hereof. No matter respecting the foregoing or any difference arising thereunder or any matter involved in or arising under this Trust Agreement shall be subject to the grievance or arbitration procedure established in any collective bargaining agreement between the Association and the Union, provided, however, that this clause shall not affect the rights and liabilities of any of the parties under any of such collective bargaining agreements.

**Section 5.19 Liability.** The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

**Section 5.20 Reliance on Written Instruments.** Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

**Section 5.21 Reliance by Others.**

(a)    No party dealing with the Trustees shall be obligated (1) to see the application to the stated Trust purposes, of any funds or property of the Trust Fund or (2) to see that the terms of this Trust Agreement have been complied with or (3) to inquire into the necessity or expediency of any act of the Trustees.

(b)    Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon (1) that at the time of the execution of said instrument, the Trust was in full force and effect, (2) that the instrument was executed in accordance with the terms and conditions of this Trust Agreement and (3) that the Trustees were duly authorized and empowered to execute the instrument.

**Section 5.22 Discharge of Liability.** The receipt by the Trustees for any money or property or checks (after such checks are honored at the bank and paid to the Trust Fund) shall discharge the person or persons paying or transferring the same, to the extent permitted by applicable state or federal law.

**Section 5.23 Establishment of Plan.** The Trustees shall design or formulate a Pension Plan for the payment of such retirement pension benefits, total and permanent disability benefits, death benefits, and related benefits, as are feasible. Such Pension Plan shall at all times comply with the applicable federal statutes and regulations and to the provisions of this Trust Agreement. The Trustees shall not be under any obligation to pay any pension if the payment of such pension will result in loss of the Trust Fund's tax exempt status under the then applicable Internal Revenue Code and any regulations or

- 21 -

rulings issued pursuant thereto. Said Trustees shall draft procedures, regulations, and conditions for the operation of the Pension Plan, including, by way of illustration and not limitation: conditions of eligibility for Participants and Beneficiaries, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits. The Trustees may also provide for the payment of partial pensions, and may enter into agreements with other trustees of pension plans, which conform to the applicable sections of the then applicable Internal Revenue Code for purposes of tax deductions, for the reciprocal recognition of service credits and payments of pension benefits based upon such service credits.

**Section 5.24 Amendment of Plan.** The Pension Plan may be amended by the Trustees from time to time, provided that such amendments comply with the applicable sections of the then applicable Internal Revenue Code, all applicable federal statutes and regulations, the contract articles creating the Trust Fund, and the purposes as set forth in this Trust Agreement. Additionally and not by way of limitation, the Trustees may amend the Pension Plan, in future, or retroactively, where they deem it necessary to maintain the continuation of the Trust Fund's tax exempt status or to preserve compliance with the then applicable Internal Revenue Code, applicable federal statutes, and any regulations or rulings issued with respect thereto.

## ARTICLE VI

## Controversies and Disputes

**Section 6.1 Reliance on Records.** In any controversy, claim, demand, suit at law or other proceeding between any Participant, Beneficiary or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record and any other evidence pertinent to the issue involved.

**Section 6.2 Submission to Trustees.** All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits preferred by any Participant, Beneficiary or any other person, or whether as to the construction of the language or meaning of the bylaws, rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, and the decision of the Trustees shall be binding upon all persons dealing with the Trust Fund or claiming benefits thereunder.

**Section 6.3 Settling Disputes.** The Trustees may in their sole discretion compromise or settle any claim or controversy in such manner as they think best, and any majority decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust.

## ARTICLE VII

### Beneficial Rights

**Section 7.1 No Right, Title or Interest of Employers, Union and Local Union.** No Employer, Union or Local Union or Employees, or Participants and their Beneficiaries shall have any right, title or interest in or to the Trust Fund or any part thereof other than vesting under the Pension Plan. There shall be no pro rata or other distribution of any of the assets of the Trust Fund as a result of any Union or Local Union, Employer or group of Employees or Employers or Participants and their Beneficiaries, ceasing their participation in this Trust Fund for any purpose or reason except as required by law.

**Section 7.2 Limitations upon Beneficial Rights of Employees.** All the benefits shall be free from the interference and control of any creditor, and no benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process, and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee, Participant or Beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Participant, Beneficiary or Employee, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding become payable, or be liable to become payable to any person other than the Participant or Beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such Participant or Beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits as the Trustees may deem best, directly for the support and maintenance of such Participant or Beneficiary.

## ARTICLE VIII

## Termination of Trust

**Section 8.1 Conditions of Termination.** This Trust Agreement shall cease and terminate upon the happening of any one or more of the following events:

(a)    in the event the Trust Fund shall, in the opinion of the Trustees, be inadequate to carry out the intent and purpose of this Trust Agreement, or be inadequate to meet the payments due or to become due under this Trust Agreement and under the plan of benefits to Participants and Beneficiaries already drawing benefits;

(b)    in the event there are no individuals living who can qualify as Employees hereunder;

(c)    in the event of termination by action of the Union and the Participating Employers;

(d)    in the event of termination as may be otherwise provided by law.

**Section 8.2 Procedures in Event of Termination.**

(a)    In the event of termination, the Trustees shall:

   (1)    make provision out of the Trust Fund for the payment of any and all obligations of the Trust, including expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

   (2)    arrange for a final audit and report of their transactions and accounts, for the purpose of termination of their Trusteeship;

   (3)    give any notice and prepare and file any reports which may be required by law;

   (4)    distribute the remaining assets among participants and beneficiaries of the Plan in the following order:

      (A)    First, in the case of the benefits payable as an annuity—
         (i)    in the case of a benefit of a Participant or Beneficiary which was in pay status as of the beginning of the 3-year period ending on the termination date of the Plan, to each such benefit based on the provisions of the Plan (as in effect

- 25 -

(ii) in the case of a Participant's or Beneficiary's benefit which would have been in pay status as of the beginning of the 3-year period ending on the termination date of the Plan if the Participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of an annuity under the Plan) as of the beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

For the purposes of Subparagraph (i), the lowest benefit in pay status during a 3-year period shall be considered the benefit in pay status for such period.

(B) Second, to all other nonforfeitable benefits (other than benefits becoming nonforfeitable solely on account of termination of the Plan) subject to the limitation that such nonforfeitable benefits shall not have an actuarial value which exceeds the actuarial value of a monthly benefit in the form of a life annuity commencing at age 65, equal to the lesser of—

(i) his average monthly gross income from his employer during the five (5) consecutive calendar year period during which his gross income from that employer was greater than during any other such period with that employer, or

(ii) $750 multiplied by a fraction, the numerator of which is the contribution and benefit base (determined under Section 230 of the Social Security Act) in effect at the time the Plan terminates and the denominator of which is such contribution and benefit base in effect in calendar year 1974.

(C) Third, to all other nonforfeitable benefits under the Plan.

(D) Fourth, to all other benefits under the Plan.

(b) In the event of termination, the rights of all employees to benefits accrued to the date of termination shall be nonforfeitable.

- 26 -

## ARTICLE IX

### Miscellaneous

**Section 9.1 Law Applicable.** This Trust is created and accepted in the District of Columbia and all questions pertaining to the validity or construction of this Trust Agreement and of the acts and transactions of the parties hereto shall be determined in accordance with the laws of the District of Columbia, except as to matters governed by federal law.

**Section 9.2 Savings Clause.** Should any provision of this Agreement and Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of this Fund.

**Section 9.3 Other Employers and their Employees may Join the Plan.** The Trustees may extend the coverage of this Trust Agreement to such other parties and upon such terms and conditions as the Trustees shall determine, provided such parties are required to conform to the terms and conditions of this Trust Agreement and to make the same rate of contributions required of the Employers herein for the same schedule of benefits. Such other Employers and their Employees shall have no right to participate in the appointment or replacement of Trustees. The employees of such other employers shall be deemed to be Employees as defined in Section 1.3.

**Section 9.4 Reciprocity Agreements and Agreements with Other Trustees.** The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other pension funds as they determine to be in the best interests of the Trust Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement or the collective bargaining agreements under which this Trust Agreement is maintained.
The Trustees are hereby authorized to enter into agreements with trustees of other pension funds. In such agreements the Trustees may agree with the trustees of other such funds to exercise any and all of the powers, duties, rights or obligations granted the Board under the terms of its trust indenture, and may provide that any such agreements shall be binding on their successor trustees. Such agreements may also provide for reciprocity with regard to the continuation of eligibility of covered employees whose employment may be split geographically between the jurisdiction of two or more pension funds. However, the Trustees shall not enter into any reciprocal agreements unless:

1.   a collective bargaining agreement is in force between each such other Local Union and the employers within its jurisdiction, requiring contributions to be made to a pension fund;

- 27 -

2.  each of such other pension funds has been established on the basis of an agreement and declaration of trust, which permits the trustees of said fund(s) to enter into a reciprocal agreement with another fund;

3.  each of such other pension funds has an operative plan of pension benefits in effect as of the date the reciprocal agreement is concluded; and

4.  said operative plan of pension benefits is a qualified plan within the meaning of the applicable U.S. Treasury Department Regulations.

**Section 9.5 Merger.** The Trustees shall have the power to merge with any other fund established for similar purposes of this Trust Fund under the terms and conditions mutually agreeable to the respective Board of Trustees.

**Section 9.6 Refund of Contributions.** In no event shall any Employer, directly or indirectly, receive any refund on contributions made by them to the Trust (except in case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law) nor shall an Employer directly or indirectly participate in the disposition of the Trust Fund upon termination or receive any benefits from the Trust Fund. Upon payment of contributions to the Trustees, all responsibilities of the Employer for each contribution shall cease, and the Employer shall have no responsibilities for the acts of the Trustees, nor shall an Employer be obliged to see to the application of any funds or property of the Trust or to see that the terms of the Trust have been complied with, except as provided by the applicable state or federal law.

**Section 9.7 Accounting and Judicial Settlements.**

(a) Accounting. The Union, the Local Union or an Employer may, at any time demand of the Trustees an accounting with respect to any and all accounts, provided that the party demanding such accounting agrees to pay the necessary expenses thereof.

(b) Judicial Settlements and Action by Trustees. The Trustees shall be entitled, at any time, to have judicial settlement of their accounts and too seek judicial protection by any action or proceeding they determine necessary and, further, to obtain a judicial determination or declaratory judgment as to any question of construction of this Trust Agreement or for instructions as to any action thereunder and, further, as to any question relating to the discharge of their duties and obligations under, or in connection with the administration of, this Trust and as to the distribution of assets belonging to the Trust. Any such determination, decision or judgment shall be binding upon all parties to, or claiming under, this Trust Agreement.

- 28 -

**Section 9.8 Withholding Payment.** In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall he made hereunder, the Trustees may withhold such payment until there shall have been made an adjudication of such question or dispute which, in the Trustees' sole judgment, is satisfactory to them, or until the Trustees shall have been fully protected against loss by means of such indemnification agreement or bond as they, in their sole judgment, determine to be adequate.

**Section 9.9 Gender** Whenever any words are used in this Trust Agreement in the masculine gender, they shall also be construed to include the feminine or neuter gender in all situations where they would so apply and wherever any words are used in the plural, they shall be also construed to include the singular.

**Section 9.10 Amendment of Trust Agreement.** The provisions of this Trust Agreement may be amended at any time by an instrument in writing executed by the Trustees, provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Trust Agreement, and for the purposes of paying the necessary expenses incurred in the administration of this Trust.

**Section 9.11 Article and Section Titles.** The Article and Section titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Trust Agreement or be construed as part thereof.

**Section 9.12** Each Employer who is a party to this Agreement, and/or who submits contributions to the Trust Fund, agrees to notify in writing the office of the Chief Executive Officer should such Employer cease to have an obligation to submit contributions to the Trust Fund, or if such Employer conveys its assets to another party who does not have an obligation to contribute to the Trust Fund. In the event such a conveyance of assets does occur, the Employer-Conveyor also agrees to provide the office of the Chief Executive Officer the name, address and chief executive officer of the Receiver of its assets.

- 29 -

**IN WITNESS WHEREOF**, the Trustees have caused this Restated Agreement and Declaration of Trust to be executed this 15th day of January 2004.

| | |
|---|---|
| ROBERT P. MCCORMICK | 1/16/04 — DATE |
| FRANK HANLEY | 1/16/04 — DATE |
| PAUL GEHL | 1/16/04 — DATE |
| DALE A. MILLER | 1/16/04 — DATE |
| FRED DERESCHUK | 1/16/04 — DATE |
| JAMES MCLAUGHLIN | 1-16-04 — DATE |
| MICHAEL A. CARNEY | 1-16-04 — DATE |
| J. PATRICK TIELBORG | 1/16/04 — DATE |
| NOEL C. BORCK | 1/16/04 — DATE |
| PAUL C. BENSI | 1-16-04 — DATE |

- 30 -

# Exhibit 2

## INDEX

| | | PAGE NO. |
|---|---|---|
| ARTICLE I | Jurisdiction | 2 |
| ARTICLE II | Purpose And Integrity Of Agreement | 2 |
| ARTICLE III | Management Rights | 3-4 |
| ARTICLE IV | Union Recognition And Union Security | 4-5 |
| ARTICLE V | Referral Hall | 5-7 |
| ARTICLE VI | Wages And Business Expense | 8-12 |
| ARTICLE VII | Project Agreement | 12-13 |
| ARTICLE VIII | Working Dues | 13 |
| ARTICLE IX | Training And Re-Training Fund | 13-14 |
| ARTICLE X | Branch Offices | 14 |
| ARTICLE XI | Working Conditions | 14-16 |
| ARTICLE XII | Termination Of Employment | 16 |
| ARTICLE XIII | Holidays | 16-17 |
| ARTICLE XIV | Vacations | 17-18 |
| ARTICLE XV | Job Steward Clause | 18 |
| ARTICLE XVI | Discharge And Suspension | 19 |
| ARTICLE XVII | Grievance Procedure | 19-20 |
| ARTICLE XVIII | Adjustment Of Disputes And Arbitration | 20-21 |
| ARTICLE XIX | No Strike Clause | 21-22 |
| ARTICLE XX | Duties | 23 |
| ARTICLE XXI | Payroll And Paychecks | 23-24 |
| ARTICLE XXII | Trustee Health And Welfare Fund | 24-25 |
| ARTICLE XXIII | Central Pension Fund | 25-26 |
| ARTICLE XXIV | Company Rules | 26 |
| ARTICLE XXV | Payroll Copy | 26 |
| ARTICLE XXVI | Miscellaneous | 26 |
| ARTICLE XXVII | Term Of Agreement | 26 |
| | Signature Page | 27 |

ARTICLES OF AGREEMENT
BETWEEN
THE INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCALS NO. 2, (AFL-CIO)
AND
CERTAIN PIPELINE NON-DESTRUCTIVE TESTING COMPANIES

This Agreement, made by and between Certain Pipeline Non-Destructive Testing Companies, hereinafter referred to the "Company", and the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), hereinafter referred to as the "Union", witnesseth:

## ARTICLE I
## JURISDICTION

This Agreement shall apply to and cover all employees engaged in pipeline and directly related pipeline non-destructive testing, including all employees who furnish rigs and equipment in the performance of service. The Company recognizes the Union as the exclusive bargaining agent for all such employees.

