UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL R. FANNING, as CHIEF EXECUTIVE OFFICER OF THE CENTRAL PENSION FUND, <br><br> Plaintiff, <br><br> v. <br><br> HIGH MOUNTAIN INSPECTION SERVICES, INC., <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : CA No.: 06cv02177-RJL <br> : <br> : <br> : <br> : <br> : |

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, pursuant to the Court's February 22, 2007, Order and Local Rule 7(d), hereby replies in further support of its Motion for Preliminary Injunction. This Motion is scheduled for a hearing before the Court on Friday, April 13, 2007, at 2:30 p.m. A Supplemental Declaration is also submitted with this Reply.

I. INTRODUCTION

High Mountain seeks to avoid injunctive relief based on two main arguments. First, it broadly argues that the failure to pay contributions as required by the Collective Bargaining Agreement causes only an "economic loss" to the Central Pension Fund, and therefore there can be no irreparable harm. However, in Section 502(g)(2)(E) of ERISA, Congress authorized the federal courts to grant equitable relief as the courts may deem appropriate to vindicate the provisions of ERISA. 29 U.S.C. § 1132(g)(2)(E). The federal courts have not accepted High Mountain's blanket prohibition on injunctive relief even though the injunction requires the payment of monetary contributions. See, e.g., Gould v. Lambert Excavating, Inc., 870 F.2d 1214, 1217 (7th Cir. 1989); Laborers Fringe Benefit Funds v. Northwest Concrete & Const., Inc.,

1

640 F. 2d 1350 (6th Cir. 1981); Anthony v. Texaco, Inc., 803 F.2d 593, 598 (10th Cir. 1986) (in ERISA litigation courts have issued preliminary injunctions compelling an employer to make delinquent contributions as required by collective bargaining agreements) (citing cases); National Shopmen Pension Fund v. Burtman Iron Works, Inc., 148 F. Supp. 2d 60 (D.D.C. 2001); Teamsters Local 639 – Employers Trust v. Jones & Artis Const. Co., 640 F. Supp. 223 (D.D.C. 1986); Laborers' International Union of America National (Industrial) Pension Fund v. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990) (in Unreported Case Appendix); Combs v. Hawk Contracting, Inc., 543 F. Supp. 825, 829-30 (W.D. Pa. 1982).

The Defendant's argument also oversimplifies the harm caused to the Pension Fund by characterizing it as an issue of "financial security." This erroneous characterization ignores the numerous different aspects of harm caused by its failure to pay contributions, such as the cost to the Fund to pay benefits for which High Mountain has not made contributions, the cost to other contributing employers, and the cost to employees. Put another way, High Mountain fails to explain why benefits payable to its own employees are properly paid for out of the Central Pension Fund's assets contributed by other employers for the benefit of other employees.

High Mountain also argues that preliminary relief should not be granted because the Central Pension Fund cannot show a likelihood of success of the merits. According to High Mountain's deceased president's daughter, an informal oral understanding was reached by her father to modify the written terms of the Collective Bargaining Agreement. Even if this allegation were true, it is inadmissible hearsay. F.R.E. 801(c). What is more, even if evidence of this oral understanding could be introduced into evidence, it is irrelevant as a matter of law. This is because the federal courts repeatedly reject attempts to modify the terms of written collective bargaining agreements with oral side-agreements. Central States, Southeast and Southwest Areas Pension Fund v. Gerber

Truck Service, Inc., 870 F. 2d 1148, 1149 (7th Cir. 1989) (citing the "unanimous view" of the other courts of appeals.)

When the plain terms of the Collective Bargaining Agreement are examined, the text of which the Defendant entirely ignores in is Opposition papers, it becomes clear that contributions are owed for "all employees" of High Mountain "engaged in pipeline and directly related pipeline non-destructive testing." (Fanning Decl. ¶ 20; Exh. 2, Article I, page 2.) There is no special language in the Agreement creating an exception for "call out" work or for non-union employees, and High Mountain's claim should be rejected accordingly.

## II. THE CENTRAL PENSION FUND IS LIKELY TO SUCCEED ON THE MERITS

High Mountain argues that the Central Pension Fund is not likely to succeed on the merits because, according to Ms. Frazer, her father told her that he had discussions with a local union official regarding a change to the written terms of the Collective Bargaining Agreement.[1] This testimony, of course, is inadmissible hearsay. F.R.E. 801(c). Notably, High Mountain does not allege that these discussions ever included a representative of the Central Pension Fund, were at any time ever communicated to the Central Pension Fund, or were reduced to writing at any time.

