UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUL 2 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MICHAEL R. FANNING, as CHIEF )
EXECUTIVE OFFICER OF THE CENTRAL )
PENSION FUND, )
)
    **Plaintiff,** )
)
v. ) Civil Case No. 06cv2177 (RJL)
)
HIGH MOUNTAIN INSPECTION )
SERVICES, INC., )
)
    **Defendant.** )

### MEMORANDUM OPINION
(July 23, 2007) [#5]

Before the Court is a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) filed by plaintiff, the Chief Executive Office of the Central Pension Fund, an employee pension benefit fund as those terms are defined in Section 3(1) and 3(3) of ERISA, 29 U.S.C. §§ 1002(1) and (3). For the following reasons, this Court DENIES plaintiff's motion.

### BACKGROUND

The Central Pension Fund provides retirement, disability, and death benefits to employees working as operating engineers throughout the United States. The fund has approximately 110,000 active and/or non-retired vested participants. The Central Pension Fund is a defined benefit, multiemployer plan, as those terms are defined in Sections 2(35) and 37(A) of ERISA, 29 U.S.C. § 1002(35) and (37)(A). As a defined benefit fund, the Central Pension Fund does not maintain individual accounts for each participant, but, rather,



collects payments (employer contributions) from thousands of employers throughout the United States pursuant to the terms of various collective bargaining agreements with Local Unions of the International Union of Operating Engineers on a self-reporting basis each month based upon the number of hours worked each week by employees. The Central Pension Fund provides monthly annuity payments to participants and beneficiaries according to various formulas that are based upon a percentage of contributions paid into the Fund by employers. (*See generally* Fanning Decl. ¶¶ 4-18.)

Defendant, High Mountain Inspection Services, Inc. ("High Mountain") entered into collective bargaining agreements with the International Union of Operating Engineers Local No. 2 and its successor Local 112 pursuant to which it is to make contributions to the Central Pension Fund for every hour worked by employees engaged in pipeline and directly related pipeline non-destructive testing. (*Id.* ¶¶ 20-22.) The Central Pension Fund alleges that it hired Calibre CPA Group, PLLC, to conduct an on-site audit of High Mountain's wage and payroll records for the period of January 2002 through August 2005. (Odell Decl. ¶¶ 7, 10.) According to plaintiff, the auditor concluded that High Mountain owes contributions to the Central Pension Fund in the total amount of $1,549,855.64 for this period. (*Id.* ¶ 15.) Plaintiff claims that High Mountain failed to correctly identify the number of hours worked by each of its employees in its self-reporting to the pension fund, resulting in unpaid contributions of $508,219.30 for this period. (*Id.* ¶ 16.) Plaintiff also claims that High Mountain used a lower hourly contribution rate to lower its payments, resulting in unpaid

contributions of $1,041,636.34. (*Id.* ¶ 17.) Plaintiff seeks a preliminary injunction from this Court to enjoin the wrongful withholding of these overdue contributions and any contributions that become due during the time of this lawsuit.

## ANALYSIS

Under Section 502(g)(2)(E) of ERISA, federal courts may grant equitable relief as the courts may deem appropriate to vindicate the provisions of ERISA. 29 U.S.C. § 1132(g)(2)(E). Moreover, to prevail in a request for a preliminary injunction, an ERISA plaintiff "must demonstrate: 1) a substantial likelihood of success on the merits; 2) that [they] would suffer irreparable injury if the injunction were not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (internal quotations omitted). Because these four factors "interrelate on a sliding scale," the Court must balance the strengths of the factors against each other. *Serono Labs. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). Accordingly, if there is a particularly strong argument for one factor, an injunction may be issued even if there are weaker arguments for the other factors. *CityFed. Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."). On the other hand, a particularly weak argument for one factor may be more than the other factors can compensate for. *See, e.g. Taylor v. Resolution*

*Trust Corp.,* 56 F.3d 1497, 1507 (finding that "given the inadequacy of [the plaintiff's] prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief"). Finally, our Circuit mandates that a preliminary injunction cannot be issued unless a movant can "demonstrate at least 'some injury'" to warrant the granting of an injunction, and, if he fails to do so, that court need not consider the remaining factors for issuance of a preliminary injunction. *CityFed. Fin. Corp.*, 58 F.3d at 747. For the following reasons, plaintiff has failed to meet this heavy burden.

## *I. Irreparable Harm*

First, plaintiff seeks to demonstrate that it will suffer irreparable harm if an injunction is to be granted. Unfortunately, it has not done so here.

Our Circuit Court has set a high standard for irreparable injury. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the "injury 'must be both certain and great; it must be actual and not theoretical.' The moving party must show '[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). In addition, the injury must be beyond remediation. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim

of irreparable harm." *Id.* at 297-98 (quoting *Wisc. Gas*, 758 F.2d at 674; *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n.*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Plaintiff has failed to meet its burden in multiple respects.

First, plaintiff incorrectly asserts that courts have found that "as a matter [of the] law," (Pls.' Prelim. Inj. at 12 (citing cases)), a multiemployer pension fund will be irreparably harmed unless it receives the contributions it seeks from the participating employers. Although courts have found that in some instances, that employee benefit funds could sustain such irreparable harm because of overdue payments, it is well-established that "the facts of each case may differ, and an injunction must be issued on a case-by-case basis." *Gould v. Lambert Excavating Inc.*, 870 F.2d 1214, 1221 (7th Cir. 1989); *see also Laborers' Int'l Union of America Nat'l Pension Fund v. Pac. Ascorp*, 12 E.B.C. 1864 (D.D.C. 1990). Indeed, in the overwhelming majority of the cases cited by plaintiff where the courts found that the pension funds would suffer irreparable harm, the financial security of the pension fund was at immediate and serious risk, or the fund was unable to pay its obligations. *See, e.g., Pac. Ascorp*, 12 E.B.C. 1864; *Van Drivers Union v. Neal Moving & Storage*, 551 F. Supp. 429, 432 (D. Ohio 1982). Plaintiff here cannot make such an assertion, and, in fact, plaintiff admits that characterizing "the harm caused to the Pension Fund . . . as an issue of 'financial security' [is] erroneous." (Pl.'s Reply at 2.)