## ARTICLE II
## PURPOSE AND INTEGRITY OF AGREEMENT

A.   The word "he" or "his" when used in this contract is used to refer to both the male and female gender.

B.   It is the intent and purpose of the parties hereto to promote harmonious relationships between the Company and the employees and to set forth herein the Agreement reached covering rates of pay, hours of work and the conditions of employment to be observed by the parties hereto. The Company and the Union jointly agree to perform faithfully the obligations imposed by this Agreement, and the Union agrees to cooperate with the Company in such manner, consistent with the provisions of this Agreement, as to insure the efficient and economical operation of the Company's contracts.

C.   No Company shall engage in fictitious name, "double-breasted", or non-union operation with the intention of circumventing, or which has the effect of circumventing, any of the provisions of this Agreement.

D.   Violation of this provision shall not be arbitral and shall invalidate any and all limitations and restrictions of this Agreement upon the Union's right to strike and to impose sanctions and to take economic and legal recourse against the Company for relief against or remedy of the violation.

## ARTICLE III
## MANAGEMENT RIGHTS

A.    It is the further intent and purpose of the parties hereto that the Company shall have the right to direct and control its employees, and there is exclusively reserved to the Company the management of the Company's business and direction of its work forces, including but not limited to the right to plan, direct and control operations; the scheduling of production and the methods, processes, and means of service, production, and handling; the right to hire, to relieve employees from duty because of lack of work or other legitimate reasons, and the right to contract out of work. The Union recognizes the provisions of the contract which constitute limitations upon the Company as being the only limitations other than limitations of law or specific provisions of this contract upon the Company's right to subcontract shall not be exercised for the purpose of depriving employees of work.

B.    The Company agrees to negotiate with the Union the establishment of classifications, job content, rates of pay, and working conditions of new processes and methods for employees assigned to functions involving new methods of processes not currently established in the non-destructive testing industry; and in the event of the inability of the parties to agree, then all differences may be resolved by the grievance procedure herein, including arbitration. Nothing herein shall limit the Company from instituting methods or processes presently established in the non-destructive testing industry, even though the Company has not previously utilized such methods and processes.

C.    The Company shall have the right to establish job specifications and determine the qualifications of an employee within these specifications; the right to select, assign, transfer, promote, demote, suspend, and/or discharge for just cause subject to the terms of this Agreement, including the grievance procedure set forth hereinafter.

D.    Company rules, as presently established and agreed to by the parties, shall be binding on employees. The reasonableness of rules and the uniform application of them shall be subject to the grievance procedure provided in this Agreement. New rules shall be negotiated as to reasonableness. If acceptance of such rule cannot be resolved by negotiations, the issue shall be submitted to arbitration for resolution.

E.    All management rights not curtailed or surrendered by this Agreement are exclusively reserved to the Company, and the Company has the right to take any steps necessary, not in contradiction of this Agreement, to maintain an efficient and profitable operation.

F.  The Company shall have the right to hire, terminate, and shall have the right to discharge or discipline employees for cause subject to the grievance procedure set forth hereinafter.

## ARTICLE IV
## UNION RECOGNITION AND UNION SECURITY

A.  The Company recognizes the Union as the exclusive bargaining agency for all employees coming under the terms of this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as long as such recognition shall not be in conflict with any laws, State or Federal.

B.  The classification of all present employees shall be established and agreed to before the effective date of this Agreement. All present employees shall be tested and classified by the Company.

C.  All present employees of the Company covered by this Agreement who are now members at the time of the execution of this Agreement, shall as a condition of continued employment, remain members in good standing of the Union, paying to the Union such initiation fees and periodic dues as are regularly required for membership therein. This section shall not apply, however, to employees who are domiciled in any state that prohibits agreements to this effect.

D.  New employees or present employees not members of the Union, shall as a condition of continued employment, make application to and become members of the Union in good standing, paying to the Union such initiation fees and dues as are regularly required for membership therein within thirty (30) days of their employment or within thirty (30) days following the execution of this Agreement, as applicable. The failure of any person to become a member of the Union within said period of time shall obligate the Company, upon written notice from the Union to the Company to such effect and to the further effect that Union membership was available to such person on the same terms and conditions available to other members, to forthwith discharge such person. It is understood and agreed that this section shall not apply in those states where such agreement is unlawful.

E.  Failure of any person covered by this Agreement to maintain his/her Union membership in good standing by failure to pay periodic dues of the Union, shall upon written notice to the Company by the Union to such effect, obligate the Company to discharge such person. It is further understood that the Company shall be under no obligation to discharge employees should it be in conflict with or in violation of any law, State or Federal.

4

F.    It is understood and agreed that the Company shall not be obligated to discharge any employee for failure to maintain his/her membership in good standing until either the Union or the Company can supply or replace such employee with a comparable employee for his/her replacement, all of which to be at no expense to the Company or the Union. Where no replacement is available to replace such employee, he/she may be retained but will be discharged upon completion of the job.

G.    The Company shall have the choice of applicants nominated by the Union on the basis of their respective qualifications for the job, and no applicant or employee will be preferred or discriminated against because of membership or non-membership in the Union or because of race, creed, color, sex or national origin. The Company retains the right to reject any job applicant and may exercise that right before the Union dispatches any employee requested by the Company. However, the Company shall give reasonable consideration to applicants referred by the Union. It is further understood and agreed that employees must pass applicable test administered by the Company and/or his/her customers or other qualifying agency approved by the Company in order to qualify for employment.

H.    Technicians shall be classified as Level II. Assistants shall be classified as Level I. Trainees are employees with less than five hundred twenty (520) hours of on-the-job experience. Classifications shall be in accordance with SNT-TC-1A. Only Level II personnel shall be allowed to interpret results of tests and at least one (1) Level II shall be assigned per unit, and a maximum of one (1) Trainee per unit.

I.    The Union shall indemnify and save the Company harmless against all claims, demands, suits or other forms of liability that shall arise out of or by reason of the Company's compliance with the provisions of this Article.


**ARTICLE V**
**REFERRAL HALL**

A.    In order that the Company shall have a competent working force and to promote efficiency and safety of operation, the Company and the Union agree that:

1.    The Union shall maintain a list of persons available for referral. Registration of applicants for referral shall be had upon a telephone call or a letter to the Union office. When a Company hires or lays off employees, the Company must notify the Union. This report will be supplied by the Union, and will be filed weekly.

5

2.     Members who have been working and are laid off must report their layoff to the Union office immediately on the date of layoff, and they will be placed on the list on the date of their reporting. Failure to do so will result in their name being placed on the referral list on the actual date that they report in.

3.     Registration lists established shall be valid for six (6) month periods and the registration of an applicant shall not be carried forward without renewal of application to be accomplished by re-registration.

4.     Any members accepting employment any NDT Company must notify the Union office or the Business Agent for his/her area within forty eight (48) hours of reporting to work for the Company.

5.     Any person accepting a job assignment lasting thirty (30) calendar days or less will retain his/her original position on the referral list.

6.     The Union, its officers, agents and representatives undertake no obligation to search for, or by any means locate an applicant on the current applicable referral list, but it shall be the obligation of registered applicants to notify the Business Agent of their availability for referral duty.

7.     The Company shall request the Union to refer applicants as required and the Union shall have twenty four (24) hours to fill such request with qualified applicants. If the Union is unable to supply qualified applicants within the twenty four (24) hour period, the Company may seek from any source applicants to fill the specific manpower requirements.

8.     The Company, in requesting applicants, shall specify to the Union:
   a.     The number of employees required;
   b.     The work to be performed;
   c.     The location of the project;
   d.     The classification of employee;
   e.     The approximate starting and completion dates;
   f.     The number of hours expected to be worked weekly;
   g.     Such additional information as is deemed pertinent by the Company in order to enable the Union to make proper referrals of applicants.

9.     The Union will not discriminate either in the maintenance of its referral for employment against any person because of his/her membership or non-membership in the Union, or race, sex, color or creed.

10. The Unions shall refer to the Company only such applicants as are competent to fulfill the requirements of the position sought to be filled and who have acquired experience and possess the requisite skills for fulfillment of the vacant positions.

11. The Company reserves and shall have the right to accept or reject, or employ or not employ, any applicant referred by the Union, but the Company shall give reasonable consideration to applicants referred by the Union. The Company further reserves the right to discharge for cause any employee who has been accepted but who subsequently proves unsatisfactory during the first thirty (30) days of employment.

12. The registration of and selection of applicants for referral shall not be based on or in any way affected by Union membership, by Union By Laws, rules and regulations, constitutional provisions or any other aspect or obligation of Union membership. Nor shall any supervisor in the employ of any Company who holds Union membership be bound or in any way affected in the performance of this duty for the Company or by the obligation of Union membership, or By Laws, rules and regulations or Constitution of the Union.

13. In order to place employees, the Company shall have the right to request the first two (2) Level II's and the first two (2) Level I's per project by name and classification from the Referral Hall list. The Union will then place the third (3rd) Level II and the third (3rd) Level I on that project. The placement quota thereafter shall be on an equal basis between the Company and the Union.

14. The following shall be the minimum requirements for personnel on ultrasonic inspection jobs on pipelines:
    a. MAINLINE AUTOMATED UT:  Two (2) Level II UT Technicians and three (3) Level I UT Technicians;
    b. POORBOY AUTOMATED UT:  Two (2) Level II UT Technicians and two (2) Level I UT Technicians;
    c. TIE-IN AUTOMATED UT: Two (2) Level II UT Technicians and one (1) Level I UT Technician;
    d. HANDSCAN UT: Two (2) Level II UT Technicians;
    e. These manning levels will remain in effect unless the parties mutually agree to them being altered to reflect technology or other changes.

15. It is understood and agreed between the parties that all wages, benefits and conditions shall be the same as the Base Agreement for all signatory companies performing automated ultrasonics, except for training contributions which are one dollar and seventy five cents ($1.75) for all hours worked or paid. This means AUT and UT.

**ARTICLE VI**
**WAGES AND BUSINESS EXPENSE**

A.    Zone One (Maine, New Hampshire, Vermont, Connecticut, Massachusetts, Rhode Island, Delaware, New York, New Jersey, Maryland, District of Columbia, West Virginia, Pennsylvania, Ohio, Indiana, Illinois, Missouri, Iowa, Michigan, Minnesota, Wisconsin and Hawaii).

| CLASSIFICATION | JAN. 2002 | JAN. 2003 | JAN. 2004 | JAN. 2005 | JAN. 2006 |
|---|---|---|---|---|---|
| Level II | $20.65 | $20.65 | COLA | COLA | COLA |
| Level I | $14.40 | $14.40 | COLA | COLA | COLA |
| Trainee | $11.96 | $11.96 | COLA | COLA | COLA |

B.    Zone Two (All other states excluding Alaska).

| CLASSIFICATION | JAN. 2002 | JAN. 2003 | JAN. 2004 | JAN. 2005 | JAN. 2006 |
|---|---|---|---|---|---|
| Level II | $19.36 | $19.36 | COLA | COLA | COLA |
| Level I | $14.15 | $14.15 | COLA | COLA | COLA |
| Trainee | $11.70 | $11.70 | COLA | COLA | COLA |

C.    Cola
   1.    Cost of living as of October 1, 2003 shall be effective January 1, 2004.
         Cost of living as of October 1, 2004 shall be effective January 1, 2005.
         Cost of living as of October 1, 2005 shall be effective January 1, 2006.

D.    One and one half (1 ½) times the regular rate of pay shall be paid for all hours worked or paid over forty (40) hours in any one (1) week.

E.    Employees shall not be reassigned before completion of an assigned job for the purpose of preventing overtime.

F.    The normal workday shall be a regularly scheduled eight (8) hour period and shifts shall not be split.

G.    All necessary work on Company equipment or other work performed for the benefit of the Company shall be paid for at the appropriate rate upon authorization by the Company for such work.

H.   It is understood and agreed that, following layoff or termination, the Company may offer the employee the opportunity to perform work not covered by this Agreement under terms of compensation mutually acceptable to the Company and the employee provided that employees accepting such offers shall not be considered on the "payroll" of the Company while so employed for hiring hall purposes.

I.   Once an employee performs the duties in a classification, he/she shall not be paid at a lower classification, except at his/her option, because of layoff or where the results from a periodic qualification test indicate he/she has failed and must be reclassified to a lower classification.

J.   When a qualified Level II is working as a Level I, he/she must be on-the-job with another qualified Level II.  A Level I or Level II who refuses the option to accept a reduction in rate shall be classified as on layoff status due to lack of work.

K.   It is understood and agreed that employees may be required to take a qualification test at least annually or as often as required by the appropriate State or Federal agency, Customer or the Company.

L.   New employees shall be deemed probationary employees for a period of thirty (30) days.  If they are retained beyond the thirty (30) day probationary period, they shall become regular employees.  Probationary employees may be discharged at any time without recourse to the grievance procedure.

M.   Employees performing Lay-Barge work shall receive "bank-to-bank" pay.  Lay Barge work is defined as offshore work where no Quarter barge is available.

N.   Weekly Guarantee:
     1.   The Company guarantees forty (40) hours of work per week for each full calendar week employed and the employee is available for work in accordance with the provisions of this Agreement.

     2.   It is understood and agreed that where no work is available in an employee's classification, such employee may be assigned to any other work for which he/she is qualified, which work shall apply toward the guarantee.

     3.   Upon termination of an employee, the weekly guarantee shall be proportionately reduced to the actual hours worked during such week.

O.   Business Expense:
     1.   A rate of eighty five dollars ($85.00) business expense per day effective October 1, 2001 shall be paid for all calendar days in which the employee is located in the field overnight and available for work.

2.    Effective January 1, 2004, the business expense shall become ninety dollars ($90.00) per day.

3.    It is understood and agreed that this specification excludes Quarter barge work.

4.    Business expense shall be paid only where an employee is required to spend the night away from the Company headquarters or regularly established branch office.

5.    All crew pay and business expense for regular employees shall be paid in accordance with the applicable terms of the Agreement from the time the employees leave from their point of hire until they return to their point of hire. It is understood and agreed that this shall apply only to jobs away from the employer's home city.

6.    Any employee who voluntarily terminates his/her employment prior to completion of the job or who is terminated for just cause prior to completion of the job will be terminated as of the date with no additional remuneration forthcoming and shall forfeit any travel pay, including initial hire in travel pay, if any, and shall reimburse the Company for such expense.

7.    It is understood and agreed that point of hire, for purposes of this contract, shall mean that place where the application for employment is made and accepted.

8.    It is understood and agreed that forfeiture of travel pay shall not apply where an employee's voluntary resignation is forced because of personal hardship such as death, birth, or sickness in immediate family.

9.    The Company shall pay additional hotel bills of employees who are working on an out-of-town assignment and who are assigned to a different location for a period of five (5) days or less, providing receipts are furnished to the Company, but in no event shall it exceed fifty dollars ($50.00) per day. Where such assignment to another location exceeds five (5) days, the business expense provisions shall prevail from the beginning of such assignment, and the Company will not be required to pay such additional hotel bills.

P.    Travel Time and Conditions:
1.    Upon initial hire or initial assignment to a job, travel time shall apply to overtime.

10

2. Newly hired employees shall be considered as having begun their employment at their home or at the Company office or regularly established branch office, whichever is closer.

3. In order to be eligible for travel pay while driving personal or Company vehicles, the employee must successfully complete and pass the Company qualification tests and stay in the employment of the Company until the completion of the job, except where his/her termination is forced because of personal hardship such as death, birth, or sickness in his/her immediate family.

4. The weekly guarantee shall be proportionately reduced to the hours actually worked during the week when travel is involved.