In Section 515, Congress specifically amended ERISA to articulate how employers, like High Mountain, must make contributions to employee benefit funds:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

---

[1] As this alleged oral modification is not one of the "three possible defenses an employer may raise to delinquent-contribution suits," it may be rejected as a matter of law on this basis alone. Flynn v. Thibodeaux Masonry, Inc., 311 F. Supp. 2d 30, 43-44 (D. D.C. 2004) (citing Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3rd Cir. 1992)); Joyce v. Silveri Tile Co., 27 F. Supp. 2d 251 (D. D.C. 1998).

3

> agreement <u>shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.</u>

29 U.S.C. § 1145 (emphasis added); <u>Flynn v. R.C. Tile</u>, 353 F.3d 953, 958 (D.C. Cir. 2004) (ERISA puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles).  Because "an employer's obligation to a multiemployer fund is determined by the plain meaning of the language used in the collective bargaining agreement, the actual intent of the contracting parties [High Mountain and the local union in this case] is immaterial when the meaning of that language is clear." <u>Bakery & Confectionary Union Funds v. Ralph's Grocery Co.</u>, 118 F.3d 1018, 1021 (4th Cir. 1997) (citing cases).

This rule of construction for collective bargaining agreements is based not only on the specific language of Section 515.  It is also based on the fact that because multiemployer plans, like the Central Pension Fund, involve many employers and local unions across the nation, "in most cases it would be difficult and costly for such plans to monitor the problems or understandings that arise between individual unions and employers." <u>Id</u>.  Consequently, High Mountain, as a matter of law, is not permitted to raise a defense that attempts to show that it and a local union agreed to terms different from those set forth in the written Agreement.

In <u>Flynn v. Fischer Tile & Marble, Inc.</u>, 246 F. Supp. 2d 48 (D. D.C. 2003), for example, this Court considered a delinquent contribution case in which an employer, like High Mountain, attempted to avoid liability by arguing that an "oral agreement with the local unions" absolved the employer of liability to make contributions.  <u>Id</u>. at 57.  The Court held that the provisions of the Labor-Management Relations Act "renders any oral agreement invalid as a matter of law." <u>Id</u>. at 57-58.  This Court's refusal to permit employers to make oral modifications to collective bargaining agreements is consistent with the "unanimous view" of the other federal courts.

4

Gerber Truck Service, Inc., 870 F.2d at 1149 (citing cases.) The same result should be reached for High Mountain's claim of an oral understanding in this case.

In any event, according to High Mountain, the discussions between Ms. Frazer's father and the local union led to the oral understanding that High Mountain was required to pay contributions only for employees testing on "the pipeline," but not for employees testing on "call out" work at refineries and compressor stations. This distinction is found nowhere in the text of the written Collective Bargaining Agreement. The Agreement specifically identifies the scope of work for which contributions are required to be paid. In Article XXIII of the Collective Bargaining Agreement, High Mountain promised to pay contributions to the Central Pension Fund for "all hours worked" by "all employees covered by this Agreement." (Fanning Decl Ex. 2, page 25). The phrase "covered by this Agreement," in turn, is defined by the following broad description of work in Article I:

> This Agreement shall apply to and cover <u>all employees</u> engaged in pipeline and directly related pipeline non-destructive testing, including all employees who furnish rigs and equipment in the performance of service.

(Fanning Decl. Ex. 2, page 2) (emphasis added). Thus, the Agreement signed by High Mountain requires contributions to be paid on behalf of "all employees" engaged in pipeline non-destructive testing. The alleged distinction between testing work on "the pipeline" and "call out" testing in refineries and compressor stations is found nowhere in the text of Article I of the Collective Bargaining Agreement. (Fanning Decl. Ex. 2.)

High Mountain's effort to avoid liability to the Central Pension Fund by referring to "call out" work is particularly unpersuasive. "Call out" work is a specific term of art in the pipeline industry. If High Mountain and a local union had actually sought to make an exception to the Collective Bargaining Agreement for "call out" work, it would have been a simple matter to write

5

that exclusion into the contract. For instance, High Mountain could have included restrictive language utilized in the industry's collective bargaining agreements, such as:

> This agreement shall apply to and cover all employees engaged in field pipeline, or pipeline related nondestructive testing including all employee who furnish rigs and equipment in the performance of services: excluding Aleska, Nuclear Power Plants, laboratory work and <u>that work considered in the industry as "city" or "call-out" work</u>; and the Company recognizes the Union as the exclusive bargaining agent for all such employees.