Moreover, plaintiff's other assertions of irreparable harm are merely financial, and, thus, not irreparable. Specifically, plaintiff argues that the Fund will suffer a financial loss

because it will lose "investment money and investment opportunities," and will have "increased administrative fees because of the costs of the lawsuit." (Pl.'s Prelim. Inj. at 14, 15.) However, it is well settled that financial loss does *not* constitute irreparable injury because the financial loss can be remedied with money damages. *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Wis. Gas*, 758 F.2d at 674; *Gray v. Dist. of Columbia*, 477 F. Supp. 2d 70 (D.D.C. 2007). Accordingly, this Court finds that plaintiff has failed to establish the irreparable harm necessary to warrant injunctive relief.

## *II. Substantial Injury to the Defendant*

Plaintiff next argues that any harm to High Mountain, who claims that it would suffer serious financial repercussions if it is forced to make the payments that plaintiff seeks, is substantially outweighed by harm to the Central Pension. Defendant claims that "[i]f forced to pay to the Central Pension Fund the entire relief Plaintiff is seeking, which is in excess of one million dollars, [High Mountain] will essentially be forced to shut down and liquidate to satisfy that obligation." (Def.'s Opp. at 9.) In support of this assertion, the President of High Mountain stated in her declaration that High Mountain has "$2,141,266.33 in assets, has "monthly sales income [of] about $700,000, and its monthly expenses, including contributions to the Central Pension Fund . . . are about $616,000. (Fraser Decl. ¶ 5.) The amount plaintiff seeks ($1,549,855.64) far outstrips the cash flow of this company, and, accordingly, an order to remit such an amount on an expedited basis would result in

substantial injury to it.

Moreover, the case cited by plaintiff for the proposition that "concern over insolvency cannot be used by defendant to evade its responsibilities" is inapposite. *See Cent. States, S.E. & S.W. Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.*, 503 F. Supp. 96, 99 (D. Mich. 1980). In that case, the defendant had admitted his obligation to the Fund and his failure to meet it, and, thus, the court found it would be inappropriate to protect the delinquent employer from its *creditor*. *Id.* Here, in contrast, no debt has been legally established as defendant has been making contributions to the Fund, and the question remains open as to whether such funds were adequate under the existing collective bargaining agreements. Accordingly, because immediate payment of the amount requested by plaintiff would substantially injure the defendant, the issuance of an injunction is even less doable under these circumstances.

### III. *Public Interest*

Next, plaintiff argues that granting a preliminary injunction in this case will "vindicate the public interest by insuring that the Central Pension Fund is adequately funded and that employers who promise pension benefits to their employees are not free to ignore their obligations to their employees." (Pl.'s Prelim. Inj. at 20.) While the Court agrees that this is a laudable goal, it can still be achieved if this lawsuit proceeds in its regular course. Moreover, the public interest would not best be served by forcing High Mountain into liquidation *before* a determination has been made on the merits of the issues that underlie this

case. *See Connors v. Shannopin Mining Co.*, 675 F. Supp. 986, 989 (D. Pa. 1987) ("While there is a strong public interest in the continued integrity of employee pension funds, the public also has an interest in the continued employment of the [] workers who are the ultimate beneficiaries of the [] Trusts. We doubt that the public interest would be best served by forcing [the defendant] into liquidation.").

### IV. *Likelihood of Success on the Merits*

Finally, as to the likelihood of success on the merits, even assuming, *arguendo*, that plaintiff may ultimately prevail on the legal arguments[1] offered to counter defendant's assertions that it is not liable for any delinquent contributions,[2] its failure to demonstrate an irreparable injury precludes the granting of this extraordinary relief. *CityFed. Fin. Corp.*, 58 F.3d at 747 (holding that if a movant cannot "demonstrate at least 'some injury'" to warrant the granting of an injunction, the court need not consider the remaining factors for issuance of a preliminary injunction). Moreover, the potentially significant financial harm to defendant and the resulting injury to the public interest outweighs the short-term financial

---

[1] Plaintiff argues that these defenses are invalid as a matter of law because ERISA, 29 U.S.C. § 1145, requires that employers who are obligated to make contributions to a multiemployer plan "shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." (Pls.' Prelim. Inj. at 7-8.) In accordance with the plain language of that statute, courts have rejected arguments that oral side-agreements have modified the terms of written collective bargaining agreements. *See, e.g., Cent. States, S.E. and S.W. Areas Pension Fund v. Gerber Trucking Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (citing the "unanimous view of the other courts of appeals").

[2] Defendant argues that the Central Pension Fund's calculations (that defendant owes $1,549,855.60 in delinquent contributions to the Fund) are based upon incorrect rates or hours figures, or that employees not covered by the plan may have been included in the auditor's figures. (Opp. at 5 n3.)

benefit to plaintiff. Accordingly, this Court must deny plaintiff's motion for a preliminary injunction.

## CONCLUSION

For all of the foregoing reasons, this Court DENIES plaintiff's Motion for a Preliminary Injunction. An appropriate Order consistent with this ruling accompanies this Memorandum Opinion.

_/s/ Richard J. Leon_
**RICHARD J. LEON**
**United States District Judge**