5. The method of travel for any employee shall be as designated by the Company. Employees who fail to follow the direction of the Company with respect to type of travel, shall be paid only for the time which would have been spent by such travel and no more expense than the cost of such designated travel.

6. It is understood and agreed that reimbursement of travel expense shall not exceed the cost of commercial airline tickets where airline service is available, except in such cases where the Company requires another form of travel.

7. Employees who are required by the Company to use their personal vehicles shall be paid travel time from their homes and return or from point of hire and return, based on the number of miles traveled, divided by five (5) miles below state speed limits not to exceed fifty (50) miles per hour at their classified hourly rate of pay. It is understood and agreed that such travel pay shall be forfeited if employee quits or is discharged for just cause, except in cases where personal hardship forces such termination.

8. In new job assignments, traveling time shall be based on a driving speed of fifty (50) miles per hour when driving Company equipment, and employees shall be allowed sufficient time, where possible, to make living arrangements before reporting to the job on jobs exceeding ten (10) days.

9. Employees required to use their personal vehicles for job relocation shall be paid a mileage rate that conforms to Federal (IRS) Standard Mileage Guideline. The employee shall pay gas, oil and vehicle repair expenses.

10. Employees who are required by the Company to use their personal vehicles to and from the job site will be paid fifty dollars ($50.00) per day, plus the appropriate mileage allowance for all miles in excess of twenty five (25) miles. This provision shall not apply to work performed within the confines of the Company office or short term where employee is paid portal-to-portal.

Q. Stand-By Time and Conditions:

1. Employees shall be paid their regular hourly rate for all time on stand-by at the request of the Company or Customer and properly signed for with language as specified by the Company. Failure of the Company to collect for signed stand-by time shall not be just cause to refuse payment of the employee for requested stand-by hours.

2. Where an employee is told not to report to the job for work, even though he/she may be in the field, he/she shall not be paid for such time other than the applicable business expense, subject, however, to the weekly guarantee.

3. Employees shall be paid a minimum of two (2) hours regular hourly rate for physically reporting on the job site when not advised prior to reporting time not to report.

## ARTICLE VII
## PROJECT AGREEMENT

A. The purpose is to establish wages, fringe benefits and conditions for certain areas of the U.S.A. on a Project Agreement basis as defined below:

1. Project Agreements may be used in any part of the United States when deemed necessary by an agreement between all Business Agents.

2. Wages, fringe benefits and conditions shall be stipulated in the Project Agreement on a case-by-case basis.

3. The conditions as described in Paragraphs 1 and 2 above shall not change, negate, nor delete the provisions of the present Working Agreement.

4. This Project Agreement Policy shall be in full force and effect from July 10, 1997 and continue through the term of this Agreement, unless there is written notice by either party of a desire to terminate the Project Agreement Policy. Upon receipt of such request, the parties shall meet within thirty (30) days to negotiate any changes up to and including termination.

5. Employees who furnish rigs and equipment shall be paid by the Company not less than fifteen dollars ($15.00) per hour per item of equipment for the furnishing of such equipment. This shall be paid, in addition to all of the other contractual conditions, such as hourly rate, overtime, holiday pay, vacation pay, pension and health and welfare contributions.

6. Upon demand by the Union, the Company shall make available to the Union for inspection and copying, any and all contracts made with the employees for furnishing rigs and equipment and all remuneration to such employees as compensation for labor and equipment.

7. All Project Agreements shall originate with the Union. When a Company uses a Project Agreement, the Company must give a copy of the Project Agreement to the employees working on the project before the project begins.

### ARTICLE VIII
### WORKING DUES

A. Upon written authorization by employees, the Company shall deduct from the pay of each employee a sum equal to two and one half percent (2 ½%) of the gross wages and shall remit the amount deducted and withheld to the Financial Secretary of the Union on or before the tenth (10th) day of each month for deductions made in the prior month. This sum per hour designated as working dues is part of the regular dues structure of Operating Engineers, Locals No. 2, for N.D.E. employees and shall be effective as of the date on which members in said group vote by secret ballot for approval thereof. This sum per hour designated as working dues is necessary for contract administration by the Union due to the mobility of the work force and the shifts in job locations and the distances between projects which result in substantial cost to the Union in telephone, travel, vehicle, hotel and other expenses.

B. The deliberate failure or refusal by a Company to make deduction and/or remittance of dues as herein provided, following approval by the membership and upon appropriate authorization, shall constitute a gross breach of contract in consequences of which the Union may take appropriate economic and/or legal sanctions.

### ARTICLE IX
### TRAINING AND RE-TRAINING FUND

A. As set out above, all applicants must pass the applicable tests to be administered by the Company and/or the Customer in order to qualify for employment. In order to prepare employees/members to qualify, an NDE Training and Re-Training Fund has been established.

13

B.    Effective January 1, 2002, sixty five cents ($.65) per hour for all hours worked or paid for shall be paid by the Company to the Fund to support the Training Program. Effective January 1, 2003, ninety five cents ($.95) per hour for all hours worked or paid for shall be paid by the Company to the Fund to support the Training Program. Effective January 1, 2004, one dollar and ten cents ($1.10) per hour for all hours worked or paid for shall be paid by the Company to the Fund to support the Training Program. Effective January 1, 2005, one dollar and twenty five cents ($1.25) per hour for all hours worked or paid for shall be paid by the Company to the Fund to support the Training Program. Effective January 1, 2006, one dollar and forty cents ($1.40) per hour for all hours worked or paid for shall be paid by the Company to the Fund to support the Training Program.

C.    All jobs requiring (AUT): for the purposes of providing adequate training in (AUT) and (UT), the Company shall pay one dollar and seventy five cents ($1.75) per hour for all hours worked or paid for to the Fund, for all employees covered for the term of this Agreement on the project.

## ARTICLE X
## BRANCH OFFICES

A.    The Company must notify the Union at least one (1) month in advance of opening a new branch office, stating the address of the office, manager and telephone number.

B.    In order to qualify as a branch office, the following will be required:
1.    A telephone and fax listed in company name;

2.    A manager who must be a Union member if he/she is to operate a rig;

3.    A desk, chair, file cabinet, storage area and a nearby place to park rigs assigned to office;

4.    Someone available at least a major portion of time during business hours to issue supplies and take messages for management;

5.    A manager with the responsibility and authorization to hire, fire, guide and direct employees.

## ARTICLE XI
## WORKING CONDITIONS

A.    It is understood and agreed that the Company shall:
1.    Provide proper safeguards for all work above or below ground level;

2.    Provide survey meters in proper working conditions on all units;

14

3.     Shall pay for and provide all supplies required or necessary on the job site. No employee shall make any purchases, except where prior Company authorization is given;

4.     Shall furnish necessary expenses for the operation of Company equipment, providing the employee provides receipts of such expense;

5.     Provide two (2) or more employees per rig on work twenty (20) inches or over.

B.     It is understood and agreed by the parties hereto that all employees covered by this Agreement shall recognize and abide by the following working rules:

1.     Employees shall notify the Company immediately by telephone of any malfunctions of any equipment and shall immediately notify the Company of any personal injury or accident involving either the person or Company property;

2.     Employees shall work hours as required by the Company and/or the Customers;

3.     Employees shall maintain the Company's equipment and reports in accordance with the Company's policies and Customer requirements;

4.     Employees shall operate Company vehicles and all accessory equipment as required in performance of their duties;

5.     Employees must have valid driver's license and must be deemed insurable by the Company's insurance carrier in order to be hired and operate the Company vehicles as required in performance of the job. Suspension, loss of license or determination of insurability by the Company's carrier while employed by the Company can result in the suspension of employment of such employee until the condition has been corrected;

6.     Employees must work in accordance with the Company codes and rules of conduct, the Nuclear Regulatory Commission codes and rules, State codes, and Customer codes regarding the use of Company equipment and safety. Violation of any of these rules shall be cause for immediate discharge;

7.     All safety provisions shall be honored by the employee, the Union and the Company alike and exercised to prevent all personnel from accidental overexposure to radiation. Any employee found guilty by the Company, State or Federal agencies of deliberate or careless overexposure or failure to abide by the rules as set forth by the above mentioned agencies, shall be immediately discharged without further recourse to any of the provisions of this contract;

8.    Employees shall be granted a reasonable period to time for a lunch break;

9.    It is understood and agreed by the parties hereto that the rules set out in this Section are a supplement to the Company's rules of conduct for all employees and are not to be considered as the exclusive working rules.

## ARTICLE XII
## TERMINATION OF EMPLOYMENT

A.    All employees shall give the Company seven (7) days notice before termination. The Company shall give the employees seven (7) days notice before termination. No notice on the part of the Company will be required in the event of termination for cause, completion of job, or in the event that no work is available.

B.    Employees failing to give proper notice shall result in forfeiture of vacation pay, not to exceed the amount of seven (7) days' pay.

C.    Where the Company fails to give notice, the employee shall receive pay at eight (8) hours per day at straight time for all days falling short of the seven (7) days notice, but not to exceed seven (7) days.

## ARTICLE XIII
## HOLIDAYS

A.    All employees shall receive pay without work at the rate of eight (8) hours straight time for the following holidays, or days legally recognized as such:
1.    New Year's Day

2.    Thanksgiving Day

3.    Memorial Day

4.    Independence Day

5.    Labor Day

6.    Christmas Eve

7.    Christmas Day

B.    Any employee who fails to work, if work is available, the scheduled workday immediately before and the scheduled workday immediately after any of the said holidays, shall not receive holiday pay for such holiday, unless failure to work was the result of illness supported by a doctor's certificate establishing his/her physical inability to perform his/her duties, or other Company excused absence.

C.    Such holiday allowance will be subject to the following conditions:

1.    Employees who are otherwise eligible for holiday pay shall receive holiday pay from the first day of employment. However, to be entitled to holiday pay, a new employee must remain on the job until the job is completed or for thirty (30) days, whichever occurs first;

2.    Employees shall have worked at least twenty (20) hours or more during the calendar week in which the holiday occurs, providing he/she was hired prior to that week and work was available, and shall not have left the employment of the Company or have been discharged prior to such holiday;

3.    If the employee is on leave of absence, he/she shall not be entitled to holiday pay;

4.    When any of the above holidays fall within an eligible employee's approved vacation period and he/she is absent from work during this regularly scheduled workweek because of such vacation, he/she shall receive an extra day's pay, or one (1) more day of paid vacation, at the election of the Company;

5.    Holidays worked will be paid at straight time pay plus eight (8) hours for holiday pay. NOTE: All hours worked over forty (40) hours in a week shall be computed at one and one half (1 ½) times the hourly rate;

6.    Holiday not worked to be paid at eight (8) hours straight time and shall be computed in forty (40) hour work for overtime purposes.

## ARTICLE XIV
## VACATIONS

A.    The Company agrees to pay vacations at the rate of one (1) day's vacation, eight (8) hours at straight time, for each month worked. To earn credit for the month, the employee shall have been on the Company's payroll for a minimum of sixteen (16) calendar days during a given month.

B.    Vacation benefits to become applicable only after thirty (30) days of employment. After completion of thirty (30) days, the vacation benefits shall accumulate from the date of employment.

C.    Rate of pay for vacation will be based on the average hourly rate of employee's different job classifications.

D.    Vacations shall be scheduled by the Company in accordance with the requirements of operation and convenience of the employees with the preference being given to employees according to their length of service with the Company.

E.    Employees voluntarily quitting the employment of the Company, without proper notice, or terminated for just cause, shall forfeit their vacation benefits.

F.    Employees who are entitled to accrued vacation benefits upon termination shall receive their vacation pay within two (2) weeks following termination of employment, if requested by the employee.


# ARTICLE XV
## JOB STEWARD CLAUSE

A.    The Company agrees to recognize one (1) Job Steward on any job requiring three (3) rigs or five (5) or more employees at the same job location. In this connection, the Union shall have the right to refer one (1) of the five (5) or more employees through the referral system or, in the alternative, designate one (1) of the employees already on the job as the Job Steward. In no event shall the Company be required to displace employees already on the job in order to make positions available for a Job Steward.

B.    It is understood and agreed that the Company shall not intimidate, harass, or discriminate against any employee designated as a Job Steward as a result of his/her proper performance of Job Steward activities as set forth in this Article.

C.    The authority of the Job Steward shall be limited as follows:
1.    The Job Steward shall see that employees in his/her jurisdiction are members in good standing;

2.    The Job Steward shall see that all provisions of this Agreement are enforced;

3.    The Job Steward shall be allowed to investigate a grievance;

4.    It is understood and agreed that the Job Steward shall not interfere with the progress of a job. The Job Steward shall not be considered an agent of the Union for any action not listed in the aforementioned authority;

5.    In the event of discharge for cause of a Job Steward, the Union shall be notified immediately.

## ARTICLE XVI
## DISCHARGE AND SUSPENSION

A.    The Company will not discharge or suspend an employee without just cause, but shall give at least one (1) warning of the complaint against such employee in writing to the Union and the employee before any disciplinary action is taken against said employee. No warning notice need be given in case of violation of Company rules providing for immediate discharge. Any disciplinary action taken pursuant to Company rules may be subject to grievances and arbitration procedure.

B.    The Company shall have the right to discharge any temporary employee or probationary employee at any time without notice for any reason whatsoever.

## ARTICLE XVII
## GRIEVANCE PROCEDURE

A.    For the purpose of this Agreement, a "grievance" shall mean a dispute arising between the parties to this Agreement or between any employee or employees covered by this Agreement and the Company as limited to or by the terms and conditions of the Agreement.

B.    For the purpose of this Agreement, the grievance and arbitration procedures herein set out below available to the employees and to the Union shall not apply to the following issues:

1.    Any grievance that is not filed in accordance with the provisions of this Article;

2.    Any matter reserved solely to the rights of management or to the discretion of the Company by the terms of this Agreement;

3.    Any matter which is not regulated by this Agreement, or except as otherwise specifically provided in the Agreement any matter which would require a change from the wages, hours, conditions of employment set forth in this Agreement.

C.    The Company and the Union agree that the grievances shall be settled in the shortest possible time.

D.    Any assignment of work over which a controversy has arisen shall be carried out until the controversy is settled through the grievance procedure.

E.    Grievances or disputes as defined in this Article shall be handled in the following manner:

1.    Employees shall take up any grievance with their immediate supervisor within seventy two (72) hours of the occurrence;

19

2.  If the grievance cannot be resolved, employees shall reduce the grievance to writing and forward one (1) copy to the Union and one (1) copy to the Company;

3.  The Company and the Union are required to attempt to resolve the grievance within ten (10) days after Step One has been completed;

4.  If the grievance cannot be resolved at this Step, the grievance will be referred to the top officials of the Company and the Union within ten (10) days thereafter;

5.  Grievances initiated by the Union shall be commenced as set out above in Step Two, except for the first (1st) sentence;

6.  If the grievance cannot be settled via item 4 above, the grievance may be submitted to arbitration within thirty (30) days;

7.  Failure of either party to comply with the time limits set forth above will serve to declare the grievance forfeit against the defaulting party. The time limits set forth above may be extended only by written mutual agreement;

8.  At any Step in the foregoing grievance, the authorized official of the Union shall have the final authority with respect to any aggrieved employee covered by this Agreement to decline to process the grievance further if, in the judgment of such officials, the grievance lacks merit or lacks jurisdiction under the terms of this Agreement or has been adjusted or justified under the terms of this Agreement to the satisfaction of the Union.