<u>Bugher v. Consolidated X-Ray Service Group</u>, 515 F. Supp. 1180, 1182 (N.D. Tex. 1981), <u>aff'd</u>, 705 F.2d 1426 (5th Cir. 1983). High Mountain, of course, failed to include explicit language in the written Agreement establishing this exception.

Finally, related to High Mountain's suggestion that an alleged oral understanding should control over the written terms the Collective Bargaining Agreement, is its claim that it is not required to pay contributions to the Central Pension Fund on behalf of non-union employees. The federal courts, including the United States Court of Appeals for the District of Columbia Circuit, have repeatedly rejected this claim. <u>See</u>, <u>e.g.</u>, <u>Washington Area Carpenters Welfare Fund v. Overhead Door, Co.</u>, 681 F.2d 1, 10 (D.C. Cir. 1982); <u>Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co.</u>, 749 F.2d 315, 318-19 (6th Cir. 1984); <u>Clark v. Ryan</u>, 818 F.2d 1102, 1105 (4th Cir. 1987); <u>Carpenters and Millwrights Health Benefit Trust Fund v. Gardiner Dry Walling Co.</u>, 573 F.2d 1172, 1177 (10th Cir. 1978). As detailed above, no distinction is made in the language of the Agreement between employees who are members of the International Union of Operating Engineers or those employees who are not. (Fanning Decl. Ex. 2.)[2]

---

[2] Such a distinction, based on union membership, if actually included in the Agreement, would violate the Labor-Management Relations Act. 29 U.S.C. §158(a)(3). <u>Plumbers, Pipefitters and Apprentices Local Union No. 112 Pension, Health and Educational and</u>

### III.  THE CENTRAL PENSION FUND WILL SUFFER
### IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF

Rather than address the irreparable harm actually described by the Central Pension Fund, High Mountain instead focuses on a straw man argument in its Opposition papers.  High Mountain claims in its Opposition that the Central Pension Fund failed to demonstrate that its financial condition is "dire," or that it will be prevented from paying vested pension obligations.  No such claims have been advanced by the Central Pension Fund as a basis for granting injunctive relief.

Instead, the Fund emphasized that it is required by law to provide benefits to participants without regard to whether or not contributions were actually paid by High Mountain.  Gould, 870 F.2d at 1221 (in ERISA cases "the probability of irreparable harm is strong.")  This aspect of the Central Pension Fund's obligation to pay benefits was described by the Seventh Circuit as follows:

> Multi-employer plans are defined-contribution in, defined benefit out.  Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize – perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract.

Gerber Truck Service, Inc., 870 F.2d at 1151; see, e.g., Pace v. Honolulu Disposal Service, Inc., 227 F.3d 1150 (9th Cir. 2000) (oral understand insufficient to control written terms of agreement).

Thus, whether or not High Mountain actually makes the contributions required by the Collective Bargaining Agreement, the Central Pension Fund already is obligated to pay an

---

Apprenticeship Plans v. Mauro's Plumbing, Heating and Fire Suppression, Inc., 84 F. Supp. 2d 344, 354 (N.D. N.Y. 2000) (citing cases).

unknown amount of benefits to High Mountain's employees. (Fanning Decl. ¶ 23).[3] As described in the Fund's opening brief, the typical benefit payable by the Fund is in the form of a monthly benefit payment for the lifetime of an eligible pensioner. The amount of the lifetime annuity is based on a percentage of the contributions payable to the Central Pension Fund. (Fanning Decl. ¶ 9. ) In a simplified example, for instance, an employee with $80,000 of employer contributions would be entitled to a monthly pension benefit of $2,400.00 for his or her lifetime. (Fanning Decl. ¶ 9.)

If employers, like High Mountain in this case, fail to pay contributions, "other [employers] must make up the difference in higher contributions, or the workers will receive less than was promised." Gerber Truck Service, Inc., 870 F.2d at 1151; Robbins v. Lynch, 836 F.2d 330, 333 (7th Cir. 1988) (any shortfall in contributions must be made up by lower benefits to the retirees or higher contributions from the remaining contributing employers who do not cheat). As explained by the United States Court of Appeals for the District of Columbia Circuit, if "one employer does not make its contributions to such a plan, then the other participating employers must make larger contributions to cover the shortfall." Flynn v. R.C. Tile, 353 F.3d 953, 958 (D.C. Cir. 2004).

High Mountain's analysis of the Central Pension Fund's large assets in its Opposition fails to explain why the benefits payable to High Mountain's own employees should be satisfied out of the contributions paid by other employers. Simply put, the benefits must be paid out of assets that came from somewhere, and if it is not from High Mountain (as it properly should), then the shortfall will be made up by contributions from other employers regardless of the size of the Fund's current assets. The district court in Connors v. Shannopin Mining Co., 675 F. Supp.