## ARTICLE XVIII
## ADJUSTMENT OF DISPUTES AND ARBITRATION

A.  Any grievance that cannot be settled between the employees, the Union or the Company in accordance with the provisions of the foregoing Article and Section may be submitted to an independent arbitrator under the following terms and conditions. Arbitration proceedings shall take place at the city of the Company's home office.

B.  The independent arbitrator may be selected by agreement between one (1) Company representative and one (1) Union representative.

C.   In the event that two (2) representatives designated by the parties shall be unable to agree upon the independent arbitrator within ten (10) days following notice of submission to arbitration, the Federal Mediation and Conciliation Service shall be requested to submit a list of five (5) qualified and approved arbitrators, one (1) of which shall be selected to act as the independent arbitrator.   If the two (2) representatives designated by the parties are unable to agree upon one (1) arbitrator from the list supplies them, then each party will be permitted to strike from the list two (2) names alternately, and the one (1) remaining shall be the one (1) selected.   The party taking the first (1st) strike of the listed arbitrators shall be determined by lot.

D.   The decision of the arbitrator shall be final and binding upon the parties hereto.   It is distinctly understood that the arbitrator is not vested with the power to change, modify or alter this Agreement in any of its parts, except as specified in Article III, Sections B, C and D.

E.   It is further understood and agreed that, while the arbitrator may rule on the merits of the grievance, he/she shall not have the power to mitigate penalties or disciplinary action assessed pursuant to the terms of this Agreement.

F.   The arbitrator shall have the power to consider whether or not the Company, in taking disciplinary action, had as its motive for such disciplinary action discrimination in regard to hire or tenure of employment or any terms or conditions of employment to encourage or discourage membership in any labor organization and in such instance may order reinstatement and back pay and restoration of all rights of the grievant.

G.   The expense or fees of the arbitrator shall be borne equally by the Company and the Union.

H.   Where the arbitrator rules and directs, an employee or employees may be reinstated and paid for lost wages.   Any interim earnings received by such employee shall be deducted from the back pay.   If such employee has received unemployment compensation from any State or Federal agency, the full amount received shall be deducted from the back pay and remitted to said State or Federal agency.

## ARTICLE XIX
## NO STRIKE CLAUSE

A.   The Company agrees that there shall be no lockouts, and the Union and its members agree that there shall be no strikes, stoppages of work, slowdowns, or any other interference with production by the Union or its members during the term of this Agreement.

B.   Layoffs due to lack of work, changes in operation, or cause beyond the control of the Company shall not be construed as lockouts.

C.   Any employee or employees who engage in a strike, walkout, or slowdown of production not expressly sanctioned by the Union shall be discharged and shall forfeit all rights guaranteed him/her under the terms of this Agreement.

D.   Where the strike is not expressly sanctioned by the Union, the Union shall, within twenty four (24) hours of the notification at St. Louis, Missouri, of the strike or slowdown, notify the employees so engaged in the unauthorized strike or slowdown to return to work.

E.   Where such employees do not return to work within the said twenty four (24) hour period, they shall be discharged and shall forfeit all rights guaranteed them under the terms of this Agreement.

F.   Notification from the Union that a strike or slowdown is not authorized or sanctioned by the Union shall be sent to the Company's headquarters and other affected employees named by the Company by telegram within said twenty four (24) hours.   Such telegram shall be directed to the employee in care of the Company and shall be sufficient notice to said employee hereunder.

G.   In the event of breach of this Article, either party shall have full access to the appropriate State or Federal courts to seek recovery of damages and/or specific performance of this Agreement.   This Section shall not apply, however, with respect to the Local provided the Union notify employees at each job site where such non-sanctioned strike, slowdown, or stoppage of work occurs, within twenty four (24) hours of the notice of the commencement of the work stoppage, strike or slowdown, as set out above, stating that the strike, slowdown, or work stoppage was not called by the Local or International Union and through such notice instruct its members not to respect or recognize any such picket line.

H.   Employees shall not be discharged or otherwise disciplined for failing or refusing to cross a lawfully established picket line.

I.   It is expressly understood that employees shall not be paid for time not worked because of failing or refusal to cross a lawfully established picket line.

J.   Where employees refuse to cross a lawful picket line as set out above, the Union shall not be liable.

## ARTICLE XX
## DUTIES

A.  The parties recognize and agree that the nature of the duties performed by those employed within the terms and conditions of this Agreement require them to be free from outside influences.

B.  The nature of the work demands compliance with rules, specifications and standards established by Customers of the Company, as well as other State and Federal laws and regulations. The Union agrees that it will not interfere with the employees' responsibility to the Company or its Customers.

C.  The Union and Company, however, do encourage increased efficiency, safety and skill. Both parties agree to cooperate to the end that the Customers are furnished the highest standard of performance and skill available.

D.  Refusal to perform work consistent with this Agreement shall be cause for immediate discharge.

E.  Employees covered by this Agreement must have complete freedom regarding inspection and interpretation of the work as determined by the Company standards and shall not be subject to any outside influences.

F.  It is expressly provided, that, where an employee leaves the job site without permission of the Company or the Customer representative or refuses to work because of work stoppage or picket line by a third party, he/she shall not be paid for such time not worked and the weekly guarantee shall be proportionately reduced.

G.  The Union agrees that it shall place no limitation upon the amount of work which an employee may be required to perform during the working day, and there shall be no such restriction imposed against the use of any type of machinery, tools, or labor-saving devices.

## ARTICLE XXI
## PAYROLL AND PAYCHECKS

A.  The Company agrees that paychecks issued to employees covered by this Agreement shall show hours of work at straight time, hours worked at premium pay, and shall issue check covering necessary expenses paid for by the employee, providing the employee furnishes valid receipts of such paid expenses to the Company.

B.  Payday may be at the Company's discretion, provided the employee is given a business expense check weekly, where payday is not weekly.

23

C.   The Company shall make reasonable attempts to arrange for local cashing of paychecks for employees working at remote job site locations.

D.   The Company agrees to make direct deposit banking available to employees, provided the employee provides the Company with all information needed to make such transaction. If the employee decides to use this service, he/she may not switch on and off.

E.   Final paychecks to employees will be withheld until all equipment under the employee's cognizance has been turned in and accounted for to the Company.

F.   No charge to the employee will be made for broken equipment, except where negligence has been proven.

G.   It is understood and agreed that the employee shall be responsible for equipment charged out to him/her and lost or not returned to the Company for any reason within the control of the employee and such cost shall be charged to the employee.

## ARTICLE XXII
## TRUSTEE HEALTH AND WELFARE FUND

A.   Effective January 1, 2002 through December 31, 2002, it is agreed that the Company shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), four dollars ($4.00) per hour for each hour worked or paid for by all current employees covered by this Agreement. Effective January 1, 2003 through December 31, 2003, it is agreed that the Company shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), four dollars and forty cents ($4.40) per hour for each hour worked or paid for by all current employees covered by this Agreement. Effective January 1, 2004 through December 31, 2004, it is agreed that the Company shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), four dollars and eighty cents ($4.80) per hour for each hour worked or paid for by all current employees covered by this Agreement. Effective January 1, 2005 through December 31, 2005, it is agreed that the Company shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), five dollars and twenty cents ($5.20) per hour for each hour worked or paid for by all current employees covered by this Agreement. Effective January 1, 2006 through December 31, 2006, it is agreed that the Company shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Locals No. 2, (AFL-CIO), five dollars and sixty cents ($5.60) per hour for each hour worked or paid for by all current employees covered by this Agreement.

B. The Company further agrees to make like contributions for all new employees from the first (1st) day of employment or from the effective date of this Agreement, whichever is the latter to insure the employees and their dependents of coverage of life insurance, hospitalization, etc.

C. The Company agrees to make the contributions to the Trustee Health and Welfare Fund within ten (10) days following the end of each month, on the form furnished by the Union showing the number of employees, and the number of hours reported for each employee. This report shall accompany the monthly payment check to the Trustee Health and Welfare Fund.

D. Companies must send reports on Health and Welfare, Pension, Working Dues and Training, regardless of whether payment is sent, no later than the tenth (10th) of the following month that the work was done. If not received by the due date, the Company may be audited.

## ARTICLE XXIII
## CENTRAL PENSION FUND

A. The Company agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2002 through December 31, 2002, four dollars and fifteen cents ($4.15) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement. The Company agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2003 through December 31, 2003, five dollars and thirty cents ($5.30) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement. The Company agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2004 through December 31, 2004, five dollars and sixty cents ($5.60) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement. The Company agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2005 through December 31, 2005, five dollars and ninety cents ($5.90) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement. The Company agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2006 through December 31, 2006, six dollars and twenty cents ($6.20) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement.

B.      Contributions shall commence for all new employees upon their first (1st) calendar day of employment. Said payment shall be made on the date, in the said manner and form and in accordance with the rules and regulations as adopted by the Trustees of the Fund.

## ARTICLE XXIV
## COMPANY RULES

A.      The Union agrees at all times as far as in its power, to further the interest of the Company and require each member of the Union who is an employee of the Company to abide by all operating rules and regulations of the Company not in conflict with this Agreement.

B.      Union representatives shall notify the Company at its home office of his/her presence on the job site if for contract administration.

## ARTICLE XXV
## PAYROLL COPY

The Company agrees to submit to the Union, along with the dues deductions, a certified copy of its payroll for each month.

## ARTICLE XXVI
## MISCELLANEOUS

This contract and any addenda hereto sets forth the entire understanding and agreements of the parties and may not be modified in any respect, except in writing subscribed to by all parties.

## ARTICLE XXVII
## TERM OF AGREEMENT

This Agreement shall be in full force and effect from October 1, 2001, and shall continue until midnight, September 30, 2006, automatically renewing itself for additional periods of one (1) year each from year-to-year thereafter, unless written notice is given by either party sixty (60) days prior to October 1, 2006, or October 1 of any year thereafter in which this Agreement exists, of a desire to open the Agreement to negotiate any changes.

# Exhibit 3

# ARTICLES OF AGREEMENT

## BETWEEN

## THE INTERNATIONAL UNION
## OF OPERATING ENGINEERS,

## LOCAL 112

## AND

## CERTAIN PIPELINE NON-DESTRUCTIVE
## TESTING COMPANIES

# INDEX

|  |  | PAGE NO. |
|---|---|---|
| ARTICLE I | Jurisdiction | 3 |
| ARTICLE II | Purpose And Integrity Of Agreement | 3 |
| ARTICLE III | Management Rights | 4-5 |
| ARTICLE IV | Union Recognition And Union Security | 5-6 |
| ARTICLE V | Referral Hall | 6-8 |
| ARTICLE VI | Wages And Business Expense | 8-13 |
| ARTICLE VII | Project Agreement | 14 |
| ARTICLE VIII | Working Dues | 14 |
| ARTICLE IX | Training And Re-Training Fund | 15 |
| ARTICLE X | Branch Offices | 15 |
| ARTICLE XI | Working Conditions | 15-16 |
| ARTICLE XII | Termination Of Employment | 17 |
| ARTICLE XIII | Holidays | 17-18 |
| ARTICLE XIV | Vacations | 18-19 |
| ARTICLE XV | Job Steward Clause | 19 |
| ARTICLE XVI | Discharge And Suspension | 20 |
| ARTICLE XVII | Grievance Procedure | 20-21 |
| ARTICLE XVIII | Adjustment Of Disputes And Arbitration | 21-22 |
| ARTICLE XIX | No Strike Clause | 22-23 |
| ARTICLE XX | Duties | 24 |
| ARTICLE XXI | Payroll And Paychecks | 24-25 |
| ARTICLE XXII | Trustee Health And Welfare Fund | 25-26 |
| ARTICLE XXIII | Central Pension Fund | 26 |
| ARTICLE XXIV | Employer Rules | 26 |
| ARTICLE XXV | Payroll Copy | 26 |
| ARTICLE XXVI | Subcontracting | 26 |
| ARTICLE XXVII | Miscellaneous | 27 |
| ARTICLE XXVIII | Term Of Agreement | 27 |
|  | Signature Page | 27 |

# ARTICLES OF AGREEMENT
## BETWEEN
## THE INTERNATIONAL UNION OF OPERATING ENGINEERS,
## LOCAL 112
## AND
## CERTAIN PIPELINE NON-DESTRUCTIVE TESTING COMPANIES

This Agreement, made by and between Certain Pipeline Non-Destructive Testing Companies, hereinafter referred to as the "Employer", and the International Union of Operating Engineers, Local 112 hereinafter referred to as the "Union", witnesseth:

## ARTICLE I
## JURISDICTION

This Agreement shall apply to and cover all employees engaged in pipeline and directly related pipeline non-destructive testing. The Employer recognizes the Union as the exclusive bargaining agent for all such employees.

## ARTICLE II
## PURPOSE AND INTEGRITY OF AGREEMENT

A.   The word "he" or "his" when used in this contract is used to refer to both the male and female gender.

B.   It is the intent and purpose of the parties hereto to promote harmonious relationships between the Employer and the employees and to set forth herein the Agreement reached covering rates of pay, hours of work and the conditions of employment to be observed by the parties hereto. The Employer and the Union jointly agree to perform faithfully the obligations imposed by this Agreement, and the Union agrees to cooperate with the Employer in such manner, consistent with the provisions of this Agreement, as to insure the efficient and economical operation of the Employer's contracts.

C.   No Employer shall engage in fictitious name, "double-breasted", or non-union operation with the intention of circumventing, or which has the effect of circumventing, any of the provisions of this Agreement.

D.   Violation of this provision shall not be arbitral and shall invalidate any and all limitations and restrictions of this Agreement upon the Union's right to strike and to impose sanctions and to take economic and legal recourse against the Employer for relief against or remedy of the violation.

## ARTICLE III
## MANAGEMENT RIGHTS

A.     It is the further intent and purpose of the parties hereto that the Employer shall have the right to direct and control its employees, and there is exclusively reserved to the Employer the management of the Employer's business and direction of its work forces, including but not limited to the right to plan, direct and control operations; the scheduling of production and the methods, processes, and means of service, production, and handling; the right to hire, to relieve employees from duty because of lack of work or other legitimate reasons, and the right to contract out of work. The Union recognizes the provisions of the contract which constitute limitations upon the Employer as being the only limitations other than limitations of law or specific provisions of this contract upon the Employer's right to subcontract shall not be exercised for the purpose of depriving employees of work.

B.     The Employer agrees to negotiate with the Union the establishment of classifications, job content, rates of pay, and working conditions of new processes and methods for employees assigned to functions involving new methods of processes not currently established in the non-destructive testing industry; and in the event of the inability of the parties to agree, then all differences may be resolved by the grievance procedure herein, including arbitration. Nothing herein shall limit the Employer from instituting methods or processes presently established in the non-destructive testing industry, even though the Employer has not previously utilized such methods and processes.

C.     The Employer shall have the right to establish job specifications and determine the qualifications of an employee within these specifications; the right to select, assign, transfer, promote, demote, suspend, and/or discharge for just cause subject to the terms of this Agreement, including the grievance procedure set forth hereinafter.

D.     Employer rules, as presently established and agreed to by the parties, shall be binding on employees. The reasonableness of rules and the uniform application of them shall be subject to the grievance procedure provided in this Agreement. The Employer shall have the right to make and enforce rules and regulations relating to discipline, safety and general conduct of employees, provided such rules are not inconsistent with the collective agreement.