---

[3] Section 502 of ERISA specifically provides High Mountain's employees with a cause of action for the payment of benefits. 29 U.S.C. § 1132.

988 (W.D. Pa. 1987), held that the uninterrupted funding of benefit funds is of "vital importance in and of itself" and can constitute irreparable harm even when the benefit fund is alleged to be over funded. Id. at 988. What is more, the funding burden may even be shifted even beyond other participating employers to taxpayers by way of the Pension Benefit Guarantee Corporation. Flynn v. R.C. Tile, 353 F.3d 953, 958 (D.C. Cir. 2004).

It does High Mountain no good to suggest that it may be ordered at some later date to pay the contributions into the Fund. This is because for each month that High Mountain fails to remit contributions, the Central Pension Fund experiences additional harm by foregoing investment money and investment opportunities which formed part of the Fund's long-term planning and investment assumptions to pay the promised benefits in the first place. (Fanning Decl. ¶ 24.) Robbins, 836 F.2d at 333 (funds must assume that all employers in a plan are following the state terms; "no other approach permits accurate actuarial computations.") In Van Drivers Union Local 392 Funds v. Neal Moving & Storage, 551 F. Supp. 429 (N.D. Ohio 1982), the district court specifically identified that the loss of investment moneys and investment opportunities constitutes irreparable injury. Id. at 433.

High Mountain also fails to address the other aspects of irreparable harm caused by its continued failure to make contributions. For example, absent injunctive relief, other contributing employers would not be deterred from following High Mountain's lead in cheating on their contribution obligations. (Fanning Decl. ¶ 25.) McCrory v. G.C. Monaco Electric, Inc., 1989 U.S. Dist. LEXIS 7573 (S.D.N.Y. 1989) (in Unreported Case Appendix) (it is right to allow the Funds to use one particularly delinquent employer as an example); Bituminous Coal Operators' Ass'n v. Connors, 675 F. Supp. 986, 988 (D. D.C. 1978) (if employers believe they can readily circumvent their obligations, there would soon be a crisis in funding).

Furthermore, the costs of auditing employers like High Mountain and forcing them to make contributions depletes the Central Pension Fund's assets, resulting in less resources to pay benefits, thereby harming the participants. (Fanning Decl. ¶ 26.) Gerber Truck Service, Inc., 870 F.2d at 1151 (costs of tracking down reneging employers and litigating also come out of money available to pay benefits). The simple fact that the Central Pension Fund has been forced to bring this collection lawsuit creates it own form of harm. Van Drivers Union Local No. 392 Benefit Funds, 551 F. Supp. at 432-43 (collection lawsuits clog the federal court's congested dockets).

Also ignored by High Mountain is the harm caused to its current and former employees. In this regard, it is important to keep in mind that Calibre CPA Group determined that not only was High Mountain failing to pay contributions on all of its employees, but it was also underpaying the amount contributions owed for some employees. (Odell Decl. ¶ 17.) The Courts of Appeal have recognized that "employees, basing their futures on the promise of an old-age pension provided in a union contract, may discover in later years to their surprise that an oral side-agreement has eroded the worth of their pension rights." Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1328 (9th Cir. 1987). If High Mountain's claim of an oral understanding is accepted, any of High Mountain's employees who have planned for retirement based on the plain terms of the written Collective Bargaining Agreement are being harmed. United Steelworkers of Am. v. Textron, Inc., 836 F.2d 6, 8 (1st Cir. 1987) (emotional distress and concern of workers constitutes irreparable harm in ERISA collection case) Accordingly, the Central Pension Fund requests injunctive relief to avoid these irreparable harms.

Finally, High Mountain's unsupported assertion that its "non-union" employees "will never receive pension benefits from the Central Pension Fund" is simply erroneous. (Docket No. 17, Opposition page 3.)[4]  ERISA and the Central Pension Fund's Restated Agreement and Declaration of Trust mandate that benefits must be paid strictly in accordance with the Plan. (Fanning Supp. Decl. ¶ 4 (attached to this Reply)); Fanning Decl. Ex. 1.)  White v. Provident Life Accident Co., 114 F.3d 26, 28 (4th Cir. 1997) (ERISA demands adherence to the clear language of the Plan.)  A Plan is a document required by Section 402 of ERISA.  29 U.S.C. § 1102.  The failure to pay benefits in accordance with the Fund's Plan can subject the Central Pension Fund and its Trustees to civil liability.  See, e.g., 29 U.S.C. § 1104(a)(1)(D); 29 U.S.C. § 1132(a)(1)(B).  Contrary to High Mountain's assertion, the Central Pension Fund is required, pursuant to its Plan, to pay benefits to any qualified individual, regardless of union membership. (Fanning Supp. Decl. ¶ 4.)[5]