E.     All management rights not curtailed or surrendered by this Agreement are exclusively reserved to the Employer, and the Employer has the right to take any steps necessary, not in contradiction of this Agreement, to maintain an efficient and profitable operation.

F.  The Employer shall have the right to hire, terminate, and shall have the right to discharge or discipline employees for cause subject to the grievance procedure set forth hereinafter.

## ARTICLE IV
## UNION RECOGNITION AND UNION SECURITY

A.  The Employer recognizes the Union as the exclusive bargaining agency for all employees coming under the terms of this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as long as such recognition shall not be in conflict with any laws, State or Federal.

B.  The classification of all present employees shall be established and agreed to before the effective date of this Agreement.  All present employees shall be tested and classified by the Employer.

C.  All present employees of the Employer covered by this Agreement who are now members at the time of the execution of this Agreement, shall as a condition of continued employment, remain members in good standing of the Union, paying to the Union such initiation fees and periodic dues as are regularly required for membership therein.  This section shall not apply, however, to employees who are domiciled in any state that prohibits agreements to this effect.

D.  New employees or present employees not members of the Union, shall as a condition of continued employment, make application to and become members of the Union in good standing, paying to the Union such initiation fees and dues as are regularly required for membership therein within thirty (30) days of their employment or within thirty (30) days following the execution of this Agreement, as applicable.  The failure of any person to become a member of the Union within said period of time shall obligate the Employer, upon written notice from the Union to the Employer to such effect and to the further effect that Union membership was available to such person on the same terms and conditions available to other members, to forthwith discharge such person.  It is understood and agreed that this section shall not apply in those states where such agreement is unlawful.

E.  Failure of any person covered by this Agreement to maintain his/her Union membership in good standing by failure to pay periodic dues of the Union, shall upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.  It is further understood that the Employer shall be under no obligation to discharge employees should it be in conflict with or in violation of any law, State or Federal.

F.    It is understood and agreed that the Employer shall not be obligated to discharge any employee for failure to maintain his/her membership in good standing until either the Union or the Employer can supply or replace such employee with a comparable employee for his/her replacement, all of which to be at no expense to the Employer or the Union. Where no replacement is available to replace such employee, he/she may be retained but will be discharged upon completion of the job.

G.    The Employer shall have the choice of applicants nominated by the Union on the basis of their respective qualifications for the job, and no applicant or employee will be preferred or discriminated against because of membership or non-membership in the Union or because of race, creed, color, sex or national origin. The Employer retains the right to reject any job applicant and may exercise that right before the Union dispatches any employee requested by the Employer. However, the Employer shall give reasonable consideration to applicants referred by the Union. It is further understood and agreed that employees must pass applicable test administered by the Employer and/or his/her customers or other qualifying agency approved by the Employer in order to qualify for employment.

H.    Technicians shall be classified as Level II or Level III. Assistants shall be classified as Level I. Assistants will also be considered as Apprentices until they have completed the on-the-job experience and technical training set forth in the Apprenticeship program. Levels of classification shall be in accordance with SNT-TC-1A. Only Level II or Level III personnel shall interpret test results and at least one (1) Level II or Level III shall be assigned per unit.

I.    The Union shall indemnify and save the Employer harmless against all claims, demands, suits or other forms of liability that shall arise out of or by reason of the Employer's compliance with the provisions of this Article.

## ARTICLE V
## REFERRAL HALL

A.    In order that the Employer shall have a competent working force and to promote efficiency and safety of operation, the Employer and the Union agree that:

    1.    The Union shall maintain a list of persons available for referral. Registration of applicants for referral shall be had upon a telephone call or a letter to the Union office. When an Employer hires or lays off employees, the Employer must notify the Union. This report will be supplied by the Union, and will be filed weekly.

2.  Members who have been working and are laid off must report their layoff to the Union office immediately on the date of layoff, and they will be placed on the list on the date of their reporting. Failure to do so will result in their name being placed on the referral list on the actual date that they report in.

3.  Registration lists established shall be valid for six (6) month periods and the registration of an applicant shall not be carried forward without renewal of application to be accomplished by re-registration.

4.  Any members accepting employment with any NDT Employer must notify the Union office or the Business Agent for his/her area within forty-eight (48) hours of reporting to work for the Employer.

5.  Any person accepting a job assignment lasting thirty (30) calendar days or less will retain his/her original position on the referral list.

6.  The Union, its officers, agents and representatives undertake no obligation to search for, or by any means locate an applicant on the current applicable referral list, but it shall be the obligation of registered applicants to notify the Business Agent of their availability for referral duty.

7.  The Employer shall request the Union to refer applicants as required and the Union shall have twenty-four (24) hours to fill such request with qualified applicants. If the Union is unable to supply qualified applicants within the twenty-four (24) hour period, the Employer may seek from any source applicants to fill the specific manpower requirements.

8.  The Employer, in requesting applicants, shall specify to the Union:
    a.  The number of employees required;
    b.  The work to be performed;
    c.  The location of the project;
    d.  The classification of employee;
    e.  The approximate starting and completion dates;
    f.  The number of hours expected to be worked weekly;
    g.  Such additional information as is deemed pertinent by the Employer in order to enable the Union to make proper referrals of applicants.

9.  The Union will not discriminate either in the maintenance of its referral for employment against any person because of his/her membership or non-membership in the Union, or race, sex, color or creed.

10. The Unions shall refer to the Employer only such applicants as are competent to fulfill the requirements of the position sought to be filled and who have acquired experience and possess the requisite skills for fulfillment of the vacant positions.

11. The Employer reserves and shall have the right to accept or reject, or employ or not employ, any applicant referred by the Union, but the Employer shall give reasonable consideration to applicants referred by the Union. The Employer further reserves the right to discharge for cause any employee who has been accepted but who subsequently proves unsatisfactory during the first thirty (30) days of employment.

12. The registration of and selection of applicants for referral shall not be based on or in any way affected by Union membership, by Union By Laws, rules and regulations, constitutional provisions or any other aspect or obligation of Union membership. Nor shall any supervisor in the employ of any Employer who holds Union membership be bound or in any way affected in the performance of this duty for the Employer or by the obligation of Union membership, or By Laws, rules and regulations or Constitution of the Union.

13. In order to place employees, the Employer shall have the right to request the first two (2) Level II's and the first two (2) Level I's per project by name and classification from the Referral Hall list. The Union will then place the third (3rd) Level II and the third (3rd) Level I on that project. The placement quota thereafter shall be on an equal basis between the Employer and the Union.

## ARTICLE VI
## WAGES AND BUSINESS EXPENSE

A. Classification:

| Effective Date | Rate | H&W | Pension | Training | Gross |
|---|---|---|---|---|---|
| January 1, 2007 | | | | | |
| Level I | $17.05 | $5.60 | $6.20 | $1.40 | $30.25 |
| Level II | $24.17 | $5.60 | $6.20 | $1.40 | $37.37 |
| January 1, 2008 | | | | | |
| Level I | $18.41 | $5.60 | $6.20 | $1.40 | $31.61 |
| Level II | $25.85 | $5.60 | $6.20 | $1.40 | $39.05 |
| January 1, 2009 | | | | | |
| Level I | $19.83 | $5.60 | $6.20 | $1.40 | $33.03 |
| Level II | $27.61 | $5.60 | $6.20 | $1.40 | $40.81 |

**Wages for Call-Out Work only, in Texas, Louisiana, Oklahoma, and Wyoming.**

| Effective Date | Rate | H&W | Pension | Training | Gross |
|---|---|---|---|---|---|
| January 1, 2007 | | | | | |
| Level I | $13.64 | $5.60 | $3.00 | $1.40 | $23.64 |
| Level II | $19.34 | $5.60 | $3.00 | $1.40 | $29.34 |
| January 1, 2008 | | | | | |
| Level I | $14.73 | $5.60 | $3.00 | $1.40 | $24.73 |
| Level II | $20.68 | $5.60 | $3.00 | $1.40 | $30.68 |
| January 1, 2009 | | | | | |
| Level I | $15.86 | $5.60 | $3.00 | $1.40 | $25.86 |
| Level II | $22.09 | $5.60 | $3.00 | $1.40 | $32.09 |

Advanced category pay will apply to crawler technicians, manual UT technicians (shear-wave), and AUT system operators.

The Level II crawler technicians and manual UT technicians performing shear-wave will receive an additional $2.00 per hour.

The AUT system operators will receive an additional $3.00 per hour.

Only one advanced category technician will be allowed for each position within a crew.

The rates of pay for Local 112 apprentices are based on a percentage of Level I rates as established in this Collective Bargaining Agreement. The percentage figures are based on the following five (5) steps.

**Apprenticeship Wages**

| 1st Step | 0 to 500 Hours | 80% |
|---|---|---|
| 2nd Step | 500 to 1000 Hours | 85% |
| 3rd Step | 1000 to 1500 Hours | 90% |
| 4th Step | 1500 to 2000 Hours | 95% |
| 5th Step | 2000 to 3000 Hours | 100% |

The rate of pay shall be for the proper period, but at no time more than the classification of work being performed in the jurisdiction of Local 112. The pay rate of all apprentices shall be for the proper period of training as determined by the Joint Committee and as stipulated in the Apprenticeship Agreement.

B.    Overtime:

    1.    One and one half (1 ½) times the regular rate of pay shall be paid for all hours worked or paid over forty (40) hours in any one (1) week.

    2.    All call-out work performed on Saturday and Sunday shall be paid at the rate of time-and one-half.

C.    Employees shall not be reassigned before completion of an assigned job for the purpose of preventing overtime.

9

D.   The normal workday shall be a regularly scheduled eight (8) hour period and shifts shall not be split.

E.   All necessary work on Employer equipment or other work performed for the benefit of the Employer shall be paid for at the appropriate rate upon authorization by the Employer for such work.

F.   It is understood and agreed that, following layoff or termination, the Employer may offer the employee the opportunity to perform work not covered by this Agreement under terms of compensation mutually acceptable to the Employer and the employee provided that employees accepting such offers shall not be considered on the "payroll" of the Employer while so employed for hiring hall purposes.

G.   Once an employee performs the duties in a classification, he/she shall not be paid at a lower classification, except at his/her option, because of layoff or where the results from a periodic qualification test indicate he/she has failed and must be reclassified to a lower classification.

H.   When a qualified Level II is working as a Level I, he/she must be on-the-job with another qualified Level II. A Level I or Level II who refuses the option to accept a reduction in rate shall be classified as on layoff status due to lack of work.

I.   It is understood and agreed that employees may be required to take a qualification test at least annually or as often as required by the appropriate State or Federal agency, Customer or the Employer.

J.   New employees shall be deemed probationary employees for a period of thirty (30) days. If they are retained beyond the thirty (30) day probationary period, they shall become regular employees. Probationary employees may be discharged at any time without recourse to the grievance procedure.

K.   Employees performing Lay-Barge work shall receive "bank-to-bank" pay. Lay Barge work is defined as offshore work where no Quarter barge is available.

L.   Weekly Guarantee:

     1.   The Employer guarantees forty (40) hours of work per week for each full calendar week employed and the employee is available for work in accordance with the provisions of this Agreement.

     2.   It is understood and agreed that where no work is available in an employee's classification, such employee may be assigned to any other work for which he/she is qualified, which work shall apply toward the guarantee.

3. Upon termination of an employee, the weekly guarantee shall be proportionately reduced to the actual hours worked during such week.

M.    Business Expense:

1. Effective January 1, 2007 – All States other than listed below $100.00 for term of Agreement. (Increase of $10.00)

| Massachusetts | $125.00 | California | $125.00 | New Hampshire | $125.00 |
| New York | $125.00 | Connecticut | $125.00 | Oregon | $125.00 |
| Rhode Island | $125.00 | Maine | $125.00 | Vermont | $125.00 |
| Delaware | $125.00 | Maryland | $125.00 | Washington | $125.00 |
| Washington D.C. | $125.00 | New Jersey | $125.00 | | |
| | | | | | |

| Call-Out Work Only | | | |
|---|---|---|---|
| Texas | $90.00 | Oklahoma | $90.00 |
| Louisiana | $90.00 | Wyoming | $90.00 |

2. It is understood and agreed that this specification excludes Quarter barge work.

3. Business expense shall be paid only where an employee is required to spend the night away from the Employer headquarters or regularly established branch office.

4. All crew pay and business expense for regular employees shall be paid in accordance with the applicable terms of the Agreement from the time the employees leave from their point of hire until they return to their point of hire. It is understood and agreed that this shall apply only to jobs away from the employer's home city.

5. Any employee who voluntarily terminates his/her employment prior to completion of the job or who is terminated for just cause prior to completion of the job will be terminated as of the date with no additional remuneration forthcoming and shall forfeit any travel pay, including initial hire in travel pay, if any, and shall reimburse the Employer for such expense.

6. It is understood and agreed that point of hire, for purposes of this contract, shall mean that place where the application for employment is made and accepted.

7. It is understood and agreed that forfeiture of travel pay shall not apply where an employee's voluntary resignation is forced because of personal hardship such as death, birth, or sickness in immediate family.

11

8.   The Employer shall pay additional hotel bills of employees who are working on an out-of-town assignment and who are assigned to a different location for a period of five (5) days or less, providing receipts are furnished to the Employer, but in no event shall it exceed fifty dollars ($50.00) per day. Where such assignment to another location exceeds five (5) days, the business expense provisions shall prevail from the beginning of such assignment, and the Employer will not be required to pay such additional hotel bills.

N.   Travel Time and Conditions:

1.   Upon initial hire or initial assignment to a job, travel time shall apply to overtime.

2.   When a newly hired employee travels from their home to the project, their employment begins from the time they leave their house. If the employee travels to the company office or regularly established branch office, the employee's employment begins at said office.

3.   In order to be eligible for travel pay while driving personal or Employer vehicles, the employee must successfully complete and pass the Employer qualification tests and stay in the employment of the Employer until the completion of the job, except where his/her termination is forced because of personal hardship such as death, birth, or sickness in his/her immediate family.

4.   The weekly guarantee shall be proportionately reduced to the hours actually worked during the week when travel is involved.

5.   The method of travel for any employee shall be as designated by the Employer. Employees who fail to follow the direction of the Employer with respect to type of travel, shall be paid only for the time which would have been spent by such travel and no more expense than the cost of such designated travel.

6.   It is understood and agreed that reimbursement of travel expense shall not exceed the cost of commercial airline tickets where airline service is available, except in such cases where the Employer requires another form of travel.

12

7. Employees who are required by the Employer to use their personal vehicles shall be paid travel time from their homes and return or from point of hire and return, based on the number of miles traveled, divided by five (5) miles below state speed limits not to exceed fifty (50) miles per hour at their classified hourly rate of pay. It is understood and agreed that such travel pay shall be forfeited if employee quits or is discharged for just cause, except in cases where personal hardship forces such termination.

8. In new job assignments, traveling time shall be based on a driving speed of fifty (50) miles per hour when driving Employer equipment, and employees shall be allowed sufficient time, where possible, to make living arrangements before reporting to the job on jobs exceeding ten (10) days.

9. Employees required to use their personal vehicles for job relocation shall be paid a mileage rate that conforms to Federal (IRS) Standard Mileage Guideline. The employee shall pay gas, oil and vehicle repair expenses.

10. Employees who are required by the Employer to use their personal vehicles to and from the job site will be paid fifty dollars ($50.00) per day, plus the appropriate mileage allowance for all miles in excess of twenty five (25) miles. This provision shall not apply to work performed within the confines of the Employer office or short term where employee is paid portal-to-portal.