### IV. ANY HARM TO HIGH MOUNTAIN IS SUBSTANTIALLY OUTWEIGHED BY HARM TO THE CENTRAL PENSION FUND

As anticipated, because of the large delinquency, High Mountain claims that it will be subjected to financial hardship if it is required to live up to the terms of the Agreement is signed. However, the financial burden presented by an injunction or the financial condition of an employer is insufficient to overcome the irreparable harm that the moving party could suffer if the injunction is not granted.  Laborers' Int'l Union Pension Fund v. Pacific Ascorp, 12 E.B.C. 1864 (D.D.C. 1990).  As the district court explained in Central States, Southeast and Southwest

---

[4] Any individual employee agreements regarding fringe benefit contributions are irrelevant to an employer's obligation under the written terms of a collective bargaining agreement).  Maxwell v. Lucky Construction Co., 710 F.2d 1396, 1398 (9th Cir. 1983).

[5] The Central Pension Fund's Summary Plan Description can be reviewed on its website at www.cpfiuoe.org ("Documents") (Fanning Supp. Decl. ¶ 5.)

11

Areas Pension Fund v. McNamara Motor Express, Inc., "concern over insolvency cannot be used by defendant to evade its responsibilities" to an ERISA Fund. Id., 503 F. Supp. at 99. Connors, 675 F. Supp. at 990 (mere financial hardship is not an adequate reason to deny, or stay, preliminary injunctive relief).

In any event, the requested injunctive relief would not unduly burden High Mountain since the proposed order would only require that the Defendant remit wrongfully withheld plan assets owed to the Fund pursuant to the terms of a written Collective Bargaining Agreement. Indeed, High Mountain offers no argument at all to show hardship in the event the Court orders it to comply with the written terms of the Collective Bargaining Agreements prospectively. In fact, High Mountain's Opposition papers demonstrate conclusively that such a prospective order would not create a hardship. (Docket No. 17, Opposition at page 9.) Similar relief has been granted in similar cases by this Court. See, e.g., Teamsters Local 639 – Employers Trust v. Jones & Artis Constr. Co., 640 F. Supp. 223 (D.D.C. 1986) (ordering employer to make timely contribution payments); National Shopmen Pension Fund v. Burtman Iron Works, Inc., 148 F. Supp. 2d 60 (D.D.C. 2001) (ordering employer to make required contribution payments.) In Connors, when faced with an employer's claim of impending bankruptcy, the district court granted preliminary injunctive relief to maintain the status quo which required the employer to pay contributions prospectively. 675 F. Supp. at 990-91. Given the substantial irreparable harm to the Central Pension Fund, its participants, and other participating employers, it is clear that the equities lie with the Central Pension Fund on this point and injunctive relief is appropriately issued.

## V.  CONCLUSION

For the foregoing reasons, the Plaintiff respectfully submits that the Central Pension Fund is entitled to injunctive relief

Dated:  March 30, 2007                              Respectfully submitted,

**O'DONOGHUE & O'DONOGHUE LLP**
4748 Wisconsin Avenue, N.W.
Washington, D.C.  20016
Telephone: (202) 362-0041
Facsimile: (202) 237-1200

/s/ R. Richard Hopp_____
Charles W. Gilligan (Bar No. 394710)
R. Richard Hopp (Bar No. 432221)
Francis J. Martorana (Bar No. 367083)

*Attorneys for the Central Pension Fund*

153076_1

## SUPPLEMENTAL DECLARATION OF MICHAEL R. FANNING

I, Michael R. Fanning, Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, pursuant to 28 U.S.C. § 1746, hereby declare, certify, verify and state, under penalty of perjury that the following is true and correct to the best of my personal knowledge:

1. I am over the age of 18 and competent to testify to the facts contained in this Declaration.

2. I am the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers.

3. I am authorized to execute this Declaration on behalf of the Trustees of the Central Pension Fund.

4. The Central Pension Fund pays benefits to eligible individuals pursuant to the terms of its Plan. No aspect of benefit eligibility is dependent upon union membership.

5. The Central Pension Fund's 2001 Summary Plan Description can be viewed on the Fund's website at www.cpfiuoe.org under the tab "Documents."

Washington, D.C.
March 29, 2007

*Michael R. Fanning*
Michael R. Fanning
CEO, Central Pension Fund

153163_1