O. Stand-By Time and Conditions:

1. Employees shall be paid their regular hourly rate for all time on stand-by at the request of the Employer or Customer and properly signed for with language as specified by the Employer. Failure of the Employer to collect for signed stand-by time shall not be just cause to refuse payment of the employee for requested stand-by hours.

2. Where an employee is told not to report to the job for work, even though he/she may be in the field, he/she shall not be paid for such time other than the applicable business expense, subject, however, to the weekly guarantee.

3. Employees shall be paid a minimum of two (2) hours regular hourly rate for physically reporting on the job site when not advised prior to reporting time not to report.

**ARTICLE VII**
**PROJECT AGREEMENT**

A.  The purpose is to establish wages, fringe benefits and conditions for certain areas of the U.S.A. on a Project Agreement basis as defined below:

1.  Project Agreements may be used in any part of the United States when deemed necessary by an agreement between all Business Agents.

2.  Wages, fringe benefits and conditions shall be stipulated in the Project Agreement on a case-by-case basis.

3.  The conditions as described in Paragraphs 1 and 2 above shall not change, negate, nor delete the provisions of the present Working Agreement.

4.  This Project Agreement Policy shall be in effect unless there is written notice by either party of a desire to terminate the Project Agreement Policy. Upon receipt of such request, the parties shall meet within thirty (30) days to negotiate any changes up to and including termination.

5.  All Project Agreements shall originate with the Union. When an Employer uses a Project Agreement, the Employer must give a copy of the Project Agreement to the employees working on the project before the project begins. The Union shall notify all signatory employers of the issuance of a Project Agreement at least 72 hours before bid due date and time.

**ARTICLE VIII**
**WORKING DUES**

A.  Upon written authorization by employees, the Employer shall deduct from the pay of each employee a sum equal to two and one half percent (2 ½%) of the gross wages and shall remit the amount deducted and withheld to the Financial Secretary of the Union on or before the tenth (10th) day of each month for deductions made in the prior month. This sum per hour designated as working dues is part of the regular dues structure of Operating Engineers, Local 112, for N.D.E. employees and shall be effective as of the date on which members in said group vote by secret ballot for approval thereof. This sum per hour designated as working dues is necessary for contract administration by the Union due to the mobility of the work force and the shifts in job locations and the distances between projects which result in substantial cost to the Union in telephone, travel, vehicle, hotel and other expenses.

B.  The deliberate failure or refusal by an Employer to make deduction and/or remittance of dues as herein provided, following approval by the membership and upon appropriate authorization, shall constitute a gross breach of contract in consequences of which the Union may take appropriate economic and/or legal sanctions.

14

## ARTICLE IX
## TRAINING AND RE-TRAINING FUND

A.  As set out above, all applicants must pass the applicable tests to be administered by the Employer and/or the Customer in order to qualify for employment. In order to prepare employees/members to qualify, an NDE Training and Re-Training Fund has been established.

B.  Training contributions shall not apply towards hours paid for vacation, or holidays.

## ARTICLE X
## BRANCH OFFICES

A.  The Employer must notify the Union at least one (1) month in advance of opening a new branch office, stating the address of the office, manager and telephone number.

B.  In order to qualify as a branch office, the following will be required:
    1.  A telephone and fax listed in Employer name;

    2.  A manager who must be a Union member if he/she is to operate a rig;

    3.  A desk, chair, file cabinet, storage area and a nearby place to park rigs assigned to office;

    4.  Someone available at least a major portion of time during business hours to issue supplies and take messages for management;

    5.  A manager with the responsibility and authorization to hire, fire, guide and direct employees.

## ARTICLE XI
## WORKING CONDITIONS

A.  It is understood and agreed that the Employer shall:

    1.  Shall pay for and provide all supplies required or necessary on the job site. No employee shall make any purchases, except where prior Employer authorization is given;

    2.  Shall furnish necessary expenses for the operation of Employer equipment, providing the employee provides receipts of such expense.

B.  It is understood and agreed by the parties hereto that all employees covered by this Agreement shall recognize and abide by the following working rules:

15

1.   Employees shall notify the Employer immediately by telephone of any malfunctions of any equipment and shall immediately notify the Employer of any personal injury or accident involving either the person or Employer property;

2.   Employees shall work hours as required by the Employer and/or the Customers;

3.   Employees shall maintain the Employer's equipment and reports in accordance with the Employer's policies and Customer requirements;

4.   Employees shall operate Employer vehicles and all accessory equipment as required in performance of their duties;

5.   Employees must have valid driver's license and must be deemed insurable by the Employer's insurance carrier in order to be hired and operate the Employer vehicles as required in performance of the job. Suspension, loss of license or determination of insurability by the Employer's carrier while employed by the Employer can result in the suspension of employment of such employee until the condition has been corrected. The employee shall notify the employer immediately of a change in status of the employee's driver's license;

6.   Employees must work in accordance with the Employer codes and rules of conduct, the Nuclear Regulatory Commission codes and rules, State codes, and Customer codes regarding the use of Employer equipment and safety. Violation of any of these rules shall be cause for immediate discharge;

7.   All safety provisions shall be honored by the employee, the Union and the Employer alike and exercised to prevent all personnel from accidental overexposure to radiation. Any employee found guilty by the Employer, State or Federal agencies of deliberate or careless overexposure or failure to abide by the rules as set forth by the above mentioned agencies, shall be immediately discharged without further recourse to any of the provisions of this contract;

8.   Employees shall be granted a reasonable period to time for a lunch break;

9.   It is understood and agreed by the parties hereto that the rules set out in this Section are a supplement to the Employer's rules of conduct for all employees and are not to be considered as the exclusive working rules.

**ARTICLE XII**
**TERMINATION OF EMPLOYMENT**

A.    All employees shall give the Employer seven (7) days notice before termination. The Employer shall give the employees seven (7) days notice before termination. No notice on the part of the Employer will be required in the event of termination for cause, completion of job, or in the event that no work is available.

B.    Employees failing to give proper notice shall result in forfeiture of vacation pay, not to exceed the amount of seven (7) days' pay.

C.    Where the Employer fails to give notice, the employee shall receive pay at eight (8) hours per day at straight time for all days falling short of the seven (7) days notice, but not to exceed seven (7) days.

**ARTICLE XIII**
**HOLIDAYS**

A.    All employees shall receive pay without work at the rate of eight (8) hours straight time for the following holidays, or days legally recognized as such:

  1.    New Year's Day

  2.    Thanksgiving Day

  3.    Memorial Day

  4.    Independence Day

  5.    Labor Day

  6.    Christmas Eve

  7.    Christmas Day

B.    Any employee who fails to work the last scheduled workday before and the first scheduled workday after any of the said holidays, shall not receive holiday pay for such holiday, unless failure to work was the result of illness supported by a doctor's certificate establishing his/her physical inability to perform his/her duties, or other Employer excused absence.

17

C.    Such holiday allowance will be subject to the following conditions:

    1.    Employees who are otherwise eligible for holiday pay shall receive holiday pay from the first day of employment. However, to be entitled to holiday pay, a new employee must remain on the job until the job is completed or for thirty (30) days, whichever occurs first;

    2.    Employees shall have worked at least twenty (20) hours or more during the calendar week in which the holiday occurs, providing he/she was hired prior to that week and work was available, and shall not have left the employment of the Employer or have been discharged prior to such holiday;

    3.    If the employee is on leave of absence, he/she shall not be entitled to holiday pay;

    4.    When any of the above holidays fall within an eligible employee's approved vacation period and he/she is absent from work during this regularly scheduled workweek because of such vacation, he/she shall receive an extra day's pay, or one (1) more day of paid vacation, at the election of the Employer;

    5.    Holidays worked will be paid at straight time pay plus eight (8) hours for holiday pay. NOTE: All hours worked over forty (40) hours in a week shall be computed at one and one half (1 ½) times the hourly rate;

    6.    Holiday not worked to be paid at eight (8) hours straight time and shall be computed in forty (40) hour work for overtime purposes.

D.    Notwithstanding any other article contained in this agreement, fringe benefit contributions will not apply towards hours paid for holidays.

## ARTICLE XIV
## VACATIONS

A.    The Employer agrees to pay vacations at the rate of one (1) day's vacation, eight (8) hours at straight time, for each month worked. To earn credit for the month, the employee shall have been on the Employer's payroll for a minimum of sixteen (16) calendar days during a given month.

B.    Vacation benefits to become applicable only after thirty (30) days of employment. After completion of thirty (30) days, the vacation benefits shall accumulate from the date of employment.

C.    Rate of pay for vacation will be based on the average hourly rate of employee's different job classifications.

18

D.  Vacations shall be scheduled by the Employer in accordance with the requirements of operation and convenience of the employees with the preference being given to employees according to their length of service with the Employer.

E.  Employees voluntarily quitting the employment of the Employer, without proper notice, or terminated for just cause, shall forfeit their vacation benefits.

F.  Employees who are entitled to accrued vacation benefits upon termination shall receive their vacation pay within two (2) weeks following termination of employment, if requested by the employee.

G.  Notwithstanding any other article in this agreement, fringe benefit contributions shall not apply towards hours paid for vacation.

## ARTICLE XV
## JOB STEWARD CLAUSE

A.  The Employer agrees to recognize one (1) Job Steward on any job requiring three (3) rigs or five (5) or more employees at the same job location.  In this connection, the Union shall have the right to refer one (1) of the five (5) or more employees through the referral system or, in the alternative, designate one (1) of the employees already on the job as the Job Steward.  In no event shall the Employer be required to displace employees already on the job in order to make positions available for a Job Steward.

B.  It is understood and agreed that the Employer shall not intimidate, harass, or discriminate against any employee designated as a Job Steward as a result of his/her proper performance of Job Steward activities as set forth in this Article.

C.  The authority of the Job Steward shall be limited as follows:
    1.  The Job Steward shall see that employees in his/her jurisdiction are members in good standing;

    2.  The Job Steward shall see that all provisions of this Agreement are enforced;

    3.  The Job Steward shall be allowed to investigate a grievance;

    4.  It is understood and agreed that the Job Steward shall not interfere with the progress of a job.  The Job Steward shall not be considered an agent of the Union for any action not listed in the aforementioned authority;

    5.  In the event of discharge for cause of a Job Steward, the Union shall be notified immediately.

19

**ARTICLE XVI**
**DISCHARGE AND SUSPENSION**

A.    The Employer will not discharge or suspend an employee without just cause, but shall give at least one (1) warning of the complaint against such employee in writing to the Union and the employee before any disciplinary action is taken against said employee. No warning notice need be given in case of violation of Employer rules providing for immediate discharge. Any disciplinary action taken pursuant to Employer rules may be subject to grievances and arbitration procedure.

B.    The Employer shall have the right to discharge any temporary employee or probationary employee at any time without notice for any reason whatsoever.

**ARTICLE XVII**
**GRIEVANCE PROCEDURE**

A.    For the purpose of this Agreement, a "grievance" shall mean a dispute arising between the parties to this Agreement or between any employee or employees covered by this Agreement and the Employer as limited to or by the terms and conditions of the Agreement.

B.    For the purpose of this Agreement, the grievance and arbitration procedures herein set out below available to the employees and to the Union shall not apply to the following issues:
    1.    Any grievance that is not filed in accordance with the provisions of this Article;

    2.    Any matter reserved solely to the rights of management or to the discretion of the Employer by the terms of this Agreement;

    3.    Any matter which is not regulated by this Agreement, or except as otherwise specifically provided in the Agreement any matter which would require a change from the wages, hours, conditions of employment set forth in this Agreement.

C.    The Employer and the Union agree that the grievances shall be settled in the shortest possible time.

D.    Any assignment of work over which a controversy has arisen shall be carried out until the controversy is settled through the grievance procedure.

E.    Grievances or disputes as defined in this Article shall be handled in the following manner:
    1.    Employees shall take up any grievance with their immediate supervisor within seventy two (72) hours of the occurrence;

20

2.    If the grievance cannot be resolved, employees shall reduce the grievance to writing and forward one (1) copy to the Union and one (1) copy to the Employer;

3.    The Employer and the Union are required to attempt to resolve the grievance within ten (10) days after Step One has been completed;

4.    If the grievance cannot be resolved at this Step, the grievance will be referred to the top officials of the Employer and the Union within ten (10) days thereafter;

5.    Grievances initiated by the Union shall be commenced as set out above in Step Two, except for the first (1st) sentence;

6.    If the grievance cannot be settled via item 4 above, the grievance may be submitted to arbitration within thirty (30) days;

7.    Failure of either party to comply with the time limits set forth above will serve to declare the grievance forfeit against the defaulting party. The time limits set forth above may be extended only by written mutual agreement;

8.    At any Step in the foregoing grievance, the authorized official of the Union shall have the final authority with respect to any aggrieved employee covered by this Agreement to decline to process the grievance further if, in the judgment of such officials, the grievance lacks merit or lacks jurisdiction under the terms of this Agreement or has been adjusted or justified under the terms of this Agreement to the satisfaction of the Union.

## ARTICLE XVIII
## ADJUSTMENT OF DISPUTES AND ARBITRATION

A.    Any grievance that cannot be settled between the employees, the Union or the Employer in accordance with the provisions of the foregoing Article and Section may be submitted to an independent arbitrator under the following terms and conditions. Arbitration proceedings shall take place at the city of the Employer's home office.

B. ·    The independent arbitrator may be selected by agreement between one (1) Employer representative and one (1) Union representative.

21

C.    In the event that two (2) representatives designated by the parties shall be unable to agree upon the independent arbitrator within ten (10) days following notice of submission to arbitration, the Federal Mediation and Conciliation Service shall be requested to submit a list of five (5) qualified and approved arbitrators, one (1) of which shall be selected to act as the independent arbitrator. If the two (2) representatives designated by the parties are unable to agree upon one (1) arbitrator from the list supplies them, then each party will be permitted to strike from the list two (2) names alternately, and the one (1) remaining shall be the one (1) selected. The party taking the first (1st) strike of the listed arbitrators shall be determined by lot.

D.    The decision of the arbitrator shall be final and binding upon the parties hereto. It is distinctly understood that the arbitrator is not vested with the power to change, modify or alter this Agreement in any of its parts, except as specified in Article III, Sections B, C and D.

E.    It is further understood and agreed that, while the arbitrator may rule on the merits of the grievance, he/she shall not have the power to mitigate penalties or disciplinary action assessed pursuant to the terms of this Agreement.

F.    The arbitrator shall have the power to consider whether or not the Employer, in taking disciplinary action, had as its motive for such disciplinary action discrimination in regard to hire or tenure of employment or any terms or conditions of employment to encourage or discourage membership in any labor organization and in such instance may order reinstatement and back pay and restoration of all rights of the grievant.

G.    The expense or fees of the arbitrator shall be borne equally by the Employer and the Union.

H.    Where the arbitrator rules and directs, an employee or employees may be reinstated and paid for lost wages. Any interim earnings received by such employee shall be deducted from the back pay. If such employee has received unemployment compensation from any State or Federal agency, the full amount received shall be deducted from the back pay and remitted to said State or Federal agency.

## ARTICLE XIX
## NO STRIKE CLAUSE

A.    The Employer agrees that there shall be no lockouts, and the Union and its members agree that there shall be no strikes, stoppages of work, slowdowns, or any other interference with production by the Union or its members during the term of this Agreement.

B.  Layoffs due to lack of work, changes in operation, or cause beyond the control of the Employer shall not be construed as lockouts.

C.  Any employee or employees who engage in a strike, walkout, or slowdown of production not expressly sanctioned by the Union shall be discharged and shall forfeit all rights guaranteed him/her under the terms of this Agreement.

D.  Where the strike is not expressly sanctioned by the Union, the Union shall, within twenty four (24) hours of the notification at St. Louis, Missouri, of the strike or slowdown, notify the employees so engaged in the unauthorized strike or slowdown to return to work.

E.  Where such employees do not return to work within the said twenty-four (24) hour period, they shall be discharged and shall forfeit all rights guaranteed them under the terms of this Agreement.

F.  Notification from the Union that a strike or slowdown is not authorized or sanctioned by the Union shall be sent to the Employer's headquarters and other affected employees named by the Employer by telegram within said twenty-four (24) hours. Such telegram shall be directed to the employee in care of the Employer and shall be sufficient notice to said employee hereunder.

G.  In the event of breach of this Article, either party shall have full access to the appropriate State or Federal courts to seek recovery of damages and/or specific performance of this Agreement. This Section shall not apply, however, with respect to the Local provided the Union notify employees at each job site where such non-sanctioned strike, slowdown, or stoppage of work occurs, within twenty four (24) hours of the notice of the commencement of the work stoppage, strike or slowdown, as set out above, stating that the strike, slowdown, or work stoppage was not called by the Local or International Union and through such notice instruct its members not to respect or recognize any such picket line.

H.  Employees shall not be discharged or otherwise disciplined for failing or refusing to cross a lawfully established picket line.

I.  It is expressly understood that employees shall not be paid for time not worked because of failing or refusal to cross a lawfully established picket line.

J.  Where employees refuse to cross a lawful picket line as set out above, the Union shall not be liable.

23

**ARTICLE XX**
**DUTIES**

A.     The parties recognize and agree that the nature of the duties performed by those employed within the terms and conditions of this Agreement require them to be free from outside influences.

B.     The nature of the work demands compliance with rules, specifications and standards established by Customers of the Employer, as well as other State and Federal laws and regulations.  The Union agrees that it will not interfere with the employees' responsibility to the Employer or its Customers.

C.     The Union and Employer, however, do encourage increased efficiency, safety and skill.  Both parties agree to cooperate to the end that the Customers are furnished the highest standard of performance and skill available.

D.     Refusal to perform work consistent with this Agreement shall be cause for immediate discharge.

E.     Employees covered by this Agreement must have complete freedom regarding inspection and interpretation of the work as determined by the Employer standards and shall not be subject to any outside influences.

F.     It is expressly provided, that, where an employee leaves the job site without permission of the Employer or the Customer representative or refuses to work because of work stoppage or picket line by a third party, he/she shall not be paid for such time not worked and the weekly guarantee shall be proportionately reduced.

G.     The Union agrees that it shall place no limitation upon the amount of work which an employee may be required to perform during the working day, and there shall be no such restriction imposed against the use of any type of machinery, tools, or laborsaving devices.

**ARTICLE XXI**
**PAYROLL AND PAYCHECKS**

A.     The Employer agrees that paychecks issued to employees covered by this Agreement shall show hours of work at straight time, hours worked at premium pay, and shall issue check covering necessary expenses paid for by the employee, providing the employee furnishes valid receipts of such paid expenses to the Employer.

B.     Payday may be at the Employer's discretion, provided the employee is given a business expense check weekly, where payday is not weekly.

24

C.      The Employer agrees to make direct deposit banking available to employees, provided the employee provides the Employer with all information needed to make such transaction. If the employee decides to use this service, he/she may not switch on and off.

D.      Final paychecks to employees will be withheld until all equipment under the employee's cognizance has been turned in and accounted for to the Employer.

E.      No charge to the employee will be made for broken equipment, except where negligence has been proven.

F.      It is understood and agreed that the employee shall be responsible for equipment charged out to him/her and lost or not returned to the Employer for any reason within the control of the employee and such cost shall be charged to the employee.

## ARTICLE XXII
## TRUSTEE HEALTH AND WELFARE FUND

A.      Effective January 1, 2007, it is agreed that the Employer shall contribute to the Trustee Health and Welfare Fund of the International Union of Operating Engineers, Local 112, (AFL-CIO), five dollars and sixty cents ($5.60) per hour for each hour worked or paid for by all current employees covered by this Agreement.

B.      The Employer further agrees to make like contributions for all new employees from the first (1st) day of employment or from the effective date of this Agreement, whichever is the latter to insure the employees and their dependents of coverage of life insurance, hospitalization, etc.

C.      The Employer agrees to make the contributions to the Trustee Health and Welfare Fund within ten (10) days following the end of each month, on the form furnished by the Union showing the number of employees, and the number of hours reported for each employee. This report shall accompany the monthly payment check to the Trustee Health and Welfare Fund.

D.      Companies must send reports on Health and Welfare, Pension, Working Dues and Training, regardless of whether payment is sent, no later than the tenth (10th) of the following month that the work was done. If not received by the due date, the Employer may be audited.

E.      Health and welfare contributions shall not apply towards hours paid for vacation, or holidays.

F.    Upon written notice to the Employer sixty (60) days prior to January 1 during the life of this Agreement, the Employer agrees to increase the contributions in the amount specified by the Board of Trustees of said Health & Welfare Fund. The increased contributions to be taken from wage increases due at such time.

## ARTICLE XXIII
## CENTRAL PENSION FUND

A.    The Employer agrees to pay monthly into the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, effective January 1, 2007 through December 31, 2009, six dollars and twenty cents ($6.20) per hour for all hours worked or paid for during the preceding month for all employees covered by this Agreement.

B.    Contributions shall commence for all new employees upon their first (1st) calendar day of employment.  Said payment shall be made on the date, in the said manner and form and in accordance with the rules and regulations as adopted by the Trustees of the Fund.

C.    Pension contributions shall not apply towards hours paid for vacation, or holidays.

## ARTICLE XXIV
## EMPLOYER RULES

A.    The Union agrees at all times as far as in its power, to further the interest of the Employer and require each member of the Union who is an employee of the Employer to abide by all operating rules and regulations of the Employer not in conflict with this Agreement.

B.    Union representatives shall notify the Employer at its home office of his/her presence on the job site if for contract administration.

## ARTICLE XXV
## PAYROLL COPY

The Employer agrees to submit to the Union, along with the dues deductions, a certified copy of its payroll for each month.

## ARTICLE XXVI
## SUBCONTRACTING

Any employer subcontracting employees to a non-signatory employer performing similar work (i.e. NDT work covered by the classifications as contained in Article VI of this agreement) shall provide all employees assigned to a unit/rig. Such employees shall be compensated in accordance with the applicable contract rates and benefits contained herein.

26

## ARTICLE XXVII
## MISCELLANEOUS

This contract and any addenda hereto sets forth the entire understanding and agreements of the parties and may not be modified in any respect, except in writing subscribed to by all parties.

## ARTICLE XXVIII
## TERM OF AGREEMENT

This Agreement shall be in full force and effect from October 1, 2006, and shall continue until midnight, September 30, 2009, automatically renewing itself for additional periods of one (1) year each from year-to-year thereafter, unless written notice is given by either party sixty (60) days prior to October 1, 2009, or October 1 of any year thereafter in which this Agreement exists, of a desire to open the Agreement to negotiate any changes.

## *WHEREAS,*

The Articles of Agreement between The International Union of Operating Engineers, Local 112 and Certain Pipeline Non-Destructive Testing Companies is hereby submitted to:

_____        _____
                                        International Supervisor
                                        IUOE Local 112

_____        _____
Date                                    Date

27

### ARTICLE XXVII
### MISCELLANEOUS

This contract and any addenda hereto sets forth the entire understanding and agreements of the parties and may not be modified in any respect, except in writing subscribed to by all parties.

### ARTICLE XXVIII
### TERM OF AGREEMENT

This Agreement shall be in full force and effect from October 1, 2006, and shall continue until midnight, September 30, 2009, automatically renewing itself for additional periods of one (1) year each from year-to-year thereafter, unless written notice is given by either party sixty (60) days prior to October 1, 2009, or October 1 of any year thereafter in which this Agreement exists, of a desire to open the Agreement to negotiate any changes.

*WHEREAS,*

The Articles of Agreement between The International Union of Operating Engineers, Local 2B, it's Successors And/Or Assigns and Certain Pipeline Non-Destructive Testing Companies is hereby submitted to:

_____
High Mountain Inspection

_____
International/Supervisor IUOE Local 112, successor of IUOE Local 2B

_____
Date

_____
Date

# Exhibit 4



**CENTRAL PENSION FUND**
of the
**International Union of Operating Engineers and Participating Employers**
4115 Chesapeake Street, N.W. • Washington, D.C. 20016-4665

CENTRAL PENSION FUND

**PARTICIPATING AGREEMENT**

| FUND OFFICE USE | |
|---|---|
| Fund Number | 30-8114 |
| Account Number | 106664 |
| Contract Code | ... |

**(See instructions on back)**

(1) Business Name & Address (Address to which Reporting Forms should be sent)

```
┌                                      ┐
  High Mountain Inspection
  Bill Fraser                    ...
  2000 West Revenue
  Casper, Wy. 82601
└                                      ┘
     (City)        · (State)      (Zip Code)
```

**EMPLOYER RECORD DATA**
(To Be Completed by Employer)

(2) Employer Fed. I.D. Number    ...    ...
(3) Serial No. Assigned to CPF    .    ..
    Approximate Number of Employees to
    Be Covered    .    ..
    Bus. Phone: Area Code( .        . )
    No.
    Business is (check one)·
    ☐ Joint Venture  ☐ Corporation
    ☐ Partnership    ☐ Proprietorship
(4) Standard Industrial Classification

The undersigned EMPLOYER and UNION are aware of the AGREEMENT AND DECLARATION OF TRUST establishing the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, as currently written (hereinafter referred to as AGREEMENT) The EMPLOYER agrees to contribute to the Fund established by such AGREEMENT on the basis specified below, and that such contributions shall be made on behalf of all employees of the EMPLOYER represented by the International Union of Operating Engineers and its Local Unions. The EMPLOYER further agrees to be bound by and to comply with each and every provision of the AGREEMENT, and as it may be amended. The parties further consent to the appointment of the Trustees, currently administering the Fund, as well as their duly appointed successors and specifically ratify all actions previously taken in connection with the creation and administration of the AGREEMENT

The EMPLOYER further agrees to remain bound to the AGREEMENT, and as it may be amended, during the term of the collective bargaining agreement referred to above, and all subsequent collective bargaining agreements between the EMPLOYER and the UNION, so long as such agreements contain an obligation to contribute to the Central Pension Fund. The EMPLOYER further agrees to continue contributions to the Fund during any period in which it is engaged in negotiations with the UNION, on the basis specified in its most recently expired agreement with the Union, until such time as a new agreement is reached or the EMPLOYER no longer has a duty to bargain with the UNION

The undersigned further specifically agree that in the event it is determined that the EMPLOYER is delinquent in its obligations to contribute to the Fund, the Fund will be entitled to all relief available under 29 U.S.C §1132(g)(2) and Article IV of the AGREEMENT

**BASIS OF PARTICIPATION**  (To be Completed by Local Union)

( 5)  Bargaining Agreement Effective  January 1, 2002 , 19_____    Local No.  2

                                 (Date)

( 6)  Pension Contributions to Commerce Effective  January 1, 2002 , 19_____   Rate Per Hour 4.15
( 7)  Pension Contribution Payment Basis  all hours worked or paid for
( 8)  Pension Rate Changes During Bargaining Agreement:  Date 1-1-03    Rate 5.30
    Date 1-1-04  Rate 5.60    Date 1-1-05    Rate 5.90 -1-1-06-1-1-07 -$6.20
( 9)  Bargaining Agreement Expiration and / or Renewal Date  September 30, 2006
(10)  Jurisdiction Covered by This Agreement.

(11)  Type of Contract.  pipeline
(12)  Renewal Participation Agreement ☐*    New Participation Agreement ☐
    *If Renewal or Continuation, Indicate Account Number  .    .    . and Fund Number

Dated at  Casper, WY    this  8th    day of  March    19̶ 2002

Employer Signatory·

_Bill Fraser_ (Signature)    President (Title)

Bill Fraser, President
(Printed or Typed)

. High Mountain Inspection Service, Inc.
(Name of Organization)

Local Union Signatory

Vergil L. Belfi, Business Manager

_Vergil L. Belfi, Administrator_ (Signature)    (Title)
(Printed or Typed)

(FUND OFFICE USE)
Accepted on  3/21/02    by  _Michael R. Fanning_    , Chief Executive Officer
For the Trustees of Central Pension Fund

Fund Copy· White; Union Copy· Pink; Employer Copy· Yellow

CPF - ER27

# Exhibit 5

*Duplicate*

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 5th day of July, 2003 by and between High Mountain Inspection of, Casper, Wy. (hereinafter referred to as the Company) and the INTERNATIONAL UNION OF OPERATING ENGINEERS STATIONARY NO. 002 (hereinafter referred to as the Union) for the purpose of establishing working conditions, wages and fringe benefits for the work project located at: Coose Bay, Or.

The project shall consist of:  60 miles of 12"
                40 miles of 4" & 6"                *non-union prime contactor (MASTECH)*

## ARTICLE I
### HIRING/REFERRAL

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and employees listed below:

**EMPLOYEE          CLASS          DATE OF HIRE          COMPLETION**

PLEASE SEE ATTACHED EMPLOYEE LISTING



## ARTICLE II
### Wages/Fringe Benefits
#### PAID ON (ALL HOURS OR 40 HOURS PER WEEK ONLY)

| | | |
|---|---|---|
| Technician | $19.36 | per hour |
| Asst. Technician | $14.16 | per hour |
| Per Diem | $85.00 | per day |
| Health & Welfare Fund | $3.60 | per hour |
| Drug Testing Fund | $N/A | per hour |
| Training Fund | $0.50 | per hour |
| Central Pension Fund | $3.00 | per hour |

BENEFITS TO BE PAID ON 40 HOURS PER WEEK
TRAVEL SHALL CONSIST OF $1000.00

## ARTICLE III

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, not withstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions stipulated herein shall negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

INTERNATIONAL UNION OF                          COMPANY
OPERATING ENGINEERS,
LOCAL NO. 002 (AFL-CIO)

Title: Business Agent                          Title:

2003
MAS TEC/COOS BAY
UNION HOURS

| SOC SEC NO | EMPLOYEE | DATE OF HIRE | COMPLETION |
|---|---|---|---|
| ░░░░-7827 | DUNNING, JUSTIN | 08/23/03 | |
| ░░░-░░-7912 | FREEMAN, BILLY | | |
| ░░░-░░-5127 | HAMILTON, JEREMY | 10/20/03 | 11/6/03 |
| ░░░-░░-1752 | JOHNSON, KEVIN | 09/03/03 | 12-04-03 |
| ░░░-░░-1412 | LIDDELL, JOHN E. | 09/01/03 | 12-22-03 |
| ░░░-░░-8967 | LIVINGSTON, BILL | 09/04/03 | 12-04-03 |
| ░░░-░░-5259 | MAC MANUS, KEVIN | 07/14/03 | 7/22/03 |
| ░░░-░░-2091 | MC ELHANNON, OLAN, JR | 08/24/03 | 8/31/03 |
| ░░░-░░-1019 | POWELL, DANIEL BLAKE | 07/17/03 | 12-77-03 |
| ░░░-░░-5210 | POWDERS, MARK | 07/21/03 | 9/26/03 |
| ░░░-░░-0071 | ROBERTSON, JOSHUA | 08/25/03 | 12-32-03 |
| ░░░-░░-9925 | ROGER, JAMES | 07/21/03 | 12-15-03 |
| ░░░-░░-6451 | ROSE, TODD | 07/02/03 | 12-23-03 |
| ░░░-░░-1749 | SHURDEN, TODD | 10/20/03 | 11/9/03 |
| ░░░-░░-6886 | SIMMONS, JAMEY | 07/25/03 | 12-23-03 |
| ░░░-░░-5393 | SMITH, JAMES | 07/25/03 | 11/11/03 |
| ░░░-░░-8767 | SMITH, WILLIAM D. | 07/25/03 | 12-15-03 |
| ░░░-░░-9085 | SOLARI, GARY | 10/20/03 | 12-17-03 |
| ░░░-░░-3513 | SUMMERS, KEVIN | 07/23/03 | |
| ░░░-░░-4581 | YOUNG, KATHY | 10/20/03 | |
| ░░░-░░-6456 | YOUNG, RICKY | 08/22/03 | 8/25/03 |

# Exhibit 6

12/14/2006 16:56 FAX 202 331 9890    CALIBRE CPA GROUP    002/004
MAY-11-2004 TUE 11:44 AM HIGH MOUNTAIN INSPECTION    FAX NO. 307 266 0002    Page 10 of 29 P. 02

-MAR-16-2004 11:25A FROM:                                    TO: 3072660027      P:1/4

## NATIONAL PROJECT AGREEMENT

This agreement is entered into this 1st day of July, 2003 by and between High mountain Inspection of Casper Wyoming (hereinafter referred to as the Company) and the **INTERNATIONAL UNION OF OPERATING ENGINEERS STATIONARY NO. 002** (hereinafter referred to as the Union) for the purpose of establishing working conditions, wages and fringe benefits for the work project located at: CALPINE Project

The project shall consist of: 8 miles of 20 inch pipe

**ARTICLE I**
**HIRING/REFERRAL**

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and employees listed below:

| EMPLOYEE | CLASS | DATE OF HIRE | COMPLETION |
|---|---|---|---|
| Lance Shackley | II | | |
| Jamie Simmons | I | | |
| Bob Johson | I | | |



**ARTICLE II**
**Wages/Fringe Benefits**

| | | |
|---|---|---|
| Technician | $19.36 | per hour |
| Asst. Technician | $14.15 | per hour |
| Per Diem | $90.00 | per day |
| Health & Welfare Fund | $4.40 | per hour |
| Drug Testing Fund | $N/A | per hour |
| Training Fund | $0.95 | per hour |
| Central Pension Fund | $5.30 | per hour |

**VACATION AND HOLIDAYS SHALL BE APPLICABLE**

**ARTICLE III**

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, not withstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions stipulated herein shall negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

**INTERNATIONAL UNION OF**                    **COMPANY**
**OPERATING ENGINEERS,**
**LOCAL NO. 002 (AFL-CIO)**

_____                    _____
Title: Business Agent                      Title:

# Exhibit 7

  

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 10th day of June 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the following project:

Raton Basin 2005 Expansion consisting of 102 miles of 16", 20", 24" from near Trinidad, CO into the Oklahoma panhandle. Approximate start date 6/15/2005 and approximate completion date of 10/1/2005.

## Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire | |
|---|---|---|---|
| Tony Tidwell – 20 hrs in 07/05 ✓ | Crawler Tech II | 7/5/2005 | 9-15-05 |
| Darrel Patterson – 199 hrs 06/05 ✓ | Crawler Tech II | 6/13/2005 | 10-1-05 |
| Gary Overson – None | Asst Crawler Tech I | 6/13/2005 | 9-15-05 |
| Matt Guynes – None only a Jimmie Guynes | Asst Crawler Tech I | 7/5/2005 | 9-15-05 |
| Jeff Lewis – 34 hrs in 07/05 ✓ | Asst Crawler Tech I | 6/21/2005 | 9-15-05 |
| Matt Donathan – 20 hrs in 07/05 ✓ | Asst Crawler Tech I | 7/5/2005 | 9-15-05 |
| Jack Weimer – 18 hrs in 07/05 ✓ | Gamma Tech | 6/29/2005 | 9-15-05 |
| Jerry Sills – None | Gamma Tech | 7/3/2005 | 10-1-05 |
| James Rogers – 22 hrs in 07/05 ✓ | Gamma Tech | 6/29/2005 | 9-21-05 |
| Kenneth Watkins – 14 hrs in 07/05 ✓ | Gamma Tech | 7/10/2005 | 9-15-05 |
| Jeremy Hamilton – 104 hrs in 07/05 ✓ | Asst Gamma Tech | 7/10/2005 | 10-1-05 |
| Dennis Blake – None | Asst Gamma Tech | 7/3/2005 | 10-1-05 |
| Josh Robertson – 85 hrs in 07/05 ✓ | Asst Gamma Tech | 6/29/2005 | 9-21-05 |
| Troy Winkles – 18 hrs in 07/05 ✓ | Asst Gamma Tech | 6/29/2005 | 9-15-05 |

## Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $17.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment Per Hour Worked | $2.90 |
| Central Pension Per Hour Worked Crawler & Crawler Asst. Tech. | $2.00 |
| Central Pension Per Hour Gamma & Gamma Asst. Tech | $1.25 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.10 |

Note: Vacation and Holidays shall be applicable to this addendum



# Exhibit 8





# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 1st day of June 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the project located at:

Questar Pipeline located in Kimmerer, Wy consisting of 3.5 miles of 3" and 3.5 miles of 16" pipe. Approximate start date 6/01/2005 and approximate completion date 9/10/2005.

### Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire | |
|---|---|---|---|
| William David Smith | Level II Tech | 6/15/2005 | 8-10-05 |
| Doug Smith | Level I Tech | 6/15/2005 | 8-10-05 |

### Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $80.00 |
| Health and Welfare Payment Per Hour Worked | $1.50 |
| Central Pension Fund Payment Per Hour Worked | $1.50 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.00 |

Note: Vacation and Holidays shall be applicable to this addendum

### Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

_Jim J Kelly_
IUOE Local 2 (AFL/CIO)

_Bill R Fraser_
High Mountain Inspection Service

Not reported at 10 cent rates during this time.

# Exhibit 9

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this Third day of August, 2004 by and between High Mountain Inspection Services, Inc. of, Casper, Wyoming hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the project located at :

Northwestern Energy / Deer Lodge, Montana / Lewis & Clark Project 6.6 miles of 12" / 4 miles of 16"  Start date 8/3/2004    Estimated completion 10/01/04

## Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Eugene Moxley | Level II | August 03, 2004 |
| Michael Freeman | Level I | August 03, 2004 |
| Bill Huggler | Level I | August 03, 2004 |
| Gaylen Head | Level II | August 15, 2004 |
| Kevin Hightower | Level I | August 15, 2004 |

## Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $19.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment Per Hour Worked | $3.60 |
| Central Pension Fund Payment Per Hour Worked | $4.20 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.00 |

Note: Holidays shall not be applicable to this addendum. Vacation shall be applicable

## Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

IUOE Local 2 (AFL-CIO)
Title: Jim F Kelly / Business Agent

High Mountain Inspection Services
Title: Bill R Fraser / President

# Exhibit 10

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 1st day of July 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the project located at:

Bearpaw project. Approximate start date 7/01/2005 and completion date 9/01/2005

### Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Jerry Scott Duncan | Level II Tech | 7/01/2005 |

### Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment Per Hour Worked | $3.00 |
| Central Pension Fund Payment Per Hour Worked | $3.00 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.00 |

Note: Vacation and Holidays shall be applicable to this addendum

### Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

_____
IUOE Local 2 (AFL-CIO)

_____
High Mountain Inspection Services

# Exhibit 11

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 1st day of July 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the project located at:

S&S Trenching project. Approximate start date 7/01/2005 and completion date 9/01/2005

## Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Charles Hayden, Jr. | Level II Tech | 7/01/2005 |
| Todd Rose | Level I Tech | 7/01/2005 |

## Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment Per Hour Worked | $3.00 |
| Central Pension Fund Payment Per Hour Worked | $3.00 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.00 |

Note: Vacation and Holidays shall be applicable to this addendum

## Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

_____
IUOE Local 2 (AFL-CIO)

_____
High Mountain Inspection Services

# Exhibit 12

## NATIONAL PROJECT AGREEMENT

This agreement is entered into this 10th day of July, 2003 by and between HIGH MOUNTAIN INSPECTION of, Casper, Wy. (hereinafter referred to as the Company) and the INTERNATIONAL UNION OF OPERATING ENGINEERS STATIONARY NO. 002 (hereinafter referred to as the Union) for the purpose of establishing working conditions, wages and fringe benefits for the work project located at: Colusa, Ca.

The project shall consist of: T.B.A.

## ARTICLE I
## HIRING/REFERRAL

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and employees listed below:

| EMPLOYEE | CLASS | DATE OF HIRE | COMPLETION |
|----------|-------|--------------|------------|
| DENNIS BLAKE | II | 05/03/03 | 08/15/03 |
| ROBERT DANGOTT | I | 05/30/03 | 07/19/03 |
| KEVIN JOHNSON | I | 05/20/03 | 06/30/03 |
| RANDY MALSON | I | 05/19/03 | 07/28/03 |
| MARK POWDERS | II | 05/19/03 | 07/28/03 |
| WESLEY SHAKLEE | II | 05/03/03 | 08/16/03 |
| JAMES SMITH | II | 05/30/03 | 07/19/03 |

## ARTICLE II
## Wages/Fringe Benefits

| | | |
|---|---|---|
| Technician | $19.36 | per hour |
| Asst. Technician | $14.15 | per hour |
| Per Diem | $85.00 | per day |
| Health & Welfare Fund | $4.40 | per hour |
| Drug Testing Fund | $N/A | per hour |
| Training Fund | $0.95 | per hour |
| Central Pension Fund | $5.30 | per hour |

## ARTICLE III

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, not withstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions stipulated herein shall negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

INTERNATIONAL UNION OF
OPERATING ENGINEERS,
LOCAL NO. 002 (AFL-CIO)

_____
Title: Business Agent

COMPANY    HIGH MOUNTAIN INSPECTION SERVICE
P O Box 1508
Mills, WY  82644

_Bill R Fraser_

Title:    President

# Exhibit 13

# NATIONAL PROJECT AGREEMENT

This agreement is entered into this 11th day of November, 2004, by and between High Mountain Inspection Services, Inc. of Casper, Wyoming hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for the work on the project located at:

Bittercreek Gathering System in Wyoming

Start Date: 11/11/2004    Estimated Completion Date: 12/31/2004

## Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Randy Thomas | Level II Technician | 11/11/2004 |

## Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | N/A |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment Per Hour Worked | $0.00 |
| Central Pension Fund Payment Per Hour Worked | $3.32  1st 40 hr. only |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.00 |

Note: Holidays shall be applicable; Vacation shall not be applicable to this agreement

## Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base working agreement unless mutually agreed upon by both parties.

IUOE Local 2 (AFL-CIO)

High Mountain Inspection Services

# Exhibit 14

## ADDENDUM

This agreement is entered into this 1st day of August 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes salaried management personnel at the Casper and Evanston office.

This agreement shall be in place from August 01, 2005 to December 31, 2005.

### Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Bill Fraser | Owner | 8/01/2005 |
| Kevin MacManus | Manager | 8/1/2005 |
| Kevin Ward | Manager | 8/1/2005 |

### Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | N/A |
| Per Diem Per Person Per Night | N/A |
| Health and Welfare Payment 40 hours per week | $3.31 |
| Central Pension Fund Payment Per Hour Worked | $0.75 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.25 |

Note: Vacation and Holidays shall be applicable to this addendum

### Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base w$orking agreement unless mutually agreed upon by both parties.

_____
IUOE Local 2 (AFL-CIO)

_____
High Mountain Inspection Service

# Exhibit 15

## ADDENDUM

This agreement is entered into this 1st day of August 2005, by and between High Mountain Inspection Services, Inc. of Casper, WY hereinafter referred to as the Company, and The International Union of Operating Engineers, Stationary Locals 2, hereinafter referred to as the Union, for the purpose of establishing working conditions, wages and fringes for call out/local work,

This agreement shall be in place from August 01, 2005 to December 31, 2005.

### Article I – Hiring / Referral

Provisions of the addendum to the base agreement shall apply for the purpose of manning the projects and the employees hired listed below:

| Employee Name | Classification | Date of Hire |
|---|---|---|
| Ed Moxley | Level II Tech | 8/1/2005 |
| Phil Coerver | Level II Tech | 8/1/2005 |
| Mike Grothues | Level II Tech | 8/1/2005 |
| Don Puckett | Level II Tech | 8/1/2005 |
| Ed Reilly | Level II Tech | 8/1/2005 |
| Chris Franklin | Level II Tech | 8/1/2005 |

Please See attached for additional employees

### Article II – Wages / Fringe Benefits

| | |
|---|---|
| Technician (Level II) wages per hour | $18.00 |
| Assistant Technician (Level I) wages per hour | $12.00 |
| Per Diem Per Person Per Night | $70.00 |
| Health and Welfare Payment 40 hours per week | $3.31 |
| Central Pension Fund Payment Per Hour Worked | $0.75 |
| NDE Training and Retraining Fund Payment Per Hour Worked | $0.25 |

Note: Vacation and Holidays shall be applicable to this addendum

### Article III – Term of Agreement

It is agreed that all other provisions of the base working agreement shall be in full force and effect and all addendums attached thereto, notwithstanding the aforementioned conditions as stipulated in Article I and Article II of the project agreement.

This agreement shall terminate at the conclusion of this project and all conditions as stipulated herein shall neither negate, delete nor modify the base w$orking agreement unless mutually agreed upon by both parties.

IUOE Local 2 (AFL-CIO)

High Mountain Inspection Service

| EMPLOYEE NAME | SSN# | CLASS | DATE OF HIRE |
|---|---|---|---|
| BELL, ROGER | ██████9466 | LEVEL II TECH | 8/1/2005 |
| BOLTZ, HARLAN | ██████9337 | LEVEL I TECH | 8/1/2005 |
| COX, NEAL | ██████3607 | LEVEL II TECH | 8/1/2005 |
| DAY, JOE | ██████3130 | LEVEL II TECH | 8/1/2005 |
| DUNCAN, JERRY SCOTT | ██████6770 | LEVEL II TECH | 8/1/2005 |
| GALLOWAY, ROBERT | ██████1148 | LEVEL II TECH | 8/1/2005 |
| MALSON, RANALL | ██████2724 | LEVEL I TECH | 8/1/2005 |
| NAIL, TRACEY | ██████7312 | LEVEL I TECH | 8/1/2005 |
| SMITH, DOUGLAS | ██████5947 | LEVEL I TECH | 8/1/2005 |
| SMITH, WILLIAM | ██████8767 | LEVEL II TECH | 8/1/2005 |
| SIMMONS, JAMEY | ██████6886 | LEVEL I TECH | 8/1/2005 |
| SUMMERS, KEVIN | ██████3513 | LEVEL II TECH | 8/1/2005 |
| WORTHINGTON, WES | ██████6038 | LEVEL II TECH | 8/1/2005 |
| | | | |
| | | | |